# EXHIBIT 8

GREGORY J. RAMIREZ (Bar No. 150515)
KATHERINE A. WINDER (Bar No. 247831)
JAMES PERERO (Bar No. 258124)
JESSICA ARCINIEGA (Bar No. 261169)
**WASSERMAN, COMDEN & CASSELMAN, L.L.P.**
300 E. Esplanade Drive, Suite 1960
Oxnard, California 93036-0284
Telephone: (805) 988-0285
Facsimile: (805) 988-0375

MELISSA M. HARNETT (Bar No. 164309)
GREG SCARLETT (Bar No. 131486)
**WASSERMAN, COMDEN & CASSELMAN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800
Facsimile: (818) 996-8266

MARCOS CAMACHO (Bar No. 123501)
THOMAS PATRICK LYNCH (Bar No. 159277)
MARIO G. MARTINEZ (Bar No. 200721)
**MARCOS CAMACHO, A LAW CORP.**
1227 California Avenue
Bakersfield, CA 93304
Telephone: (661) 324-8100
Facsimile: (661) 324-8103

Attorneys for Plaintiffs and the Class

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

SABAS ARREDONDO, JOSE CUEVAS, HILARIO GOMEZ, IRMA LANDEROS and ROSALBA LANDEROS individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

DELANO FARMS COMPANY, a Washington State Corporation; CAL-PACIFIC FARM MANAGEMENT, L.P.; T & R BANGI'S AGRICULTURAL SERVICES, INC. and DOES 1 through 10, inclusive,

Defendants.

CASE NO.

**CLASS ACTION COMPLAINT FOR DAMAGES:**

1. **VIOLATION OF MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT**
2. **FAILURE TO PAY WAGES AND/OR OVERTIME**
3. **FAILURE TO REIMBURSE EXPENSES FOR TOOLS AND EQUIPMENT IN VIOLATION OF 29 U.S.C. § 1832(C) AND CAL. LABOR CODE § 2802**

Case 1:09-cv-01247-LJO-DLB Document 2 Filed 07/17/09 Page 2 of 22

4. **FAILURE TO KEEP ACCURATE INFORMATION CAL. LABOR CODE § 226 AND IWC WAGE ORDER 14-2001**

5. **WAITING TIME PENALTIES UNDER CAL. LABOR CODE § 203**

6. **UNFAIR COMPETITION PURSUANT TO B&P § 17200**

**DEMAND FOR JURY TRIAL**

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury and complain as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and U.S.C. § 1854. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1891(d) because the actions at issue took place in this district.

3. This is properly assigned to the Fresno division of this Court, pursuant to Local Rule 3-120(d), because the action arose in Tulare County and Kern County, California.

///

///

///

///

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

## NATURE OF THE CASE

4. This is a Class Action by current and former employees of Defendants CAL-PACIFIC FARM MANAGEMENT, L.P., T & R BANGI'S AGRICULTURAL SERVICES, INC. and DELANO FARMS COMPANY CO., for recovery of unpaid wages and penalties, restitution, attorneys' fees and costs and injunctive relief. Defendants, and each of them, are engaged jointly in the business of growing and harvesting table grapes on land located primarily in Kern and Tulare Counties, California. Plaintiffs are seasonal agricultural workers who have worked in Defendants' vineyards and/or packing sheds. On behalf of themselves and the Class, Plaintiffs complain that Defendants have required their agricultural workers to perform unpaid, off-the-clock work in violation of federal and state wage and hour laws. Plaintiffs also complain, on behalf of the Class, that Defendants have committed other violations of applicable law, including failing to keep accurate records of hours worked.

## PARTIES

5. Plaintiffs are residents of the Kern County and Tulare County, State of California. Named Plaintiffs and the class members are or were agricultural workers within the meaning of 29 U.S.C § 1802(10), and are or were employed by CAL-PACIFIC FARM MANAGEMENT, L.P., T & R BANGI'S AGRICULTURAL SERVICES, INC. and DELANO FARMS COMPANY, within the meaning of 29 U.S.C § 1802 (3), to work in Defendant DELANO FARMS COMPANY's agricultural fields in or near Kern and Tulare Counties, California, at various times from four (4) years prior to the filing of this action to the present ("the relevant period").

6. Plaintiffs and the class members are or were non-exempt employees of CAL-PACIFIC FARM MANAGEMENT, L.P., T & R BANGI'S AGRICULTURAL SERVICES, INC. and DELANO FARMS COMPANY. At all relevant times herein, Plaintiff and the Class Members are or were employed by Defendants as agricultural employees on land owned, leased and/or operated by Defendants in and around the Counties of Kern and Tulare, California.

7. Defendant DELANO FARMS COMPANY is engaged in the ownership and operation of vineyards and/or packing sheds located in and around Kern County and Tulare County, California. At all times mentioned herein, DELANO FARMS COMPANY, as a joint employer with Defendants CAL-PACIFIC FARM MANAGEMENT, L.P. and T & R BANGI'S AGRICULTURAL SERVICES, INC., employed Plaintiffs and similarly situated persons as non-exempt employees.

8. DELANO FARMS COMPANY is located and has its principal place of business in Kern County, and is conducting business in good standing in the State of California.

9. Defendant CAL-PACIFIC FARM MANAGEMENT, L.P. is engaged in the operation of vineyards and/or packing sheds located in and around Kern County and Tulare County, California. At all times mentioned herein, CAL-PACIFIC FARM MANAGEMENT, L.P., as a joint employer with DELANO FARMS COMPANY, employed Plaintiffs and similarly situated persons as non-exempt employees.

10. CAL-PACIFIC FARM MANAGEMENT was located and had its principal place of business in Kern County, and conducted business in good standing in the State of

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

California during the relevant time period.

11. Defendant T & R BANGI'S AGRICULTURAL SERVICES, INC. is engaged in the operation of vineyards and/or packing sheds located in and around Kern County and Tulare County, California. At all times mentioned herein, T & R BANGI'S AGRICULTURAL SERVICES, INC., as a joint employer with DELANO FARMS COMPANY, employed Plaintiffs and similarly situated persons as non-exempt employees.

12. T & R BANGI'S AGRICULTURAL SERVICES, INC. is located and has its principal place of business in Kern County, and is conducting business in good standing in the State of California.

13. CAL-PACIFIC FARM MANAGEMENT, L.P. and T & R BANGI'S AGRICULTURAL SERVICES, INC. have issued payroll checks to the same employees with either the CAL-PACIFIC FARM MANAGEMENT, L.P. name or the T & R BANGI'S AGRICULTURAL SERVICES, INC. name. During the relevant time period both Defendants have routinely alternated between these two names on the same employees' paychecks.

14. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names. Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated as DOE when the same are ascertained.

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

15. Defendants, and each of them, are and during the relevant time period have been engaged jointly in the business of cultivating, harvesting, packing, and shipping table grapes.

16. With respect to the events at issue in this case, Defendants acted as agents for each other and as joint employers of Plaintiffs.

17. As joint employers of Plaintiffs and the Class, Defendants DELANO FARMS COMPANY, CAL-PACIFIC FARM MANAGEMENT, L.P., and T & R BANGI'S AGRICULTURAL SERVICES, INC. are jointly and severally liable for the violations of law described in this Complaint.

**FACTUAL BACKGROUND**

18. Plaintiffs and the Class Members are, and at all times pertinent hereto have been, non-exempt employees within the meaning of the California Labor Code § 500, et seq., and the rules and regulations of the IWC California Wage Orders. Defendants hire table grape workers who work in Defendants' vineyards, including pruners, tyers, deleafers, pickers and packers, as well as workers employed to work in the packing shed and cold storage areas.

19. Plaintiffs and the Class Members were not compensated for all time worked as a condition of their employment. Specifically, they were not compensated for: (1) pre-shift work; (2) post-shift work; (3) work performed at home (4) time stopped from working during the day; and (5) time spent traveling during the work day. As a result, Plaintiffs were not compensated for all the hours worked. Further, in some instances, Plaintiffs are entitled to overtime compensation that was either not paid or not paid at the correct

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

overtime rate. Defendants' failure to pay this compensation was knowing and willful.

20. Plaintiffs and the Class are covered by California Industrial Welfare Commission Occupational Wage Order No. 14-2001 (Title 8 Cal. Code of Reg. § 11050).

21. Defendants have failed to comply with Industrial Welfare Commission ("IWC") Wage Order 14-2001(7) by failing to maintain time records showing when the employee begins and ends each work period and total daily hours worked by itemizing in wage statements all deductions from payment of wages and accurately reporting total hours worked by Plaintiffs and the members of the proposed Class.

**CLASS ACTION ALLEGATIONS**

22. Plaintiffs bring this action on behalf of themselves and all others similarly situated as a Class Action pursuant to Rule 23(a) and 23(b)(3) of the F.R.C.P. The Plaintiffs satisfy the requirements of Rule 23(a) and (b)(3) for the prosecution of this action as a Class Action. Plaintiffs seek to represent one class composed of and defined as follows:

> All agricultural employees who are or have been employed, and who have worked one or more shifts as non-exempt hourly and/or piece rate workers for DELANO FARMS COMPANY, CAL-PACIFIC FARM MANAGEMENT, L.P. and/or T&R BANGI AG SERVICES, INC. in the State of California from four (4) years prior to the filing of this action.

23. Plaintiffs reserve the right to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

///

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

**A. Numerosity**

24. The potential members of the Class as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believe, and based upon such information and belief thereupon allege that Defendants, during the relevant time period, employed between 1,500 to 2,500 agricultural workers.

25. Plaintiffs allege that Defendants' employment records would provide information as to the number and location of all Class members. Joinder of all members of the proposed Class is not practicable.

**B. Commonality**

26. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

(a) Whether Defendants violated the Migrant And Seasonal Agricultural Worker Protection Act 29 U.S.C. § 1801 et seq. (AWPA) by failing to pay wages due to class members for all hours worked.

(b) Whether Defendants failed to pay wages and/or overtime compensation for all hours worked;

(c) Whether Defendants paid all piece rate/bonuses for work performed;

(d) Whether Defendants violated § 2802 of the California Labor Code by failing to reimburse Class Member's for the costs of the tools Plaintiffs purchased

///

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

that were required and necessary for them to perform their work in Defendants' agricultural operations.

(e) Whether Defendants violated §§ 201-203 of the Labor Code by failing to pay compensation due and owing at the time that any Class Member's employment with Defendants terminated;

(f) Whether Defendants violated § 17200, et seq., of the Business & Professions Code by engaging in the acts previously alleged; and

(g) Whether Plaintiffs and the Members of the Class are entitled to equitable relief pursuant to Business & Professions Code § 17200, et. seq.

**C. Typicality**

27. The claims of the Named Plaintiffs are typical of the claims of the Class. Plaintiffs and all Members of the Class sustained damages arising out of and caused by Defendants' common course of conduct in violation of laws and regulations that have the force and effect of law and statutes as alleged herein.

**D. Adequacy of Representation**

28. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Counsel representing Plaintiffs are competent and experienced in litigating large employment Class Actions, and in litigating Class Actions involving agricultural employees.

**E. Superiority of Class Action**

29. A Class Action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

Case 1:09-cv-01247-LJO-DLB Document 2 Filed 07/17/09 Page 10 of 22

practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

30. Class Action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a Class Action.

**FACTS**

31. During the relevant period, CAL-PACIFIC FARM MANAGEMENT, L.P., T & R BANGI'S AGRICULTURAL SERVICES, INC. and DELANO FARMS COMPANY have cultivated, harvested, packed, and shipped agricultural commodities, including table grapes, on agricultural land located in or near Kern and Tulare Counties, California, for fresh market sale. Defendants sell and ship their agricultural produce to various parts of California and other states of the United States.

32. During the relevant period, CAL-PACIFIC FARM MANAGEMENT, L.P., T & R BANGI'S AGRICULTURAL SERVICES, INC. and DELANO FARMS COMPANY have employed, as that term is used in 29 U.S.C. § 1892(3), hundreds of seasonal agricultural workers in its pruning, tying, thinning, harvesting and field packing and packaging operations.

33. During the relevant period, many of Defendants' field laborers have quit their employment during or between the various table grape seasons, or have been discharged at the end of each season.

///

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

34. During the relevant period, Named Plaintiffs and the Class they represent have engaged in agricultural employment, as that term is used in 29 U.S.C. § 1802(3), on agricultural land owned or operated by Defendants.

