# EXHIBIT 89

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

_____

| | |
|---|---|
| SABAS ARREDONDO, JOSE ) <br> CUEVAS, HILARIO GOMEZ, ) <br> IRMA LANDEROS and ROSALBA ) <br> LANDEROS individually and ) <br> on behalf of all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> DELANO FARMS COMPANY, a ) <br> Washington State ) <br> Corporation; CAL-PACIFIC ) <br> FARM MANAGEMENT, L.P.; T&R ) <br> BANGI'S AGRICULTURAL ) <br> SERVICES, Inc. and DOES 1 ) <br> through 10, inclusive, ) <br> ) <br> Defendants. ) <br> _____) | Case No. <br><br> 1:09-CV-01247-LJO-DLB <br><br> VOLUME I <br><br> (Pages 1 - 148) |

DEPOSITION OF THE PERSON MOST KNOWLEDGEABLE OF

DELANO FARMS COMPANY:

SCOTT QUASHNICK

THURSDAY, MARCH 11, 2010

1:10 P.M.

REPORTED BY:  TERRI L. HAUPT, CSR No. 6111

SYLVIA MENDEZ & ASSOCIATES - (661) 631-2904

1   Deposition of the Person Most Knowledgeable of

2   Delano Farms Company, SCOTT QUASHNICK,

3   taken on behalf of the Plaintiffs, on Thursday,

4   March 11, 2010, 1:10 p.m., at the offices of

5   Sylvia Mendez & Associates, 330 H Street, Suite 1,

6   Bakersfield, California, before Terri L. Haupt,

7   CSR No. 6111, pursuant to Notice of Taking Deposition.

8

9                    APPEARANCES OF COUNSEL

10

    For the Plaintiffs:      Wasserman, Comden &
11                           Casselman, L.L.P.
                             By:  GREGORY J. RAMIREZ
12                                     and
                                 JESSICA ARCINIEGA
13                           Attorneys at Law
                             300 East Esplanade Drive
14                           Suite 1960
                             Oxnard, California  93036
15                           (805) 988-0285

16                           Law Offices of Marcos Camacho
                             By:  THOMAS P. LYNCH
17                           Attorney at Law
                             1227 California Avenue
18                           Bakersfield, California  93304
                             (661) 324-8100
19

20  For the Defendants:      Griswold LaSalle Cobb
                             Dowd & Gin L.L.P.
21                           By:  MICHAEL R. JOHNSON
                                     and
22                               LAURA A. WOLFE
                             Attorneys at Law
23                           111 E. Seventh Street
                             Hanford, California  93230
24                           (559) 584-6656

25

Page 105

1   don't know.

2          My question is:  Do you have any personal

3   knowledge as to whether T&R Bangi requires workers to

4   travel with a supervisor or a foreman from their home

5   to the work site?

6          A.   I do not know.

7          Q.   You would not have any knowledge about that?

8          A.   No.

9          Q.   Do you know how your labor contractors ensure

10  that the workers -- all of the workers show up on time,

11  at seven o'clock for the workday, during the harvest

12  season?

13         A.   How do they ensure?

14         Q.   That the workers show up on time.

15         A.   I don't know.

16         Q.   At any given time during the harvest season,

17  how many laborers would the labor contractor have doing

18  the picking or the harvesting?

19         A.   I believe that it is somewhere -- right

20  around 2,500 employees.

21         Q.   My question is:  Do you have any knowledge as

22  to how your labor contractors -- what they do to ensure

23  that there is 2,500 workers that show up on time, on or

24  before seven o'clock, so you guys can start the job on

25  time?

Page 106

1          A.  I don't know how they do that.

2          Q.  Have you ever given your opinion or

3     instructed Terry Bangi as to what to do to make sure

4     that 2,500 laborers show up on time?

5          A.  Not to my recollection.  I never have.

6          Q.  Has it ever been a concern of yours, as a

7     ranch manager, especially during harvest season, that

8     people may or may not show up at seven o'clock?

9          A.  Honestly, it has been my opinion and I have

10    seen -- I have never seen T&R Bangi's labor force have

11    a problem getting out to work on time.

12              Like I said, when I drive through the fields

13    in the morning, from 5:30 until 7:00 -- at 7:00 they

14    start work.  I have never seen cars come in late to

15    work in my nine years of experience.  They are

16    punctual.  At 7:00, when work starts, when they start

17    their pay, they are there.  From that point on, they

18    get paid to do whatever work that they were assigned to

19    do.  I have never seen late stragglers show up.

20         Q.  Have you ever seen vans showing up with

21    workers?  Have you ever seen vans coming and bringing

22    workers to the work site?

23         A.  When you say "vans," you mean a minivan?

24         Q.  Any kind of van.

25         A.  I have never seen any -- no.

# EXHIBIT 90

RANDY L. EDWARDS, #105639
MICHAEL R. JOHNSON, #237767
LAURA A. WOLFE, #266751
GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 East Seventh Street
Hanford, CA 93230
Telephone (559) 584-6656
Facsimile (559) 582-3106
johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

Attorneys for Defendants, Delano Farms Company, et al.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| SABAS ARREDONDO, et al. | Case No.: 1:09-cv-01247-LJO-DLB |
| Plaintiffs, | **DEFENDANTS' SECOND AMENDED INITIAL DISCLOSURE** |
| v. | |
| DELANO FARMS COMPANY, et al. | |
| Defendants. | |

COME NOW Defendants DELANO FARMS COMPANY, CAL-PACIFIC FARM MANAGEMENT, L.P. and T&R BANGI'S AGRICULTURAL SERVICES (hereinafter referred to collectively as "DEFENDANTS") and provide the following Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

**(A)     Provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . ."**

DEFENDANTS' investigation into the claims made by PLAINTIFFS is on-going. As such, DEFENDANTS reserve the right to amend and/or modify the list of witnesses provided, if necessary.

The following witnesses are the Named Plaintiffs; As such, Plaintiffs' counsel has a better understanding as to their level of knowledge and what information they may testify to than Defendants' do:

1.     Sabas Arredondo;

2.     Jose Cuevas;

3.     Hilario Gomez;

      4.     Irma Landeros;

      5.     Rosalba Landeros;

The following witnesses can be reached through Defendants' attorneys; they have knowledge regarding Defendants' corporate structure; corporate policies; and the claims made in Plaintiffs' Complaint:

      6.     Craig Neville;

      7.     Terry Bangi;

      8.     Joe Campbell;

The following witnesses work as safety supervisors for Defendant T & R Bangi, and have knowledge regarding Defendants' safety policies; corporate policies; wage policies; record keeping policies; tool policies; and all other claims made by the Plaintiffs in their Complaint.  Defendants' investigation into the claims made by Plaintiffs is on-going.  As such, Defendants reserve the right to amend and/or modify the list of witnesses provided, if necessary:

      9.     Marife Villar, 2317 Evergreen Street, Delano, CA 93215;

      10.    Norma Alvaco, 9656 Road 236, # 313, Terra Bella, CA 93270;

      11.    Claudia Utley, 508 Crawford Street, Bakersfield, CA 93305;

The following witnesses work as supervisors or foremen for Defendant T&R Bangi's Agricultural Services, Inc., and have knowledge regarding Defendants' corporate policies; wage policies; record keeping policies; tool policies; and all other claims made by the Plaintiffs in their Complaint.  Defendants' investigation into the claims made by Plaintiffs is on-going.  As such, Defendants reserve the right to amend and/or modify the list of witnesses provided, if necessary:

      12.    Humberto Melgoza (Supervisor; date of hire: 8/2/1995);

      13.    Mini Pedraza (Supervisor; date of hire: 12/18/1993);

      14.    Edgar Carino (Supervisor; date of hire: 5/31/1992);

      15.    Efren Carino ((Supervisor; date of hire: 1/13/1992);

      16.    Jason Villar (Supervisor; date of hire: 1/14/1994);

      17.    Andrea Nantangcop (Foreman; date of hire: 4/19/1992);

      18.    Dolores  Mendez (Foreman; date of hire: 10/20/1999);

2

19. Francisco Garcia (Foreman; date of hire: 6/4/1998);

20. Rodolfo Mendez (Foreman; date of hire: 5/12/1997);

21. Edmundo Carino (Foreman; date of hire: 12/13/1993);

22. Myrna Carino (Foreman; date of hire: 8/25/1995);

23. Jose Garcia (Foreman; date of hire: 6/4/1998);

24. Josefina Melgoza (Foreman; date of hire: 7/15/1996);

25. Rafael Chavez (Foreman; date of hire: 7/2/1997);

26. Efren Simpliciano (Foreman; date of hire: 7/27/1994);

27. Fred Bagsic (Foreman; date of hire: 1/1/1989);

28. Virginia Antipuesto (Foreman; date of hire: 8/11/1993);

29. Jesus Cendejas (Foreman; date of hire: 7/11/1997);

30. Florentino Navalta (Foreman; date of hire: 7/5/1994);

31. Manuel Andrade (Foreman; date of hire: 4/21/1994);

32. Manuel Guzman (Foreman; date of hire: 8/24/1995);

33. Amadeo Paniagua (Foreman; date of hire: 12/11/1996);

34. Dunard Tabalanza (Foreman; date of hire: 7/2/1994);

35. Henry Galinato (Foreman; date of hire: 1/6/1994);

The following employees of T&R Bangi's Agricultural Services, Inc. have personal knowledge relevant to the claims made by Plaintiffs in their Complaint, and have provided declarations regarding that knowledge. Their contact information (addresses and telephone numbers) will be produced as part of the payroll records produced to Plaintiffs. Defendants' investigation into the claims made by Plaintiffs is on-going. As such, Defendants reserve the right to amend and/or modify the list of witnesses provided, if necessary:

36. Alfredo Aguilar;

37. Jose Alvarado;

38. Miralba Alvarez;

39. Anastacio Arellano;

3

40. Mari Cruz Baez;

41. Jose S. Bermudes;

42. Gerardo Bustamante;

43. Cecilia Castro;

44. Luz Chavez;

45. Juan Dorantes;

46. Gerardo Garcia;

47. Jose S. Garcia;

48. Rita Garcia;

49. Jaime Gasper;

50. Neida Jiminez;

51. Jose Leyba;

52. Rene Lopez;

53. Martha Lucio;

54. Antonio Mariano;

55. Marisela Pena;

56. Yaneli Perez;

57. Argelia Reynoso;

58. Roberto Rocha;

59. Sandra Rocha;

60. Maria Elvia Ruiz;

61. Floriberto Sanchez;

62. Nieves Torres;

63. Alejandro Vaca;

The following employees have personal knowledge relevant to the claims made by Plaintiffs in their Complaint; Specifically, the witnesses are employees of T&R Bangi's Agricultural Services, Inc., and have personal knowledge about corporate policies; wages paid; time worked; work performed; tools provided,

4

etc.  Their contact information (addresses and telephone numbers) will be produced as part of the payroll records produced to Plaintiffs.  Defendants' investigation into the claims made by Plaintiffs is on-going. As such, Defendants reserve the right to amend and/or modify the list of witnesses provided, if necessary:

64.   Oscar Aguilera;

65.   Esperanza Alvarez;

66.   Maria Ayon;

67.   Maria Ballasteros;

68.   Salvador Bustamante;

69.   Christina Carranza;

70.   David Carranza;

71.   Antonio Chavez;

72.   Gabriela Chavez;

73.   Rosario Cortez;

74.   Margarita Garibay;

75.   Marta Gomez;

76.   Petronila Gomez;

77.   Guadalupe Gonzalez;

78.   Guadalupe Hernandez;

79.   Leticia Herrera;

80.   Alondra Manriquez;

81.   Jose Manriquez;

82.   Jose Mata;

83.   Juan Mendoza;

84.   Jesus Paniagua;

85.   Juan Pena;

86.   Jose Rodriguez;

87.   Selenne Rodriguez;

5

88. Victoria Rosales;

89. Luz Sanchez;

90. Manuel Solis;

91. Nieves Torres;

92. Alejandro Vaca;

93. Adrian Vasquez;

94. Maria Vidrio;

95. Ana Villa;

96. Juan Villa;

(B)    Provide "a copy of, or a description by category and location of, all documents, electronically stored information and tangible things that are in the possession, custody or control of the party and that disclosing party may use to support its claim or defenses . . . ."

