1   RANDY L. EDWARDS, #105639
2   MICHAEL R. JOHNSON, #237767
    LAURA A. WOLFE, #266751
3   GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
    111 East Seventh Street
4   Hanford, CA 93230
    Telephone (559) 584-6656
5   Facsimile (559) 582-3106
6   edwards@griswoldlasalle.com; johnson@griswoldlasalle.com; wolfe@griswoldlasalle.com

7   Attorneys for: Defendants

8                  UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

10

11  SABAS ARRENDONDO, et al.,                  )  Case No.: 1:09-cv-01247-LJO-DLB
                                               )
12                      Plaintiffs,            )  DEFENDANT, T&R BANGI'S,
                                               )  OPPOSITION TO PLAINTIFFS' MOTION
13  v.                                         )  FOR CLASS CERTIFICATION
                                               )
14  DELANO FARMS COMPANY, et al.               )
                                               )
15                      Defendants.            )  DATE: March 16, 2011
                                               )  TIME: 8:30a.m.
16                                             )  DEPT: 4
                                               )
17

18

19

20

21

22

23

24

25

26

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

                                    1
_DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION_
                       _Arredondo v. Delano Farms Company, et al._

1

**TABLE OF CONTENTS**

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    Structure of T&R Bangi. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      B.    The Crew. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      C.    The Work. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.  ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      A.    Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
            1.    *Rule 23(a) Requirements.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            2.    *Requirements of a Rule 23(b)(3) Class.* . . . . . . . . . . . . . . . . . . . . . . 8
      B.    Plaintiffs' Proposed Class is Too Broad. . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.    Plaintiffs Do Not Satisfy Commonality or Typicality. . . . . . . . . . . . . . 9
            1.    *The Evidence Before the Court Shows that Typicality and Commonality do not Exist.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                  a.    *Tools.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
                  b.    *Working.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            2.    *This Court has held that conflicting testimony can bar certification.* . . . . . 18
            3.    *The evidence presented by Plaintiffs is misleading and does not establish commonality or typicality.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
      D.    The Plaintiffs Do Not Satisfy Rule 23 (b)(3). . . . . . . . . . . . . . . . . . . . . . 21
            1.    *Common Issues Do Not Predominate Over Individual Issues.* . . . . . . . . . . . 22
            2.    *Class Action Litigation is Not Superior.* . . . . . . . . . . . . . . . . . . . . . . . . . 25

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

1

**TABLE OF AUTHORITIES**

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22

*Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . 23

*Babineau v. Federal Express Corporation*, 576 F.3d 1183, 1191 (11th Cir. 2009). . . . . . . . . . . . 21

*Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (Cal. App. 2d Dist. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 585-586 (9th Cir. Cal. 2010). . . . . . . . . . . . . . . . . 8

*Garcia v. Sun Pacific Farming Cooperative*, 2008 U.S. Dist. LEXIS 111969. . . . . . . . . . . . . . . . 18

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (Cal. 2007). . . . . . . . . . . . . . . . . . . 13

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157-158 (1982). . . . . . . . . . . . . . . . . . . . 10

*Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 58 (Cal. App. 4th Dist. 1991). . . . . . . . . . . 13

*Hanlon v. Chrysler*, 150 F.3d 1011, 1022 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 21

*Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lanzarone v. Guardsmark Holdings, Inc.*, 2006 U.S. Dist. LEXIS 95785 (C.D. Cal. Sept. 7, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 248 (C.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . 18

*Milberg v. Lawrence Cedarhurst Fed. Sav. & Loan Ass'n*, 68 F.R.D. 49, 52 (E.D.N.Y. 1975). . . . 22

*Miles v. Merrill Lynch & Co.* (In re Initial Pub. Offering Sec. Litig.), 471 F.3d 24, 33 (2d Cir. N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). . . . . . . . . . . . . . . . 22

*Stuart v. Radioshack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . 14

*Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Walco Invs. v. Thene*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Washington v. Joe's Crab Shack*, 2010 U.S. Dist. LEXIS 138502, 11 (N.D. Cal. Dec. 23, 2010)

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wilson v. Kiewit Pac. Co.*, 2010 U.S. Dist. LEXIS 133304, 7-8 (N.D. Cal. Dec. 6, 2010) . . . . . . . 8

*Zinzer v. Accufic Research Institute*, 253 F.3d 1180, 1186 (9th Cir. 2001). . . . . . . . . . . . . . . . . . 7

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

## I.      INTRODUCTION

Defendant Cal-Pacific Farm Management, L.P. ("Cal-Pacific") and T&R Bangi's Agricultural Services, Inc. ("T&R Bangi") both operate as farm labor contractors. Delano Farms Company ("Delano Farms")grows and markets table grapes.  Delano Farms currently contracts with T&R Bangi.  Plaintiffs are agricultural workers who have been employed by Cal-Pacific and/or T&R Bangi during the past four years.

Cal-Pacific and T&R Bangi are two separate and distinct farm labor contractors that employed about 14,000 workers over the past four years.  Cal-Pacific and T&R Bangi have similar management personnel and policies.  For ease of reading, they will be referred to jointly as the "Employers" where appropriate.

Plaintiffs assert: (1) they were not paid for all hours worked, (2) the Employers failed to keep accurate records, and (3) the Employers failed to provide tools necessary to perform their work.  Plaintiffs seek to represent Employers' 14,000 workers.

Plaintiffs cannot show commonality or typicality, that common issues predominate over individual issues, or that class action litigation is superior to individual actions.

First, Plaintiffs do not offer any evidence to establish any generalized or systematic violations of wage and hour law.  Rather, Plaintiffs provide 63 self-serving anecdotal declarations from Plaintiffs and putative class members alleging certain individualized violations.  Interestingly, the deposition testimony often differed from the declarations.  Plaintiffs also include declarations provided by Defendants which further illustrate the individualized nature of the claims.