35. During the relevant class period, Plaintiffs and the Class they represent have entered into working arrangements with Defendants. These arrangements are formed and entered into each season, at least once, and in many cases more than once each year, at or near the time Named Plaintiffs and the Class Members are hired by Defendants. Under the working arrangements, which are also oral employment contracts, Defendants offer Plaintiffs and other agricultural workers jobs in their agricultural operations, and Plaintiffs and other agricultural workers accept the job offers. By words, conduct, practice, or custom and usage, it is understood by the parties that Defendants will pay Plaintiffs and other workers for all work performed, consistent with federal and state law, as follows: a stated hourly wage throughout each season and, during the table grape harvest season, in addition to the stated hourly wage, a stated bonus (incentive) payment based on production in the fields. Said contracts are and were working arrangements as that term is used in the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1932(c). In addition, by words, conduct, practice, or custom and usage, including but not limited to posting the IWC Wage Order 14-2001 at the place of employment, Defendants communicated to agricultural workers that they would abide by the terms contained therein. Such posting of the IWC Wage Order 14-2001 was and is a "working arrangement" as that term is used in the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1932(c). This "arrangement" required Defendants to pay

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

agricultural workers their agreed-upon wages for all hours worked, and to abide in all respects with the wage order.

36. During the relevant period, Defendants have failed to pay all wages due to their agricultural workers and have failed to keep accurate time records. Specifically, Defendants have failed to pay their field workers in the table grape operations for time at the beginning of the work day during which Plaintiffs and their co-workers have been subject to Defendants' control and/or have been suffered or permitted to work. Defendants' agricultural workers have performed "off-the-clock," unpaid and unrecorded work. Workers have spent this time organizing materials and equipment essential for the harvest, including tables, wheelbarrows, trays, packing material, bags, boxes, and other materials. At times due to rain, wet fields or other reasons, Plaintiffs and the Class were required to report to work and were not permitted to start work. Plaintiffs and the Class were not free to leave and were made to wait until they were provided information as to whether they would begin work or be sent home.

37. During the relevant period, Defendants' foremen have conducted "schooling" or training of Defendants' grape workers 15-30 minutes before the official, recorded start time, one or more times during each table grape season.

38. During the relevant period, Defendants' agricultural workers performed work "off-the-clock" at the end of the day, to clean up or finish packing boxes. This time was unrecorded and not paid.

39. During the relevant period, Plaintiffs and the Class were required to meet at locations designated by Defendants' foremen before the start of the work day and wait for

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

their foremen to arrive at the location. Plaintiffs and the Class were required to travel from the designated location to their work location, following their foremen. This time was unrecorded and not paid.

40. During the relevant period, Defendants required workers to clean their trays at home. This required the transportation of the trays to and from home, as well as the washing and drying of the trays. All of this time was uncompensated.

41. Each year during the relevant period, Plaintiffs and the Class have worked under employment contracts with Defendants. The parties have entered into the contracts each year, and frequently more than once a year, at or near the time each of the Named Plaintiffs and other workers have been hired by Defendants. The employment contracts have provided that Defendants would pay Plaintiffs and other workers an hourly wage or, during the table grape harvest, an hourly wage plus a modest bonus (incentive) payment based on field production. During the pruning or tying season, the employment contracts provided that Defendants would pay their workers on an hourly basis.

42. In addition, by words, conduct, practice, or custom and usage, including but not limited to posting IWC Wage Order 14-2001 at the place of employment, Defendants communicated that they would provide to Plaintiffs and the proposed class all necessary tools and equipment. More specifically, IWC Wage Order 14-2001 states: "When tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer..." During the relevant period, Plaintiffs and the Class were required to provide their own tools that are necessary to perform the work required of them by Defendants. The tools required to

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

perform the work are not provided to the Plaintiffs and the Class, thus they are required to purchase said tools and have not been reimbursed by Defendants.

43. Pursuant to California Labor Code § 2699.3(a), prior to the filing of this complaint, Plaintiffs gave written notice by certified mail on July 16, 2009 to each Defendant and to the Labor and Work Force Development Agency ("LWFDA") of the factual and legal basis for the labor law violations alleged in this complaint. Plaintiffs will seek leave to amend this complaint, in accordance with Labor Code §§ 2699.3(a)(2)(A) and (a)(2)(C), to seek all applicable penalties for violations which the LWFDA has failed to investigate and/or failed to issue a citation.

**FIRST CAUSE OF ACTION**

**VIOLATION OF MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT (29 U.S.C. § 1801, ET SEQ.)**

44. Plaintiffs incorporate every allegation in this Complaint as though fully set forth herein.

45. Defendants intentionally violated the Migrant and Seasonal Agricultural Worker Protection Act by:

(a) failing to pay wages when due to Plaintiffs and Class Members, as required by 29 U.S.C. § 1832(a);

(b) failing to keep accurate time and wage records for all work performed by Plaintiffs and the Class Members and failing to provide them with accurate, itemized statements of each pay period, as required by 29 U.S.C. § 1831(c)(1-2);

(c) providing to Plaintiffs and the Class Members false and misleading

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

information required to be disclosed by 29 U.S.C. § 1831(c); and

(d) violating the terms of the working arrangements made with Plaintiffs and Class Members, in violation of 29 U.S.C. § 1832(c).

**SECOND CAUSE OF ACTION**

**FAILURE TO PAY WAGES AND/OR OVERTIME**

46. Plaintiffs incorporate every allegation in this Complaint as though fully set forth herein.

47. Further, Plaintiffs and Members of the Class were required to perform pre-shift work, post-shift work and perform work at home. Much of this time would force Plaintiffs and the Class to work over ten (10) hours per day or sixty (60) hours per week. None of this time, overtime or otherwise, was paid.

48. By common conduct, practice, custom, or usage, including by the posting of IWC Wage Order 14-2001, it has been agreed that Defendants would pay Plaintiffs and Class Members their agreed-upon wages for all hours worked.

49. Defendants have breached the employment contracts by failing to pay Plaintiffs and Class Members wages earned causing damages to Plaintiffs and the Class.

50. Additionally, Labor Code § 1194(a) provides that it is unlawful to pay less than the minimum wage established by law. Defendants' failure to pay the sums as identified above and required by the Wage Orders, violates the provisions of Labor Code §1194(a) and is therefore unlawful. Liquidated damages are also to be awarded in this instance, equal to the unpaid minimum wages.

///

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

51. As a result of the unlawful acts of Defendants, Plaintiffs have been deprived of wages and/or overtime in amounts to be determined at trial and are entitled to recovery of such amounts, plus interest and penalties thereon, attorneys' fees and costs, pursuant to Labor Code §§ 1194.2(a) and/or 218.5.

**THIRD CAUSE OF ACTION**

**FAILURE TO REIMBURSE EXPENSES FOR TOOLS AND EQUIPMENT IN VIOLATION OF 29 U.S.C. § 1832(c) AND CAL. LABOR CODE § 2802**

52. Plaintiffs incorporate every allegation in this Complaint as though fully set forth herein.

53. By words, conduct, practice, or custom and usage, including but not limited to posting IWC Wage Order 14-2001 at the place of employment, Defendants communicated that they would provide to Plaintiffs and the proposed class all necessary tools and equipment. However, during the relevant time period, Plaintiffs and Members of the Class have been required by Defendants to purchase tools and equipment in order to perform their job duties for Defendants. Plaintiffs and members of the Class are required to purchase, including but not limited to: gloves, shears, sharpeners, knives and holsters. At all relevant times, Defendants failed to pay any amounts for these tools and equipment or to provide such tools and equipment to Plaintiffs and the proposed class.

54. California Labor Code § 2802 provides that an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties. Pursuant to Labor Code § 2802 and pursuant to the working arrangement with Defendants as alleged hereinabove, Plaintiffs

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

and the proposed class are entitled to reimbursement of all tool expenses they incurred throughout the duration of their employment.

55. Plaintiffs and the proposed class seek reimbursement of said expenses in an amount to be shown at trial, plus attorneys fees, interest and costs.

**FOURTH CAUSE OF ACTION**

**FAILURE TO KEEP ACCURATE INFORMATION AND TO PROVIDE ACCURATE STATEMENTS OF ALL HOURS WORKED AND WAGES EARNED IN VIOLATION OF CALIFORNIA LABOR CODE § 226 AND IWC WAGE ORDER 14**

56. Plaintiffs incorporate every allegation in this Complaint as though fully set forth herein.

57. In pertinent part, Wage Order 14, paragraph 14 (a) provides, and during the relevant period, provided that every employer shall keep accurate information with respect to each employee including the following: time records showing when the employee begins and ends each work period, total hours worked in the payroll period, and when a piece rate or incentive plan is in operation, piece rates or an explanation of the incentive plan formula shall be provided to employees.

58. Each pay period during the relevant period, Defendants have violated IWC Wage Order 14 by failing to keep accurate information with respect to, among other things, when Plaintiffs have begun each work period and total hours worked.

59. In pertinent part, California Labor Code § 226(a) provides, and during the relevant period provided:

Every employer shall, semimonthly or at the time of each payment of wages,

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

> furnish each of his or her employees . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, . . . (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis . . . (5) net wages earned . . . (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

60. Each pay period during the relevant period, Defendants have violated § 226 by failing to provide to Plaintiffs and the Class Members accurate statements showing, among other things, hours worked and earned.

**FIFTH CAUSE OF ACTION**

**WAITING TIME PENALTIES UNDER LABOR CODE § 203**

61. Plaintiffs incorporate every allegation in this Complaint as though fully set forth herein.

62. Numerous Members of the Class are no longer employed by Defendants. They were either fired or quit Defendants' employ. Many were employed for a season and were terminated at the conclusion of the season.

63. Defendants' failure to pay wages as alleged above was willful in that Defendants, and each of them, knew wages to be due but failed to pay them, thus entitling Plaintiffs and the Class to penalties under Labor Code § 203, which provides that an employee's wages shall continue as a penalty until paid for a period of up to thirty (30) days from the time they were due.

64. Defendants have failed to pay Plaintiffs a sum certain at the time of termination or within seventy-two (72) hours of their resignation and have failed to pay those sums for thirty (30) days thereafter. Pursuant to the provisions of Labor Code § 203,

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

Plaintiffs are entitled to a penalty in the amount of Plaintiffs' daily wage multiplied by thirty (30) days for each time they were terminated and/or quit and were not paid all wages earned.

**SIXTH CAUSE OF ACTION**

**UNFAIR COMPETITION PURSUANT TO BUSINESS & PROFESSIONS CODE § 17200**

65. Plaintiffs incorporate every allegation in this Complaint as though fully set forth herein.

66. Plaintiffs bring this claim pursuant to Business & Professions Code § 17200, et seq. The conduct of all Defendants as alleged in this Complaint has been, and continues to be, unfair, unlawful, and harmful to Plaintiffs, the general public, and the Class. Plaintiffs seek to enforce important rights affecting the public interest within the meaning of Cal. Code of Civil Procedure § 1021.5.

67. Plaintiffs are "persons" within the meaning of Business & Professions Code § 17204 and therefore have standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

68. Business & Profession Code § 17200, et seq. prohibits unlawful and unfair business practices.

69. Wage and hour laws express fundamental public policies. Paying employees the proper wages and/or overtime is a fundamental public policy of this state and of the United States. Labor Code § 90.5(a) articulates the public policies of this state to vigorously enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

employers and their employees from competitors who lower their costs by failing to comply with minimum labor standards.

70. Defendants have violated statutes, regulations and public policies. Through the conduct alleged in this Complaint, Defendants, and each of them, have acted contrary to these public policies, have violated specific provisions of the Labor Code and have engaged in other unlawful and unfair business practices in violation of Business & Profession Code § 17200, et seq., depriving Plaintiffs, all persons similarly situated, and all interested persons, of rights, benefits, and privileges guaranteed to all employees under the law.

71. Defendants' conduct, as alleged herein and above, constitutes unfair competition in violation of § 17200, et. seq., of the Business & Professions Code.

72. Defendants, by engaging in the conduct alleged, either knew or in the exercise of reasonable care should have known that the conduct was unlawful, and have violated § 17260, et. seq., of the Business & Professions Code.

73. As a proximate result of the above mentioned acts of Defendants, Plaintiffs and others similarly situated have been damaged.