1. Employment/Payroll records from 2005-2010.

2. Employee Handbooks/Employee Policy sheets from 2005-2010.

3. Tool purchase agreements from 2005-2010.

4. Tool purchase invoices from 2005-2010.

5. Timesheets and time records from 2005-2010.

6. Box count and piece rate statements from 2005-2010.

7. Sign-in sheets relating to company policies and tooling agreements from 2005-2010.

8. T&R Bangi Ag Services employee printouts from 2005-21010.

9. Delano Farms payroll records from 2005-2010.

10. Invoices between Delano Farms; T&R Bangi Ag Services; and Cal-Pacific Farm Management from 2005-2010.

11. Cal-Pacific Farm Management payroll earnings records from 2005-2010.

12. Safety meeting minutes from 2005-2010.

13. Sexual harassment policies from 2005-2010.

14. Employee safety policies from 2005-2010.

6

15.     Cal-Pacific Farm Management tool agreements from 2005-2010.

16.     T&R Bangi Ag Services tool agreements from 2005-2010.

17.     Paycheck stubs and copies of paychecks from 2005-2010.

18.     W-2's from 2005-2010.

**(C)**     Provide "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered."

DEFENDANTS do not, at this time, allege any damages, but reserve the right to challenge the damages claim asserted by Plaintiffs. DEFENDANTS reserve the right to supplement this section of the Initial Disclosure after the certification motion is completed.

**(D)**     Provide "for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."

To date, no insurance company has accepted any tender based upon the Complaint. Discussions are ongoing. DEFENDANTS have tendered this matter for a defense to Monterey Insurance Company.

///

///

Dated: September 9, 2010        **GRISWOLD, LaSALLE, COBB, DOWD & GIN, LLP**

By _____

MICHAEL R. JOHNSON,
Attorneys for Defendants

**PROOF OF SERVICE**
CCP §§ 1011, 1013, 1013a, 2015.5; FRCP 5(b)

I am employed in the County of Kings, State of California. I am over the age of 18 years and not a party to the within action; my business address is 111 East Seventh Street, Hanford, California 93230. On **September 10, 2010,** I served the following documents: **DEFENDANTS INITIAL DISCLOSURE,** on the following:

| | |
|---|---|
| *Gregory J. Ramirez | *Attorneys for Plaintiff* |
| Katherine A. Winder | |
| James Perero | |
| Jessica Arciniega | |
| Wasserman, Comden & Casselman | |
| 300 East Esplanade Drive, Suite 1960 | |
| Oxnard, CA 93036-0284 | |

| | |
|---|---|
| Melissa M. Harnett | *Attorneys for Plaintiff* |
| Greg Scarlett | |
| Wasserman, Comden & Casselman | |
| 5567 Reseda Blvd., Suite 330 | |
| PO Box 7033 | |
| Tarzana, CA 91357-7033 | |

| | |
|---|---|
| Marcos Camacho | *Attorneys for Plaintiff* |
| Thomas Patrick Lynch | |
| Mario G. Martinez | |
| Marcos Camacho, A Law Corp. | |
| 1227 California Avenue | |
| Bakersfield, CA 93304 | |

**COURTESY COPY:**
T&R Bangi's Ag Service
Cal Pacific Farm Management
Delano Farms Company
c/o Craig Neville
PO Box 839
Richgrove, CA 93261

[X]   **(By Mail)** As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under the practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Hanford, California, in the ordinary course of business.

[*X]   **(By Overnight Delivery)** I deposited such envelope in the Federal Express/UPS Next Day Air/U.S. Mail Express Mail depository at Hanford, California. The envelope was sent with delivery charges thereon fully prepaid.

[X]   **(Federal)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on **September 10, 2010,** at Hanford, California.

LYNNSEY DANIEL

8

# EXHIBIT 91



RANDY L. EDWARDS, #105639
MICHAEL R. JOHNSON, #237767
LAURA A. WOLFE, #266751
GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 East Seventh Street
Hanford, CA 93230
Telephone (559) 584-6656
Facsimile (559) 582-3106
johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

Attorneys for Defendants, Delano Farms Company, et al.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| | |
|---|---|
| SABAS ARREDONDO, et al. | Case No.: 1:09-cv-01247-LJO-DLB |
| Plaintiffs, | **DECLARATION OF MIRALBA ALVAREZ** |
| v. | |
| DELANO FARMS COMPANY, et al. | |
| Defendants. | |

I, Miralba Alvarez, declare as follows:

1.     I am currently an employee of T&R Bangi's Agricultural Services, Inc. ("T&R Bangi").

2.     While working for T&R Bangi, I am required to attend "escuelita" almost every morning at the beginning of my shift. During this school, the foreman gives us directions and talks about safety. School usually lasts 10-15 minutes. It is always held while employees are on the clock, and I am always paid for the time I spend in school. Sometimes the foreman elects to skip school, but this is very rare.

3.     As an employee of T&R Bangi, I am never required to perform work off the clock. If I arrive at the job site early, I am not required to begin work. I know that we are not supposed to begin setting up our tables prior to the shift starting. If anyone starts working early, the foreman tells them to stop.

4.     I am almost never required to do work after my shift has ended. During the harvest season, the foreman instructs us to stop picking grapes 15 minutes before the end of the shift. This allows

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

1   us time to finish packing the grapes that have already been picked and to pack our table.  There

2   is only one time that I had to stay late during my shift to finish packing the grapes that I had

3   picked.  I was paid for this time.

4   5.   I am never required to work at home.  I am not required to take my packing trays home with me

5   to clean, and I know that I am not supposed to take the trays home with me.  I am not required

6   to put stickers on boxes or clamshells at home, and know that I am not supposed to take boxes,

7   clamshell, or stickers home with me.

8   6.   During my shifts, I am always given my full break time.  During a normal 8 hour day, I am given

9   two 15 minute breaks, and a 30 minute lunch break.  My break times are never cut short, and I

10   am not allowed to work during my breaks.

11   7.   I am provided with all the tools necessary to do my job.  The tools that the company gives me

12   are adequate to perform my work.

13   8.   When my crew moves locations during a shift, the company does not transport the workers.

14   However, I remain on the clock during this time, and am always paid for the time spent traveling

15   from one block to another.

16   9.   If called as a witness I could testify to all of the foregoing based upon my personal knowledge.

17   I declare under the penalty of perjury under the laws of the State of California that the foregoing

18   is true and correct and this declaration was executed on September _08_, in Delano, California.

19                                   _Miralba Alvarez_
20                                   **MIRALBA ALVAREZ**

21

22

23

24

25

26

GRISWOLD, LaSALLE,
COBB, DOWD &
ORN, L.L.P.
III, EAST WEBMAN STREET
HANFORD, CA 93230

2

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

## DECLARATION OF DONETTE LANCASTER

I declare that I am a certified translator fluent in the Spanish language and that I read the above declaration from English into Spanish to _Miralba Alvarez_. He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed September _08_, 2010 in Delano, California.


DONETTE LANCASTER

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

I

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

EXHIBIT 92

RANDY L. EDWARDS, #105639
MICHAEL R. JOHNSON, #237767
LAURA A. WOLFE, #266751
GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 East Seventh Street
Hanford, CA 93230
Telephone (559) 584-6656
Facsimile (559) 582-3106
johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

Attorneys for Defendants, Delano Farms Company, et al.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| SABAS ARREDONDO, et al. | Case No.: 1:09-cv-01247-LJO-DLB |
| Plaintiffs, | DECLARATION OF Cecilia Castro |
| v. | |
| DELANO FARMS COMPANY, et al. | |
| Defendants. | |

I, Cecilia Castro, declare as follows:

1.  I am currently an employee of T&R Bangi's Agricultural Services, Inc. ("T&R Bangi").

2.  While working for T&R Bangi, I am required to attend "escuelita" almost every morning at the beginning of my shift. During this school, the foreman gives us directions and talks about safety. School usually lasts 10-15 minutes. It is always held while employees are on the clock, and I am always paid for the time I spend in school. Sometimes the foreman elects to skip school, but this is very rare.

3.  As an employee of T&R Bangi, I am never required to perform work off the clock. If I arrive at the job site early, I am not required to begin work. I know that we are not supposed to begin setting up our tables prior to the shift starting. If anyone starts working early, the foreman tells them to stop.

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

*Arredondo v. Delano Farms, et al.*
DECLARATION

4.   I am never required to do work after my shift has ended. During the harvest season, the foreman instructs us to stop picking grapes 15 minutes before the end of the shift. This allows us time to finish packing the grapes that have already been picked and to close our table up.

5.   I am never required to work at home. I am not required to take my packing trays home with me to clean, and I know that I am not supposed to take the trays home with me. I am not required to put stickers on boxes or clamshells at home, and know that I am not supposed to take boxes, clamshell, or stickers home with me.

6.   During my shifts, I am always given my full break time. During a normal 8 hour day, I am given two 15 minute breaks, and a 30 minute lunch break. My break times are never cut short, and I am not allowed to work during my breaks.

7.   I am provided with all the tools necessary to do my job. The tools that the company gives me are adequate to perform my work.

8.   When my crew moves locations during a shift, the company does not transport the workers. However, I remain on the clock during this time, and am always paid for the time spent traveling from one block to another.

9.   If called as a witness I could testify to all of the foregoing based upon my personal knowledge. I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on September __08__, in Delano, California.

_Cecilia CASTRO_
(Sign Name)

_Cecilia Castro_
(Print Name)

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD CA 93230

2

_Arredondo v. Delano Farms, et al._
DECLARATION

## DECLARATION OF DONETTE LANCASTER

I declare that I am a certified translator fluent in the Spanish language and that I read the above declaration from English into Spanish to _Cecilia Castro_. He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed September _08_, 2010 in Delano, California.

DONETTE LANCASTER

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

# EXHIBIT 93

1

2

3

4  RANDY L. EDWARDS, #105639
   MICHAEL R. JOHNSON, #237767
5  LAURA A. WOLFE, #266751
   GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
6  111 East Seventh Street
   Hanford, CA 93230
7  Telephone (559) 584-6656
   Facsimile (559) 582-3106
8  johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

9  Attorneys for Defendants, Delano Farms Company, et al.

10          UNITED STATES DISTRICT COURT

11    EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

12  SABAS ARREDONDO, et al.            )  Case No.: 1:09-cv-01247-LJO-DLB
                                       )
13              Plaintiffs,            )  **DECLARATION OF JOSE LEYBA**
                                       )
14  v.                                 )
                                       )
15  DELANO FARMS COMPANY, et al.       )
                                       )
16              Defendants.            )

17          I, Jose Leyba, declare as follows:

18  1.   I am currently an employee of T&R Bangi's Agricultural Services, Inc. ("T&R Bangi").

19  2.   While working for T&R Bangi, I am required to attend "escuelita" almost every morning at the

20       beginning of my shift. During this school, the foreman gives us directions and talks about safety,

21       such as how to avoid heat stress. School usually lasts 10-15 minutes. It is always held while

22       employees are on the clock, and I am always paid for the time I spend in school. Sometimes the

23       foreman holds "escuelita" twice during a shift if we are not picking correctly, or if we need

24       further directions. We are paid for this time as well. On rare occasions, the foreman may elect

25       to skip school because we are working at the same location as before, or because we are

26       harvesting the same type of grape as before.

GRISWOLD, LaSALLE,
  COBB, DOWD &
  GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

                                                    1

                                          Arredondo v. Delano Farms, et al.
                                                         DECLARATION

3.    As an employee of T&R Bangi, I am never required to perform work off the clock. If I arrive at the job site early, I am not required to begin work. I know that we are not supposed to begin setting up our tables prior to the shift starting. If anyone starts working early, the foreman tells them to stop. About seven years ago, I used to begin to set up my packing table early. I did this voluntarily and because I get a bonus for picking more grapes. However, this is no longer allowed and the prohibition is strictly enforced.

4.    I am never required to do work after my shift has ended. During the harvest season, the foreman instructs us to stop picking grapes 15 minutes before the end of the shift. This allows us time to finish packing the grapes that have already been picked and to close our table up.

5.    I am never required to work at home. I am not required to take my packing trays home with me to clean, and I know that I am not supposed to take the trays home with me. I am not required to put stickers on boxes or clamshells at home, and know that I am not supposed to take boxes, clamshell, or stickers home with me. I used to take the trays home with me to clean. It took me about 30 minutes a week to complete. I did this voluntarily and was not paid for it. I have not done this in the past 4 years.