The Employers conducted an independent investigation into Plaintiffs' claims. Numerous employees stated that there were no violations whatsoever.  They stated that all hours worked were paid

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

and all necessary tools were provided.  Only a handful of employees indicated some possible but limited individual violations.

The evidence shows there may be some individual violations of company policies.  Employers do not deny that this is a possibility.  Certain employees may have showed up early for work.  Certain employees may have worked during their breaks.  Certain employees may have stayed late to finish packing their grapes.  However, *none* of these potential violations are systematic or support certifying a "class" in this matter.  There is no single factor or set of factors which tie these violations together.  If a violation occurs, it is purely on an individual level.  The violations did not occur within a certain category of workers (i.e., all pickers).  The violations did not occur within a certain time period (i.e., harvest season in 2007).  The violations did not even occur within a certain crew.  Instead, all that has been shown is that at some times, certain workers feel they have been treated wrongly, while others do not (even those working within the same crew at the same time).  For these reasons, the questions presented become too individualized to be effectively dealt with on a class level, and class certification should be denied.

## II.   STATEMENT OF FACTS

Cal-Pacific operated as a farm labor contractor from the years 2004 to 2009 (Declaration of Terry Bangi in Support of Defendant's Opposition ("Bangi Dec."), ¶7).  T&R Bangi has been in operation since approximately 1993 (Bangi Dec., ¶3).  Cal-Pacific no longer operates (Bangi Dec., ¶8).

T&R Bangi bills its growers for all the labor hours that it pays to its employees, plus a 32-37% mark-up for managing the labor force (Bangi Dec., ¶24).

Unlike the image of a "typical" farm labor contractor, both Cal-Pacific and T&R Bangi treat their employees with dignity, and it shows.  Terry Bangi, the President of T&R Bangi has been in the

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

2

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

farm labor business for over 30 years (Bangi Dec., ¶1).  The Employers' workers are paid at least minimum wage for the hourly work they provide (*Id*., ¶10).  The workers are also paid an additional "box bonus" for each box of grapes they pack in a day (*Id*.). The Employers also provide health insurance to its employees (*Id.*).  Employees also have the opportunity to move up in the company as most of the foremen working for Employers were once field workers (*Id*., ¶16; Declaration of Michael R. Johnson in Support of Defendant's Opposition ("MRJ Dec."), Ex. 96 - p.7-8).  Although plenty of field work is available through other farm labor contractors, most of the Defendants' employees have chosen to continue working for T&R Bangi.

Most of T&R Bangi's employees take pride in the work they do, and are happy to work for the Employers.  They have stated that they are treated well.  They have also stated that the reason they left their old employer to come work for T&R Bangi is because their old employer treated them poorly.  Cal-Pacific and T&R Bangi are not typical examples of farm labor contractors who take advantage of their workforce.

## A.    Structure of T&R Bangi.

Leading the company is it's President, Terry Bangi.  Terry Bangi's main responsibility is in communicating with clients (such as Delano Farms) to determine the work force needed and the jobs to be performed (Bangi Dec., ¶12). Delano Farms informs Mr. Bangi of the type of grapes needed for marketing (*Id*.).  Mr. Bangi then decides how and where to employ the workforce and communicates with supervisors and foremen in the field (*Id*.). Eight supervisors report to Mr. Bangi.  These supervisors are responsible for managing the foremen and the foreman run the individual workers (*Id.*, ¶ 14).

Craig Neville is the Administrative Assistant of T&R Bangi and is responsible for managing

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

3

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

the office side of T&R Bangi (Declaration of Crag Neville in Support of Defendant's Opposition ("Neville Dec."), ¶4).  Mr. Neville's specific duties include managing "human resource" matters  as well as managing the payroll department (*Id.*, ¶ 8).  Mr. Neville works with a staff of six who help with accounting and payroll (*Id.*).  The payroll department is responsible for entering the foremen's daily time logs into the accounting software, and thus calculating employees' wages (*Id.*, ¶ 16).  If workers feel there has been an error in their check, they can address the concern with either their foreman or the payroll office (*Id.*, ¶18; MRJ Dec., Ex. 29 - ¶ 11, Ex.42 - ¶10).  When this occurs, the company fixes the problem within a day (Neville Dec., ¶18).  Employees can also go to the California Labor Board if they have problems with their paychecks (*Id.*, ¶19).  In the past two years, T&R Bangi has only been asked to pay one individual claim *(Id.)*.

Mr. Neville is also in charge of creating and implementing Employer policies.  The Employers have adopted written company-wide polices which help ensure that employees are subject to proper treatment.  All crews are subject to the same company-wide policies (Bangi Dec., ¶18).  These policies include such things as a "Tool Agreement" and a "Worker's Rights/Expectations."

The "Tool Agreement" clearly states, in both English and Spanish, that T&R Bangi has provided the tools needed, and that employees have the option of using either the tools provided or their own (Neville Dec., ¶9).

The "Worker's Rights/Expectations" policy is also provided in both English and Spanish, and lays out employees' rights at work (*Id.*).  The policy states that employees are not to take their trays home to wash them.  The policy also lays out meal and rest periods, safety rules, and other company-wide policies regarding  the Employers' practices.  The policy lays out that if employees have a complaint, they can tell their foreman or contact the office directly (and provides a direct phone number

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L. L. P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

4

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

to the office).  This policy also states that employees are  given two ten minute rest breaks and one thirty minute meal break.  The policy also tells employees to be on time to work, but not early.  These policies apply to all crews and are posted at each job site.

Working with Mr. Neville are the company's "safety people" like Marife Villar.  These employees are responsible for ensuring that company polices are properly distributed and explained to employees (MRJ Dec., ¶91 - Ex. 90).  Villar goes out to different crews and ensures that each foreman is posting the correct Employer policies, and that each foremen is generally adhering to the Employer policies (Neville Dec., ¶ 11).  Villar keeps a log of each crew she visits and follows up where necessary (MRJ Dec., ¶91 - Ex. 90).