74. Unless restrained by this Court, Defendants will continue to engage in the unlawful conduct as alleged above. Pursuant to the Business & Professions Code, this Court should make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment, by Defendants or their agents or employees, of any unlawful or deceptive practices prohibited by the Business & Professions Code, and/or, including, but not limited to, disgorgement of ill-gotten gain

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

which may be necessary to restore Plaintiffs and the Class Members to the money Defendants have unlawfully failed to pay.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs pray for the following relief:

1. For compensatory damages in the amount of Plaintiffs' and each Class Member's unpaid wages and unpaid overtime, from at least four (4) years prior to the filing of this action to the present as may be proven;

2. For liquidated damages pursuant to Labor Code § 1194.2(a) in an amount equal to the minimum wage compensation unlawfully unpaid from four (4) years prior to the filing of this action to the present, as may be proven;

3. For penalties pursuant to Labor Code § 203 for all Plaintiffs and Class Members who were terminated or resigned equal to their daily wage times thirty (30) days for each time they left Defendants' employ;

4. An award of prejudgment and post judgment interest;

5. An order enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them (a) from failing to pay wages for all hours worked; (b) from failing to properly reimbursing employees for expenses; and (c) from failing to pay all bonuses and minimum wages as agreed;

6. For penalties pursuant to Labor Code § 226;

7. For restitution for unfair competition pursuant to Business & Professions Code § 17200, including disgorgement or profits, in an amount as may be proven;

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

8. An award of liquidated damages under Labor Code § 1194.2(a);

9. An award providing for payment of costs of suit;

10. An award of attorneys' fees; and

11. Such other and further relief as this Court may deem proper and just.

DATED: July 16, 2009

**WASSERMAN, COMDEN & CASSELMAN, L.L.P.**

By: ______________________
GREGORY J. RAMIREZ
KATHERINE A. WINDER
JAMES PERERO
JESSICA ARCINIEGA
Attorneys for Plaintiffs and the Class

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

DATED: July 16, 2009

**WASSERMAN, COMDEN & CASSELMAN, L.L.P.**

By: ______________________
GREGORY J. RAMIREZ
KATHERINE A. WINDER
JAMES PERERO
JESSICA ARCINIEGA
Attorneys for Plaintiffs and the Class

WASSERMAN, COMDEN & CASSELMAN, L.L.P.
300 E. ESPLANADE DRIVE, SUITE 1960
OXNARD, CALIFORNIA 93036-0284

# EXHIBIT 9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

--o0o--

| | |
|---|---|
| SABAS ARREDONDO, et al., Plaintiffs, vs. DELANO FARMS COMPANY, et al., Defendants. | Case No. 1:09-cv-01247-LJO-DLB<br>Fresno, California<br>Friday, May 28, 2010<br>9:20 A.M.<br>Hearing re: plaintiff's motion to compel production of documents; defendant's motion to quash subpoena duces tecum. |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE DENNIS L. BECK
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs: GREGORY J. RAMIREZ
Wasserman Comden & Casselman
300 E. Esplaade Drive, #1960
Oxnard, CA 93030-1251
(805) 988-0285

For Defendants: MICHAEL R. JOHNSON
Griswold LaSalle Cobb Dowd & Gin
111 E. Seventh Street
Hanford, CA 93230
(559) 584-6656

Court Recorder: OTILIA FIGUEROA
U.S. District Court
2500 Tulare Street, Suite 1501
Fresno, CA 93721
(559) 499-5928

Transcription Service: Petrilla Reporting & Transcription
5002 - 61st Street
Sacramento, CA 95820
(916) 455-3887

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

MR. JOHNSON: Not with the record keeping your -- itself, Your Honor, because the way that the time sheets are kept, the way that the payroll records are done, those are the same for the individuals and so it will -- we feel that the sampling --

THE COURT: Well, my question is this. How will they know whether the other 3,600 employees fall into the same non-exempt categories, et cetera?

MR. JOHNSON: Well first of all, Your Honor, the employees would total in the tens of thousands --

THE COURT: Okay.

MR. JOHNSON: -- over the five-year --

THE COURT: Okay.

MR. JOHNSON: -- over the five-year period.

THE COURT: But which will be Mr. Ramirez's point in class certification that numerosity demands that this be a class action, but go ahead.

MR. JOHNSON: And, Your Honor, we will not be -- numerosity will not be an issue that we will be contesting with that many employees.

THE COURT: Okay. Will you not be contesting whether or not the time records indicate that they worked hours that they were uncompensated for, that they likely did based upon when they worked, where they worked, things like that?

MR. JOHNSON: Your Honor, we will be basing it upon

# EXHIBIT 10

**DECLARATION OF JAVIER ARCEO**

I, Javier Arceo, declare as follows:

1. I was an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2008. The work I did was picking grapes. Manuel Botello was my foreman. Approximately thirty people worked in my crew. I was a picker and worked in a group with one other picker and one packer. On average, I worked more than 8 hours per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. During the harvest, I was paid an hourly rate of $8.10 per hour plus a piece rate of .32 cents per box of grapes.

4. When I worked for Delano Farms and Cal-Pacific I was required to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were gloves that I bought for $2.00 a pair, picking shears that I bought for $12.00, and a sharpening file that I bought for $10.00. I was told by Manuel Botello when I started working what tools I needed to take to work. I was not provided the tools and had to purchase them.

5. During the harvest, I was required to arrive at the jobsite approximately 15 minutes before the official start time. When I arrived to the jobsite, I had to prepare my work area by doing things such as setting up the table and putting the labels on the boxes. Also, I had to attend "escuelita" which is time that our foreman talks to the entire crew

about work or reprimands certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

6. At the end of the day, when my foreman said the work day has ended, I had to continue working in order to finish my job. I understood that my foreman wrote down the hour that the work day ended, for example 3:00 p.m. I was still performing work past 3:00 p.m. because the foreman did not tell us to stop working or he told us a couple of minutes before 3:00 p.m. and I had stayed to help my co-workers finish packing boxes of grapes. I was not paid and I have never been paid for the time I spent finishing that work.

7. When I was working for Delano Farms and Cal-Pacific, I was required to show up for work even when there was fog or rain. In those circumstances, the foreman required that I wait at the jobsite until the he either decided that we would begin work or be sent home. I have never been paid for the time I am required to wait at the job-site while my foreman determined whether or not to send us into the field. When this happened, I was required to wait as long as 2 hours. This happened to me approximately two or three times during the harvest season.

8. When I was working with Delano Farms and Cal-Pacific, I was told our crew was going to move from one work location to another. I was told by Manuel Botello my foreman to meet at a certain time in the morning at a certain location to follow him to the work location. I waited approximately 30 minutes in the morning at the location my foreman told me to wait at. Once Manuel Botello arrived, I followed him to the work location for that day. Depending on the work location, I followed my foreman for 15 minutes to the site. I was not paid and have never been paid for any of this travel time. This happened during the harvest season.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed 11 - 22, 2009.

Javier Arceo

**DECLARATION OF AMELIA MAGANA**

I declare that I am fluent in the Spanish language and that I read the above declaration from English into Spanish to Javier Arceo. He indicated to me that the declaration is true and correct to the best of his knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed NOV, 22, 2009 in Lamont, California.

Amelia Magaña

Amelia Magana

DECLARATION OF JAVIER ARCEO

I, Javier Arceo, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiff' Motion for Class Certification.

2. I was an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2008. The work I did was picking grapes. Manuel Botello was my foreman. Approximately thirty people worked in my crew. I was a picker and worked in a group with one other picker and one packer. On average, I worked more than 8 hours per day, 6 days per week.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. During the harvest, I was paid an hourly rate of $8.10 per hour plus a piece rate of .32 cents per box of grapes.

5. When I worked for Delano Farms and Cal-Pacific I was required to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were gloves that I bought for $2.00 a pair, picking shears that I bought for $12.00, and a sharpening file that I bought for $10.00. I was told by Manuel Botello when I started working what tools I needed to take to work. I was not provided the tools and had to purchase them.

6. During the harvest, I was required to arrive at the jobsite approximately 15 minutes before the official start time. When I arrived to the jobsite, I had to prepare my work area by doing things such as setting up the table and putting the labels on the boxes. Also, I had to attend "escuelita" which is time that our foreman talks to the entire crew about work or reprimands certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

7. At the end of the day, when my foreman said the work day has ended, I had to continue working in order to finish my job. I understood that my foreman wrote down the hour that the work day ended, for example 3:00 p.m. I was still performing work past 3:00 p.m. because the foreman did not tell us to stop working or he told us a couple of minutes before 3:00 p.m. and I had stayed to help my co-workers finish packing boxes of grapes. I was not paid and I have never been paid for the time I spent finishing that work.

8. When I was working for Delano Farms and Cal-Pacific, I was required to show up for work even when there was fog or rain. In those circumstances, the foreman required that I wait at the jobsite until the he either decided that we would begin work or be sent home. I have never been paid for the time I am required to wait at the job-site while my foreman determined whether or not to send us into the field. When this happened, I was required to wait as long as 2 hours. This happened to me approximately two or three times during the harvest season.

9. When I was working with Delano Farms and Cal-Pacific, I was told our crew was going to move from one work location to another. I was told by Manuel Botello my foreman to meet at a certain time in the morning at a certain location to follow him to the work location. I waited approximately 30 minutes in the morning at the location my foreman told me to wait at. Once Manuel Botello arrived, I followed him to the work

location for that day. Depending on the work location, I followed my foreman for 15 minutes to the site. I was not paid and have never been paid for any of this travel time. This happened during the harvest season.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on January 24, 2011 in Lamont, California.

Javier Arceo

Declaration of Interpreter/Translator

I, Eva Vasquez-Camacho, declare that I am certified by the State of California as a Court Interpreter/Translator in good standing as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 301273, issued by the Administrative Office of the Courts.

I further declare that I read and translated the attached "Declaration of Javier Arceo," to Javier Arceo from the English to the Spanish Language and that it is a true and accurate translation of said document. He further indicated to me that his declaration is true and correct to the best of his knowledge, and signed it on January 24, 2011.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 24th day of January of 2011, in Lamont, California, County of Kern.

By: Eva Vasquez-Camacho

State Certified Court Interpreter

Certification No. 301273

# EXHIBIT 11

# DECLARATION OF RIMA ARCEO

Rima Arceo, declare as follows:

1. I was an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2008. The work I did was packing and picking. Manuel Botello was my foreman. Approximately forty people worked in my group. I was a packer and worked in a group with two pickers. On average, I worked at least 8 hours per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. During the harvest, I was paid an hourly rate of $8.10 plus a piece rate of .32 cents per box of grapes.

4. I was required to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were picking shears that I bought for $12.00, a sharpening file that I bought for $10.00, gloves that I bought for $2.00 a pair and pencil that I bought for $.50. I was told by Manuel Botello when I started working what tools I needed to take to work. I was not provided the tools and had to purchase them.

5. During the harvest, I was required to arrive at the jobsite approximately 30 minutes before the official start time. When I arrived to the jobsite, I had to prepare my work area by doing things such as setting up the table with boxes and bags. Also, I had to attend "escuelita" which is time that our foreman talks to the entire crew about work or

reprimands certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I have spent preparing for the work day and participating in the "escuelita."

6. At the end of the day, when my foreman said the work day had ended, I had to continue working in order to finish my job. I understood that my foreman wrote down the time that the work day ended, for example 3:00 p.m. I was still performing work past 3:00 p.m. because the foreman did not tell us to stop working or he told us a couple of minutes before 3:00p.m. and there was work that I was required to finish before I left work, such as finishing packing boxes of grapes. I was not paid and I have never been paid for the time I spent finishing that work.

7. I had to take home equipment that belongs to Delano Farms and Cal-Pacific everyday after work and bring it to work the following work day. I took home the scale, umbrella and approximately 7-10 trays that were used for picking. If one of these items was broken or I did not take it to work, I had to pay for them. Manuel Botello my foreman told me this.

8. My employer Delano Farms and Cal-Pacific, paid me an hourly rate and a piece rate amount for the boxes of grapes I packed. The piece rate amount is called a bonus. When I received my paycheck at the end of the week, the number of boxes I was paid for was less than the number of boxes I packed during that week. I know that the amount of boxes I was paid for was not right because I kept count of the number of boxes I packed during that week by writing them down on a piece of paper. I told my foreman that my paycheck did not have the correct number of boxes and he did not respond to me at all.

9. When I was working for Delano Farms and Cal-Pacific, I was required to show up for work even when there was fog or rain. In those circumstances, the foreman required that I wait at the jobsite until he either decided that we would begin work or be sent home. I have never been paid for the time I was required to wait at the job-site while my foreman determined whether or not to send us into the field. When that happened, I was required to wait at the job site as long as 2 hours. This happened to me approximately two times during the harvest.

10. When I was working for Delano Farms and Cal-Pacific, I was told our crew was going to move from one work location to another. I was told by Manuel Botello, my foreman to meet at a certain time in the morning, at a certain location to follow him to the work location. I waited approximately 20 minutes in the morning at the location he told us to wait for him. Once the foreman arrived, I followed him to the work location for that day. Depending on the work location, I followed my foreman for 15 to 20 minutes to the site. I was not paid and have never been paid for any of this travel time. This happened three times during the harvest season.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed 08 27, 2009.

[signature]

Rima Arceo

## DECLARATION OF AMELIA MAGANA

I declare that I am fluent in the Spanish language and that I read the above declaration from English into Spanish to Rima Arceo. She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed 08, 27, 2009 in Lamont, California.

Amelia Magaña

Amelia Magana

**DECLARATION OF RIMA ARCEO**

Rima Arceo, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I was an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2008. The work I did was packing and picking. Manuel Botello was my foreman. Approximately forty people worked in my group. I was a packer and worked in a group with two pickers. On average, I worked at least 8 hours per day, 6 days per week.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. During the harvest, I was paid an hourly rate of $8.10 plus a piece rate of .32 cents per box of grapes.