6.    During my shifts, I am always given my full break time. During a normal 8 hour day, I am given two 15 minute breaks, and a 30 minute lunch break. My break times are never cut short, and I am not allowed to work during my breaks.

7.    I am not always provided with all the tools necessary to do my job. If I am not present on the first day of "tipping," the company does not provide me with clippers. When this happens, I have to buy my own. I have never asked the company to provide me with clippers, but I believe that they would if I requested them.

8.    When my crew moves locations during a shift, the company does not transport the workers. However, I remain on the clock during this time, and am always paid for the time spent traveling from one block to another.

///
///

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

2

*Arredando v. Delano Farms, et al.*
*DECLARATION*

1   9.    If called as a witness I could testify to all of the foregoing based upon my personal knowledge.

2          I declare under the penalty of perjury under the laws of the State of California that the foregoing

3   is true and correct and this declaration was executed on September ___, 2010, in Delano, California.

4

                         JOSE LEYBA

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

3

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

## DECLARATION OF LORENZO HURTADO

I declare that I am a certified translator (#300350) fluent in the Spanish language and that I read the above declaration from English into Spanish to _Jose Leyba_ . He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed September __9__, 2010 in Delano, California.

LORENZO HURTADO

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

3

# EXHIBIT 94



1

2

3   RANDY L. EDWARDS, #105639
    MICHAEL R. JOHNSON, #237767
4   LAURA A. WOLFE, #266751
    GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
5   111 East Seventh Street
    Hanford, CA 93230
6   Telephone (559) 584-6656
    Facsimile (559) 582-3106
7   johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

8   Attorneys for Defendants, Delano Farms Company, et al.

9               UNITED STATES DISTRICT COURT

10      EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

11  SABAS ARREDONDO, et al.          )  Case No.: 1:09-cv-01247-LJO-DLB
                                     )
12              Plaintiffs,          )  **DECLARATION OF MARTA LUCIO**
                                     )
13  v.                               )
                                     )
14  DELANO FARMS COMPANY, et al.     )
                                     )
15              Defendants.          )

16      I, Marta Lucio , declare as follows:

17  1.    I am currently an employee of T&R Bangi's Agricultural Services, Inc. ("T&R Bangi").

18  2.    While working for T&R Bangi, I am required to attend "escuelita" almost every morning at the

19        beginning of my shift. During this school, the foreman gives us directions and talks about safety,

20        such as how to avoid heat stress.  School usually lasts 10-15 minutes.  It is always held while

21        employees are on the clock, and I am always paid for the time I spend in school.  Sometimes the

22        foreman holds "escuelita" twice during a shift if we are not picking correctly, or if we need

23        further directions.  We are paid for this time as well.  On rare occasions, the foreman may elect

24        to skip school because we are working at the same location as before, or because we are

25        harvesting the same type of grape as before.

26

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

3.     As an employee of T&R Bangi, I am never required to perform work off the clock.  If I arrive at the job site early, I am not required to begin work.  I know that we are not supposed to begin setting up our tables prior to the shift starting.  If anyone starts working early, the foreman tells them to stop.

4.     I am never required to do work after my shift has ended.  During the harvest season, the foreman instructs us to stop picking grapes 15 minutes before the end of the shift.  This allows us time to finish packing the grapes that have already been picked and to close our table up.

5.     I am never required to work at home.  I am not required to take my packing trays home with me to clean, and I know that I am not supposed to take the trays home with me.  I am not required to put stickers on boxes or clamshells at home, and know that I am not supposed to take boxes, clamshell, or stickers home with me.  However, about seven years ago, I took my trays home with me to wash.  This took me about 30 minutes to complete.  This only happened once.

6.     During my shifts, I am always given my full break time.  During a normal 8 hour day, I am given two 15 minute breaks, and a 30 minute lunch break.  My break times are never cut short, and I am not allowed to work during my breaks.  I do not work during my breaks, but I have seen other employees do this.  They only did this on days that they could earn a bonus for packing each box.

7.     I am provided with all the tools necessary to do my job.  The tools that the company gives me are adequate to perform my work.  However, I buy my own tools if they are of better quality and I like them better.

8.     When my crew moves locations during a shift, the company does not transport the workers.  However, I remain on the clock during this time, and am always paid for the time spent traveling from one block to another.

9.     If called as a witness I could testify to all of the foregoing based upon my personal knowledge.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on September ___9___ 2010, in Delano, California.

_Martha Lucio_
MARTA LUCIO

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

2

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

1

### DECLARATION OF LORENZO HURTADO

2     I declare that I am a certified translator (#300350) fluent in the Spanish language and that I read

3 the above declaration from English into Spanish to *Martha Lucio* . He/She indicated

4 to me that the declaration is true and correct to the best of his/her knowledge.  I declare under penalty

5 of perjury under the laws of the State of California and the laws of the United States of America that the

6 foregoing is true and correct.

7     Executed September _9_ , 2010 in Delano, California.

8

9                                           _____

10                                       LORENZO HURTADO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GRISWOLD, LaSALLE,
COBB, DOWD &
ODB, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

3

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

# EXHIBIT 95

RANDY L. EDWARDS, #105639
MICHAEL R. JOHNSON, #237767
LAURA A. WOLFE, #266751
GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 East Seventh Street
Hanford, CA 93230
Telephone (559) 584-6656
Facsimile (559) 582-3106
johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

Attorneys for Defendants, Delano Farms Company, et al.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| SABAS ARREDONDO, et al. | Case No.: 1:09-cv-01247-LJO-DLB |
| Plaintiffs, | **DECLARATION OF JOSE MANRIQUEZ** |
| v. | |
| DELANO FARMS COMPANY, et al. | |
| Defendants. | |

I, Jose Manriquez, declare as follows:

1.      I am currently an employee of T&R Bangi's Agricultural Services, Inc. ("T&R Bangi").

2.      While working for T&R Bangi, I am required to attend "escuelita" almost every morning at the beginning of my shift. During this school, the foreman gives us directions and talks about safety, such as how to avoid heat stress. School usually lasts 10-15 minutes. It is always held while employees are on the clock, and I am always paid for the time I spend in school. Sometimes the foreman holds "escuelita" twice during a shift if we are not picking correctly, or if we need further directions. We are paid for this time as well. On rare occasions, the foreman may elect to skip school because we are working at the same location as before, or because we are harvesting the same type of grape as before.

3.      As an employee of T&R Bangi, I am never required to perform work off the clock. If I arrive at the job site early, I am not required to begin work. I know that we are not supposed to begin setting up our tables prior to the shift starting. If anyone starts working early, the foreman tells

1

them to stop. However, I voluntarily begin setting up my packing table before the shift starts, even though I know I am not supposed to. This takes me about 2-3 minutes to do.

4. I am never required to do work after my shift has ended. During the harvest season, the foreman instructs us to stop picking grapes 15 minutes before the end of the shift. This allows us time to finish packing the grapes that have already been picked and to close our table up.

5. I am never required to work at home. I am not required to take my packing trays home with me to clean, and I know that I am not supposed to take the trays home with me. I am not required to put stickers on boxes or clamshells at home, and know that I am not supposed to take boxes, clamshell, or stickers home with me. During the first few years of my employment, I used to take trays home to clean them. I did this once a week and it took me about five minutes to complete. I do not take the trays home anymore.

6. During my shifts, I am always given my full break time. During a normal 8 hour day, I am given two 15 minute breaks, and a 30 minute lunch break. My break times are never cut short, and I am not allowed to work during my breaks. However, some employees work during their break period, even though we know it is not allowed. This is done because we earn a bonus for every box we pick, and therefore we can make more money if we pick more grapes.

7. I am provided with all the tools necessary to do my job. The tools that the company gives me are adequate to perform my work. However, I purchase my own tools because they are of a higher quality and I like them better.

8. When my crew moves locations during a shift, the company does not transport the workers. However, I remain on the clock during this time, and am always paid for the time spent traveling from one block to another.

9. If called as a witness I could testify to all of the foregoing based upon my personal knowledge.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on September _15_, 2010, in Delano, California.

_Jose Manriquez_
JOSE MANRIQUEZ

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

2

RECEIVE:          NO.3185          09/15/2010/WED 04:13PM          Griswold LaSalle

## DECLARATION OF DONETTE LANCASTER

I declare that I am a certified translator fluent in the Spanish language and that I read the above declaration from English into Spanish to __Jose Manriquez__. He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed September __15__, 2010 in Delano, California.


DONETTE LANCASTER

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

EXHIBIT 96

1  RANDY L. EDWARDS, #105639
   MICHAEL R. JOHNSON, #237767
2  LAURA A. WOLFE, #266751
   GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
3  111 East Seventh Street
   Hanford, CA 93230
4  Telephone (559) 584-6656
   Facsimile (559) 582-3106
5  johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

6  Attorneys for Defendants, Delano Farms Company, et al.

7              UNITED STATES DISTRICT COURT

8        EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

9  SABAS ARREDONDO, et al.              ) Case No.: 1:09-cv-01247-LJO-DLB
                                        )
10           Plaintiffs,                ) DECLARATION OF JESUS PANIAGUA
                                        )
11 v.                                   )
                                        )
12 DELANO FARMS COMPANY, et al.         )
                                        )
13           Defendants.                )

14     I, Jesus Paniagua, declare as follows:

15 1.   I am currently an employee of T&R Bangi's Agricultural Services, Inc. ("T&R Bangi").  My

16      current foreman is Amadeo Paniagua.

17 2.   While working for T&R Bangi, I am required to attend "escuelita" almost every morning at the

18      beginning of my shift.  During this school, the foreman gives us directions and talks about safety,

19      such as how to avoid heat stress, cuts, and how to avoid injury when dealing with heavy loads.

20      School usually lasts 10-15 minutes.  It is always held while employees are on the clock, and I am

21      always paid for the time I spend in school.  Sometimes the foreman holds "escuelita" twice

22      during a shift if we are not picking correctly, or if we need further directions.  We are paid for

23      this time as well.  On rare occasions, the foreman may elect to skip school because we are

24      working at the same location as before, or because we are harvesting the same type of grape as

25      before.  The foreman specifically tells us not to work before or after the shift ends, or during any

26      of our breaks.

GRISWOLD, LaSALLE,
CORB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

                                        1

                                                     Arredondo v. Delano Farms, et al.
                                                              DECLARATION

3.   As an employee of T&R Bangi, I am never required to perform work off the clock. If I arrive at the job site early, I am not required to begin work. I know that we are not supposed to begin setting up our tables prior to the shift starting. If anyone starts working early, the foreman tells them to stop.

4.   I am never required to do work after my shift has ended. During the harvest season, the foreman instructs us to stop picking grapes 15 minutes before the end of the shift. This allows us time to finish packing the grapes that have already been picked and to close our table up. Often, all work is completed prior to the end of the shift.

5.   I am never required to work at home. I am not required to take my packing trays home with me to clean, and I know that I am not supposed to take the trays home with me. I am not required to put stickers on boxes or clamshells at home, and know that I am not supposed to take boxes, clamshell, or stickers home with me. Three years ago, however, I would take the trays home to wash them. My foreman at the time told me to do this. However, this has not happened in the last three years.

6.   During my shifts, I am always given my full break time. During a normal 8 hour day, I am given two 15 minute breaks, and a 30 minute lunch break. My break times are never cut short, and I am not allowed to work during my breaks. I have seen some employees try to work during their breaks, but only during times when they are eligible for bonuses. If the foreman sees them working, he tells them to stop.

7.   I am provided with all the tools necessary to do my job. The tools that the company gives me are adequate to perform my work. The company began giving out these tools three years ago. Prior to that, I always brought my own tools.

8.   When my crew moves locations during a shift, the company does not transport the workers. However, I remain on the clock during this time, and am always paid for the time spent traveling from one block to another. If the new location is a close distance, the crew walks to it. We are

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

2

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

1   paid for this time.  If the new location is too far away, we are sent home and report at the new

2   location the next day.

3   9.      If called as a witness I could testify to all of the foregoing based upon my personal knowledge.

4          I declare under the penalty of perjury under the laws of the State of California that the foregoing

5   is true and correct and this declaration was executed on September 15, 2010, in Delano, California.

6

7                                        JESUS PANIAGUA
                                         **JESUS PANIAGUA**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

3

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

## DECLARATION OF DONETTE LANCASTER

I declare that I am a certified translator fluent in the Spanish language and that I read the above declaration from English into Spanish to _Jesus Paniagua_. He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed September 15, 2010 in Delano, California.