**B.   The Crew**.

The main operating unit at T&R Bangi is the field crew.  Each crew is made up of field workers led by a foreman (Bangi Dec., ¶15).  The foremen are key to ensuring that the work is performed according to Employer standards and that employees adhere to Employer policies (*Id.*, ¶18).

Foremen are responsible for contacting workers to let them know to report to work at the beginning of the season (MRJ Dec., Ex. 96 - p.23:23-25, p.24:1-15).  They are responsible for recording all time worked by the field workers, including noting all start and stop times (Neville Dec., ¶14).  Each foremen starts his or her crew all together at the beginning of the day (Bangi Dec., ¶ 20).  Each foremen is responsible for ensuring that their crews takes the appropriate break periods.  Each foremen is also responsible for ensuring that his crew is notified when the work day is over (*Id.*, ¶23).  The foremen record the daily box counts during the harvest season (Neville Dec., ¶15).  Each individual foreman implements the company policies within his crew.

The foremen provide training to the field workers (both safety training and the "escuela") (Bangi

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

5

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

Dec., ¶21; MRJ Dec., Ex. 96 - p.16:10-17, Ex. 91 - ¶3, Ex. 93 - ¶2, Ex. 95 - ¶2, Ex. 94 - ¶2-3). Foremen have the ability to choose how often they hold "escuela."  Some foremen hold escuela every day, others hold it once a week.  It is within their discretion to determine how often schooling needs to occur (MRJ Dec., Ex. 93 - ¶2).  The foremen also supply field workers with the tools that the Employer provide for workers (Bangi Dec., ¶26).  While following certain set guidelines, each foremen has the ability to run his own crew within his discretion.

### C.   The Work.

Generally, the grape-growing seasons are broken down into two main time periods, either pre-harvest or harvest.  Pre-harvest work is performed January through late June, and harvest work is performed from July until November (Neville Dec., ¶¶21-22).  Pre-harvest work consists of activities such as pruning, tying, debudding, tipping, and deleafing.  During this time, crews are range from 10-30 workers (*Id.*, ¶21).

Harvest work consists of picking and packing the grapes.  This is the peak season for grape-growers, utilizing the most field workers at one time.  At the peak of harvest, the Employer operates approximately 60 crews of 60 workers (Bangi Dec., ¶17).  This means that there are, at any given time, approximately 3,600 employees working in the fields.

During the harvest season, workers are told to arrive at the location they will be picking grapes at.  Employees are not required to show up to work early, and so long as they are there by the official start time, the foremen do not reprimand them (MRJ Dec., Ex. 16 - ¶5).  When it is the official start time (or as close thereto as possible), the foreman notes the time on his daily payroll record and calls the workers together.  The foreman may choose to conduct "escuela" where he/she explains to the workers the type of grape that is being picked, and any other instructions that are needed for the day.

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

6

Once a month, the Employer policies are read to the employees and they sign an acknowledgment form (MRJ Dec., Ex. 106 - p.57:25 and p.58:1-13, Ex. 94 - ¶3, Ex. 91 - ¶3, Ex. 95 - ¶2).

Throughout the day, the crew works in unison.  All field workers within a crew begin the day at the same time; all workers take meal and rest periods at the same time.  All workers within a crew end the day at the same time.  They are prompted for each time period by the foreman (MRJ Dec., Ex. 109 - p.37:4-13).  For example, 15 minutes prior to the end of the day, the foreman will tell the workers to stop picking grapes and finish packing what they have already packed (MRJ Dec., Ex. 107 - p.27:15-19).  The foreman notes all times for the crew (Neville Dec., ¶14).  If an employee leaves early, the foremen will record their hours separately from the rest of the crew (*Id.*).  Each foreman's hand-written time sheet is then turned into the main office, where it is checked for mistakes and then entered into the company's computer payroll software (*Id.*, ¶16).

## III.   **ANALYSIS**

### A.   **Applicable Law**.

Plaintiffs bring their claims as a class action pursuant to Federal Rule of Civil Procedure 23.  Rule 23 requires that Plaintiffs bear the burden to show that each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Zinzer v. Accufic Research Institute*, 253 F.3d 1180, 1186 (9th Cir. 2001).  The trial court must conduct a rigorous analysis when determining whether the Plaintiffs have met their burden (*Id.*).  The important point is that the requirements of Rule 23 must be met, not just supported by *some* evidence.  *Miles v. Merrill Lynch & Co.* (In re Initial Pub. Offering Sec. Litig.), 471 F.3d 24, 33 (2d Cir. N.Y. 2006) (emphasis added).  The district court must analyze the underlying facts and legal issues going to the certification questions regardless of any overlap with the merits. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 585-586 (9th Cir. Cal. 2010).

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

7

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

1. ***Rule 23(a) Requirements.***

Amongst the requirements of Rule 23(a) are commonality (common questions of law or fact must exist) and typicality (that is, the claims or defenses of the representative parties must be typical of the claims or defenses of the class).  FED. R. CIV. PROC. 23(a).

Only if all Rule 23(a) requirements are met must the court proceed to determine whether the Plaintiffs satisfy at least one of the Rule 23(b) requirements.  In this case, Plaintiffs purport to meet the requirements of Rule 23(b)(3) class.

2. ***Requirements of a Rule 23(b)(3) Class.***

Certification under Rule 23(b)(3) requires: (1) that common questions must "predominate over any questions affecting only individual members," and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998).