5. I was required to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were picking shears that I bought for $12.00, a sharpening file that I bought for $10.00, gloves that I bought for $2.00 a pair and pencil that I bought for $.50. I was told by Manuel Botello when I started working what tools I needed to take to work. I was not provided the tools and had to purchase them.

6. During the harvest, I was required to arrive at the jobsite approximately 30 minutes before the official start time. When I arrived to the jobsite, I had to prepare my

work area by doing things such as setting up the table with boxes and bags. Also, I had to attend "escuelita" which is time that our foreman talks to the entire crew about work or reprimands certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I have spent preparing for the work day and participating in the "escuelita."

7. At the end of the day, when my foreman said the work day had ended, I had to continue working in order to finish my job. I understood that my foreman wrote down the time that the work day ended, for example 3:00 p.m. I was still performing work past 3:00 p.m. because the foreman did not tell us to stop working or he told us a couple of minutes before 3:00p.m. and there was work that I was required to finish before I left work, such as finishing packing boxes of grapes. I was not paid and I have never been paid for the time I spent finishing that work.

8. I had to take home equipment that belongs to Delano Farms and Cal-Pacific everyday after work and bring it to work the following work day. I took home the scale, umbrella and approximately 7-10 trays that were used for picking. If one of these items was broken or I did not take it to work, I had to pay for them. Manuel Botello my foreman told me this.

9. My employer Delano Farms and Cal-Pacific, paid me an hourly rate and a piece rate amount for the boxes of grapes I packed. The piece rate amount is called a bonus. When I received my paycheck at the end of the week, the number of boxes I was paid for was less than the number of boxes I packed during that week. I know that the amount of boxes I was paid for was not right because I kept count of the number of boxes I packed during that week by writing them down on a piece of paper. I told my foreman that my paycheck did not have the correct number of boxes and he did not respond to me at all.

10. When I was working for Delano Farms and Cal-Pacific, I was required to show up for work even when there was fog or rain. In those circumstances, the foreman required that I wait at the jobsite until he either decided that we would begin work or be sent home. I have never been paid for the time I was required to wait at the job-site while my foreman determined whether or not to send us into the field. When that happened, I was required to wait at the job site as long as 2 hours. This happened to me approximately two times during the harvest.

11. When I was working for Delano Farms and Cal-Pacific, I was told our crew was going to move from one work location to another. I was told by Manuel Botello, my foreman to meet at a certain time in the morning, at a certain location to follow him to the work location. I waited approximately 20 minutes in the morning at the location he told us to wait for him. Once the foreman arrived, I followed him to the work location for that day. Depending on the work location, I followed my foreman for 15 to 20 minutes to the site. I was not paid and have never been paid for any of this travel time. This happened three times during the harvest season.

~~This statement has been read to me in Spanish and I confirm that all statements here are true.~~ RA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 24, 2011 in Lamont, California.

[signature]

Rima Arceo

Declaration of Interpreter/Translator

I, Eva Vasquez-Camacho, declare that I am certified by the State of California as a Court Interpreter/Translator in good standing as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 301273, issued by the Administrative Office of the Courts.

I further declare that I read and translated the attached "Declaration of Rima Arceo," to Rima Arceo from the English to the Spanish Language and that it is a true and accurate translation of said document. She further indicated to me that her declaration is true and correct to the best of her knowledge, and signed it on January 24, 2011.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 24th day of January of 2011, in Lamont, California, County of Kern.

By: Eva Vasquez-Camacho

State Certified Court Interpreter

Certification No. 301273

# EXHIBIT 12

# STATEMENT OF SABAS ARREDONDO

I, Sabas Arredondo, declare as follows:

1. I was an employee of Delano Farms/Cal Pacific. I started working for Delano Farms on or about 2000. The type of work I performed was picking and pruning in the fields. On average, I worked 8 hours per day, 6 days per week. On occasion, I was required to work more than eight hours per day, and was not paid any overtime.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. I was paid between $6.75 and $8.10. per hour worked. I was paid an hourly rate plus a piece rate of between 28 and 32 cents per box picked. Most of the time, I was not paid for all of the boxes I picked and turned in. I complained about this to my foreman. The foreman told me he could not do anything about it.

4. I was required to provide my own tools and equipment that I need for my job. The tools and equipment that I was required to take to my job are gloves, picking shears, pruning shears, scissors, knives, a sharpening file and holster and protective goggles. I paid to have my knife customized to fit my hand for work. My supervisor from Delano Farms and Cal Pacific instructed me what types of tools I needed to bring to work. Neither Delano Farms nor Cal Pacific ever offered to provide the tools I needed to do my job. I was told by when I started working what tools I needed to take to work. I asked the foremen and managers to give me the tools necessary for my work I was told the company did not provide them< and if I wanted to keep my job, I needed to provide my own.

5. I am required to arrive at the jobsite approximately 30 minutes before the time I am set to start work. When I get to the jobsite, I have to prepare my work area by doing things such as setting the tables, placing the labels the boxes before to attending "escuelita" which is time that our foreman talks to the entire crew about the day's work, gives us instruction or reprimands certain workers who did not meet their picking quotas. I am not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

6. I have to stay after the time the foreman says we are to stop work to finish my job. I am not paid and I have never been paid for the time I have spent finishing my work after the end of the workday.

7. When I am worked for Delano Farms/Cal Pacific, at times my break period is either made shorter or I am not given a break period because we needed to meet a quota for the number of boxes we picked. On average, I was required to skip a regular rest break four times per week.

8. When I am working for Delano Farms/Cal Pacific, I am not given my full amount of time at my lunch break or not allowed to take a lunch break because we had to meet quotas. On average, I am required to skip a lunch break three to four times per week. On average, my meal period is made shorter by forty five minutes. We were only given five to ten minutes to eat on a regular basis.

9. When I was working with Delano Farms/Cal Pacific, I have been told to wait in the morning at a certain location for our foreman so that I can follow him to the work location. On average, I would have to wait approximately 45 to 60 minutes. Once the foreman arrives, I follow him to the work location for that day. I have not been paid for any of this travel time from one work location to another.

10. I have been required to place labels on produce boxes before the work day begins. On average, this takes fifteen to thirty minutes. I am not paid and have never been paid for the time spent labeling boxes before the work day begins.

11. I have observed that Delano Farms controls the picking operations. I have seen that when a crew has not met its quota or boxes picked, managers from Delano Farms comes to the field and says that if the quota of boxes is not met, those workers would not be working the next day. I have been present when managers of Delano Farms stop the operations of a crew at approximately 11:00 a.m. because the crew was not meeting its quota.

This statement has been read and explained to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 28, 2009 in Delano, California.

Sabas Arredondo

I, Sandra Puga am fluent in English and Spanish. I have read and explained the above declaration in Spanish to the declarant.

Sandra Puga

STATEMENT OF SABAS ARREDONDO

I, Sabas Arredondo, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I was an employee of Delano Farms/Cal Pacific. I started working for Delano Farms on or about August of 2000. The type of work I performed was picking and pruning in the fields. On average, I worked 8 hours per day, 6 days per week. On occasion, I was required to work more than eight hours per day, and was not paid any overtime.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. I was paid between $6.75 and $8.10. per hour worked. I was paid an hourly rate plus a piece rate of between 28 and 32 cents per box picked. Most of the time, I was not paid for all of the boxes I picked and turned in. I complained about this to my foreman. The foreman told me he could not do anything about it.

5. I was required to provide my own tools and equipment that I need for my job. The tools and equipment that I was required to take to my job are gloves, picking shears, pruning shears, scissors, knives, a sharpening file and holster and protective goggles. I paid to have my knife customized to fit my hand for work. My supervisor from Delano Farms and Cal Pacific instructed me what types of tools I needed to bring to work. Neither Delano Farms nor Cal Pacific ever offered to provide the tools I needed to do my job. I was told by when I started working what tools I needed to take to work. I asked the foremen and managers to give me the tools necessary for my work I was told the company did not provide them< and if I wanted to keep my job, I

needed to provide my own.

6. I am required to arrive at the jobsite approximately 30 minutes before the time I am set to start work. When I get to the jobsite, I have to prepare my work area by doing things such as setting up the tables, placing the labels the boxes before to attending "escuelita" which is time that our foreman talks to the entire crew about the day's work, gives us instruction or reprimands certain workers who did not meet their picking quotas. I am not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

7. I have to stay after the time the foreman says we are to stop work to finish my job. I am not paid and I have never been paid for the time I have spent finishing my work after the end of the workday.

8. When I am worked for Delano Farms/Cal Pacific, at time my break period is either made shorter or I am not given a break period because we needed to meet a quota for the number of boxes we picked. On average, I was required to skip a regular rest break four times per week.

9. When I am working for Delano Farms/Cal Pacific, I am not given my full amount of time at my lunch break or not allowed to take a lunch break because we had to meet quotas. On average, I am required to skip a lunch break three to four times per week. On average, my meal period is made shorter by forty five minutes. We were only given five to ten minutes to eat on a regular basis.

10. When I was working with Delano Farms/Cal Pacific, I have been told to wait in the morning at a certain location for our foreman so that I can follow him to the work location. On average, I would have to wait approximately 45 to 60 minutes. Once the foreman arrives, I follow him to the work location for that day. I have not been paid for any of this travel time from one work location to another.

11. I have been required to place labels on produce boxes before the work days begins. On average, this takes fifteen to thirty minutes. I am not paid and have never been paid for the time spent labeling boxes before the work day begins.

12. I have observed that Delano Farms controls the picking operations. I have seen that when a crew has not met its quota or boxes picked, managers from Delano Farms comes to the field and says that if the quota of boxes is not met, those workers would not be working the next day. I have been present when managers of Delano Farms stop the operations of a crew at approximately 11:00 a.m. because the crew was not meeting its quota.

This statement has been read and explained to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed January 17, 2011 in Delano, California.

Sabas Arredondo

Sabas Arredondo

SANTANA, LOPEZ & ASSOCIATES, LLC
*Professional Language Interpreters*

PO Box 6269 Oxnard, CA 93031
Phone: (805) 988-8200



# Declaration of Lilia Santana

I declare that I am a certified Interpreter fluent in the Spanish and English languages, and that I have read the declaration of Sabas Arredondo from English into Spanish. He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the state of California and the laws of the United States of America that the foregoing is true and correct.

Executed January 17th, 2011 in Delano, California.

Lilia Santana

Lilia Santana, Certification # 100534

*Verification: http://jobs.spb.ca.gov/InterpreterListing/*

# EXHIBIT 13

**STATEMENT OF MARIA BANOS**

I, Maria Banos, declare as follows:

1. I am currently an employee of Delano Farms/Cal Pacific. I started working for Delano Farms/Cal Pacific in or about 2007. The type of work I performed was picking grapes and I also worked in the cooler packing grapes. On average, my workday was supposed to be eight hours per day, six days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. I was paid approximately $ 8.10 per hour worked. I was paid an hourly rate plus a piece rate of 32 cents per box..

4. I was required to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job are cotton gloves, picking shears, pruning shears, a sharpening file and holster and protective goggles. I was told by the foreman when I started working what tools I needed to take to work. I was told by the foreman, Jesus Cendejas, that if I didn't provide my own tools not to bother coming to work.

5. I have been required to arrive at the jobsite approximately 15-30 minutes before the time I am set to start work. When I get to the jobsite, I have to prepare my work area by doing things such as preparing the tables and boxes for the day, and preparing bags for the day. Also, I was required to attend "escuelita" which is time that our foreman talks to the entire crew about the day's work, gives us instructions, or reprimands certain workers who did not meet their picking quotas

the previous day. I am not paid and I have never been paid for the time I have spent preparing for the work day and participating in the "escuelita."

6. I would have to stay after the time the foreman says we were to stop working, on average, two days a week. I am not paid and I have never been paid for the time I was required to stay after the work day had ended.

7. My employer Delano Farms/Cal Pacific pays me an hourly rate and a piece rate amount for each box of grapes I pick. The piece rate amount is called a bonus. When I receive my paycheck at the end of the week, the amount I am paid for the bonus was less than the number of boxes I picked during that week. I know that the amount of boxes I am being paid for was not right because I kept a written record of the number of boxes I picked. I have told my foreman that my paycheck did not have the correct number of boxes and he told me to complain at the office. To date, I have never been paid for those boxes that picked.

8. When I have been working for Delano Farms/Cal Pacific, on many occasions we were pressured not to take break periods because if we didn't meet our daily quotas we would be fired. On average, I was pressured to skip regular rest breaks two times per week. On average, my breaks were shorter than the time period of ten minutes by five minutes.

9. When I was working for Delano Farms/Cal Pacific, I was not given my full amount of time for my lunch break or not allowed to take a lunch break because we had to make our quotas. On average, I was required to skip a lunch break two times per week. On average, my meal period is made shorter by fifteen to thirty minutes.

11. When I am working with Delano Farms/Cal Pacific , I have been told our crew is going to move from one work location to another. If our crew makes the change of location during the day, we are not paid for the time we spend in changing to the new location. I have been told to wait in the morning at a certain location for our foreman so that I can follow him to the work location. I have waited approximately thirty minutes. Once the foreman arrives, I follow him to the work location for that day]. I have not been paid for any of this travel time from one work location to another.