DONETTE LANCASTER

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

EXHIBIT 97

RANDY L. EDWARDS, #105639
MICHAEL R. JOHNSON, #237767
LAURA A. WOLFE, #266751
GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 East Seventh Street
Hanford, CA 93230
Telephone (559) 584-6656
Facsimile (559) 582-3106
johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

Attorneys for Defendants, Delano Farms Company, et al.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| SABAS ARREDONDO, et al. | Case No.: 1:09-cv-01247-LJO-DLB |
| Plaintiffs, | **DECLARATION OF SANDRA ROCHA** |
| v. | |
| DELANO FARMS COMPANY, et al. | |
| Defendants. | |

I, Sandra Rocha, declare as follows:

1.      I am currently an employee of T&R Bangi's Agricultural Services, Inc. ("T&R Bangi").

2.      While working for T&R Bangi, I am required to attend "escuelita" almost every morning at the beginning of my shift. During this school, the foreman gives us directions and talks about safety, such as how to avoid heat stress. School usually lasts 10-15 minutes. It is always held while employees are on the clock, and I am always paid for the time I spend in school. Sometimes the foreman holds "escuelita" twice during a shift if we are not picking correctly, or if we need further directions. We are paid for this time as well. On rare occasions, the foreman may elect to skip school because we are working at the same location as before, or because we are harvesting the same type of grape as before.

3.      As an employee of T&R Bangi, I am never required to perform work off the clock. If I arrive at the job site early, I am not required to begin work. I know that we are not supposed to begin setting up our tables prior to the shift starting. If anyone starts working early, the foreman tells

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

*Arredondo v. Delano Farms, et al.*
*DECLARATION*

1    them to stop. I have seen some employees begin setting up their table before the shift starts.

2    They only do this when they are eligible to earn a bonus.

3   4.    I am never required to do work after my shift has ended. During the harvest season, the foreman

4      instructs us to stop picking grapes 15 minutes before the end of the shift. This allows us time

5      to finish packing the grapes that have already been picked and to close our table up. However,

6      on very rare occasions I have had to stay late to finish packing grapes. The longest I have ever

7      had to stay is 10 minutes.

8   5.    I am never required to work at home. I am not required to take my packing trays home with me

9      to clean, and I know that I am not supposed to take the trays home with me. I am not required

10     to put stickers on boxes or clamshells at home, and know that I am not supposed to take boxes,

11     clamshell, or stickers home with me.

12   6.    During my shifts, I am always given my full break time. During a normal 8 hour day, I am given

13     two 15 minute breaks, and a 30 minute lunch break. My break times are never cut short, and I

14     am not allowed to work during my breaks.

15   7.    I am not always provided with all the tools necessary to do my job. If I am not present on the first

16     day of "tipping," the company does not provide me with clippers. When this happens, I have to

17     buy my own. I have never asked the company to provide me with clippers, and I do not know

18     if they would provide them to me.

19   8.    When my crew moves locations during a shift, the company does not transport the workers.

20     However, I remain on the clock during this time, and am always paid for the time spent traveling

21     from one block to another.

22   9.    If called as a witness I could testify to all of the foregoing based upon my personal knowledge.

23     I declare under the penalty of perjury under the laws of the State of California that the foregoing

     is true and correct and this declaration was executed on September ____ , 2010, in Delano, California.

24

25                         *Sandra Rocha*
                           SANDRA ROCHA

26

GRISWOLD, LaSALLE,
COBB, DOWD &
OIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

                                       2

                                               *Arredondo v. Delano Farms, et al.*
                                                    *DECLARATION*

### DECLARATION OF LORENZO HURTADO

I declare that I am a certified translator (#300350) fluent in the Spanish language and that I read the above declaration from English into Spanish to ___Sandra Rocha___. He/She indicated to me that the declaration is true and correct to the best of his/her knowledge. I declare under penalty of perjury under the laws of the State of California and the laws of the United States of America that the foregoing is true and correct.

Executed September _9_, 2010 in Delano, California.

_____
LORENZO HURTADO

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

3

*Arredondo v. Delano Farms, et al.*
*DECLARATION*



EXHIBIT 98

## DECLARATION OF MANUEL BOTELLO

I, Manuel Botello, declare as follows:

1.     I am aware that this is the same exact declaration that I previously signed.  I am now signing this declaration in further support of Plaintiffs' Motion for Class Certification.

2.     The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I would and competently do so under oath.

3.     I was an employee of Delano Farms and Cal-Pacific.  I started working for Delano Farms and Cal-Pacific as a foreman in 2006 during the pruning and picking seasons.  In 2006, I oversaw a crew of approximately forty-five employees.  In 2008, I was also a foreman during the pruning and picking seasons.  In 2008, the crew I supervised during the non-harvest included approximately thirty employees.  In 2008, the crew I supervised during the harvest included approximately forty-five employees. As a foreman, I was responsible for recording the times that employees started work, took breaks or meal periods, and stopped working.   I was also responsible for giving daily instructions, supervising the work performed by my crew, and ensuring that the work was done as required by Delano Farms and Cal-Pacific.  I had the authority to discipline employees.  I would normally talk to the employees in my crew first if there was an issue or a problem.

4.     As a foreman I did not perform the agricultural work that the employees in my crew performed.  Instead, my job required me to walk around the rows during the work day to ensure that the work was being done properly.  During the time that I worked as a foreman I worked under the supervision of Tony Hilario.  Tony Hilario is the supervisor for all of the Delano Farms and Cal-Pacific foremen and crews in the Arvin and Lamont,

976488.1

1   California area.

2

3      5.     In 2007, I worked as a non-supervisory employee for Delano Farms and Cal-

4   Pacific.  In 2009, I was also a non-supervisory employee during the pruning season and

5   worked in Juan Duran's crew.  I have not since worked at Delano Farms and Cal-Pacific.

6

7      6.     When I worked as a foreman I was paid $13.75 an hour.  I worked more than

8   ten hours per day, six days a week and I also received a bonus of three cents for every box

9   of grapes picked and packed by the groups in my crew.  When I worked as a field worker I

10   was paid $8.10 an hour.  I worked more than my scheduled hours of 8 to 10 hours a day,

11   up to 6 days a week.

12

13      7.     At the start of the harvest, I asked Mr. Hilario if he had the tools that were

14   necessary for the employees to do their work, and was going to provide them to me to give

15   to the employees to use.  He replied no.  I asked him what I was to do if employees did not

16   take their own tools to work.  He told me that I was to send them home.  Based on the

17   above, I told the employees in my crew that they had to take their own tools to work that

18   were necessary to perform the work.

19

20      8.     When I worked as a field worker in Juan Duran's crew, I was required to take

21   my own tools and equipment that were needed for my job to work.  I had to buy three

22   pruning shears for approximately $45.00 each, two blades for approximately $25.00 each,

23   a pair of rubber stoppers for approximately $6.00 to $9.00 a pair and two pairs of gloves

24   each week for a month that cost $1.99 each pair.

25

26      9.     During the harvest when I was a foreman for Delano Farms and Cal-Pacific,

27   Tony Hilario instructed me to give trainings and instruction related to heat, pesticides and

28   safety before the official start of the work day or during the employees' breaks.  I was also

976488.1                                    2

1 told to give "Escula" every day. "Escuela" or "school" is instructions given to employees

2 before they start to work and before the official start time of the work day.

3

4     10.   During the harvest all employees were required to have their packing tables

5 set up before the official start time. This meant that employees had to take the table from

6 within the rows, open the table and gather the materials on the table. These materials

7 included the boxes and plastic bags that grapes were picked into. In addition, the

8 employees had to place labels on the boxes prior to the official start time of the work day.

9 If a worker did not complete this preparatory work prior to the start time each day, he was

10 disciplined. All employees in my crew complied with my instructions.

11

12     11.   Tony Hilario told me he wanted everything set up during the harvest, so at

13 the official start time employees could go straight into the fields and start picking. I was

14 told by Tony Hilario to tell employees they had to arrive to work 15 to 30 minutes before

15 the official start time in order to prepare their work areas, attend "escuela" and sign in on a

16 sheet that they had to sign every morning during the harvest. I instructed the harvesters as

17 told by Tony. Harvesters were not paid for the time they spent preparing their work area

18 or attending "escuela." In fact, I was instructed to write down only the official start and

19 stop times of the harvest work day on the timesheets I turned into the office. Attached to

20 this declaration as Exhibit A is a copy of a typical time sheet I prepared in September 2008

21 during the harvest. The times I wrote down as the times the employees started and stopped

22 work each day were provided to me in advance of the work day by Supervisor Hilario on

23 separate sheet of paper. The start and stop times I entered for my crew did not reflect

24 actual start and stop times of the employees' work days. That was company policy. It was

25 my understanding as a foreman that this was the regular practice with respect to recording

26 work times for field employees at Delano Farms and Cal-Pacific.

27

28     12.   When I worked as a field worker during the pre-harvest work (for example

976488.1        3

1  pruning) in Juan Duran's crew, I was required to arrive at the job site five to ten minutes
2  before the official start time to do preparatory work prior to the official start time. During
3  the pre-harvest, in addition I also had to attend "escuela" one to two times per week.
4  "Escuela" lasted approximately ten minutes. I was not paid for the time I spent preparing
5  my tools and materials or attending "escuela."
6
7      13.    When I worked as a foreman during the harvest, I was instructed by Tony
8  Hilario to call out to the employees in my crew to stop picking fifteen minutes before the
9  official stop time of the work day, so that harvesters begin putting away their tables and
10 packing materials such as boxes, plastic bags and labels. Harvesters are also required to
11 pick up trash and finish packing any remaining boxes in their groups. It was my experience
12 as a foreman that employees used most or all of those fifteen minutes to maximize their
13 production and piece rate incentive. Harvesters were not paid for partial boxes, but only
14 completed boxes. Consequently, harvesters seldom use that fifteen minutes to put away
15 their tables and packing materials. In fact, every day in the harvest, many harvesters had to
16 stay ten to fifteen minutes beyond the official stop time to put away their tables and
17 packing materials. The employees were not paid for the time they spent finishing their
18 work after the official end of their shift.
19
20     14.    When I worked for Delano Farms and Cal-Pacific as a field worker during
21 the pruning season in 2009, there were times I had to remain working approximately
22 fifteen minutes after the official stop time because Juan Duran, the foreman asked our crew
23 to finish a block. I was not paid for the time I spent finishing my work. This happened
24 approximately three to four times during a two month period.
25
26     15.    When I was a foreman for Delano Farms and Cal-Pacific during the harvest
27 seasons of 2007 and 2008, Tony Hilario instructed me to order the employees to take the
28 picking trays to their homes to be washed and returned to work the following day. The

976488.1                                4

1   employees were not paid for this work that they did at their homes.

2

3      I declare under penalty of perjury under the laws of the United States of America

4   that the foregoing is true and correct.  Executed in Lamont, California on

5

6

7   __January  24__ , 2011.