**B.     Plaintiffs' Proposed Class is Too Broad.**

As an initial matter, Plaintiffs' class definition is too broad to allow for class certification. Plaintiffs' seek to certify a class defined as "all non-exempt agricultural employees of [Defendants] who performed field work at Delano Farms in California from four (4) years prior to the filing of this action to present" (Plaintiffs' Motion for Class Certification ("Class Cert. Motion."), p.3:4-8).  However, seeking to certify a class as broadly defined by the Plaintiffs and which includes "all workers" is improper. *See Wilson v. Kiewit Pac. Co.*, 2010 U.S. Dist. LEXIS 133304, 7-8 (N.D. Cal. Dec. 6, 2010) ("plaintiff cannot seek to certify a class of "all current and former" California employees of defendant from July 6, 2006 to present.").  This class definition seeks to include all workers of Defendants, regardless of whether they fall under all of Plaintiffs' causes of action, or only some of them.  The

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

8

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

definition also seeks to include workers regardless of whether they fall under any cause of action at all

*Wilson*, *supra*, at 7-8 ("On its face, that definition is impermissibly overbroad as it includes employees

who never incurred unreimbursed business mileage expenses under California law.") and *Amchem*

*Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (Rule 23's certification requirements are "designed to

protect absentees by blocking unwarranted or overbroad class definitions.").  At the least, Plaintiffs

should be required to propose subclasses.

In addition, the Class Certification Motion ignores several causes of action pled in Plaintiffs'

Complaint.  The Class Certification Motion only addresses the alleged failure to pay class members for

off-the-clock work, the alleged failure to record all hours worked (which is in essence identical to

failing to pay class members for off-the-clock work), and the alleged failure to reimburse necessary tool

and equipment expenses.  Defendants do not know if Plaintiffs intend to certify the class as to all causes

of action originally pled in Plaintiffs' Complaint, or only those addressed in their Class Certification

Motion, and cannot tell from the class definition as proposed.

**C.**     **Plaintiffs Do Not Satisfy Commonality or Typicality**.

Rule 23(a)(2) requires that either common questions of law or fact exist in the case.  *Hanlon*,

*supra*, at 1019.

The test of typicality is whether other members of the class have the same or similar injury,

whether the action is based on conduct which is not unique to the named plaintiffs, and whether the

other class members have been injured by the same course of conduct.  *Hanon v. Dataproducts Corp*.,

976 F.2d 497, 508 (9th Cir. 1992).  Proof of typicality requires more than just general conclusory

allegations.  In order to satisfy the typicality requirement, the moving party must demonstrate that

members of the class have the same or similar grievances as themselves, and must be able to establish

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

9

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

**the bulk of the elements of each class member's claim when they prove their own claims**. *Walco Invs. v. Thene*, 168 F.R.D. 315, 326 (S.D. Fla. 1996) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157-158 (1982) (emphasis added)). Although commonality and typicality are separate requirements for a class action, they tend to merge with one another.

> 1.    *The Evidence Before the Court Shows that Typicality and Commonality do not Exist.*

Here, Plaintiffs have not identified any written policy which supports the existence of commonality. The Employers' company-wide policies support the conclusion that the Employers are adhering to the law. In addition, the Employers' ensure that all policies are located not only at the main office, but also at every crew location (Neville Dec., ¶10). These policies are meant to be enforced uniformly throughout the Employers' labor force (*Id.*).

The Employers have also provided evidence which shows (1) it is their policy and practice to provide tools to workers and to record and pay for time employees work, and (2) employees are aware of these policies and practice. While the Employers do not contend it is impossible that there may be some violations which occur, any such violations are not systematic throughout the workforce. If in fact any of the Employers' policies are violated, the evidence shows that it is done solely on an individual level.

Plaintiffs also fail to show typicality. Again, the gravamen of the evidence in this case at hand shows that the claims of the Named Plaintiffs are actually *atypical* of the claims throughout the rest of the putative class members. Plaintiffs offer the testimony from employees, varying as to degree, which purports to show that the Employers violated wage and hour law. However, the Employers offer evidence which shows that many more employees state they were *not* subjected to any violations of law (MRJ Dec., Ex. 106 - p.38:12-21, p.41:1-8, p.54:4-25). In addition, even if there is evidence which

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

10

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

shows that certain employees may have been subjected to violations of law, the evidence differs as to how and why.  If an employee began work early simply to earn more bonus money (and knowing that if the foreman saw him he would make him stop), then that circumstance is different from the employee who claims that he was *required* to begin working early, and typicality does not exist.  As stated in *Babineau*, *infra*, motive matters.

### a.   *Tools*.

While Plaintiffs claim that the evidence presented shows common issues of law or fact, the testimony presented is extremely varied.  What is shown through the evidence presented is that there is no consistent story when it comes to the provision of tools.  Some Named Plaintiffs stated that they were never given tools (MRJ Dec., Ex.102 - p.15:8-11, Ex. 110 - p.29:16-24).   Other employees testified that clippers were provided to some people, but not to all (MRJ Dec., Ex. 103 - p.14:6-15, Ex. 104 - p.41:5-12).  Some employees stated that some tools were given, but not all tools (MRJ Dec., Ex. 104 - p.40:3-24 and p.41:2-25, Ex. 105 - p.18:2-22).  Others testified that they never received any equipment from Defendants, and that they never saw Defendants give out *any* tools to anyone. [1]

However, many more employees stated that the Employers provided them with tools.[2] Employees have also testified that tools were provided and replaced when needed (MRJ Dec., Ex. 67 - ¶7).  Still other employees testified that the Employers provided them with tools but they chose to buy

---

[1]MRJ Dec., Ex. 98 - p.16:7-12, Ex. 99 - p.65:7-11, Ex. 82 - ¶7, Ex. 97 - p.17:24, Ex. 61 - ¶8.

[2]MRJ Dec., Ex. 82 - ¶7; Ex. 6 - p. 17:24, Ex. 61 - ¶8, Ex. 63 - ¶7, Ex. 64 - ¶7, Ex. 65 - ¶8, Ex. 100 - 43:20-23, Ex. 28 - ¶7, Ex. 31 - ¶7, Ex. 33 - ¶7, Ex. 34 - ¶7, Ex. 43 - ¶7, Ex. 45 - ¶7, Ex. 8 - ¶7, Ex. 9 - ¶7, Ex. 13 - ¶7, Ex. 10 - ¶7, Ex. 15 - ¶8, Ex. 18 - ¶7, Ex. 19 - ¶7, Ex. 20 - ¶7, Ex. 22 - ¶7, Ex. 24 - ¶7, Ex. 27 - ¶7, Ex. 72 - ¶7, Ex. 74 - ¶7, Ex. 75 - ¶7, Ex. 77 - ¶8, Ex. 51 - ¶8,  Ex. 52 - ¶7, Ex. 55 - ¶8, Ex. 56 - ¶7, Ex. 57 - ¶9, Ex. 58 - ¶7, Ex. 59 - ¶7, Ex. 79 - ¶7, Ex. 80 - ¶7, Ex. 81 - ¶7, Ex. 87 - ¶8, Ex. 89 - ¶7, Ex. 97 - p.17:22-24, Ex. 101 - p.56:11-17, 20-22, p.57:1-12, p.58:6-9.