12. I have been required to place labels on produce boxes during my lunch breaks. On average, this takes fifteen minutes. I am not paid and have never been paid for the time spent labeling boxes during my lunch period.

This statement has been read and explained to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 28, 2009 in Delano, California.

Maria Baños

I, Sandra Puga am fluent in English and Spanish. I have read and explained the above declaration in Spanish to the declarant.

Sandra Puga

STATEMENT OF MARIA BANOS

I, Maria Banos, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I am currently an employee of Delano Farms/Cal Pacific. I started working for Delano Farms/Cal Pacific in or about 2007. The type of work I performed was picking grapes and I also worked in the cooler packing grapes. On average, my workday was supposed to be eight hours per day, six days per week.

3. The facts set for the herein are true of my own personal knowledge, and if called upon testify, I could and would competently do so under oath.

4. I was paid approximately $8.10 per hour worked, I was paid an hourly rate plus a piece rate of 32 cents per box.

5. I was required to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job are cotton gloves, picking shears, pruning shears, a sharpening file and holster and protective goggles. I was told by the foreman when I started working what tools I needed to take to work. I was told by the foreman, Jesus Cendejas, if I didn't provide my own tools not to bother coming to work.

5. I have been required to arrive at the jobsite approximately 15-30 minutes before the time I am set to start work. When I get to the jobsite, I have to prepare my work area by doing things such as preparing the tables and boxes for the day, and preparing bags for the day. Also, I was required to attend "escuelita" which is time that our foreman talks to the entire crew about the

day's work, gives us instructions, or reprimands certain workers who did not meet their picking quota the previously day. I am not paid and I have never been paid for the times I have spent preparing for the work day and participating in the "escuelita".

7. I would have to stay after the time the foreman says we were to stop working, on average, two days a week. I am not paid and I have never been paid for the time I was required to stay after the work day had ended.

8. My employer Delano Farms/Cal Pacific pays me an hourly rate and a piece rate amount for each box of grapes I pick. The piece rate amount is called a bonus. When I receive my paycheck at the end of the week, the amount I am paid for the bonus was less that the number of boxes I picked during that week. I know that the amount of boxes I am being paid for was not right because I kept a written record of the number of boxes I picked. I have told my foreman that my paycheck did not have the correct number of boxes and he told me to complain at the office. to date, I have never been paid for those boxes that picked.

9. When I have been working for Delano Farms/Cal Pacific, on many occasions we were pressured no to take break periods because is we didn't meet our daily quotas we would be fired. On average, I was pressured to skip regular rest breaks two times per week. On average, my breaks were shorter that the time period of ten minutes by five minutes.

10. When I was working for Delano Farms/Cal Pacific, I was not given my full amount of time for my lunch break or not allowed to take a lunch break because we had to make our quotas. On average, I was required to skip a lunch break two times per week. On average, my meal period is made shorter by fifteen to thirty minutes.

11. When I was working with Delano Farms/cal Pacific, I have been told our crew is going to move from one work location to another. I our crew makes the change of location during

the day, we are not paid for the time we spend in changing to the new location. I have been told to wait in the morning at a certain location for our foreman so that I can follow him to the work location. I have waited approximately thirty minutes. Once the foreman arrives, I follow him to the work location for the day. I have not been paid fro any of this travel time form one work location to another.

12. I have been required to place labels on produce boxes during my lunch breaks. In average, this takes fifteen. I am not paid an have not been paid for the time spent labeling boxes during my lunch period.

This statement has been read and explained to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the Unites States of America that the foregoing is true and correct.

Executed January 17, 2011 in Delano, California.

Maria Baños

Maria Banos

SANTANA, LOPEZ & ASSOCIATES, LLC
*Professional Language Interpreters*

PO Box 6269 Oxnard, CA 93031
Phone: (805) 988-8200



# Declaration of Lilia Santana

I declare that I am a certified Interpreter fluent in the Spanish and English languages, and that I have read the declaration of Maria Baños from English into Spanish. He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the state of California and the laws of the United States of America that the foregoing is true and correct.

Executed January 17th, 2011 in Delano, California.

Lilia Santana

Lilia Santana, Certification # 100534

*Verification: http://jobs.spb.ca.gov/InterpreterListing/*

# EXHIBIT 14

**Statement of Jose G. Barajas**

I, Jose G. Barajas, declare as follows:

1. I, Jose G. Barajas, have been an employee of Delano Farms/Cal Pacific, and I expect to be recalled for the 2009 harvest. I started working for Delano Farms/Cal Pacific on or about the summer of 2005. My job classifications have included packing house work (labeling, pusher, packer), de-leafing, tying, pruning, and picking in the fields. The type of work I most recently performed is pre-harvest field and picking. I worked in 2008 harvest in foreman Miguel Sotelo's crew (#16). On average, I worked 8 to 9 hours, plus, per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. I was paid about $8.10 per hour. During the harvest, in addition to my hourly rate of pay, I was paid a bonus based on the number of boxes produced by the table (a team of three workers) on a daily basis.

4. I was required to provide my own tools and equipment that I need for my job. The tools and equipment that I was required to take to my job are picking shears ($8.00 to $10.00 each), pruning shears ($15.00 to $20.00 each), diamond files ($7.00 to $10.00 each), and holster ($3.00 to $5.00 each). I was told by the foreman when I started working what tools I needed to do the work. I knew from childhood that these tools were required at the workers expense and I paid for my own. Sometimes the foreman would provide workers with tools, but too often we would

be docked pay so that most of the workers bought and brought their own. A new set of these tools would be required every two or three years for pickers.

5. In the 2008 harvest we in the crew daily arrived at the field (jobsite) approximately 15-30 minutes before the time officially scheduled to start work by direction of the foreman. We were not paid for this time. When we arrived at the field early as directed by the foreman we had to prepare our work areas by doing things such as: pulling out the table from the row, opening its flaps, and setting up the bags and packing equipment; bringing the wheelbarrow from the foreman's trailer in the parking area into the rows near the table; bringing the picking containers and umbrella from our own cars to the table; placing labels on fancy shells for packing; and, fetching and stacking the fancy packing shells from the pallets to the table area. This was pre-shift work for which we were not paid.

6. In the 2008 harvest we in the crew often had stay at the field (jobsite) approximately 5 to 10 minutes after the officially scheduled stop time to: pre-stack the grapes for the packers to take; clean the work area; close the table flaps and place the table back in the row. We were not paid for that time.

7. In the 2008 harvest it took about three days to a week for our crew to do a block. When the crew had to move the operation to a different block, we would have to come in even earlier, depending on how far away the new block was. We were sited by the foreman at a half-way location (e.g. a well known intersection) and then to caravan by car to the new location. That could take from 10 to 30 minutes, which again, was pre-shift and not paid time.

8. In years past we in the crew would have to perform maintenance and/or cleaning of picking containers and the table umbrellas that belong to the employer Delano Farms/Cal Pacific outside of our regular working hours. On average, we would take 15 to 30 minutes of our own time cleaning the picking containers at

home every third day of use. We would purchase our own soap and scrubber brush to accomplish the cleaning (about $30.00 a season). The table umbrella did not require maintenance but we had to take it home every night because if it became lost or stolen we would be docked pay for the cost of umbrella. We were not paid for this time. This practice was in place in my crew in 2005 and 2006. A change took place in 2007 when the employer would have a worker come by wash our picking containers every week or so. After that change we were still required to take them home and bring them in daily.

8. When I was working for Delano Farms/Cal Pacific our break periods were as follows for all shifts during pre-harvest and harvest work: 10 minutes in the morning at about 9 a.m.; 20 minutes at noon; and, another 10 minutes at about 2:00 p.m. The foreman would sound his truck horn to indicate the starting and stopping time for all breaks.

9. Delano Farms trucks and supervisors come through the harvest often and checked our production and quality at the tables, and are often present when school was given regarding productivity or quality problems. The grapes we harvested go to the Delano Farms (Four Star) cold storage house, and I worked there for a time.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed March 28, 2009, in Delano, California.

X Jose G. Barajas

Jose G. Barajas

STATEMENT OF JOSE G. BARAJAS

I, Jose G. Barajas declare as follows:

1. I, Jose G. Barajas. have been an employee of Delano Farms/Cal Pacific, and I expect to be recalled for the 2009 harvest. I started working for Delano Farms/Cal Pacific on or about the summer of 2005. My job classifications have included packing house work ( labeling, pusher, packer), de-leafing, tying, pruning, and picking in the fields. The type of work I most recently performed is pre-harvest field and picking. I worked in 2008 harvest in foreman Miguel Sotelo's crew (#16). On average, I worked 8 to 9 hours, plus, per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. During the pre-harvest work, I am/was paid $8.10 per hour. During the harvest, in addition to my hourly rate of pay, I was paid bonus based on the number of boxes produced by the table ( a team of three workers) on a daily basis.

4. I was required to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job are picking shears ($8.00 to $10.00 each), pruning shears ($15.00 to $20.00 each), diamond files ($7.00 to $10.00 each), and holster ($3.00 to $5.00 each). I was told by the foreman when I started working what tools I needed to do the work. I knew from childhood that these tools were required at the worker's expense and I paid for own. Sometimes the foreman would provide workers with tools, but to often we would be docked pay so that most of the workers bought and brought their own. A new set of these tools would be required every two to three years for pickers.

5. In the 2008 we in the crew arrived at the field (jobsite) approximately 15-30 minutes before the time officially scheduled to start work by direction of the foreman. We were not paid for this time. When we arrived at the field early as directed by foreman we had to prepare our work area by doing things such as: pulling out the table from the row, opening its flaps, and setting up the bags and packing equipment, brining the wheelbarrow from the foreman's trailer in the parking area into the rows near the table, brining the picking containers and umbrella from our own cars to the table, placing labels on fancy shells for packing, and fetching and stacking the fancy packing shells from the pallets to the table area. The was pre-shift for which we were not paid.

6. In 2008 the harvest we in the crew often had to stay at the field (jobsite) approximately 5 to 10 minutes after the officially scheduled stop time to: pre-stack the grapes for the packers to take, clean work area, close the table flaps and place the table back in the row. We were not paid for that time.

7. In 2008 harvest it took about three days for our crew to do a block, When the crew had to move the operation to a different block, we would have to come in even earlier, depending on how far away the new block was. We were sited by the foreman at a half-way location (e.g a well known intersection) and then to carvan by to the new location. That would take from 10 to 30 minutes, which again, was pre-shift and not paid time.

8. In years past we the crew would have to perform maintenance and/or cleaning of picking containers and the table umbrellas that belong to the employer Dealno Farms/Cal Pacific outside of our regular working hours. On average, we would take 15 to 30 minutes of own time cleaning the picking containers at home every third use. We would purchase our own soaps and scrubber brush top accomplish the cleaning (about $30.00 a season). The table umbrella did not require maintenance but we had to take it

every night because if it became lost or stolen we would be docked pay the cost of the umbrella. We were not paid for this time. This practice was in place in my crew in 2005 and 2006. A change took place in 2007 when the employer would have a worker come by wash out picking container every week or so. After that change we were required to take them home and bring them daily.

9. When I am working for Delano Farms/cal Pacific our break periods were as follows for all shifts during pre-harvest and harvest: 10 minutes in the morning at about 9:00 am, 20 minutes at noon, and another 10 minutes at about 2:00 pm. The foreman would sound his truck horn to indicate the starting and stopping time for all breaks.

10. Delano Farms trucks and supervisors come through the harvest often checked our production and quality at the tables, and are often present when school was given regarding productivity or quality problems. The grapes we harvested go to the Delano Farms ( Four Star) cold storage house, and I worked there for a time

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed January 19, 2011.

Jose G. Baraias

# Declaration of Interpreter/Translator

I, Eva Vasquez-Camacho, declare that I am certified by the State of California as a Court Interpreter/Translator in good standing, as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 301273, issued by the Administrative Office of the Courts.

I further declare that I have read and interpreted the attached document from the English to the Spanish Language to Jose G. Barajas, and that it is a true and accurate translation of his "Statement of Jose G. Barajas" signed on January 19, 2011 in Delano, California. He indicated to me that his declaration is true and correct to the best of his knowledge.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 19th day of January of 2011 in Delano, California, County Kern.

By: Eva Vasquez-Camacho

State Certified Court Interpreter/Translator

Certification No. 301273

# EXHIBIT 15

# DECLARATION OF JOSE GUADALUPE BARAJAS.

I, Jose Guadalupe Barajas, do hereby declare as follows:

1. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2. I am currently an employee of Delano Farms/Cal Pacific Management, P.C. I have been employed by Delano Farms/Cal Pacific Management, P.C. since April 2005. My job is pruning, tending the vines, and picking the grapes. On average, I work 8 hours per day, 6 days per week. My foreman is Miguel Sotello.