8

9

10                                _Manuel Botello_

11                                    Manuel Botello

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPANY _Lunch Bunch, Martin_ MEN _44+2_ DATE _9/29/08_ RATE _8.10_

FOREMAN _Manuel Botello_ CHECKER _Natalia Pedrigu_ TOTAL HRS _____

RANCH _Canal_ BLK _____ HRS _25_ VARIETY _Crimson_

RANCH _____ BLK _____ HRS _____ VARIETY _____

WORK _Picking_ TOTAL VINE _____ TOTAL BOXES _944_

| | EMPOYEE'S NAME | ID # | IN | OUT | IN | OUT | IN | OUT | IN | OUT | HRS | BOXES | VINES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Patricia Garcia | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 14 | |
| 2 | Enedina Mosqueda | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 13 | |
| 3 | Claudia Aguire | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 19 | |
| 4 | Fernando Jimenes | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 23 | |
| 5 | Carmen Garcia | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 27 | |
| 6 | Bertaldo Hernandes | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 27 | |
| 7 | Margarito DAZA | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 26 | |
| 8 | Maria E. Lara | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 26 | |
| 9 | Jose L. Alvares | | 6:45 | 9:01 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 26 | |
| 10 | Susana Lugo P. | | 6:45 | 9:00 | 9:15 | 11:55 | | — | — | 11:55 | 5 | 12 | |
| 11 | Alexis Calderon | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 22 | |
| 12 | Luis A. Rosique | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 22 | |
| 13 | Guadalupe Martinez | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 27 | |
| 14 | Francisco Cuevas | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:20 | 1:00 | 3:15 | 8 | 21 | |
| 15 | Abel Gonzales | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:32 | 1:00 | 3:15 | 8 | 21 | |
| 16 | Aron Jesus Montalvo | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 21 | Benti mais n |
| 17 | Priciliano Jesus Rosales | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 24 | |
| 18 | Gregorio Gonzales | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 24 | |
| 19 | Rema Arceo | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 23 | |
| 20 | Javier Arceo | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 17 | |
| 21 | Alina Cortes | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 17 | |
| 22 | Noelia Galeano | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 17 | |
| 23 | Josefina Hernandes | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 21 | |
| 24 | Vicente Hernandes | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 21 | |
| 25 | Carmen Corona | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 22 | |
| 26 | Gilberto Corona | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 20 | |
| 27 | Beatris Villalobos | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 20 | |
| 28 | Lorena Savala | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 20 | |
| 29 | Alejandro Sanches | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 20 | |
| 30 | Jaime Nava | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 20 | |
| 31 | Elaine Peres | | 6:45 | 9:00 | 9:15 | 11:15 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 19 | |
| 32 | Mario Morales | | 6:45 | 9:00 | 11:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 19 | |
| 33 | Samuel Areguin | | 6:45 | 9:00 | 9:15 | 11:45 | — | — | — | 11:45 | 5 | 19 | |
| 34 | Abel Rodrigues | | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 21 | |

COMPANY __Lunch Bunch markai__ MEN __44/2__ DATE __9/24/08__ RATE __$8.16__

FOREMAN __Manuel Botello__ CHECKER __Natalia Rodrigues__ TOTAL HRS ____

RANCH __Cara 1__ BLK ____ HRS __8__ VARIETY __Crimson__

RANCH _____ BLK ____ HRS ____ VARIETY _____

WORK __picking__ TOTAL VINE _____ TOTAL BOXES __944__

| | EMPOYEE'S NAME | ID # | IN | OUT | IN | OUT | IN | OUT | IN | OUT | HRS | BOXES | VINES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Mayra Rodrigues | 684-20 8116 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 27 | |
| 2 | Eulalia Bautista | 84608 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 28 | |
| 3 | Rosa Bautista | 603-76 8418 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 28 | |
| 4 | Diana Bautista | 606-8 1414 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 28 | |
| 5 | Daniel zaragosa | 614-26 3809 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 5 | 21 | |
| 6 | Ana M. Garcia | 619-36 5610 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 31 | |
| 7 | Jose mendoza | 631-79 3678 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 20 | |
| 8 | Oswaldo Ayala | 618-36 8347 | 6:45 | 9:00 | 9:45 | 11:45 | — | — | — | 11:45 | 5 | 15 | |
| 9 | Lazaro Ayala | 626-37 8353 | 6:45 | 9:00 | 9:15 | 11:45 | — | — | — | 11:45 | 5 | 14 | |
| 10 | Juan Daniel Posique | 60987 6887 | 6:45 | 9:00 | 9:15 | 11:45 | 12:15 | 1:30 | 1:40 | 3:15 | 8 | 22 | |
| 11 | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | |
| 13 | Manuel Botello | 0310 | | | | | | | | | | | |
| 14 | Natalia Rodrigues | 623-79 5006 | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | |
| 22 | | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | |
| 26 | | | | | | | | | | | | | |
| 27 | | | | | | | | | | | | | |
| 28 | | | | | | | | | | | | | |
| 29 | | | | | | | | | | | | | |
| 30 | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | |
| 32 | | | | | | | | | | | | | |
| 33 | | | | | | | | | | | | | |
| 34 | | | | | | | | | | | | | |

<u>Declaration of Interpreter/Translator</u>

I, Eva Vasquez-Camacho, declare that I am certified by the State of California as a Court Interpreter/Translator in good standing as described in GC 68561.

I am duly certified to interpret and translate from Spanish to English and English to Spanish and have met all the proficiency requirements set by the State of California, per Certification number 301273, issued by the Administrative Office of the Courts.

I further declare that I read and translated the attached "Declaration of Manuel Botello," to Manuel Botello from the English to the Spanish Language and that it is a true and accurate translation of said document.  He further indicated to me that his declaration is true and correct to the best of his knowledge, and signed it on January 24, 2011.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Signed this 24th day of January of 2011, in Lamont, California, County of Kern.


By:  Eva Vasquez-Camacho


State Certified Court Interpreter

Certification No. 301273

-1

## DECLARATION OF MANUEL BOTELLO

I, Manuel Botello declare as follows:

    1.    The facts set forth herein are true of my own personal knowledge, and if called upon to testify, I would and competently do so under oath.

    2.    I was an employee of Delano Farms and Cal-Pacific. I started working for Delano Farms and Cal-Pacific as a foreman in 2006 during the pruning and picking seasons. In 2006, I oversaw a crew of approximately forty-five employees. In 2008, I was also a foreman during the pruning and picking seasons. In 2008, the crew I supervised during the non-harvest included approximately thirty employees. In 2008, the crew I supervised during the harvest included approximately forty-five employees. As a foreman, I was responsible for recording the times that employees started work, took breaks or meal periods, and stopped working. I was also responsible for giving daily instructions, supervising the work performed by my crew, and ensuring that the work was done as required by Delano Farms and Cal-Pacific. I had the authority to discipline employees. I would normally talk to the employees in my crew first if there was an issue or a problem.

    3.    As a foreman I did not perform the agricultural work that the employees in my crew performed. Instead, my job required me to walk around the rows during the work day to ensure that the work was being done properly. During the time that I worked as a foreman I worked under the supervision of Tony Hilario. Tony Hilario is the supervisor for all of the Delano Farms and Cal-Pacific foremen and crews in the Arvin and Lamont, California area.

    4.    In 2007, I worked as a non-supervisory employee for Delano Farms and Cal-Pacific. In 2009, I was also a non-supervisory employee during the pruning season and worked in Juan Duran's crew. I have not since worked at Delano Farms and Cal-Pacific.

5.     When I worked as a foreman I was paid $13.75 an hour. I worked more than ten hours per day, six days a week and I also received a bonus of three cents for every box of grapes picked and packed by the groups in my crew. When I worked as a field worker I was paid $8.10 an hour. I worked more than my scheduled hours of 8 to 10 hours a day, up to 6 days a week.

6.     At the start of the harvest, I asked Mr. Hilario if he had the tools that were necessary for the employees to do their work, and was going to provide them to me to give to the employees to use. He replied no. I asked him what I was to do if employees did not take their own tools to work. He told me that I was to send them home. Based on the above, I told the employees in my crew that they had to take their own tools to work that were necessary to perform the work.

7.     When I worked as a field worker in Juan Duran's crew, I was required to take my own tools and equipment that were needed for my job to work. I had to buy three pruning shears for approximately $45.00 each, two blades for approximately $25.00 each, a pair of rubber stoppers for approximately $6.00 to $9.00 a pair and two pairs of gloves each week for a month that cost $1.99 each pair.

8.     During the harvest when I was a foreman for Delano Farms and Cal-Pacific, Tony Hilario instructed me to give trainings and instruction related to heat, pesticides and safety before the official start of the work day or during the employees' breaks. I was also told to give "Escuela" every day. "Escuela" or "school" is instructions given to employees before they start to work and before the official start time of the work day.

9.     During the harvest all employees were required to have their packing tables set up before the official start time. This meant that employees had to take the table from within the rows, open the table and gather the materials on the table. These materials

1   included the boxes and plastic bags that grapes were picked into.  In addition, the

2   employees had to place labels on the boxes prior to the official start time of the work day.

3   If a worker did not complete this preparatory work prior to the start time each day, he was

4   disciplined.  All employees in my crew complied with my instructions.

5

6         10.   Tony Hilario told me he wanted everything set up during the harvest, so at

7   the official start time employees could go straight into the fields and start picking.  I was

8   told by Tony Hilario to tell employees they had to arrive to work 15 to 30 minutes before

9   the official start time in order to prepare their work areas, attend "escuela" and sign in on a

10  sheet that they had to sign every morning during the harvest.  I instructed the harvesters as

11  told by Tony.  Harvesters were not paid for the time they spent preparing their work area

12  or attending "escuela."  In fact, I was instructed to write down only the official start and

13  stop times of the harvest work day on the timesheets I turned into the office.  Attached to

14  this declaration as Exhibit A is a copy of a typical time sheet I prepared in September 2008

15  during the harvest.  The times I wrote down as the times the employees started and stopped

16  work each day were provided to me in advance of the work day by Supervisor Hilario on a

17  separate sheet of paper.  The start and stop times I entered for my crew did not reflect

18  actual start and stop times of the employees' work days.  That was company policy.  It was

19  my understanding as a foreman that this was the regular practice with respect to recording

20  work times for field employees at Delano Farms and Cal-Pacific.

21

22        11.   When I worked as a field worker during the pre-harvest work (for example

23  pruning) in Juan Duran's crew, I was required to arrive at the job site five to ten minutes

24  before the official start time to do preparatory work prior to the official start time.  During

25  the pre-harvest, in addition I also had to attend "escuela" one to two times per week.

26  "Escuela" lasted approximately ten minutes.  I was not paid for the time I spent preparing

27  my tools and materials or attending "escuela."

28

12.     When I worked as a foreman during the harvest, I was instructed by Tony Hilario to call out to the employees in my crew to stop picking fifteen minutes before the official stop time of the work day, so that harvesters begin putting away their tables and packing materials such as boxes, plastic bags and labels.  Harvesters are also required to pick up trash and finish packing any remaining boxes in their groups.  It was my experience as a foreman that employees used most or all of those fifteen minutes to maximize their production and piece rate incentive.  Harvesters were not paid for partial boxes, but only completed boxes.  Consequently, harvesters seldom use that fifteen minutes to put away their tables and packing materials.  In fact, every day in the harvest many harvesters had to stay ten to fifteen minutes beyond the official stop time to put away their tables and packing materials.  The employees were not paid for the time they spent finishing their work after the official end of their shift.

13.     When I worked for Delano Farms and Cal-Pacific as a field worker during the pruning season in 2009, there were times I had to remain working approximately fifteen minutes after the official stop time because Juan Duran, the foreman asked our crew to finish a block.  I was not paid for the time I spent finishing my work.  This happened approximately three to four times during a two month period.

14.     When I was a foreman for Delano Farms and Cal-Pacific during the harvest seasons of 2007 and 2008, Tony Hilario instructed me to order the employees to take the picking trays to their homes to be washed and returned to work the following day.  The employees were not paid for this work that they did at their homes.