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

11

their own because they liked them better.[3]  Even a Named Plaintiff testified to the fact that he was provided with both clippers and pruning shears (MRJ Dec., Ex. 108 - p.15:3-9).

This testimony is in line with the Employer's company polices and the testimony given by the Employers' foremen.  The foremen have also testified that tools are provided to workers.[4]  The Employers have provided receipts for a number of the tools purchased and provided to their employees (Bangi Dec., ¶26).  The majority of the evidence presented is in line with the Employers' written polices.  Any evidence presented which is not in line with these policies is varied on an intensely individual level.  Therefore, in order to adjudicate wether or not the putative class members were subjected to the alleged mistreatment, the Court would have to perform individual inquiries into each employee's circumstances.

Finally, commonality and typicality do not exist because the Court would have to inquire into each individual tool expense to figure out whether the Defendants knew or should have known that the purchase was made by the worker.  California Labor Code section 2802 requires that employers reimburse employees for any necessary expenses they incur as a direct consequence of the discharge of their duties.  *Cassady v. Morgan, Lewis & Bockius LLP*, 145 Cal. App. 4th 220, 230 (Cal. App. 2d Dist. 2006).  What is "reasonably necessary" in the context of section 2802 will depend on the circumstances **of each individual purchase by each individual employee**.  *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (Cal. 2007) (emphasis added); *see also Grissom v. Vons Companies, Inc.*, 1 Cal. App. 4th 52, 58 (Cal. App. 4th Dist. 1991).  One court has held that an

---

[3]MRJ Dec., Ex. 53 - ¶7, Ex. 101, - p. 56:12-25, 57:1-12, Ex. 84 - ¶7, Ex. 68 - ¶7, Ex. 66 - ¶7, Ex. 54 - ¶7.

[4]MRJ Dec., Ex. 96 - p.70:5-7, p.72:8-25, p.73:1-9; Ex. 92 - ¶6; Ex. 91 - ¶4; Ex. 94 - ¶6; Ex. 93 - ¶6; Ex. 95 - ¶6).

GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

12

employer has no duty to reimburse employees under Labor Code section 2802 until it knows, or has reason to know, that an employee has incurred a reimbursable expense. *Stuart v. Radioshack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009).  Most of the Plaintiffs who testified they had purchased their own tools also testified that they did not tell the Defendants they had done so.[5]  Regardless, the Court would again have to make individual inquiries to determine if the employee belongs in the putative class and if the Defendants are liable to that particular employee.

Moreover, Plaintiffs and the witnesses they present have presented absolutely no evidence of the tools they supposedly purchased (MRJ Dec., Ex. 102 - p.19:16-18).  On the other hand, the Employers have provided evidence that clippers, pruning sheers, goggles, and gloves were provided. Employers have provided 641 pages of receipts totaling $77,963.29 for tools purchased by them (Bangi Dec., ¶26). These receipts do not equal all of the tools purchased, but only what receipts could be found. Regardless, there is clear evidence that Defendants have in fact provided tools to employees.

### b. *Working.*

The evidence presented for the allegation of off-the-clock work is as varied (if not more so) as it was for evidence regarding tools.  There is no common denominator which presents itself for why certain employees worked off-the-clock while others didn't.  Even workers who have claimed to come to work early did not do so uniformly.  Also, those workers who claim to have come to work early are not necessarily the same as those workers who claim to have worked during their breaks or after the official stop time.  There is no connection between those workers who claim to have taken trays home to wash and those who claim to have performed work on the job site without getting paid for it.  In addition, and probably most importantly, the *reasons* why these workers performed off the clock work

---

[5]MRJ Dec., Ex. 68 - ¶7, Ex. 107 - p.24:9-23 and p.25:1-4, Ex. 108 - p.30:20-25 and p.31:1-8, Ex. 100 - p.55:1-25, Ex. 105 - p.16:14-25 and p.17:1-10.

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

13

1    are extremely varied.

2        Most employees testified that they began working early or continued working during their

3    breaks even though they knew they were not supposed to.[6]   They each had their own reasons for doing

4    so.  One common reason given by employees as to why they worked when they were not supposed to

5    was because they wished to make more money (by packing more boxes and earning a bigger box

6    bonus).[7]  Many employees testified that harvesting season was the *only* time that they worked when they

7    weren't supposed to because it was the only time they could make more money.[8]   Some employees

8    testified that they did minimal work before the start time simply out of habit (MRJ Dec., Ex. 7 - ¶3).

9    Yet others stated that they did this work because they wanted the reputation of a hard worker (MRJ

10   Dec., Ex. 39 - ¶ 3).  Most stated that if they did work early, it was voluntary.[9]

11

12       Workers also arrive early for various reasons.  Some employees come early to socialize.[10]

13   Regardless, it is the practice of the foremen to ensure that if they see anyone working early or during

14   their breaks, they tell them to stop.[11]  Even if some workers begin work early, they know they are not

15   supposed to.[12]  The foremen specifically tell workers not to work before or after shifts, or during their

16

17

18   _____

19       [6]MRJ Dec., Ex. 32 - ¶3, Ex. 1 - ¶3, Ex. 2 - ¶3.