3. As a condition of my employment, I am required to pay for and provide my own tools and equipment. The tools and equipment that I am required to provide, their cost, and how often they must be replaced are as follows:

| Tool | Cost | Frequency of replacement |
|---|---|---|
| Clippers | $8.00 | Once per month (July through October) |
| Pruning shears | $45.00 (new)<br><br>$15.00 replacement (top) | Once per year<br><br>Twice per year |
| Gloves | $8.00/dozen | Once for the whole season |

4. As a condition of my employment, I am required to participate in a training program prior to the start of my workday. This training program lasts, on

average, 10 to 15 minutes. I do not receive, nor have I ever received, compensation for the time I spend in this mandatory training program.

5. As a condition of my employment, I am required to work during lunch breaks. On average, I am required to spend 10 minutes working during my lunch break each day. On average, this occurs 6 days per week. This occurs during the picking season.

6. As a condition of my employment, I have been required to set up tables before the work day begins. On average, this task takes 10 minutes. I do no receive, nor have I ever received, compensation for time spent labeling boxes before the work day begins.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Delano, CA on March 28, 2009.

Jose Gpe. Barajas

I, James Perero am proficient in the Spanish language. I read the above declaration to Jose Guadalupe Barajas in Spanish and have confirmed that Jose Guadalupe Barajas understands the contents of the declaration. 3/28/09 at Delano, CA

James E. Perero

JAMES E. PERERO

# DECLARATION OF JOSE GUADALUPE BARAJAS

I, Jose Guadalupe Barajas, do hereby declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. I am currently and employee of Delano Farms/Cal Pacific Management P.C. I have been employed by Delano Farms/Cal Pacific Management, P.C. since April 2005. My job is pruning, tending the vines, and picking the grapes. On average, I work 8 hours per day, 6 days per week. My foreman is Miguel Sotello.

4. As a condition of my employment, I am required to pay for and provide my own tools and equipment. The tools and equipment that I am required to provide, their cost, and how often they must be replaced are as follows:

| Tool | Cost | Frequency of replacement |
|---|---|---|
| Clippers | $8.00 | Once per month (July through October) |
| Pruning shears | $45.00 (new) | Once per year |

| | | |
|---|---|---|
| | $15.00 replacement (top) | Twice per year |
| Gloves | $8.00/dozen | Once for the whole season |

5. As a condition of my employment, I am required to participate in a training program prior to the start of my workday. This training program lasts, on average, 10 to 15 minutes. I do not receive, nor have I ever received, compensation for the time I spend in this mandatory training program.

6. As a condition of my employment, I am required to work during lunch breaks. On average, I am required to spend 10 minutes working my lunch break each day. On average, this occurs 6 days per week. this occurs during the picking season.

7. As a condition of my employment, I have been required to set up tables before the work day begins. On average, this task takes 10 minutes. I do not receive, nor have I ever received, compensation for time spend labeling boxes before the work day begins.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 27, 2011 in Delano, California.

Jose G. Barajas
Jose Guadalupe Barajas

Declaration of Interpreter/Translator

I, Armando Espinosa Jr., declare that I am certified by the State of California as a Court Interpreter/Translator in good standing as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 300804, issued by the Administrative Office of the Courts.

I further declare that I read and translated the attached "DECLARTIO OF JOSE GUADALUPE BARAJAS," to Mr. Jose Guadalupe Barajas from the English to the Spanish Language and that it is a true and accurate translation of said document. He further indicated to me that his declaration is true and correct to the best of his knowledge, and signed it on January 27, 2011.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 24th day of January of 2011, in Delano, California, County of Kern.

By: Armando Espinosa, Jr.

State Certified Court Interpreter

Certification No. 300804

# EXHIBIT 16

**STATEMENT OF BARTOLO CASTILLO CALDERON**

I, Bartolo Castillo Calderon, declare as follows:

1. I am currently an employee of Cal Pacific. I started working for Cal Pacific on or about June 2007 to the present. My job classification is picker. I do work year round for the company. The type of work I perform is pruning, debudding, deleafing, tipping and picking. I work in Amadeo Pañeagua's crew. On average, I work 8 hours per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. I am paid $8.10 per hour worked plus a piece rate of .32 cents and/or .15 cents per box packed.

4. I am required to provide my own tools and equipment that I need for my job. The tools and equipment that I am required to take to my job are gloves, picking shears, pruning shears, knife ring, a sharpening file and holster. I was told by the foreman Amadeo when I started working what tools I needed to take to work. At times we are given equipment that breaks easily and when I ask for it to be replaced, I am told to go purchase what I need.

5. I am required to arrive at the jobsite approximately 15-20 minutes before the time I am set to start work. When I get to the jobsite, I have to prepare my work area by doing things such as move my material such as bags and "conchas", bring my "carratilla", bring boxes, put stickers on the boxes and place my bandejas along the row. Also, I have to attend "escuelita" which is time that our

foreman talks to the entire crew about the day's work, gives us instruction or reprimands certain workers who did not meet their picking quotas. I am not paid and I have never been paid for the time I spend preparing for the work day and participating in the "escuelita."

6. I have to stay after the time the foreman says we are to stop work to finish my job. My foreman writes down the hour that we finish working. I have stayed up to 30 minutes past the official end time. We are not allowed to leave at the end of the day until all the grapes picked are packed. The foreman tells us a couple of minutes before the official end time and I have stayed to finish packing boxes of grapes. I am not paid and I have never been paid for the time I spend finishing my work.

7. I have to perform maintenance on my work equipment outside of my regular working hours. On average, I spend 40 minutes maintaining each week. I am not paid and I have never been paid for the time I spend maintaining work-related equipment.

8. My employer Cal Pacific, pays me an hourly rate and a piece rate amount for each box of grapes I pick. The piece rate amount is called a bonus. When I receive my paycheck at the end of the week, the amount I am paid for the bonus is less than the number of boxes I picked during that week. I have told my foreman that my paycheck did not have the correct number of boxes and he told me that it isn't his fault or that he will tell the office but it never gets resolved. I have heard others ask the foreman why they were not paid for the amount of boxes they picked and he says he doesn't know.

9. When I am working with Cal Pacific, I have been told to wait in the morning at a certain location for our foreman so that I can follow him to the work location. I have waited approximately 15 minutes. Once the foreman arrives, I follow him to the work location for that day. I have not been paid for any of this travel time from one work location to another.

12. I have been required to place labels on produce boxes before the work day begins and during my lunch break. On average, this takes 20 minutes. I am not paid and have never been paid for the time spent labeling boxes before the work day begins or during my lunch break.

13. I believe Delano Farms and Cal Pacific are the same company because although the checks say Cal Pacific the company office says Delano Farms. All the workers know the company as Delano Farms.

This statement has been read and to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 28, 2009 in Delano, California.

BARTOLO

Bartolo Castillo Calderon

Declaration of Bonita Villalobos-Rivera

I declare that I am fluent in the Spanish language and that I translated the above declaration from English into Spanish to Bartolo Castillo Calderon and he indicated that it was correct to the best of his knowledge. I declare under penalty of perjury that the above is true and correct. Executed on March 28, 2009 in Delano, California.

Bonita Villalobos-Rivera

# DECLARATION OF BARTOLO CASTILLO CALDERON

I, Bartolo Castillo Calderon, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I am currently an employee of Cal-Pacific. I started working for Cal-Pacific on or about June 2007 to the present. My job classification is a picker. I do work year round for the company. The type of work perform is pruning, debudding, deleafing, tipping and picking. I work in Amadeo Pañeagua's crew. On average, I work 8 hors per day, 6 days per week.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. I am paid $8.10 per hour worked plus apiece rate of .32 cents and/or .15 cents per box packed.

5. I am required to provide my own tools and equipment that I need for my job. The tools and equipment that I am required to take to my job are gloves, picking shears, pruning shears, knife ring, a sharpening file and holster. I was told by foreman Amadeo when I a started working what tools I needed to take to work. At times we were given equipment that breaks easily and when I ask it to be replaces, I am to ld to go purchase what I need.

6. I am required to arrive at the jobsite approximately 15-20 minutes before the time I am set to start work. When I get to the jobsite, I have to prepare my work area by

doing things such as move my material such as bags and "conchas", bring my "carratilla", bring boxes, put stickers on the boxes and place my bandejas along the row. Also, I have to attend "escuelita" which is time that our foreman talks to the entire crew about the day's work or gives us instruction or reprimands certain workers who did not meet their picking quotas. I am not paid and I have never been paid for the time I spend preparing for the work day and participating in the "escuelita".

7. I have to stay after the time the foreman says we are to stop work to finish my job. My foreman writes down the hour that we finish working. I have stayed up to 30 minutes past the official end time. We are not allowed to leave at the end of the day until all the grapes picked are packed. The foreman tells us a couple of minutes before the official en time and I have stayed to finish packing boxes of grapes. I am not paid and I have never been paid for the time I spend finishing my work.

8. I have to perform maintenance on my work equipment outside of my regular working hours. On average, I spend 40 minutes maintaining each week. I am not paid and I have never been paid for the time I spend maintaining work-related equipment.

9. My employer Cal Pacific, pays me an hourly rate and a piece rate amount for each box of grapes I pick. The piece rate amount is called a bonus. When I receive my paycheck at the end of the week, the amount I am paid for the bonus is less that the number of boxes I picked during the week. I have told my foreman that my paycheck did not have the correct number of boxes and he told me that is isn't his fault or that he will tell me the office but it never gets resolved. I have heard others ask the foreman why they were not paid for the amount of boxes they picked and he days he doesn't know.

10. When I am working with Cal Pacific, I have been told to wait in the morning at a certain location for our foreman so that I can follow him to the work location. I have

waited approximately 15 minutes. Once the foreman arrives, I follow him to the work location for that day. I have not been paid for any of this travel time from one work location to another.

11. I have been required to place labels on produce boxes before the work day begins and during my lunch break. On average , this takes 20 minutes. I am not paid and have never been paid for the time spend labeling boxes before the work day begins or during my lunch break.

12. I believe Delano Farms and Cal-Pacific are the same company because although the checks say Cal Pacific the company office says Delano Farms. All the workers know the company as Delano Farms.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 19, 2011 in Delano, California.

BARtolo Castillo-calderon
Bartolo Castillo Calderon

Declaration of Interpreter/Translator

I, Eva Vasquez-Camacho, declare that I am certified by the State of California as a Court Interpreter/Translator in good standing, as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 301273, issued by the Administrative Office of the Courts.

I further declare that I have read and interpreted the attached document from the English to the Spanish Language to Bartolo Castillo Calderon, and that it is a true and accurate translation of his "Declaration of Bartolo Castillo Calderon" signed on January 19, 2011 in Delano, California. He indicated to me that his declaration is true and correct to the best of his knowledge.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 19th day of January of 2011 in Delano, California, County Kern.

By: Eva Vasquez-Camacho

State Certified Court Interpreter/Translator

Certification No. 301273

# EXHIBIT 17

# DECLARATION OF GLADYS CASTAÑEDA

I, Gladys Castañeda, declare as follows:

1. I am currently an employee of Delano Farms and T&R Banji, formerly named Cal-Pacific. I started working for Delano Farms and Cal-Pacific on or about May of 2004. The work I do is debudding, deleafing, picking and packing in the cold storage. I worked in Javier Garcia's crew from 2005 to 2008; I started working in Josefina Garcia's crew (crew #55) this year. There are approximately 35 workers in our crew during the pre-harvest and 60 workers during the harvest. I am a packer and work in a group with two pickers. On average, I work 8 hours per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. During the pre-harvest work, I am paid $ 8.10 per hour. During the harvest, I am paid an hourly rate plus a piece rate of $0.32 per box of grapes.

4. I am required to provide my own tools and equipment that I need for my job. The tools and equipment that I am required to take to my job are gloves that I buy for $7.00 for a pack of 6 pairs which last 3 weeks, picking shears which I buy for $10.00 to $12.00 and buy 2 per season, and a holster which I buy for $5.00 to $6.00 and lasts several seasons. The company usually does not provide tools, the foreman has on occasion provided shears but they are unusable and do not allow us to do our work effectively.

5. During the pre-harvest work, I am required to arrive at the jobsite approximately 15 minutes before the official start time. I have to attend "escuelita" which is time that our foreman talks to the entire crew about the day's work, gives us instruction

and talks about work safety. During the pre-harvest work, this happens approximately 6 times per week. I am not paid and I have never been paid for the time I spend participating in the "escuelita."

6. During the harvest, I am required to arrive at the jobsite approximately 15-20 minutes before the official start time. When I get to the jobsite, I have to prepare my work area by doing things such as pulling the table out from inside the rows, opening the table, gathering materials such as boxes, labels, shells and saline liners, and I have to mark the boxes with the name of the grape variety. Also, I have to attend "escuelita" which is time that our foreman or sometimes the supervisors named Jason and Humberto talk to the entire crew about the grape quality that they require, set the quotas, and push us to compete with other crews in regard to how many boxes we complete. I am not paid and I have never been paid for the time I spend preparing for the work day and participating in the "escuelita."