/ / /

/ / /

/ / /

/ / /

921683.1

1     I declare under penalty of perjury under the laws of the United States of America

2   that the foregoing is true and correct. Executed in Lamont, California on

3

4

5   September 17 , 2009.

6

7

8                                              Manuel Botello

9                                              Manuel Botello

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

921683.1

COMPANY __Lunch Bunch / Martin__  MEN __44+2__  DATE __9/29/08__  RATE __$8.10__

FOREMAN __Manuel Botello__  CHECKER __Natalia Pedrigu__  TOTAL HRS ____

RANCH __Canal__  BLK ____  HRS __5__  VARIETY __Crimson__

RANCH _____  BLK ____  HRS ____  VARIETY _____

WORK __Picking__  TOTAL VINE _____  TOTAL BOXES __944__

| # | EMPLOYEE'S NAME | ID # | IN | OUT | IN | OUT | IN | OUT | IN | OUT | HRS | BOXES | VINES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Patricia Garcia | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 14 | |
| 2 | Enedina Mosqueda | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | | |
| 3 | Claudia Aguire | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 13 | |
| 4 | Fernando Jimenes | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 19 | |
| 5 | Carmen Garcia | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 23 | |
| 6 | Bertaldo Hernandes | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 27 | |
| 7 | Margarito Daza | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 27 | |
| 8 | Maria E. Lara | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 26 | |
| 9 | Jose L. Alvares | | 6.45 | 9.00 | 9.15 | 11.00 | — | — | — | 11.45 | 5 | 26 | |
| 10 | Susana Lugo P. | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 12 | |
| 11 | Alexis Calderon | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 22 | |
| 12 | Luis A. Rosique | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 22 | |
| 13 | Guadalupe Martinez | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.20 | 1.40 | 3.15 | 5 | 21 | |
| 14 | Francisco Cuevas | | 6.45 | 9.00 | 9.00 | 11.15 | 12.15 | 1.32 | 1.40 | 3.15 | 5 | 21 | |
| 15 | Abel Gonzales | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 21 | |
| 16 | Aron Jesus Montalvo | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 21 | Beach mark |
| 17 | Priciliano Jesus Rosales | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.00 | 3.15 | 5 | 24 | |
| 18 | Gregorio Gonzales | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 24 | |
| 19 | Rema Arceo | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 23 | |
| 20 | Javier Arceo | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 17 | |
| 21 | Alina Cortes | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 17 | |
| 22 | Noelia Galeano | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 17 | |
| 23 | Josefina Hernandes | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 21 | |
| 24 | Vicente Hernandes | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 21 | |
| 25 | Carmen Corona | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 22 | |
| 26 | Gilberto Corona | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 20 | |
| 27 | Beatris Villalobos | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 20 | |
| 28 | Lorena Savala | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 20 | |
| 29 | Alejandro Sanches | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 20 | |
| 30 | Jaime Nava | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 20 | |
| 31 | Elaine Peres | | 6.45 | 9.00 | 9.15 | 11.15 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 19 | |
| 32 | Mario Morales | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 19 | |
| 33 | Samuel Aregun | | 6.45 | 9.00 | 9.15 | 11.45 | — | — | — | 11.05 | 5 | 19 | |
| 34 | Abel Rodriguez | | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 27 | |

COMPANY _Lindi Bunch Market_   MEN _44/2_ DATE _9/24/08_ RATE _$8.16_

FOREMAN _manuel Botello_ CHECKER _Natalia Rodrigues_ TOTAL HRS _____

RANCH _Caral_ BLK _____ HRS _5_ VARIETY _Crimson_

RANCH _____ BLK _____ HRS _____ VARIETY _____

WORK _picking_   TOTAL VINE _____   TOTAL BOXES _944_

| | EMPLOYEE'S NAME | ID # | IN | OUT | IN | OUT | IN | OUT | IN | OUT | HRS | BOXES | VINES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Mayra Rodrigues | 6912 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 8 | 27 | |
| 2 | Eulalia Bautista | 8968 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 8 | 28 | |
| 3 | Rosa Bautista | 59270 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 8 | 28 | |
| 4 | Diana Bautista | 666-85 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 8 | 28 | |
| 5 | Daniel Zaragosa | 611-26 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 5 | 21 | |
| 6 | Ana m. Garcia | 619-30 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 8 | 21 | |
| 7 | Jose Mendoza | 631-12 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 8 | 20 | |
| 8 | Oswaldo Ayala | 6854 | 6.45 | 9.00 | 9.45 | 11.45 | — | — | — | 11.45 | 5 | 15 | |
| 9 | Lazaro Ayala | 6854 | 6.45 | 9.00 | 9.15 | 11.45 | — | — | — | 11.45 | 5 | 14 | |
| 10 | Juan Daniel Posique | 6887 | 6.45 | 9.00 | 9.15 | 11.45 | 12.15 | 1.30 | 1.40 | 3.15 | 8 | 22 | |
| 11 | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | |
| 13 | Manuel Botello | 0310 | | | | | | | | | | | |
| 14 | Natalia Rodrigues | 6377 | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | |
| 22 | | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | |
| 26 | | | | | | | | | | | | | |
| 27 | | | | | | | | | | | | | |
| 28 | | | | | | | | | | | | | |
| 29 | | | | | | | | | | | | | |
| 30 | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | |
| 32 | | | | | | | | | | | | | |
| 33 | | | | | | | | | | | | | |
| 34 | | | | | | | | | | | | | |

# DECLARATION OF MANUEL BOTELLO

I declare that I am fluent in the Spanish language and that I read the above declaration from English into Spanish to **MANUEL BOTELLO.** He indicated to me that the declaration is true and correct to the best of his knowledge. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed September 17, 2009 in Lamont, California.

Jessica Arciniega

921683.1

# EXHIBIT 99

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

_____

SABAS ARREDONDO, JOSE          )
CUEVAS, et al.,                )
                               )
          Plaintiffs,          )
                               ) Case No.
     vs.                       )
                               ) 1:09-CV-01247-LJO-DLB
DELANO FARMS COMPANY, a        )
Washington State               )
Corporation; et al.,           )
                               )
          Defendants.          )
                               )


DEPOSITION OF:

                    DOLORES MENDEZ
              Monday, November 29, 2010
                    10:03 a.m.


Reported By:  Annette R. Hughes-Norfolk, CSR No. 10048

45

1      A.   It also depends how many -- how much grapes

2    they need out of that block.

3      Q.   When does -- when does the grape harvest

4    season peak for production, approximately?

5      A.   Since we start -- we start with --

6      Q.   You start in the -- when the grape is green;

7    correct?

8      A.   When it's green.

9      Q.   So it takes some time to build up to peak;

10   correct?

11     A.   Yes.

12     Q.   So for a block --

13          THE REPORTER:  Hold on.

14          MR. LYNCH:  I'm sorry.

15     Q.   Is it true that in August you're at peak

16   production in the grape harvest?

17          MR. JOHNSON:  Objection; calls for

18   speculation.  Lacks foundation.  Misstates prior

19   testimony.

20          You may answer.

21   BY MR. LYNCH:

22     Q.   You may answer.

23     A.   Yes.  It could be, yes.

24     Q.   Okay.  And then it would -- it would remain

25   at peak into October; correct?

46

1          MR. JOHNSON:  Objection; lacks foundation.

2     Calls for speculation.

3          THE WITNESS:  Yes, it could be the best

4     months, August, September, October.  It could be --

5     BY MR. LYNCH:

6          Q.  Thank you.  Thank you.

7          A.  -- production.

8          Q.  So during those months, the good months, the

9     three good months in the middle of the harvest, do you

10    normally harvest an entire block before moving to

11    another location?

12         A.  Yes.

13         Q.  And how long does it take you to do a block,

14    on average?

15         A.  Some three weeks, I think.

16         Q.  All right.  So is it fair to say that every

17    three weeks your crew changes location?

18         A.  Yes, it could be.

19         Q.  And how do you communicate that change in

20    location to your crew?

21         A.  I have all the information, the phone number.

22    I call them, "There's going to be a change tomorrow."

23         Q.  So you have a phone list?

24         A.  Correct.

25         Q.  And I presume that workers call other workers

71

1    speculation.

2    BY MR. LYNCH:

3        Q.  Can you give us an idea of how many workers

4    in your crew during the three busy months of harvest

5    choose to use their own pruning shears?

6            MR. JOHNSON:  Objection; lacks foundation.

7    Calls for speculation.  Misstates the prior testimony.

8            You can answer, if you know the answer.

9            THE WITNESS:  The majority bring their

10   clippers.  They don't want the clippers of the --

11   BY MR. LYNCH:

12       Q.  Of the company?

13       **A.  Uh-huh.**

14       Q.  Thank you.  And is the same true for gloves?

15       **A.  Correct.**

16       Q.  Thank you.  Bless you.

17           THE INTERPRETER:  Excuse me.

18   BY MR. LYNCH:

19       Q.  In the thinning, are there any tools that are

20   necessary to do the work?

21           MR. JOHNSON:  Objection; calls for a legal

22   conclusion as to what is "necessary."  Lacks

23   foundation.  Calls for speculation.

24           THE WITNESS:  In the thinning, it's just

25   gloves.  In the thinning, it's only removing the

72

1   leaves.

2   BY MR. LYNCH:

3       Q.   So that's deleafing, correct, or pulling the

4   leaves?

5       **A.   Correct.**

6       Q.   At some point people need clippers, though,

7   right?  Is that the tipping?

8       **A.   On the tipping -- on the tipping, that's when**

9   **they give them to us.**

10      Q.   And the tipping is just before the harvest?

11      **A.   Yes.**

12      Q.   What do workers need to do the tipping?

13           MR. JOHNSON:   Objection; calls for a legal

14   conclusion as to what they "need."  Lacks foundation.

15   Calls for speculation.

16           THE WITNESS:   The 30 receive the clippers.

17   BY MR. LYNCH:

18      Q.   What time of year is that?

19      **A.   Like, in April.**

20      Q.   Okay.  Do any of -- do any of the 30 prefer

21   to use their own?

22      **A.   No.   They all use them because the clippers,**

23   **they're very sharp; they all use them.   And in the**

24   **pruning, it's different.   Because the -- the shears,**

25   **they're larger, and they want small ones.**

73

1     Q.   So when the harvest gets started, you

2  gradually increased the size of the crew; correct?

3     **A.   Correct.**

4     Q.   And it gets to be 60 people; correct?

5     **A.   Correct.**

6     Q.   Now, at that time are some of the people

7  bringing their own harvest clippers?

8     **A.   In the harvest, they give us another 30.**

9  **Some want them, some no.**

10     Q.   And can you give us a good faith estimate of

11  the percent of people that don't want company clippers

12  in the harvest but want to use their own?

13     MR. JOHNSON:   Objection; calls for

14  speculation.  Lacks foundation.

15     Go ahead.

16     THE WITNESS:   They all use them because

17  they're very sharp.  They're new.

18  BY MR. LYNCH:

19     Q.   And how long do they stay new?

20     MR. JOHNSON:   Objection; calls for

21  speculation.  Calls for expert opinion.

22     THE WITNESS:   Continue being new, I didn't

23  understand.

24  BY MR. LYNCH:

25     Q.   Do harvesters normally go through

89

1    harassment.

2         Q.   Is that education?

3         A.   Correct.

4         Q.   Any other meetings?

5         A.   No.

6         Q.   Do you ever have school?

7              MR. JOHNSON:   School for the foremen?

8    BY MR. LYNCH:

9         Q.   Do you know what I mean by that?

10        A.   Yes.   It could be school for the workers,

11   school for me.

12        Q.   How often do the -- again, the harvest, how

13   often do the workers get schooled?

14        A.   If it's about the -- the harvest, it's -- it

15   could be every day.

16        Q.   And do you conduct that school?

17        A.   Yes.

18        Q.   Does anybody else -- is there any other

19   supervisor present?

20        A.   Sometimes -- well, yes, they're there.

21        Q.   Usually or just sometimes?

22        A.   Usually.

23        Q.   Would that be the assigned supervisor that

24   you mentioned earlier?

25        A.   Correct.

91

1          MR. LYNCH:  I think I've got another half

2      hour easily.  So I think we're looking at 1:00 or --

3          MR. JOHNSON:  Do you want to go and then come

4      back?

5          MR. LYNCH:  No, I prefer not to.  I prefer to

6      get through this a little bit.

7          MR. JOHNSON:  Okay.  I'll tell you what.

8      Let's say at one o'clock we're going to go to lunch,

9      whether you're finished with her or not.  Then we can

10     come back with her if you need to.

11         MR. LYNCH:  Thank you.  One o'clock is fair.

12         MR. JOHNSON:  Thank you.  Thank you.

13     Perfect.

14     BY MR. LYNCH:

15         Q.  How long does school take place?  How long

16     does it take?

17         **A.  If it's for the grapes to know what's going**

18     **to be picked, what we're going to do, if we are going**

19     **to pack loosely or in bags, it lasts about 15 minutes.**

20         Q.  And that's during the harvest; correct?

21         A.  Correct.

22         Q.  And that's been true for the 10 years that

23     you've been a foreperson; correct?

24         A.  Correct.

25         Q.  What time does work usually start in

94

1   there's no school.  If there's school, we get together.

2        Q.  So if there's school, they come back away

3   from their table and join the school; is that your

4   testimony?

5             MR. JOHNSON:  Objection; misstates prior

6   testimony.  Calls for speculation.  Lacks foundation.

7             THE WITNESS:  Correct.  We'll call.  We say,

8   "escuela" -- school, and they come back.

9   BY MR. LYNCH:

10        Q.  Do you inspect the tables?

11             MR. JOHNSON:  Vague as to "inspection."

12   BY MR. LYNCH:

13        Q.  In the morning.

14        A.  No.

15        Q.  Do the tables fold up at night?

16        A.  Correct.

17        Q.  Do you check to see if they're open?

18        A.  Yes.

19             MR. JOHNSON:  Vague as to when does she

20   check.