20       [7]MRJ Dec., Ex. 10 - ¶3, Ex. 12 - ¶3, Ex. 14 - ¶3, Ex. 109 - p.42:1-11, Ex. 108 - p.49:1-25 and 50:1-4,
     Ex. 76 - ¶3, Ex. 47  - ¶3, Ex. 28  - ¶6, Ex. 78 - ¶3, Ex. 86 - ¶3.

21
         [8] MRJ Dec., Ex. 68 - ¶3, Ex. 71 - ¶3, Ex. 62 - ¶3, Ex. 23 - ¶4, Ex. 70 - ¶3, Ex. 49 - ¶2, Ex. 50 - ¶6,
22   Ex. 83 - ¶4.

23       [9]MRJ Dec., Ex. 68 - ¶3, Ex. 76 - ¶3, Ex. 47 - ¶3, Ex. 49 - ¶2.

24       [10]MRJ Dec., Ex. 17 - ¶4, Ex. 61 - ¶4, Ex. 100 - p.58:4-24, Ex. 15 - ¶4.

25       [11]MRJ Dec, Ex. 46 - ¶3, Ex. 62 - ¶3, Ex. 36 - ¶3,  Ex. 38 - ¶3, Ex. 25 - ¶3, Ex. 69 - ¶3, Ex. 85 - ¶3,
     Ex. 86 - ¶6, Ex. 88 - ¶3.
26
         [12]MRJ Dec., Ex. 3 - ¶3, Ex. 5 - ¶3.

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

14

breaks.[13]  One employee stated that he has personally been reprimanded by a foreman for starting work early (MRJ Dec., Ex. 26 - ¶3).

Many employees state that they are not required to work at home,[14] or if they do work at home, it is voluntary.[15]  This evidence shows that any policy violations were done not on a company-wide basis, but on an individual basis, thus precluding commonality and typicality.

The evidence also shows that any violation which may have occurred is a question which depends upon a variety of factors, most important of which is the foreman that each individual class member worked for.[16]  Witnesses testified that all foremen are different (MRJ Dec., Ex. 100 - p.17:2-8, Ex. 97 - p.20:13-25, Ex. 101 - p.10:5-11).  Each Named Plaintiff's testimony varied as to whether or not they had to take trays home to clean them, and if they did, how often this occurred.  Only one Named Plaintiff testified that one of her foreman told her she had to work at home (MRJ Dec., Ex. 102, p.41:2-5).  However, under a different foreman, she was never told to work at home (MRJ Dec., Ex. 102, p.42:2-4).  Some of the witnesses deposed stated that it was dependant upon the foreman whether or not they had to take their trays home to wash.[17]  This is because the foreman control the daily working lives of the putative class members, and it is the foremen who determine whether or not the company policies are adhered to on a daily basis. In addition, the foremen have testified that they do not require their crew to work at home (MRJ Dec., Ex. 96 - p.78:12-20).

_____

[13]MRJ Dec., Ex. 62 - ¶2, Ex. 37 - ¶2, Ex. 4 - ¶2.

[14]MRJ Dec., Ex. 6 - ¶40, Ex. 110 - p.65:9-16, Ex. 97 - p.40:9-13, Ex. 104 - p.60:23-25, p.61:1-6, 24, p.62:1-6.

[15]MRJ Dec., Ex. 30 - ¶6, Ex. 35 - ¶5, Ex. 73 - ¶5, Ex. 41 - ¶5, Ex. 21 - ¶6.

[16]  MRJ Dec., Ex. 101 - p. 10:1-14, p. 44:4-5, p. 46:10-25, p. 47: 1-20, p. 49:20-25.

[17]MRJ Dec., Ex. 101 - p.51:14-15, p.52:1-7, Ex. 62 - ¶ 5.

GRISWOLD, LaSALLE, COBB, DOWD & GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

15

There are a multitude of other variances among employees of the *same crew*.  For example, in the declarations from Jose Luis Pimentel's crew, the employees could not agree upon how often school was held.  Some employees stated that school was held two or three times during the work week (MRJ Dec., Ex. 48).  Others stated that school is held everyday by the foreman (MRJ Dec., Ex. 30).  Still others in the crew stated that school is held only once a week by the foreman (MRJ Dec., Ex. 29).

All of the allegations made by Plaintiffs are subject to individualized proof because none of the allegations can be shown on a company-wide basis.  Even if some company policies are violated in the fields, there is no evidence that Plaintiffs' claims are subject to common methods of proof, and therefore predominate.  *See, e.g., Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 248 (C.D. Cal. 2007).

### 2.    *This Court has held that conflicting testimony can bar certification.*

The case at hand is remarkably similar to *Garcia v. Sun Pacific Farming Cooperative*, a case with almost identical allegations, and a case where this Court denied class certification.  In *Garcia*, the plaintiffs argued that the defendants had a company wide policy of failing to pay wages, failing  to provide meal and rest breaks, failing to reimburse for the purchase of tools, and failing to pay overtime. *Garcia v. Sun Pacific Farming Cooperative*, 2008 U.S. Dist. LEXIS 111969.  However, in *Garcia*, plaintiffs could not identify a single written policy which showed a violation of applicable law, and instead argued that it was the daily practice in the field which violated the law.  This Court held that the evidence of the policies in practice were "strongly in conflict." *Id.* at 27.  While plaintiffs had presented declarations from some of the putative class members who claimed they were not paid properly, reimbursed for tools or given breaks, defendants also presented evidence in the form of declarations which directly contradicted plaintiffs' evidence.  Because of this conflict, this Court held that the "conflicting testimony pose[d] a significant concern for managing the class action." *Id.* at 31.  The conflicting testimony also demonstrated significant differences between the crews and individuals,

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

thus precluding commonality.  *Garcia*, 2008 U.S. LEXIS 111969, at 32.

Like in *Garcia*, Plaintiffs are trying to represent a class based upon alleged individual violations which they endured during their employment.  The evidence, including the evidence offered by Plaintiffs, is in conflict.  Also, it is shown that there are certain violations which allegedly occurred as to some Named Plaintiffs but not to other putative class members.  This defeats class certification because the "representative's claims are not typical of the class members, because violations did not occur as to some class members."  *Id.,* at 38.  Typicality is still defeated even if the representative's claims are typical of some of the proposed class member, but atypical of other proposed class members. *Id.,* at 36.