7. When I am working for Delano Farms and T&R Banji during the harvest, I have seen approximately 5 to 6 workers almost daily, working during their 10 minute break because they are trying to meet production.

8. When I am working for Delano Farms and T&R Banji, I am required to show up for work even when it rains. In these circumstances, the foreman requires that I wait at the jobsite until the he or she either decides that we will begin work or be sent home. I have never been paid for the time I am required to wait at the job-site while my foreman determines whether or not to send us into the field. When this happens, I have been required to wait as long as 120 minutes. This has happened to me approximately 2 times this year. This happens approximately 5 times a year.

9. When I am working for Delano Farms and Cal-Pacific, I am not allowed to leave the worksite during the 30 minute break.

10. When I am working with Delano Farms and Cal-Pacific, I have been told our crew is going to move from one work location to another. I have been told by the foreman to meet at a certain time in the morning at a certain location to follow my foreman to the work location. I have waited approximately 20 minutes in the morning. Once the foreman arrives, I follow him to the work location for that day. I have followed my foreman for approximately 5 minutes to the site. This happens approximately once a week. I am not paid and have never been paid for any of this wait and travel time.

11. For the duration of the harvest in 2007 I worked in the cold storage packing grapes labeled for Delano Farms and Four Star Fruit. When I worked in the cold storage I worked under the supervision of my foreman Javier Garcia and he reports to Jason (last name unknown to me).

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed JUNE 10, 2009.

Gladys Castañeda

Gladys Castañeda

# DECLARATION OF ERIKA OROPEZA

I declare that I am fluent in the Spanish language and that I read the above declaration from English into Spanish to Gladys Castañeda. She indicated to me that the declaration is true and correct to the best of her knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed JUNE 10, 2009 in Delano, California.

Erika Oropeza

# DECLARATION OF GLADYS CASTANEDA

I, Gladys Castañeda, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I am currently an employee of Delano Farms and T&R Banji, formerly named Cal-Pacific. I started working for Delano Farms and Cal-Pacific on or about May of 2004. The work I do is debudding, deleafing, picking and packing in cold storage. I worked in Javier Garcia's crew from 2005 to 2008; I started working in Josefina Garcia's crew (crew #55) this year. There are approximately 35 workers in our crew during the pre-harvest and 60 workers during the harvest. I am a packer and work in a group with two pickers. On average, I work 8 hours per day, 6 days per week.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. During the pre-harvest work, I am paid $8.10 per hour. During the harvest, I am paid an hourly rate plus a piece rate of $0.32 cents per box of grapes.

5. I am required to provide my own tools and equipment that I need for my job. The tools and equipment that I am required to take to my job are gloves that I buy for $7.00 for a pack of 6 Pairs which last 3 weeks, picking shears which I buy for $10.00 to $12.00 and buy 2 per season and holster which I buy for $5.00 to $6.00 and lasts several seasons. The company usually does not provide tools, the foreman has on occasion provided shears but they are unusable and do not allow us to do our work effectively.

6. During the pre-harvest work, I am required to arrive at the jobsite

approximately 15 minutes before the official start time. I have to attend "escuelita" which is time that our foreman talks to the entire crew about the day's work, gives us instruction and talks about work safety. During the pre-harvest work, this happens approximately 6 times per week. I am not paid and I have never been paid for the time I spend participating in the "escuelita."

7. During the harvest, I am required to arrive at the jobsite approximately 15-20 minutes before the official start time. When I get to the jobsite, I have to prepare my work area by doing things such as pulling the table out from inside the rows, opening the table, gathering materials such as boxes, labels, shells and saline liners, and I have to mark the boxes with the name of the grape variety. Also, I have to attend "escuelita" which is time that our foreman or sometimes the supervisors named Jason and Humberto talk to the entire crew about the grape quality that they require, set the quotas, and push us to compete with other crews in regard to how may boxes we complete. I am not paid and I have never been paid for the time I spend preparing for the work day and participating in the "escuelita."

8. When I am working for Delano Farms and T&R Banji during the harvest, I have seen approximately 5 to 6 workers almost daily, working during their 10 minutes break because they are trying to meet production.

9. When I am working for Delano Farms and T&R Banji, I am required to show up for work even when it rains. In these circumstances, the foreman requires that I wait at the jobsite until he or she either decides that we will begin work or be sent home. I have never been paid for the time I am required to wait at the job-site while my foreman determines whether or not to send us into the field. When this happens, I have been required to wait as long as 120 minutes. This has happened to me approximately 2 times this year. This happens approximately 5 times a year.

10. When I am working for Delano Farms and Cal-Pacific, I am not allowed to leave the worksite during the 30 minute break.

11. When I am working for Delano Farms and Cal-Pacific, I have been told our crew is going to move form one work location to another. I have been told by the foreman to meet at a certain time in the morning at a certain location to follow my foreman to the work location. I have waited approximately 20 minutes in the morning. Once the foreman arrives, I follow him to the work location for that day. I have followed my foreman for approximately 5 minutes to the site. This happens approximately once a week. I am not paid and have never been paid for any of this wait and travel time.

12. For the duration of the harvest in 2007 I worked in the cold storage packing grapes labeled for Delano Farms and Four Star Fruit. When I worked in the cold storage I worked under the supervision of my foreman Javier Garcia and he reports to Jason (last name unknown to me).

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed January 24, 2011 in Delano California.

Gladys Castañeda

Gladvs Castañeda

Declaration of Interpreter/Translator

I, Armando Espinosa Jr., declare that I am certified by the State of California as a Court Interpreter/Translator in good standing as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 300804, issued by the Administrative Office of the Courts.

I further declare that I read and translated the attached " "Declaration of Gladys Castañeda," to Ms.Gladys Castañeda from the English to the Spanish Language and that it is a true and accurate translation of said document. She further indicated to me that her declaration is true and correct to the best of her knowledge, and signed it on January 24, 2011.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 24th day of January of 2011, in Delano, California, County of Kern.

By: Armando Espinosa, Jr.

[signature]

State Certified Court Interpreter

Certification No. 300804

# EXHIBIT 18

**STATEMENT OF MAGDALENO CASTANEDA**

I, Magdaleno Castaneda, declare as follows:

1. I am an employee of Delano Farms and Cal Pacific. I started working for Delano Farms and Cal Pacific Management in or about 2005. My job classification is picker. The type of work I perform is harvesting grapes and other tasks related to that. I work in Florentino Navalta's crew. On average, I work from 8 to 9 hours per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. I am paid an hourly rate. During the picking season, I am paid an hourly rate plus a piece rate per box of grapes picked.

4. I am required to provide my own tools and equipment that I need for my job. During the pruning and picking work, the foreman has told us he has shears for us to use. One time I tried to use the shears that the foreman had. The shears were very cheaply made and not in good condition. When I tried to use them they did not function properly. I have to take my own shears in order to do my job.

5. When I have been required to perform the work of training the vines, the foreman has held up a shear that is used for that job. I have heard him tell me and others that we have to take that type of shear the following day and if we don't have that shear and don't take it, we are not to go to work. I have had to buy those shears. I have also bought a larger pair of shears to cut the tops of the vines. I only used that shear a couple of times. Now, a tractor with a machine designed for that

purpose cuts the top of the vines. Other tools and equipment that I am required to take to my job are gloves, picking shears, pruning shears, a sharpening file and holster. I have not been provided these tools and have had to purchase them.

6. I am required to arrive at the jobsite approximately 15 to 30 minutes before the time I am set to start work. The foreman has told me that I have to be at the worksite 30 minutes before the hour to start. During the picking season, when I get to the jobsite, I have had to do preparation work, for example placing stickers on plastic bags. I am not paid and I have never been paid for the time I have spent doing that. Everyday before the work day starts I have to attend "escuelita" which is time that our foreman talks to the entire crew about the production from the prior day. He tells us which groups of people he thinks are lazy because their production is slow. He tells us to improve our production. I am not paid and I have never been paid for the time I have had to spend participating in the "escuelita." On occasions I have arrived a couple of minutes before the work day was to start at 7 a.m. The foreman told me that I was late because I did not arrive the fifteen minutes early to participate in the “escuelita.” He told me that I had to arrive early to participate in the escuelita.

7. I have had to stay after the time the foreman says we are to stop work to finish my job. From what I understand the foreman is to advise our crew about fifteen minutes before the work day is going to end. He is supposed to do this in order to give us enough time to finish our last boxes of picking grapes. There are times when he does not advise us. The foreman writes down the time that the work day ends. For example, the time for that day could be 3:00 p.m. or 3:30 p.m. The foreman has seen me working after 3 p.m. and he does not write down the actual time I finish my work. I am not paid and I have never been paid for the time I have spent finishing my work.

8. When I am working with Delano Farms and Cal Pacific, I have been told by our foreman at the end of one day that our crew is going to work at a different location the next day. Our foreman has told me that we have to meet at a certain location at 5:00 a.m. the following day and wait for him. The following day, myself and co-workers gather at the location at that time. Once the foreman arrives, we follow him in our cars driving to the work location for that day. I have not been paid for any of this travel time to the worksite.

This statement has been read and explained to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed March 28, 2009 in Delano, California.

Magdaleno Castaneda

MAGDALENO CASTANEDA

I am proficient in English and Spanish and have read the above statement to the person signing in Spanish.

Jessica Arciniega

JESSICA ARCINIEGA

# STATEMENT OF MAGDALENO CASTANEDA

I, Magdaleno Castaneda, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I am an employee of Delano Farms and Cal Pacific. I started working for Delano Farms and Cal Pacific Management in or about 2005. My job classification is picker. The type of work I perform is harvesting grapes and other tasks related to that. I work in Florentino Navalta's crew. On average, I work from 8 to 9 hours per day, 6 days per week.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. I am paid an hourly rate. During the picking season, I am paid an hourly rate plus a piece rate per box of grapes picked.

5. I am required to provide my own tools and equipment that I need for my job. During the pruning and picking work, the foreman has told us he has shears for us to use. One time I tried to use the shears that the foreman had. The shears were very cheaply made and not in good condition. When I tried to use them they did not function properly. I have to take my own shears in order to do my job.

6. When I have been required to perform the work of training the vines, the foreman has held up a shear that is used for that job. I have heard him tell me and others that we have to take that type of shear the following day and if we don't have that shear

and don't take it, we are not to go to work. I have had to buy those shears. I have also bought a larger pair of shears to cut the tops of the vines. I only used that shear a couple of times. Now, a tractor with a machine designed for that purpose cuts the top of the vines. Other tools and equipment that I am required to take to my job are gloves, picking shears, pruning shears, a sharpening file and holster. I have not been provided these tools and have had to purchase them.

7. I am required to arrive at the jobsite approximately 15 to 30 minutes before the I am set to start work. The foreman has told me that I have to be at the worksite 30 minutes before the hour to start. During the picking season, when I get to the jobsite, I have had to do preparation work, for example placing stickers on plastic bags. I am not paid and I have never been paid for the time I have spent doing that. Everyday before the work day starts I have to attend "escuelita" which is time that our foreman talks to the entire crew about the production from the prior day. He tells us which groups of people he thinks are lazy because their production is slow. He tells us to improve our production. I am not paid and I have never been paid for the time I have had to spend participating in the "escuelita." On occasions I have arrived a couple of minutes before the work day was to start at 7 a.m. The foreman told me that I was late because I did not arrive the fifteen minutes early to participate in the "escuelita." He told me that I had to arrive early to participate in the escuelita.

8. I have had to stay after the time the foreman says we are to stop work to finish my job. From what I understand the foreman is to advise our crew about fifteen minutes before the work day is going to end. He is supposed to do this in order to give us enough time to finish our last boxes of picking grapes. There are time when he does not advise us. The foreman writes down the time that the work day ends. For example, the time for that day could be 3:00 p.m. or 3:30 p.m. The foreman has seen me working after 3 p.m. and he does not write down the actual time I finish my work. I am not paid and I have never been paid for the time I have spent finishing my work.

9. When I am working with Delano Farms and Cal Pacific, I have been told by our foreman at the end of one day that our crew is going to work at a different location the next day. Our foreman has told me that we have to meet at a certain location at 5:00 a.m. the following day and wait for him. The following day, myself and co-workers gather at the location at that time. Once the foreman arrives, we follow him in our cars driving to the work location for that day. I have not been paid for any of this travel time to the worksite.

This statement has been read and explained to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed January 19, 2011 in Delano, California.

Magdaleno Castaneda

MAGDALENO CASTANEDA

# Declaration of Interpreter/Translator

I, Eva Vasquez-Camacho, declare that I am certified by the State of California as a Court Interpreter/Translator in good standing, as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 301273, issued by the Administrative Office of the Courts.