21   BY MR. LYNCH:

22        Q.  What would you look for to see if they're

23   open?

24        A.  It's obvious if they're open.

25        Q.  Okay.  And you would check that at 6:00;

101

1    question.

2              THE WITNESS:  If that day I know where the

3    move is going to be, I will tell them where.

4    BY MR. LYNCH:

5         Q.  Okay.  When will you tell them?

6         **A.  When we shout 15 minutes before, I tell them,**

7    **"Everybody here," and I will tell them the change.**

8         Q.  And that's when you tell them about the

9    change and work location?

10        **A.  Correct.**

11        Q.  The workers never leave unpacked harvested

12   grapes in the fields, do they?

13             MR. JOHNSON:  Objection; calls for

14   speculation.  Lacks foundation.

15   BY MR. LYNCH:

16        Q.  You can answer.

17        **A.  No.**

18        Q.  Thank you.  And are workers paid for

19   partially filled boxes?

20             Do they get an incentive if they only

21   partially fill a box?

22        **A.  Correct.**

23        Q.  They will get -- they will get a count for

24   that?

25             Would you like me to repeat it?  I don't mean

102

1    to confuse you.

2         A.   Yes.   They pay them from the bonus that they

3    pay them.

4         Q.   Right, the incentive.  Do they -- does the

5    company pay incentive if the box is half full?

6         A.   Half ways?  If it's full, they pay us an

7    incentive.

8         Q.   Right.  But if it's half full, they won't pay

9    a bonus for that, will they?

10        A.   No.

11        Q.   Thank you.  Thank you.  It has to be a full

12   box; right?

13        A.   Yes, full, correct.  Never half-ways.

14        Q.   So what -- you work in the Delano area;

15   correct?

16        A.   Correct.

17        Q.   Do you ever work in the Arvin area?

18        A.   No.

19        Q.   Have you ever worked in the Arvin area?

20        A.   No.

21        Q.   So for the 10 years that you've been a

22   foreperson, you've never had a work location in the

23   Arvin/Lamont area?

24        A.   In Famoso, but not in Arvin.

25        Q.   Is Famoso the farthest south that you --

109

1          A.   No, they don't work; the grape is wet.

2          Q.   And how long do people have to wait before

3     the supervisor makes a decision?

4          A.   It's at the starting time.  If it's raining

5     at 6:00, the -- the supervisor will call me and say,

6     "Dolores, there's no work."

7          Q.   Do you understand that employees in your crew

8     are at-will employees?

9               Do you understand what I mean?

10         A.   Willing to work?

11         Q.   No.  The company doesn't guarantee anybody a

12    job, does it?

13              MR. JOHNSON:  Objection; calls for a legal

14    conclusion.  Lacks foundation.

15              THE WITNESS:  I have workers there from --

16    from 10 years ago, when I started working.

17    BY MR. LYNCH:

18         Q.   Okay.  But they don't have a right to their

19    job; correct?  Anybody could be let go by the company

20    if the company wanted to at any time; correct?

21         A.   Yes.  If --

22         Q.   Thank you.  You mentioned labels on the

23    boxes.  Are those labels placed on the boxes by the

24    workers; or are they on the boxes when the boxes

25    arrive?

110

1    A.  When the boxes arrive, the packers will

2    separate first, second.  The first label "Delano Farm."

3    The other one, second -- the second, Grino (sic) --

4    yes -- "Reno."

5        Q.  Are those labels already on the boxes or do

6    they have to be placed on the boxes?

7        A.  No.  The packer has to -- to separate them.

8        Q.  When you say "separate," you mean place

9    labels on the boxes?

10       A.  Correct.

11       Q.  Thank you.  I believe you talked about

12   tables, carts, trays, bags, boxes, and labels; correct?

13       A.  Correct.

14       Q.  And these are all things that are needed for

15   the harvest; correct?

16       A.  Correct.

17       Q.  And these are all things that have to be

18   organized before the packing can begin; correct?

19       A.  Correct.

20       Q.  Okay.  And I believe you testified that the

21   boxes are delivered by trucks; correct?

22       A.  Correct.

23       Q.  And they are stacked in a central location;

24   correct?

25       A.  At a location that I don't know.  The

111

1    truckers are the ones that bring them.

2        Q.   But they bring them to an area that's near

3    the tables; correct?

4        A.   Correct.   Correct.   Very close to the tables.

5        Q.   Then the people gather the boxes and bring

6    them --

7        A.   Correct.

8        Q.   -- to the tables; correct?

9        A.   Correct.

10       Q.   And then the people also gather the supplies

11   to make sure that the tables are operating properly;

12   correct?

13       A.   Correct.

14       Q.   And that's before the work can begin;

15   correct?

16       A.   Correct.

17       Q.   And I believe you testified also that school

18   takes place before the work in the harvest can begin;

19   correct?

20       A.   Correct.

21            MR. LYNCH:   Can we go off the record for just

22   a minute?

23            THE REPORTER:   Off the record.

24            (Recess taken.)

25            MR. LYNCH:   Back on the record.

EXHIBIT 100

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

---------------

SABAS ARREDONDO, JOSE          )
CUEVAS, et al.,                )
                               )
            Plaintiffs,        )
                               ) Case No.
      vs.                      )
                               ) 1:09-CV-01247-LJO-DLB
DELANO FARMS COMPANY, a        )
Washington State               )
Corporation; et al.,           )
                               )
            Defendants.        )
                               )


DEPOSITION OF:

FLORENTINO NAVALTA

Monday, November 29, 2010

2:12 p.m.


Reported By:  Annette R. Hughes-Norfolk, CSR No. 10048

33

1      A.  Yes, it's the same.  Nothing much has
2  changed.

3      Q.  Thank you.

4      A.  And -- but the salary has changed.

5      Q.  Thank you.  It would have to.

6      A.  Yes.

7      Q.  So when does the pruning season take place?

8      A.  December.  Last week of December or first
9  week of January or something like that.  First week of
10  January or something like that, yeah.

11      Q.  Hopefully after the holiday.

12      A.  Yeah, after the holiday.  (English response.)

13          THE INTERPRETER:  "Yes, after the holiday."

14  BY MR. LYNCH:

15      Q.  And how long does the pruning season last?

16      A.  January, February.  Just, like, two months.
17  It's just like two months.

18      Q.  Eight weeks?

19      A.  Like that or less.  Like that.

20      Q.  Six to eight weeks?

21      A.  Yes.  Yes.

22      Q.  Never less than six weeks?

23      A.  No, never less.  Never less, no.

24      Q.  And when does the tipping begin?

25      A.  Tipping?  Oh, tipping, oh, maybe -- maybe --

34

1    maybe May or June or something like that.   (English

2    response.)

3              THE INTERPRETER:   "Tipping?  Oh, tipping, oh,

4    maybe -- maybe -- maybe May or June or something like

5    that."

6              THE WITNESS:   Yeah.  It depends on the

7    order -- the -- the order of the big boss.

8    BY MR. LYNCH:

9         Q.  Sure.   Then the harvest; correct?

10        A.  Yes.  The tipping -- after the tipping, then

11   we wait for the grapes to get ripe.

12        Q.  How long is that wait?

13        A.  A couple of weeks.   (English response.)

14             THE INTERPRETER:   "Couple of weeks, like

15   that."

16   BY MR. LYNCH:

17        Q.  About two weeks, hopefully; right?

18        A.  Two weeks, like that.

19        Q.  Sometimes one?

20        A.  Sometimes, yes (English response.)

21             THE INTERPRETER:   "Sometimes, yes."

22   BY MR. LYNCH:

23        Q.  And do you have people in your crew that work

24   knives to cut the vine?

25        A.  Oh, for girdling.

34

1   maybe May or June or something like that.  (English

2   response.)

3            THE INTERPRETER:  "Tipping?  Oh, tipping, oh,

4   maybe -- maybe -- maybe May or June or something like

5   that."

6            THE WITNESS:  Yeah.  It depends on the

7   order -- the -- the order of the big boss.

8   BY MR. LYNCH:

9        Q.  Sure.  Then the harvest; correct?

10       A.  Yes.  The tipping -- after the tipping, then

11   we wait for the grapes to get ripe.

12       Q.  How long is that wait?

13       A.  A couple of weeks.  (English response.)

14            THE INTERPRETER:  "Couple of weeks, like

15   that."

16   BY MR. LYNCH:

17       Q.  About two weeks, hopefully; right?

18       A.  Two weeks, like that.

19       Q.  Sometimes one?

20       A.  Sometimes, yes (English response.)

21            THE INTERPRETER:  "Sometimes, yes."

22   BY MR. LYNCH:

23       Q.  And do you have people in your crew that work

24   knives to cut the vine?

25       A.  Oh, for girdling.

35

1          Q.  Girdling?

2               Thank you.  When is the girdling?

3          **A.  Girdling, uh-huh.  Wait.  Maybe May.  May.**

4     **Something like that.**

5          Q.  In the spring?

6          **A.  Yeah, the spring.  Yes, the spring.  May or**

7     **June.**

8          Q.  How many people do you have doing that work?

9          **A.  Sometimes one, just really one.  (English**

10    **response.)**

11              THE INTERPRETER:  "Sometimes one, just only

12    one because it's hard work."

13    BY MR. LYNCH:

14         Q.  And it requires knives; right?

15         **A.  Yes, a girdling knife.**

16              MR. JOHNSON:  A belated objection.  Calls for

17    a legal conclusion whether they need a knife.

18    BY MR. LYNCH:

19         Q.  It would be tough to do girdling with your

20    fingers?

21         **A.  Oh, yes.**

22         Q.  So you think they need a knife?

23              MR. JOHNSON:  Same objections despite the

24    sarcasm.

25              THE WITNESS:  It's a hard job.

Sylvia Mendez & Associates - (661) 631-2904

1   BY MR. LYNCH:

2        Q.   Do they need a knife?

3             MR. JOHNSON:   Same objection.

4             THE WITNESS:   Yes.   It's a special tool for

5   girdling.

6   BY MR. LYNCH:

7        Q.   Please understand that the court reporter

8   can't write down your gestures, so we must communicate

9   with words.   And you made a rotating gesture.

10            Did you mean to communicate that to perform

11  girdling a worker will make a circular cut around a

12  vine?

13       **A.   Yes.   They have to buy their own tool that**

14  **they need to use for girdling.**

15       Q.   And how many knives does a person who does

16  this work have with him or her on the job site?

17            MR. JOHNSON:   Objection; calls for

18  speculation.   Lacks foundation.

19            THE WITNESS:   It depends on the size of the

20  vine that they have to do girdling on.

21       Q.   Okay.   So the size of the vine determines

22  what size knife they use.   Is that what you're saying?

23       **A.   Yes.**

24       Q.   So does that mean that the worker who does

25  girdling would have to have more than one knife to deal

1       with vines of different sizes?

2              MR. JOHNSON:  Objection; lacks foundation.

3       Calls for speculation.

4              THE WITNESS:  Yes.

5       BY MR. LYNCH:

6              Q.  The answer is "yes"?

7              A.  "Yes."

8              Q.  Thank you.  Do you know how many knives a

9       typical person would have performing that job?

10             A.  Maybe one, two, or three.

11             Q.  And are those knives expensive?

12             A.  Before when I used to do this, used to use

13      them, yes, they are expensive.

14             Q.  Is that because they're very specialized?

15      Correct?

16             A.  Yes, they're special.

17             Q.  When you did the work, how much did they cost

18      apiece?

19             A.  I don't remember anymore, but maybe more than

20      20.

21             Q.  Each?

22             A.  Yes.

23             Q.  And what year was that?

24             A.  Oh, in a different company.  In a different

25      company.

38

1      Q.   Okay.  So we're talking sometime before 1993;

2   correct?

3      **A.   Even before that.**

4      Q.   Okay.  So with inflation, they're probably a

5   good deal more expensive?

6           MR. JOHNSON:  Objection; calls for

7   speculation.  Lacks foundation.

8   BY MR. LYNCH:

9      Q.   You may answer.

10     **A.   Yes.  Yes, they're more expensive now.**

11     Q.   Thank you.

12     **A.   They are expensive.**

13     Q.   Now, with respect to the pruning, are there

14  any tools the workers need to perform pruning?