*Garcia* is not the only case which shows that individualized questions like the ones presented in this case make class certification inappropriate.  In *Washington v. Joe's Crab Shack*, the court denied plaintiff's motion for class certification because "common questions did not predominate when the only way of answering the question regarding the operation of a policy or practice in its California Joe's Crab Shack restaurants would be through individualized analyses of why, in each instance, a particular employee did or did not take breaks, and if he/she did or did not take breaks, whether Crab Addison paid the amount owing."  *Washington v. Joe's Crab Shack*, 2010 U.S. Dist. LEXIS 138502, 11 (N.D. Cal. Dec. 23, 2010).

This is similar to the factual circumstances in the case at hand.  There are numerous individual reasons why employees allegedly began work early or worked during their breaks.  This means the court would have to engage in individual analyses for each class member, therefore barring commonality.

> **3.** ***The evidence presented by Plaintiffs is misleading and does not establish commonality or typicality.***

Plaintiffs claim that a common question exists as to whether the Employers failed to reimburse

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

17

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

class members for the costs of tools employees purchased, but Plaintiffs' evidence is misleading. For example, Plaintiffs' expert states that 98% of declarants expressed that they "incurred out of pocket costs for tools required to perform tasks in employment, but were not reimbursed by the employer." (*See,* Declaration of Kenneth Creal in Support of Plaintiffs' Motion for Class Certification, ¶8). First, the 98% statistic is misleading. Plaintiffs have offered declarations from only 63 employees out of the 14,000 they claim belong in the class. Plaintiffs do not show how many people were interviewed in total. Plaintiffs also ignore the declarations provided to them by Defendants, and do not take into account the testimony from these witnesses who state differently than the testimony given in their 63 declarations. Morever, Plaintiffs ignore the testimony that changed once many of these declarants were deposed. Therefore, the evidence as analyzed is unreliable.

Even if every declarant expressed that they "incurred costs for tools," this would only amount to a small percentage of the potential class. Second, many of the witnesses who gave declarations stating they never received tools also later testified that they were "sometimes" given tools, or that they sometimes saw tools given to other workers, or that they were given tools but preferred to use their own. Relying solely upon declarations which have been proven to not be entirely accurate shows that the percentage of employees "never" given tools is also inaccurate.

Additionally, Plaintiffs rely heavily on the testimony given by one past foreman of the Employer Defendants in order to show that there are common policies that violate the law (*see* Declaration of Manuel Botello in Support of Plaintiffs' Motion for Class Certification). However, Manuel Botello only worked for the Employers for a short period (Neville Dec., ¶23). In addition, Mr. Botello left the company on bad terms as he was fired for not properly filling out his crew's payroll timesheets (*Id.,* Bangi Dec., ¶30). His level of experience with the company calls into question the validity of his testimony (if for no other reason than the fact that he simply does not have enough experience to testify

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

18

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

1  about the practice in the fields).

2      **D.**    **The Plaintiffs Do Not Satisfy Rule 23 (b)(3).**

3  To certify a class under Rule 23(b)(3), Plaintiffs must show that the "questions of law or fact
4  common to the members of the class predominate over any questions affecting only individual
5
6  members, and that a class action is superior to other available methods for the fair and efficient
7  adjudication of the controversy." FED. R. CIV. P. 23(b)(3).  When common questions present a
8  significant aspect of the case and can be resolved for all members of the class in a single adjudication,
9  there is clear justification for handling the dispute on a representative rather than on an individual basis.
10  *Hanlon v. Chrysler*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright, Arthur R.
11
12  Miller & Mary Kay Kane, Federal Practice & Procedure § 1778  (2d ed. 1986)).  "Implicit in the
13  satisfaction of the predominance test is the notion that adjudication of common issues will help achieve
14  judicial economy."  *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996).

15  The presence of commonality pursuant to Rule 23(a)(2) is **not** sufficient to fulfill Rule 23(b)(3).
16  *Id*.  Instead, Rule 23(b)(3) focuses on the relationship between the common and individual issues.  *Id*.
17  Specifically, the issues in the class action that are subject to generalized proof and therefore applicable
18  to the class as a whole, must predominate over those issues that are subject only to individualized proof.
19
20  *Babineau v. Federal Express Corporation*, 576 F.3d 1183, 1191 (11th Cir. 2009).  Common questions
21  do not predominate over individual questions if, as a practical matter, the resolution of an overarching
22  common issue breaks down into an unmanageable variety of individual legal and factual issues.  *Id*.

23  Here, certification of the proposed class is not appropriate because common issues do not
24  predominate, a class action is not a superior method to resolve the intensely individual claims of the
25  Plaintiffs, and a class action will not serve judicial economy.

26  ///

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

19

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

1.   *Common Issues Do Not Predominate Over Individual Issues.*

Plaintiffs must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). A Rule 23(b)(3) action is **not** appropriate where, as here, "the main issues in a case require the separate adjudication of each class member's individual claim or defense." *Zinser*, *supra*, at 1189.  Even if Rule 23(a)'s commonality requirement may be satisfied by a shared experience, the predominance criterion is far more demanding.  *AmChem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).  The critical question is whether the issues of individual class members will overwhelm the issues common to all class members and thereby render the class action inefficient.  *Milberg v. Lawrence Cedarhurst Fed. Sav. & Loan Ass'n*, 68 F.R.D. 49, 52 (E.D.N.Y. 1975).  The predominance inquiry under Rule 23(b) is more rigorous than the commonality inquiry under Rule 23(a)(2).  *Maddock v. KB Homes, Inc.*, *supra*, at 240.