I further declare that I have read and interpreted the attached document from the English to the Spanish Language to Magdaleno Castaneda, and that it is a true and accurate translation of his "Statement of Magdaleno Castaneda" signed on January 19, 2011 in Delano, California. He indicated to me that his declaration is true and correct to the best of his knowledge.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 19th day of January of 2011 in Delano, California, County Kern.

By: Eva Vasquez-Camacho

State Certified Court Interpreter/Translator

Certification No. 301273

# EXHIBIT 19

# DECLARATION OF AGUSTIN CASTELO

I, Agustin Castelo, declare as follows:

1. I am currently an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2004 and continue to work there until the present day. The work I perform in the field is pruning, packing, deleafing, debudding, tipping, training, and debunching. I also work in the cold storage facility. Since 2006, the forewoman of the crew I have worked in is Rosa Salinas. There were about 50-60 people working in this crew when I was working in the field. I was a packer and worked in a group with two other pickers. On average I worked more than 8 hours per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. In 2008, during the pre-harvest, I was paid $ 8.10 per hour. During the harvest, I was paid an hourly rate plus a piece rate of $0.30 cents per box of grapes.

4. I was required by my forewoman Rosa Salinas to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were gloves that I bought for $5.00 for a package of 12 pairs, picking shears that I bought for $10.00, pruning shears that I bought for $35.00, and a holster that I bought for $8.00. I was told by my forewoman when I started working what tools I needed to take to work. During the pruning season, I asked my forewoman to provide me with the pruning shears. She told me that I could by them from her for $50.00. I did not buy them from her and I had to purchase the tools to perform my job.

5. During the pre-harvest, I was required to arrive at the jobsite approximately 15-20 minutes before the official start time. My forewoman Rosa Salinas told me that I had to arrive approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to wait for the workday to start. I also had to attend "escuelita" ("school") which was the time that our forewoman talked to the entire crew about the day's work or gave us instruction. During the pre-harvest, this happened approximately six times per week. I was not paid and I have never been paid for the time I spent waiting for the workday to start and participating in the "escuelita."

6. During the harvest, I was required by my forewoman to arrive at the jobsite approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to prepare my work area by doing things such as setting up the table with boxes, bags, and all the material needed for that day. I also had to attend "escuelita" which was the time that our forewoman talked to the entire crew about work or reprimanded certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

7. I had to take home equipment that belongs to Delano Farms and Cal-Pacific everyday after work and bring it to work the following work day. My forewoman Rosa Salinas told me that I had to take home the scale everyday and take it to work the following workday. My forewoman told me that if the scale was broken or I did not take it to work, I would be charged $40.00-50.00.

8. I have been required to show up for work even when there is fog or rain. In those circumstances, the forewoman required that I wait at the jobsite until she either decided that we would begin work or be sent home. I have never been paid for the time I was required to wait at the jobsite while my forewoman determined whether or not to send

us into the field. When this happened, I was required to wait as long as 30 minutes. This happened to me approximately more than two times during the preharvest.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Earlimart, California on 9/13, 2010.

Agustín Castelo

Agustin Castelo

# DECLARATION OF AMELIA MAGANA

I declare that I am fluent in the Spanish language and that I read the above declaration from English into Spanish to **Agustin Castelo.** He indicated to me that the declaration is true and correct to the best of his knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed 9/13, 2010 in Earlimart, California.

Amelia Magaña

Amelia Magana

# DECLARATION OF AGUSTIN CASTELO

I, Agustin Castelo, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I am currently an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2004 and continue to work there until the present day. The work I perform in the field is pruning, packing, deleafing, debudding, tipping, training, and debunching. I also work in the cold storage facility. Since 2006, the forewoman of the crew I have worked in is Rosa Salinas. There were about 50-60 people working in this crew when I was working in the field. I was a packer and worked in a group with two other pickers. On average I worked more than 8 hours per day, 6 days per week.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. In 2008, during the pre-harvest, I was paid $ 8.10 per hour. During the harvest, I was paid an hourly rate plus a piece rate of $0.30 cents per box of grapes.

5. I was required by my forewoman Rosa Salinas to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were gloves that I bought for $5.00 for a package of 12 pairs, picking shears that I bought for $10.00, pruning shears that I bought for $35.00, and a holster that I bought for

$8.00. I was told by my forewoman when I started working what tools I needed to take to work. During the pruning season, I asked my forewoman to provide me with the pruning shears. She told me that I could by them from her for $50.00. I did not buy them from her and I had to purchase the tools to perform my job.

6. During the pre-harvest, I was required to arrive at the jobsite approximately 15-20 minutes before the official start time. My forewoman Rosa Salinas told me that I had to arrive approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to wait for the workday to start. I also had to attend "escuelita" ("school") which was the time that our forewoman talked to the entire crew about the day's work or gave us instruction. During the pre-harvest, this happened approximately six times per week. I was not paid and I have never been paid for the time I spent waiting for the workday to start and participating in the "escuelita."

7. During the harvest, I was required by my forewoman to arrive at the jobsite approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to prepare my work area by doing things such as setting up the table with boxes, bags, and all the material needed for that day. I also had to attend "escuelita" which was the time that our forewoman talked to the entire crew about work or reprimanded certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

8. I had to take home equipment that belongs to Delano Farms and Cal-Pacific everyday after work and bring it to work the following work day. My forewoman Rosa Salinas told me that I had to take home the scale everyday and take it to work the following workday. My forewoman told me that if the scale was broken or I did not take it to work, I would be charged $40.00-50.00.

9. I have been required to show up for work even when there is fog or rain. In those circumstances, the forewoman required that I wait at the jobsite until she either decided that we would begin work or be sent home. I have never been paid for the time I was required to wait at the jobsite while my forewoman determined whether or not to send us into the field. When this happened, I was required to wait as long as 30 minutes. This happened to me approximately more than two times during the preharvest.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in January 24th in Delano, California.

Agustin Castelo

Agustin Castelo

Declaration of Interpreter/Translator

I, Armando Espinosa Jr., declare that I am certified by the State of California as a Court Interpreter/Translator in good standing as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 300804, issued by the Administrative Office of the Courts.

I further declare that I read and translated the attached " "Declaration of Agustin Castelo," to Mr. Agustin Castelo from the English to the Spanish Language and that it is a true and accurate translation of said document. He further indicated to me that his declaration is true and correct to the best of his knowledge, and signed it on January 24, 2011.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 24th day of January of 2011, in Delano, California, County of Kern.

By: Armando Espinosa, Jr.

State Certified Court Interpreter

Certification No. 300804

# EXHIBIT 20

**DECLARATION OF DORA CASTELO**

I, Dora Castelo, declare as follows:

1. I am currently an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2004 and continue to work there until the present day. The work I perform in the field is pruning, packing, deleafing, debudding, tipping, training, and debunching. I also work in the cold storage facility. Since 2006, the forewoman of the crew I have worked in is Rosa Salinas. There were about 50-60 people working in crew when I was working in the field. I was a packer and worked in a group with two other pickers. On average I worked more than 8 hours per day, 6 days per week.

2. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

3. In 2008, during the pre-harvest, I was paid $ 8.10 per hour. During the harvest, I was paid an hourly rate plus a piece rate of $0.30 cents per box of grapes.

4. I was required by my forewoman Rosa Salinas to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were gloves that I bought for $5.00 for a package of 12 pairs, picking shears that I bought for $10.00, pruning shears that I bought for $35.00, and a holster that I bought for $8.00. I was told by my forewoman when I started working what tools I needed to take to work. During the pruning season, I asked my forewoman to provide me with the pruning shears. She told me that I could buy them from her for $50.00. I did not buy them from her and I had to purchase the tools to perform my job.

5. During the pre-harvest, I was required to arrive at the jobsite approximately 15-20 minutes before the official start time. My forewoman Rosa Salinas told me that I had to arrive approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to wait for the workday to start. I also had to attend "escuelita" ("school") which was the time that our forewoman talked to the entire crew about the day's work or gave us instruction. During the pre-harvest, this happened approximately six times per week. I was not paid and I have never been paid for the time I spent waiting for the workday to start and participating in the "escuelita."

6. During the harvest, I was required by my forewoman to arrive at the jobsite approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to prepare my work area by doing things such as setting up the table with boxes, bags, and all the material needed for that day. I also had to attend "escuelita" which was the time that our forewoman talked to the entire crew about work or reprimanded certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

7. I had to take home equipment that belongs to Delano Farms and Cal-Pacific everyday after work and bring it to work the following work day. My forewoman Rosa Salinas told me that I had to take home the scale everyday and take it to work the following workday. My forewoman told me that if the scale was broken or I did not take it to work, I would be charged $40.00-50.00.

8. I have been required to show up for work even when there is fog or rain. In those circumstances, the forewoman required that I wait at the jobsite until she either decided that we would begin work or be sent home. I have never been paid for the time I was required to wait at the jobsite while my forewoman determined whether or not to send

us into the field. When this happened, I was required to wait as long as 30 minutes. This happened to me approximately more than two times during the preharvest.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Earlimart, California on 09/13, 2010.

Dora Castelo

Dora Castelo

# DECLARATION OF AMELIA MAGANA

I declare that I am fluent in the Spanish language and that I read the above declaration from English into Spanish to **Dora Castelo.** She indicated to me that the declaration is true and correct to the best of her knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed 09/13, 2010 in Earlimart, California.

Amelia Magaña

Amelia Magana

**DECLARATION OF DORA CASTELO**

I, Dora Castelo, declare as follows:

1. I am aware that this is the same exact declaration that I previously signed. I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2. I am currently an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific in 2004 and continue to work there until the present day. The work I perform in the field is pruning, packing, deleafing, debudding, tipping, training, and debunching. I also work in the cold storage facility. Since 2006, the forewoman of the crew I have worked in is Rosa Salinas. There were about 50-60 people working in crew when I was working in the field. I was a packer and worked in a group with two other pickers. On average I worked more than 8 hours per day, 6 days per week.

3. The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I could and would competently do so under oath.

4. In 2008, during the pre-harvest, I was paid $ 8.10 per hour. During the harvest, I was paid an hourly rate plus a piece rate of $0.30 cents per box of grapes.

5. I was required by my forewoman Rosa Salinas to provide my own tools and equipment that I needed for my job. The tools and equipment that I was required to take to my job were gloves that I bought for $5.00 for a package of 12 pairs, picking shears that I bought for $10.00, pruning shears that I bought for $35.00, and a holster that I bought for $8.00. I was told by my forewoman when I started working what tools I needed to take to

work. During the pruning season, I asked my forewoman to provide me with the pruning shears. She told me that I could buy them from her for $50.00. I did not buy them from her and I had to purchase the tools to perform my job.

6. During the pre-harvest, I was required to arrive at the jobsite approximately 15-20 minutes before the official start time. My forewoman Rosa Salinas told me that I had to arrive approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to wait for the workday to start. I also had to attend "escuelita" ("school") which was the time that our forewoman talked to the entire crew about the day's work or gave us instruction. During the pre-harvest, this happened approximately six times per week. I was not paid and I have never been paid for the time I spent waiting for the workday to start and participating in the "escuelita."

7. During the harvest, I was required by my forewoman to arrive at the jobsite approximately 15-20 minutes before the official start time. When I got to the jobsite, I had to prepare my work area by doing things such as setting up the table with boxes, bags, and all the material needed for that day. I also had to attend "escuelita" which was the time that our forewoman talked to the entire crew about work or reprimanded certain workers who did not meet their picking quotas. I was not paid and I have never been paid for the time I spent preparing for the work day and participating in the "escuelita."

8. I had to take home equipment that belongs to Delano Farms and Cal-Pacific everyday after work and bring it to work the following work day. My forewoman Rosa Salinas told me that I had to take home the scale everyday and take it to work the following workday. My forewoman told me that if the scale was broken or I did not take it to work, I would be charged $40.00-50.00.

9. I have been required to show up for work even when there is fog or rain. In those circumstances, the forewoman required that I wait at the jobsite until she either decided that we would begin work or be sent home. I have never been paid for the time I was required to wait at the jobsite while my forewoman determined whether or not to send us into the field. When this happened, I was required to wait as long as 30 minutes. This happened to me approximately more than two times during the preharvest.

This statement has been read to me in Spanish and I confirm that all statements here are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 24th in Delano, California.

Dora Castelo

Dora Castelo

# Declaration of Interpreter/Translator

I, Armando Espinosa Jr., declare that I am certified by the State of California as a Court Interpreter/Translator in good standing as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 300804, issued by the Administrative Office of the Courts.

I further declare that I read and translated the attached "Declaration of Dora Castelo," to Ms. Dora Castelo from the English to the Spanish Language and that it is a true and accurate translation of said document. She further indicated to me that her declaration is true and correct to the best of her knowledge, and signed it on January 24, 2011.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 24th day of January of 2011, in Delano, California, County of Kern.

By: Armando Espinosa, Jr.

State Certified Court Interpreter

Certification No. 300804