15     **A.   Yes.**

16     Q.   Can you describe the tools, please?

17     **A.   Pruning shears.**

18     Q.   Can you describe pruning shears?

19     **A.   It's this long.**

20          MR. LYNCH:  The record should reflect that

21  the witness is making a gesture with his hands that

22  appears to be about 18 inches or two feet.

23          Does that make sense, Mr. Johnson?

24          MR. JOHNSON:  Yes.

25          MR. LYNCH:  All right.

38

1          Q.   Okay.  So we're talking sometime before 1993;

2     correct?

3          **A.   Even before that.**

4          Q.   Okay.  So with inflation, they're probably a

5     good deal more expensive?

6               MR. JOHNSON:  Objection; calls for

7     speculation.  Lacks foundation.

8     BY MR. LYNCH:

9          Q.   You may answer.

10         **A.   Yes.  Yes, they're more expensive now.**

11         Q.   Thank you.

12         **A.   They are expensive.**

13         Q.   Now, with respect to the pruning, are there

14    any tools the workers need to perform pruning?

15         **A.   Yes.**

16         Q.   Can you describe the tools, please?

17         **A.   Pruning shears.**

18         Q.   Can you describe pruning shears?

19         **A.   It's this long.**

20              MR. LYNCH:  The record should reflect that

21    the witness is making a gesture with his hands that

22    appears to be about 18 inches or two feet.

23              Does that make sense, Mr. Johnson?

24              MR. JOHNSON:  Yes.

25              MR. LYNCH:  All right.

39

1        Q.  And what is that distance?  Is that the

2    distance between the handles?

3        **A.  Yes, two handles like this.**

4        Q.  Okay.  And is that used to -- to cut the

5    vines?

6        **A.  To cut the branches, yes.**

7        Q.  The branches of the vines.  Okay.  Thank you.

8            And that's a more heavy-duty type of cutter

9    that harvesters use; correct?

10       **A.  Yes.**

11       Q.  The harvester uses a much smaller set of the

12   cutters; correct?

13       **A.  Yes.  The clippers are smaller than the**

14   **pruning shears.**

15       Q.  Thank you.  Do people in your crew ever buy

16   their own pruning shears?

17       **A.  The company provides them.**

18       Q.  Are you saying that nobody buys their own?

19       **A.  Some people do.**

20       Q.  Some people buy their own pruning shears?

21       **A.  Yes.**

22       Q.  And do you know what percent of your crew,

23   when you prune, how many of the 25 workers buy their

24   own pruning shears?

25       **A.  Two to three persons -- two to three persons**

40

1    do not buy and then the rest, they buy because they

2    don't like to use the shears that have been issued.

3        Q.   Okay.  So only two or three people use the

4    company-issued shears in the pruning?

5        A.   Yes.

6        Q.   And everybody else buys their own; correct?

7        A.   Yes, because they say it's better.

8        Q.   Okay.  Now, with respect to the tipping --

9        A.   Okay.

10       Q.   -- isn't that the last phase of the

11   pre-harvest work?

12       A.   No.

13       Q.   Okay.  What is the last phase of the

14   pre-harvest work?

15       A.   Harvest.

16       Q.   Okay.  But before the harvest there's a

17   little rest, a week or two, and the last season before

18   harvest is tipping; correct?

19       A.   Yes.

20       Q.   Okay.

21           MR. JOHNSON:  Tom, we've been going about an

22   hour-and-a-half.  Can we get a quick break?  Thank you.

23           MR. LYNCH:  Yeah.  Sure, why not.  You're

24   welcome.

25           (Recess taken.)

42

1    (sic), then I give another set of clippers.

2         Q.  So you only give clippers out if the loss is

3    accidental?

4              MR. JOHNSON:  Objection; misstates the

5    testimony.  Lacks foundation.

6    BY MR. LYNCH:

7         Q.  All right.  You must answer.

8         A.  Or if they lose it, they have an extra

9    clipper; so they use the extra ones that they have.

10        Q.  So let me see if I understand it.  If there's

11   an accidental breakage, you'll provide a replacement

12   clipper?

13        A.  Yes.

14        Q.  But --

15        A.  An extra --

16        Q.  If they lose it, they buy their own?

17             MR. JOHNSON:  Objection; misstates the prior

18   testimony.  Lacks foundation.  Calls for speculation.

19   BY MR. LYNCH:

20        Q.  Okay.  But you must answer.

21        A.  If they lose it on the job site, of course, I

22   have an extra one.  So I give it to them.

23        Q.  Do you know if workers ever buy their own

24   clippers during the harvest?

25             MR. JOHNSON:  Objection; calls for

43

1    speculation.  Lacks foundation.

2    BY MR. LYNCH:

3        Q.  All right.  You must answer.

4        **A.  Some -- some of them -- they have their own,**

5    **extra clippers.**

6        Q.  So some of them have their own?

7        **A.  Yes.  Yes.  Some have their own.**

8        Q.  Do you know how many, during the harvest?

9            MR. JOHNSON:  Objection; calls for

10   speculation.  Lacks foundation.

11           He can't possibly know what other people

12   have.

13           MR. LYNCH:  I'm going to object to the

14   speaking objections and the coaching.

15       Q.  So please, you must answer the question.

16       **A.  Well, I have observed some people bring their**

17   **own -- an extra one that they have.**

18       Q.  And has that been true since you've been a

19   foreman?

20       **A.  Yes, because when I was a worker like that, I**

21   **was the same way.**

22       Q.  When you were a worker?

23       **A.  Yes.**

24       Q.  Did you ever buy your own?

25       **A.  I had my own too.**

44

1      Q.   And how much did they cost you back then?

2      A.   $5.

3      Q.   Are they more today?

4      A.   Oh, now maybe $6, maybe.

5      Q.   Thank you.  So after workers get laid off

6      because one season ends, how do you recall them to

7      work?

8      A.   I call them by phone up to the limit that

9      they are about to call.  Like, for example, if I need

10     25, then I just call the limit.

11     Q.   When you say "they," do you mean the company?

12     A.   If they say 25, then I only get 25.

13     Q.   And who tells you the limit?

14     A.   The supervisor.

15     Q.   Does your crew have an assigned supervisor?

16     A.   Yes.

17     Q.   What's his name or her name?

18     A.   Jason Villar.

19     Q.   Could I have a spelling of his last name,

20     please.

21     A.   "V" -- "V," as in "victory," i-l-l-e-r --

22     l-l-a-r.  Villar.

23     Q.   Is that V-i-l-l-a-r?

24     A.   A-r.

25     Q.   Okay.  And then you call the workers to let

81

1   three."

2   BY MR. LYNCH:

3        Q.   Thank you.  So it happens more than just the

4   first day of the harvest; correct?

5        **A.   Yes.**

6        Q.   Can you tell us what the pickers and packers

7   have to do to get the work site ready to do the work in

8   the harvest?

9        **A.   They have to prepare themselves, dress**

10  **comfortably, their shoes, if they need to, to wear**

11  **gloves, if necessary.**

12       Q.   Anything else?

13       **A.   And what's most important is the clippers.**

14       Q.   What about the clippers?

15       **A.   Well, they have to have it because that's**

16  **what they're going to use.**

17       Q.   They have to bring the clippers?

18       **A.   Well, those clippers have already been**

19  **issued.**

20       Q.   So they have to bring them to work.  Is that

21  what you're saying?

22       **A.   Yes.**

23       Q.   What else do they have to do?

24       **A.   Well, they have -- they have to pack clean.**

25  **It has -- it doesn't (sic) have to be dirty.  It must**

Sylvia Mendez & Associates - (661) 631-2904

82

1    be clean.

2         Q.   Before the packing begins, I'm asking you

3    what they have to do to get ready to do the work.

4         **A.   I have to show -- I have to tell them as to**

5    **how they pack.**

6         Q.   Is that school?

7         **A.   Yes.   Yes.**

8         Q.   What else?

9         **A.   And then if -- if need -- if it need be, to**

10   **put the labels or they mark the number of pounds.**

11        Q.   What do you mean, "mark the number of

12   pounds"?

13        **A.   The net weight of the boxes, sometimes 19**

14   **pounds.**

15        Q.   Is that before they begin picking and

16   packing?

17        **A.   Before they pack.   Before they pack.**

18        **Or sometimes they are already marking the**

19   **empty boxes "19 pounds."**

20        Q.   Thank you.   Anything else they have to do?

21        **A.   They are marking the name of the grapes.**

22   (English response.)

23        THE INTERPRETER:   "They are marking the names

24   of the grapes."

25   BY MR. LYNCH:

83

1        Q.   Is that the variety?

2        A.   The variety, yes.

3        Q.   And where do they mark those?

4        A.   It's -- it's there on the sign, on the box.

5   If it says "Crimson," then they have to check

6   "Crimson."

7        Q.   Anything else?

8        A.   The way they pile.   They pile No. 1 or No. 2.

9        Q.   Did you say "pile"?

10        A.   Yes.

11        Q.   But those are the boxes that are complete;

12   correct?

13        A.   Oh, yes.

14        Q.   So let's stay with the time before the

15   picking and packing begins.   For example, do the

16   workers have to bring boxes over close to the table

17   where they're working?

18        A.   Yes.   Yes.

19        Q.   Any other jobs like that to get ready?

20        A.   That's all.   They prepare their boxes and

21   then if it's ready, then they start picking.   And the

22   packer also helps picking if there are no grapes to be

23   packed yet.

24        Q.   So until some grapes build up?

25        A.   Yes.

84

1          Q.   Does the packer have to move the table at all

2     in the morning?

3          A.   The -- once the line is finished, he helps

4     the pusher.

5          Q.   Who's the pusher?

6          A.   The wheelbarrower.

7          Q.   Okay.   But I mean before the work starts,

8     does -- does anybody have to move the tables?

9               MR. JOHNSON:   Objection; vague as to "before

10    the work starts."

11    BY MR. LYNCH:

12         Q.   Please answer the question.

13         A.   What was the question?

14         Q.   Sure.   Do the crew -- do crew members have to

15    move the tables in the morning?

16         A.   Well, the tables are already ready there.

17         Q.   So they're already in the avenue or in the

18    row?

19         A.   In the row.   In the row.

20         Q.   Are they moved out to the avenue?

21         A.   They move it a little bit.

22         Q.   Thank you.   That's the answer; correct?   They

23    move it into the avenue; correct?

24         A.   It's already ready there, and if they want to

25    move it a little bit, they move it a little bit.

85

1       Q.  But isn't it your testimony that the table is

2    placed in the rows.  It has to be moved out to the

3    avenue in the morning?

4       **A.  No.  It cannot be pulled out to the avenue.**

5    **It's just there by their row.**

6       Q.  But it's in the avenue; correct?

7       **A.  Yes.**

8       Q.  All right.

9       **A.  The avenue.**

10      Q.  Does it ever get placed between the rows?

11     **A.  It's there in the -- in front of their rows.**

12     Q.  Okay.  All right.  So sometimes they move it

13    a little bit, huh?

14     **A.  Yeah.  Push a little bit.**

15     Q.  Do they have to open up the table?

16     **A.  They open it before they start.**

17     Q.  Sure.  And then they have to make sure that

18    they have the bags and the Pampers and the SO2 pads?

19     **A.  Yes.  Complete.**

20     Q.  And they would come to you to get that;

21    right?

22     **A.  No.  I put them in one place.**

23     Q.  So the workers go to that place and get it

24    and then stock their tables; correct?

25     **A.  Yes.  Yes.**

86

1      Q.   Thank you.   And this happens before school,

2   doesn't it?

3           MR. JOHNSON:   Objection; misstates the prior

4   testimony.

5   BY MR. LYNCH:

6      Q.   But you must answer.

7      **A.   That's before schooling, yes.   Before**

8   **schooling.**

9      Q.   Thank you, sir.

10     **A.   And then after schooling and then -- then**

11  **after schooling, I tell them, "Go and get your supplies**

12  **from there."**

13     Q.   Okay.   So some of this happens before

14  schooling, and some of it happens after schooling?

15          MR. JOHNSON:   Objection; misstates the prior

16  testimony.

17          THE WITNESS:   After schooling.

18  BY MR. LYNCH:

19     Q.   Yes.   Okay.   Schooling is the first thing

20  that happens?

21     **A.   Yes.**

22     Q.   Okay.   Has that always been true since 1995?

23     **A.   Where -- in my crew, where I am, it's like**

24  **that.**

25     Q.   Okay.   The swampers don't work in your crew,