It becomes clear that the issues involved are intensely individual rather than common throughout the class.  The direct evidence and declarations submitted compel the conclusion that the Defendants' have no policies which violate the law, and therefore "the bulk of the issues that are truly in dispute in this matter are inherently individualized." *Lanzarone v. Guardsmark Holdings, Inc.*, 2006 U.S. Dist. LEXIS 95785, 13 (C.D. Cal. Sept. 7, 2006).  Here, the evidence firmly establishes that Employers' written company policies adhere to the law.  Even if Plaintiffs argue that it is not the written policies of the Employers which make a class action appropriate, but the actual policies implemented in the fields, their argument still fails.

Common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

legal and factual issues. *Babineau*, *supra*, at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996)).  The evidence is too varied to show any predominance amongst the claims of the potential class.  At most, the evidence presented by Plaintiffs establishes that there may be sporadic and inconsistent administration of policies throughout and amongst the different crews.  These sporadic occurrences clearly go against company policies, and are not pervasive throughout crews, or even throughout all time periods.  The evidence does not support a finding that there were "class-wide" violations of applicable law.  Certification is inappropriate if Plaintiffs must introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims. *Babineau*, *supra*, at 1191.  This is exactly what Plaintiffs would have to do.  Because of the variance in testimony, there is no other way to determine liability other than making individual inquiries and presenting individualized proof to establish liability.

Even within certain crews, the employees themselves offer varying reasons for the occurrence of certain alleged violations of wage and hour laws.  For example, some of the Named Plaintiffs suggest that there is a "pressure" placed upon them to meet a quota for boxes packed in a given day (of which there is no evidence other than their testimony) which accounts for their working during breaks.[18]  Other putative class members, however, offer other explanations for why they may choose to begin work early or work during their breaks (most of whom recognize that they do this voluntarily and against company policies).  See the declarations of Antonio Herrera and Marisol Jiminez who state that they only begin work early during the picking season, where they are eligible to earn a bonus.[19]  This testimony shows there is a monetary incentive for these employees to work off the clock or during meal and rest periods.

---

[18]MRJ Dec., Ex. 98 - p.39:7-23; Ex. 108  - p.46:10-14.

[19]MRJ Dec., Ex. 40 - ¶6, Ex. 44 - ¶4.

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

21

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

The Court would have to inquire into the *motivation* for each employee to determine if they were forced to work during meal and rest breaks, or if they chose to do so for their own advantage.

In *Babineau*, the court denied class certification because the Plaintiffs did not satisfy the predominance standard.  In that case, the court held that the predominance test was not satisfied due to the various reasons employees had for showing up early and working on breaks.  *Babineau*, *supra*, at 1191.  In addition, the court noted that Fed Ex had a potential defense that the employees who did work early or on their breaks did so knowing they were not allowed to.  *Id*.  The court found that there would need to be too many individualized inquiries into the reasons *why* employees worked off the clock for the case to be maintained as a class action.  Like *Babineau*, in the case at hand, in order for the court to determine the merits of Plaintiffs' claims, each individual employee would need to show not only that they worked off the clock (which many employees state they did not), but also the *reasoning* why they did so.  As shown above, each individual stated different reason why they worked during break or why they came to work early.  This makes a class action an inappropriate mechanism for resolving this dispute.

Even if the Named Plaintiffs could show that they worked off the clock due to a "system of policies which pressured them," this is not enough.  As in *Babineau*, even if the "policies pressured some employees to arrive early or stay late, it is clear from the record that other employees did so voluntarily and for purely personal reasons."  *Id.,* at 1193.  Proof of a policy of pressure was not enough to certify a class in *Babineau* and should not be enough to certify a class here.

Again, however, the issue of working off the clock is not the only allegation subject to individualized proof.  Whether or not employees used the tools the Employers' provided to them is another allegation not subject to class wide proof.  While some employees testified that they were never given tools, others declared that they received tools, liked them, and used them.  There is even some

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L. L. P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

evidence that many workers "just knew" that they needed to bring tools. Again, the evidence in the record goes to show that only individualized proof will allow for adjudication of the issues. Implicit in the satisfaction of the predominance test is the notion that adjudication of common issues will help achieve judicial economy. *Zinser, supra,* at 1189 (quoting *Valentino*, *supra*, at 1234). For these reasons, Plaintiffs' claims fail for lack of predominance.

### 2. *Class Action Litigation is Not Superior.*

"A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino*, *supra*, at 1234. In analyzing superiority, there are four factors given in Rule 23(b)(3), including the interest of members of the class in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the difficulties likely to be encountered in the management of the class action. FED. R. CIV. P. 23(b)(3); see also *Zinser*, *supra*, at 1190.

The analysis of the superiority requirement affords the court the opportunity to exercise its considerable discretion in deciding whether or not to certify a class. A class action is improper where an individual class member would be compelled to try numerous and substantial issues to establish his or her right to recover individually, after liability of the class has been established. *Maddock v. KB Homes, Inc.*, *supra*, at 248 (quoting Judge William W. Schwarzer, Judge A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial, § 10:361 (The Rutter Group, 2006)). This is different than when individual class members seek separate damages. *Id.*

### IV.   <u>CONCLUSION</u>

This case is not manageable as a class action. The issues presented are too individualized for Plaintiffs to prove the claims through a common proof. For putative class members to be able to prove

GRISWOLD, LaSALLE,
COBB, DOWD &
GIN, L.L.P.
111 EAST SEVENTH STREET
HANFORD, CA 93230

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*

1    that they have a right to recover, the Court would have to make inquiries into the circumstances of their

2    daily work routine.  Rather than proving liability on a class-wide basis, the Court would have to do so

3    on an individual basis, for every class member, and thus defeating the purpose behind certifying a class.

4
     Therefore, the class certification must be denied.

5

6    Dated:  February 28, 2011

7                                                    GRISWOLD, LaSALLE, COBB,
                                                         DOWD & GIN, L.L.P.
8

9                                                    By    /s/ Michael R. Johnson
10                                                          MICHAEL R. JOHNSON
                                                          Attorneys for Defendants
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

24

*DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*
*Arredondo v. Delano Farms Company, et al.*