1

2

3

4

5

6            **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

8

9   SABAS ARRENDONDO, et al.,              CASE NO. CV F 09-1247 LJO DLB

10                Plaintiff,              **ORDER ON PLAINTIFFS' MOTION TO**
                                         **CERTIFY CLASS ACTION AND**
11        vs.                            **APPROVAL OF CLASS NOTICE**

12   DELANO FARMS COMPANY,
     et al.,
13
                   Defendants.
14   _____/

15          Pursuant to a notice filed on January 28, 2011, plaintiffs Sabas Arrendondo, Jose Cuevas, Hilario

16   Gomez, Irma Landeros and Rosalba Landeros ("plaintiffs") seek to certify a class action in this matter.

17   Defendants Delano Farms, Company, Cal-Pacific Farm Management, LP and T&R Bangi's Agricultural

18   Services Inc. filed an opposition on February 28, 2011 and March 11, 2011. Plaintiffs filed a reply on

19   March 8, 2011. After the briefing was complete, the Court asked for supplemental briefing and vacated

20   the hearing. Defendants filed a sur-reply on March 21 and 22, 2011, and plaintiffs filed a response to

21   the sur-reply on March 28, 2011. Plaintiffs seek to certify a class of current and former field workers

22   for alleged wage and hour violations. Having considered the moving, opposition, reply papers, and the

23   supplemental briefing, as well as the Court's file, the Court issues the following order.

24                                    **OVERVIEW**

25          This is a potential class action filed on July 17, 2009 alleging federal and state law wage and hour

26   violations, including claims pursuant to the Migrant and Seasonal Agricultural Worker Protection Act,

27   29 U.S.C. §1801 et seq. ("AWPA"). Plaintiffs purpose to represent one class of workers composed of

28   the following:

                                          1

1
2
3
4

"All non-exempt agricultural employees of Delano Farms Company, Cal-Pacific Farm Management, L.P., and T&R Bagni's Agricultural Services, Inc. who performed field work at Delano Farms in California from four (4) years prior to the filing of this action to the present, excluding irrigators, tractor drivers, swampers and workers employed only in cold-storage." (Doc. 75, Moving papers p. 2.)

Plaintiffs also request that the Court appoint as class counsel Wasserman, Camdon, Casselman & Esensten and also Marcos Camacho, A Law Corporation.

Defendants Cal-Pacific Farm Management, L.P. ("Cal-Pacific") and T&R Bangi's Agricultural Services, Inc. ("T&R Bangi") are both farm labor contractors (collectively the "Employers").[1] Plaintiffs are agricultural workers who have been employed by Cal-Pacific and/or T&R Bangi during the past four years. Cal-Pacific and/or T&R Bangi contract with entities such as Delano Farms Company ("Delano Farms") which grows and markets table grapes.

The grape growing seasons have two main periods, either pre-harvest or harvest. (Doc. 76, Opposition p.6.) Pre-harvest is generally between January through late June, while harvest is between July and November. (Doc. 76-6, Neville Decl. 21-22.) Harvest work involves picking the grapes and packing the grapes in boxes. Pre-harvest work involves pruning, tying the vines, debudding, tipping, deleafing and girdling the vines. The field workers are organized into "crews" lead by a foreman. (Doc. 76-7, Bangi Decl. ¶15.) During pre-harvest, crews range from 10-30 workers. At the peak of harvest, Employers operate approximately 60 crews comprised of 60 workers. (Doc. 76-7, Bangi Decl. ¶17.)

## PLAINTIFFS' MOVING ARGUMENTS

## FOR CLASS CERTIFICATION

**A.     Summary of Plaintiffs' Facts**

Plaintiffs and the proposed class are seasonal agricultural workers who perform pre-harvest and harvest work for Employers. Employers pay them on an hourly basis. (Doc. 75, Moving papers p.2.) Plaintiffs' expert estimates that the entire class exceeds 14,000 persons, depending on a three year or four year statute of limitations. During harvest, defendants agree they employ at least 2,500 field

---

[1] Cal-Pacific and T&R Bangi refer to themselves in their opposition to the motion as "Employers." The Court will adopt this nomenclature and will also refer to Cal-Pacific, T&R Bangi and Delano Farms as "defendants." Cal-Pacific and T&R Bangi acknowledge they have similar management personnel and policies. (Doc. 76, Opposition p.1.)

workers.  (Doc. 75, Moving Papers p. 3.)  In support of this motion to certify the class, plaintiffs submit sixty-three (63) declarations from proposed class members who worked in 28 different crews for the Employers.  The declarants have worked for the Employers either during preharvest or harvest, on and off, from the year 2000 to the present.

Plaintiffs allege the following violations:

(1)      unrecorded and uncompensated work before and after the fixed work hours ("off-the-clock" work),

(2)      requirement that workers provide and pay for their own tools, and

(3)      inaccurate recording of hours worked and wages paid.  (Doc 75, Moving papers p.5, citing Complaint.)

Plaintiffs allege that defendants required them and the proposed class members, to perform unpaid work before the fixed start-time, and defendants failed to record work performed before the fixed start time.  Plaintiffs allege that defendants required them, and the proposed class members, to work after the fixed end-time, both in the field and at home and that defendants failed to record the work performed.  In addition, plaintiffs argue the class members were required to purchase their own work tools and were not reimbursed for this expense.

Plaintiff alleges the following claims for relief:

1.      First Cause of Action - violation of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §1801, et seq.

2.      Second Cause of Action - Failure to Pay Wages and/or Overtime, Cal. Labor Code §1194(a).

3.      Third Cause of Action - Failure to Reimburse Expenses for Tools and Equipment, 19 U.S.C. §1832(c) and Cal. Labor Code §2802

4.      Fourth Cause of Action - Failure to Maintain Accurate Hours Worked Information, Cal. Labor Code §226 and IWC Wage Order 14-2001

5.      Fifth Cause of Action - Waiting Time Penalties under Cal. Labor Code §203

6.      Sixth Cause of Action - Unfair Competition pursuant to Bus.&Prof. Code §17200.

**B.      Plaintiffs' Arguments regarding Class Certification under Rule 23**

**Numerosity:** The class is so numerous that joinder would be impracticable.  The proposed class consists of at least 14,000 members.  Plaintiffs contends the proposed class is acertainable based on employment records provided by defendants and the members can be easily identified using the employment records.  (Doc. 75, Motion p.12.)

**Common Questions:** The class consists of common questions of law or fact. Here, the common questions of fact are whether members (1) performed work for defendants in the mornings preparing for the grape harvest and attended school, (2) performed work after the official stop time to continue packing grapes, and cleaning the work area, and (3) incurred unreimbursed out-of-pocket expenses for tools and equipment.  Plaintiffs argue common issues of law include (1) whether defendants violated AWPA and California law by failing to record all hours and pay all wages due to class members for hours worked, and (2) whether these laws were violated by failing or reimburse employees for tools employees purchased.  The failure to pay and to record off-the-clock work was on class wide basis and company wide practice.

**Typicality:** Plaintiffs have the same or similar injury based on the same course of conduct.  Plaintiffs and the proposed class were required to arrive at the worksite before the fixed start time to perform preparation tasks and/or attend school.  Pre-shift and post-shift work was not recorded and not compensated.  In addition, failure to reimburse for tools is typical of the class.

**Representation:** Plaintiffs will fairly and adequately represent the class.  Neither plaintiffs nor counsel have a conflict with any putative class member. Plaintiffs are willing to vigorously prosecute the action.  Counsel is experience class action and employment lawyers.

**Rule 23(B)(3) Requirements:** Plaintiff moves for class certification pursuant to Rule 23(b)(3) on the basis the common questions predominate over individual questions.  Plaintiffs argue that two questions predominate: where defendants failed to pay for all worked time and record their hours, and whether defendants failed to reimburse employees for necessary tools.  Plaintiffs argue that the class procedure is superior because it is unlikely the individuals would pursue their rights.  The individuals have limited English skills and lack financial resources.

/////

4

**DEFENDANTS' OPPOSITION**

**TO CLASS CERTIFICATION**

Employers oppose the certification of the class.  Employers argue that the class as proposed is too broad.  The class is identified as basically "all workers."  Further, the proposed class does not differentiate between the various causes of action that are alleged.  Employers argue they cannot tell if plaintiffs seek to certify the class as to all causes of action that are plead in the complaint.  (Doc. 76, Opposition p.9.)

Employers argue that typicality and commonality are not shown from the evidence.  They argue that plaintiffs do not offer any evidence to establish a generalized or systematic violation of wage and hour law.  Employers characterize plaintiffs' evidence as 63 self-serving, anecdotal declarations alleging individualized violations.  Employers argue that, at best, the evidence shows individual violations of company polices, but does not show systematic violations.

Employers argue that they maintain written employment policies which address the areas plaintiffs challenge.  Employers present evidence that they maintain a "Tool Agreement" policy which states that the Employers will provide the necessary tools, and that the employees have the option of using either these tools or provide their own tools.  (Doc. 76-6, Neville Decl. ¶9.)  Many employees will purchase their own tools because they believe their personal tool is better, which allows employees to pick grapes faster, and fill boxes faster to earn the "box bonus."  The Employers also maintain the "Worker's Rights/Expectations" policy which states the Employers' policies of meal and rest periods, safety rules and policy against taking trays home to wash.  (Doc. 76-6, Neville Dec. ¶9.)  Also, the policy states employees should be on time and should not work early.

The Employers' written company policies show the employers follow the law and the policies are posted at every crew location.  The policy shows that (1) it is their policy and practice to provide tools to workers and to record and pay for time employees work, and (2) employees are aware of these policies and practice.  Any violations are not systematic, and are isolated.  The Employers offer contra evidence from employees and from foremen which show the employees were not subjected to violations of the law.  (See doc. 76, Exh. 1 through 95.)  They submit some 89 declarations by workers who state that they were not required to work off-the-clock, were not required to take work home, and were

1   provided tools to do the work.

2       Defendants note that the evidence of working off-the-clock is varied even among the plaintiffs'

3   declarants.  Some declarants say they worked off-the-clock and others say they did not.  Workers who

4   worked early were not necessarily the same as those who worked later, or who took work home.  (Doc.

5   76 Opposition p.13.)  Some of the declarants testified that they knew they were not supposed to work

6   early or late, but did so to pack more boxes and earn a bigger box bonus.  (Doc. 76, Opposition p.4.)

7   The evidence shows a variety of working before start time, or after end time or during breaks.  The

8   evidence shows that any violation which may have occurred is a question which depends upon a variety

9   of factors, "most important of which is the foreman that each individual class member worked for."[2]

10  Employers note that there is variation of testimony among employees of the same crew; such as whether

11  escuela is held daily or 2-3 times per week.  (Doc. 76, Opposition p.16.)  This evidence shows that any

12  policy violations were done not on a company-wide basis but on an individual basis, precluding

13  commonality and typicality.  (Doc. 76, Opposition p.14-15.)

14                          **PLAINTIFFS' REPLY**

15      Plaintiffs argue that defendants failed to list defendants Delano Farms and Cal-Pacific Farm

16  Management as opposing the motion. Plaintiffs argue that these defendants have waived any opposition.[3]

17      The class definition is not overly broad.  The definition excludes supervisors and foreman and

18  employees who were not field workers.  (Doc. 77, Reply p.2.) Plaintiffs propose that if the court finds

19  the class inappropriate, the Court may certify subclasses and plaintiffs suggest four different subclasses.

20  (Doc. 77, Reply p.3.)

21      Plaintiffs argue that commonality and typicality are not undermined.  Plaintiffs argue that,

22  contrary to what Employers state, there is an absence of written policies which address the violations

23  _____

24      [2] Employers task the foreman with ensuring that the work is performed, that the standards and policies are adhered
    to during operation.  (Doc. 76-7, Bangi Decl ¶¶15, 18.) The foreman is responsible for recording all time worked by the field
25  workers, including start and stop time, ensuring that crews take break periods, recording the daily box count, providing
    training ("escuela") and implementing company policies.  (Doc. 76-6, Neville Decl.¶14; doc. 76-7, Bangi Decl. ¶¶20, 23.)
26  A foreman may choose to conduct "escuela" and is given discretion as to how often to conduct the school.

27      [3] The Court denies plaintiffs' request to rule against Delano Farms and Cal-Pacific.  The Court notes that the
    opposition papers demonstrate that all defendants oppose the motion for certification and no prejudice is shown by plaintiffs
28  for the failure to list in the caption the remaining defendants.  For purposes of this ruling, the court does not find dispositive
    the defendants "notice of errata" in which defendants attempted to correct the mistake.  (See Doc. 82.)

here.  The "Tool Agreement" policy fails to prohibit purchase of necessary tools, and the testimony is that the tools provided were adequate tools. Plaintiff summarizes the invoices of purchased tools which show only a few tools were purchased in 2005-2008.  (Doc. 77, Reply p.4.)  Plaintiff argues the "employee rights" policy nowhere states working off-the-clock is prohibited or that taking work home was prohibited.

Plaintiffs argue that there is no conflict in the anecdotal evidence.  Plaintiff notes that all of the declarations submitted by defendants in opposition reflect policies for the 2010 harvest season and are written in present tense.  (Doc. 77, Reply p.5.)  Plaintiffs present evidence that defendants changed policies in 2010 regarding off-the-clock work and work at home. Plaintiffs note that the testimony by workers and foremen is to the change in policies in 2010. Plaintiff argues that in prior years, the policy of work off-the-clock and take work home was permitted and expected.  Therefore, plaintiffs argue that the anecdotal evidence is not in conflict because defendants' declarations refer only to the current, 2010 practice, and not to the past unlawful practices.

## PARTIES' SUR-REPLIES

Following the receipt of plaintiff's reply brief, the Court determined additional briefing was necessary.  On March 14, 2011, the Court requested additional briefing on (1) certifying the subclasses proposed in plaintiffs reply, and (2) the argument and evidence that the policies changed in 2010.

## A.   Defendants' Sur-Reply

Defendants contend that their policies did not change in 2010 and that the policies have been in existence for the entire time.  Defendants present evidence of the safety manager who maintains a log book after visiting each crew and ensuring that the policies are properly posted.  The policies have remained the same and have been in force.  The contradictory statements in the various declarations do not support (1) a company wide policy that employees *had* to take trays home to wash them, or (2) that this policy was uniformly changed in 2010.  (Doc. 81, Sur-reply p.4.)  Employers purchase tools for employees and the tool policy permits employees to use their own.  There is evidence that the tools provided by the Employers were adequate.  Employers purchased many tools, and if invoices have not been provided it is because the invoices of purchases long ago have not been kept by Employers.  Plaintiffs do not have documentary evidence of tool purchases.

**B.      Plaintiffs' Response to Sur-Reply**

Plaintiffs argue that the class definition and proposed subclasses are adequate.  The subclasses do not go beyond the class certification analysis in plaintiffs' motion.  Plaintiffs argue that the written policies are patently defective in that they do not prohibit pre- or post-shift off-the-clock work in the fields, washing trays at home or unreimbursed tool expenditures.  Common issues predominate because an overarching common question is whether the class was injured by the absence of adequate written policies prohibiting pre- and post-shift off-the-clock work in the fields, and washing picking trays at home.  Common issues predominate, therefore, because an overarching common issue is whether the class has been injured by defendants' written tools policy.

## ANALYSIS AND DISCUSSION

**A.      Rule 23 Requirements**

A class for the violations alleged in the complaint must satisfy Fed.R.Civ.P.23 ("Rule 23").

The burden is on the party seeking to maintain the class action.  In this case, plaintiffs must establish a prima facie showing of each of the elements of Rule 23 (a) prerequisites and also the appropriate 23(b) ground for a class action.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001); *Narouz v. Charter Communications, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010) (the district court erred in denying class certification without providing any findings or providing any analysis of the Rule 23 factors).

All class actions under Rule 23 must meet four prerequisites:

1.      Numerosity,

2.      Commonality,

3.      Typicality, and

4.      Adequacy of representation.

The Court must also find that at least one of the following three conditions of Rule 23(b) are satisfied. Here, plaintiffs contend that the propose class meets the requirement of predominance and superiority in Rule 23 (b)(3), which states as follows:

(3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

1    See Fed.R.Civ.P. 23(b).

2    Before certifying a class, the Court must conduct a "rigorous analysis" to ensure that the four

3    requirements of Rule 23(a) are met and that the class fits within Rule 23(b). *General Tel. Co. of the Sw.*

4    *v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364 (1982).  Plaintiff can meet this burden by "providing the

5    Court with a sufficient basis for forming a 'reasonable judgment' on each requirement." *Blackie v.*

6    *Barrack*, 524 F.2d 891, 901 (9th Cir.1975), *cert. denied*, 429 U.S. 816 (1976).  The movant's burden is

7    to produce evidence by affidavits, documents or testimony establishing each Rule 23 requirement. A

8    class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the

9    prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147,

10   161, 102 S.Ct. 2364, 2372  (1982); *see United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied*

11   *Indus. & Service Workers v. ConocoPhillips Co.,* 593 F.3d 802 (9th Cir. 2010) (In determining the

12   propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of

13   action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.)

14   **B.    Application of Rule 23 Requirements to the Facts of the Case**

15       **1.    Numerosity**

16   The class must be so numerous that joinder of all members individually is "impracticable."

17   Fed.R.Civ.P. 23(a)(1).  No specific numerical threshold is required; each case must be examined.

18   *General Tel.C. v. E.E.O.C.*, 446 U.S. 318, 330, 100 S.Ct. 1698 (1980).  Generally, 40 or more members

19   will satisfy the numerosity requirement.  *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473,

20   483 (2nd Cir. 1995), *cert. denied*, 515 U.S. 1122 (1995).

21   Here, plaintiffs allege that the total number of potential members is near 14,000 persons.  The

22   Employers do not dispute numerosity.  Therefore, the requirement of numerosity has been met.

23       **2.    Commonality**

24   There must be questions of law or fact common to the class.  Fed.R.Civ.P. 23(a)(2).  A "common

25   nucleus of operative facts" is usually enough to satisfy the commonality requirement.  *Rosario v.*

26   *Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993).  Commonality

27   focuses on the relationship of common facts and legal issues among class members.  The existence of

28   shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts

coupled with disparate legal remedies within the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (all claims stemmed from the same source; the allegedly defective designed rear liftgate latch installed in minivans manufactured by Chrysler); *Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) (discriminatory pay practices commonly affected all members of the proposed class.), *cert. denied,* 120 S.Ct. 1050 (2009).

"Commonality" is shown where the plaintiffs and the proposed class suffer from the same discriminatory practices. In *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003), the court certified a class of 15,000 African-American salaried and hourly employees who alleged company-wide discriminatory practices. The Court held there was commonality for the broad class. *Staton*, 327 F.3d at 956. The class consisted of salaried and hourly employees in different positions as well as employees from companies Boeing recently acquired. The court held commonality existed because the class suffered under "institutional problems" and "company-wide discriminatory practices." *Id.* at 955.

In *Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008), the court found "commonality" for a class which alleged discrimination based on national origin, which caused Hispanic employees to receive lower pay. Plaintiffs presented evidence from which the district court found Hispanic workers' hourly rates were lower in similar jobs. The district court, nonetheless, denied certification for lack of "commonality" as to pay discrimination because defendant had rectified future pay disparities. On appeal, the appellate court reversed stating that the district court failed to address certification for the past wrongs. The court said plaintiffs had shown commonality because "the Plaintiffs here establish commonality even though their individual factual situations differ because they all seek a common legal remedy for a common wrong. Plaintiffs here not only presented evidence of discriminatory pay scales, but also provided statistical and anecdotal evidence of discrimination." *Id.* at 989. Thus, the pay disparities among the class member did not prevent certification because they all suffered from the same discriminatory practice.

In *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010), the court granted class certification for classes and subclasses for nonpayment of work off-the-clock and failure to provide meal and rest periods. The court found that plaintiff had satisfied the commonality and typicality requirements of Rule 23. Plaintiffs alleged a common "systematic policy of automatically deducting 30

10

minutes of work time for daily meals."  Plaintiffs challenged that they actually worked meal and rest periods and were improperly deducted time.  *Id.* at 630.  Defendant did not present conflicting evidence that the policy was other than as shown by plaintiff.  The Court held commonality, in part, because "Plaintiffs have provided evidence that indicates that they were subject to all of these alleged wrongs and that the relevant policies were common across Defendant's California facilities."  *Id.* at 633.  These cases show that commonality exists where there is a common wrong through a common policy.

(A)     Summary of Evidence in Support of and Contrary to Commonality

Here, plaintiffs present three kinds of evidence in support of commonality: (a) anecdotal evidence from class members as to their experience with wage and hour violations, (b) statistical evidence from expert Kenneth Creal, and (3) evidence disputing that defendants have company wide policies against wage and hour violations.  Defendants present two kinds of contrary evidence: (a) anecdotal evidence from current employees, supervisors and foremen, who testify as to the absence of wage and hour violations, and (b) company wide polices against wage and hour violations.  Defendants challenge whether plaintiffs have shown "commonality."  Defendants offer purported "contradictory" evidence that there is no class wide policy of failure to pay wages, reporting time pay, failure to provide meal and rest breaks, and failure to reimburse expenses.

Here, each party has presented substantial evidence in support of their positions.  In support of this motion to certify the class, plaintiffs submit sixty-three (63) declarations and deposition testimony from proposed class members who worked in 28 different crews for the Employers.  (See Doc. 75-3.)  Each of plaintiffs' submitted declarations provides the following kinds of testimony: statement of the year/seasons that the employee worked for Employers; how many days per week he/she worked; payment scale; equipment purchased, if any; whether the employee was required to report to work before the start time; what activities the employee engaged in before or after start time; and estimates of the time the employee worked off-the-clock.  (See e.g., Doc.75-4, Rima Arceo Decl. Exh.11; Magdaleno Castaneda Decl. Exh. 18; Mario Marelos Decl. Exh. 49.)  Each of plaintiffs' declarants states that they were required to work before official start-time and after official end-time. (The amount of time fluctuated generally between 15-30 minutes before and after official start time.)  For instance, Rodolfo Gomez testifies that during pre-harvest and harvest, "I was required to arrive at the jobsite approximately

15 before the official start time." (Doc. 75-7, Rodolfo Gomez Decl. ¶6-5; Exh. 34.)  Each declarant further states that the declarant purchased tools to do the work because if the Employers tools were provided, the tools were so inferior the work could not be performed.  For instance, Estela Izazaga testifies that "I was required to provide my own tools and equipment that I needed for my job.  The tools and equipment that I was required to take to my job were picking shears that cost me $10.00 and a holster that cost me $7.00."  (See e.g., Doc.75-4, Estala Izazaga Decl. ¶5, Exh. 43.)

Employers also present some 89 declarants who testify the opposite of plaintiffs' declarants; that they were not subject to wage and hour violations. (Doc. 76.)  Each declarant states: the declarant is a current employee; that he/she is required to attend "escuelita," but is paid for that time; he/she is never required to perform work off-the-clock; he/she is never permitted to do work before the beginning of the shift or after the shift ends; he/she is never required to work at home; he/she is provided all the tools needed to do the job and the tools are adequate; and he/she is provided with all meals and rest periods.  For instance, Jose Bermudes testifies that he is "never required to do work after my shift has ended," and is "never required to do work at home." (Doc. 76-1, Jose Bermudes Decl. ¶4, 5, Exh.12.)  Marta Lucio states that "I am required to attend 'escuelita' almost every morning at the beginning of my shift . . . It is always held while employees are on the clock and I am always paid the time I spend in school." (Doc. 76-3, Marta Lucio Decl. ¶2, Exh. 50.)  The declarations state that there have been no violations.

### (B)   Conflicting Evidence Warrants Denial of Certification

Generally, this kind of conflicting evidentiary support may preclude certification.  For instance, in *Garcia v. Sun Pacific Farming Coop.*, 2008 WL 2073979 (E.D.Cal., May 14, 2008) (O'Neill, J.), *aff'd*, 359 Fed.Appx. 724, 2009 WL 4912213 (9th Cir. Nov. 13, 2009), this Court held that conflicting and contrary evidence submitted by each side did not establish a common wage and hour practice.  Like this case, *Garcia* was a AWPA case in which plaintiffs challenged employment practices of working off-the-clock, failure to permit meal and rest periods and failure to reimburse for tool expenses.  Plaintiffs presented 7 employee declarations in which they claimed the employment policies had been violated as to them.  In opposition to class certification, defendants presented 33 declarations of employees who testified that the employees did not work off-the-clock, were paid minium wage, received meal and rest periods and were provided with necessary tools and equipment.  *Id.* at 2008 WL 2073979 at *3-4.  This

1    Court held that due to the conflicting anecdotal evidence disputing whether common policies existed,

2    there was inconsistent application of the wage and hour laws among the employees. "The evidence

3    before this Court demonstrates significant differences between the crews and individuals and no

4    commonality. Plaintiff is therefore unable to demonstrate commonality." *Id.* at 2008 WL 2073979 *11.

5         Similarly, in *Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D.Cal. 2010), the court denied

6    class certification based upon conflicting anecdotal evidence of discriminatory practices. In *Joe's Crab*

7    *Shack*, plaintiff conceded that defendant's written policies required payment of overtime, meal and rest

8    breaks, and prohibited "off the clock" work, but claimed that those written policies were simply

9    "ignored." Plaintiff introduced anecdotal evidence by his own declaration and declarations of six other

10   employees. This evidence was contradicted by evidence presented by defendant. *Washington v. Joe's*

11   *Crab Shack*, 271 F.R.D. at 637. The court, nonetheless, found that this anecdotal evidence was

12   sufficient for "common issues to satisfy the requirement of Rule 23(a)(3)." The Court, however, found

13   that the evidence was not "typical of the claims and defenses of the class." "The test of typicality is

14   whether other members have the same or similar injury, whether the action is based on conduct which

15   is not unique to the named plaintiffs, and whether other class members have been injured by the same

16   course of conduct." *Joe's Crab Shack*, 271 F.R.D. at 629. The Court stated that the claims were not co-

17   extensive of the claims of proposed class members who submitted class members who said they had not

18   worked off-the-clock or where denied breaks and overtime.

19              (C)    The Evidence is Not Conflicting

20         The evidence submitted in this case is different from that submitted in *Garcia* or *Joe's Crab*

21   *Shack.* Plaintiffs note that none of defendants' declarants specifies any time period for which the

22   testimony is applicable. From the Court's review of the defendants' declarations, the Court notes the

23   absence of any time period of the declarant's employment or the time period for which their testimony

24   applies. Each declarant states, "I am currently an employee of T&R Bangi's Agricultural Services."

25   (See Doc. 76, declarations Exh. 1-89.) Each declarant is a current employee, but gives no evidence of

26   the duration of their employment or the time period for which the testimony applies. The implication

27   is that because the declarants are current employees, and the declarants' declarations are worded in the

28   present tense, the testimony applies for the current employment practices. (See Doc.71-1, Exh.1

                                                    13

1  ("During the school, the foreman gives us directions and talks about safety."); Exh. 17 ("As an employee

2  of T&R Bangi, I attend "escuelita" every morning at the beginning of my shift."); Exh. 77 ("If I arrive

3  at the job site early, I am not required to being work.")).   The declarants do not provide sufficient

4  evidence of labor practices during any period other than the current time period.

5  In their sur-reply, defendants argue absence of a time period in the declarations is irrelevant

6  because "never means never."  Defendants argue that certain of their declarations state that employees

7  are "never" required to work off-the-clock, or that the employee is "never" required to take trays home.

8  (Doc. 81, Defendants' Sur-reply, p.3.)  Defendants argue that if an employee worked for 10 years for

9  defendants, and the declaration says the employee "never" worked off-the-clock, that statement applies

10  for the 10 year employment history.   (Doc. 81, Defendants' Sur-reply, p.4.)   Defendants submit

11  additional declarations in connection with their sur-reply which state that "never" means the declarants'

12  entire employment history.  (Doc. 81, Defendants' Sur-reply, p.4.)

13  The difficulty with the court's accepting fully defendants' argument that "never means never"

14  is that the declarations do not state a time period of employment.  For instance, declarant Felipe Alvarez

15  states "I am currently an employee of T&R Bangi's." (Doc. 76-1, Alvarez Decl., Exh. 5.)  Nowhere in

16  the declaration is the time period of employment referenced.  All of the other declarants similarly state

17  they are current employees, but without specifying a time period of employment.  (See Doc. 76-1

18  through76-4, Exh. 69 ("I am a current employee ...").) A few sur-reply declarations include employment

19  dates, but these are only a minor number of declarants and are mostly supervisory position declarants.

20  (Doc.81-2 and 81-3, declarations.)  The Court, therefore, cannot make the evidentiary leap that a current

21  employee has been an employee for any specific period of time.

22  Plaintiffs have presented evidence explaining why current labor practices are different from

23  former labor practices.  The labor practices changed in 2010.  In their response to defendants' sur-reply,

24  plaintiffs stand by that position - the policies changed in 2010.[4]  Plaintiffs present evidence that in 2010,

25  

26  [4] Plaintiffs point to testimony of Craig Neville, Administrative Assistant, who testifies as to the placement of clocks
in the fields in 2010.  Plaintiffs argue that this evidence shows that time was not adequately being tracked before the clocks
27  were placed in the fields. Mr. Neville states, "In 2010, I decided to place a clock at some crew sites to see if it would help
employees with keeping track of time.  I introduced these clock as an additional aide to help the crew all take [ ] their breaks
28  at the same time and so that there would be no question about how long their break was or how much time had passed." (Doc.

14

1    Employers changed the practice from requiring pre-shift and post-shift work, to prohibiting pre-shift and

2    post-shift work. (See Doc. 77, Reply p.6 n.9)  Plaintiffs present evidence that in 2010, Employers

3    changed the practice of requiring work be taken home (to clean trays), to prohibiting work being taken

4    home.  (See Doc. 77, Reply, p. 6 n.11 (citing to defendants' declarants which state, "I use to take my

5    trays home to wash.").)  Plaintiffs present evidence that in 2010, Employers changed the practice of not

6    providing quality tools for the work.[5]  Thus, plaintiff has explained or offered a reasonable explanation

7    of why, what appears to be conflicting declarant testimony, is not conflicting at all.

8        In their sur-reply, defendants argue that the current policies always have been in effect.  The

9    policies did not change in 2010.  In their sur-reply, defendants present declarations from 28 declarants

10   who say that the policies applied throughout the entirety of their employment.  These declarations give

11   a beginning and ending year of employment.  (See e.g., Doc.81-2, Alvarez Decl., Exh. 1 (stating term

12   of employment); Castro Decl. Exh. 7 (stating term of employment).)  Defendants argue that these  28

13   employees signed supplemental declarations in which the declarants clarify that their statements applied

14   to the entire employment with Employers -- they "never" had to work pre- or post-shift and they

15   "always" were provided with tools.  (See Doc. 81, Sur-reply p.4.)

16       In the response to the sur-reply, plaintiffs parse out the inconsistencies in the sur-reply

17   declarations. Plaintiff note that only 26 of the 28 reference whether they are "required" to work off-the-

18   clock, but are entirely silent on whether the defendants, nonetheless, "permitted" members of the class

19   to perform pre- or post-shift work.  (Doc. 83, Plaintiff's Response p.8.)  Plaintiffs note that defendants

20   cite to only 10 of the 28 declarations for defendants' proposition that employees are "never required to

21   work off-the-clock."  Plaintiffs note that whether the declarants were "required" to work off-the-clock

22   is inadequate to address whether the "workers are owed wages for time they were suffered or permitted

23

24   81-1, Decl. Neville ¶11.)  The Court considers this evidence as corroborating evidence that some alteration of policies may
     have occurred in 2010 such that time keeping policies were not as stringently followed, as is plaintiffs' position.

25

26   [5] This change in practice is partially corroborated by the invoices submitted by Employers of the purchase of over
     two-thousand tools in 2009, while in prior years, minimal numbers of tools were purchased, or at least the documentary
27   support is not available.  (Doc. 76, Bangi Decl. Exh. A (Invoices); Doc. 77-2, Alarcon Decl. (Analyzing Bangi Invoices to
     show the number of tools purchased in years 2005-2009).)  Employers argue that they did not retain invoices from prior years,
     but this argument carries little weight.  Even if the actual invoices were not retained, for business or tax purposes, some
28   documentary corroborating evidence of purchases should be available.

1    to work, whether or not required to do so." (Doc. 83, Plaintiff's Response p. 9.)

2            The Court agrees with plaintiffs' reply and response to the sur-reply, that plaintiffs evidence is

3    a more accurate representation of past labor practices.  Defendants' declarants represent only about 9

4    different crews, and arguably, mostly for the current labor practices. (See Doc. 77, Reply p.6.) Plaintiffs

5    present declarants spanning 28 different crews.  As plaintiffs' reply and response note, and from the

6    court's review of the numerous declarations, over 30 of defendants' declarants fail to identify any crew

7    for which they are employed.  Moreover, some of defendants' declarants suggest activity which may

8    encompass past violations of wage and hour laws.  For instance, some of defendants' declarations state

9    that the declarants worked pre-shift without pay. (See e.g., Alfredo Aguilar Decl. Exh. 1, ("The harvest

10   season is the only time pre-shift work can be done."); Doc. 76-2, Ortencia Diaz ("I use to begin my work

11   early, but now if I arrive at the job site early, I do not.").) Some of defendants' declarations state that the

12   declarants use to take trays home to clean.  (Esperanza Alvarez Decl. "A few years ago I use to take my

13   trays home to clean them.").)  The presence of possible past violations, as acknowledged by some of

14   defendants' declarants demonstrate that the "stringent policies" adopted by defendants may not have

15   been followed as defendants attest.  Thus, the evidence plaintiffs present appears to be a more accurate

16   representation of past practices, and defendants' declarants do not.[6]

17           Here, plaintiffs seek to certify a class for the time period from 3 or 4 years from the filing of the

18   complaint.  The complaint was filed on July 17, 2009.  Plaintiffs have presented evidence to the court

19   for past potential violations of wage and labor laws.  Defendants evidence is varying and contradictory

20   and indicates that some violations existed as to past practices.  Thus, any contradictory evidence between

21   plaintiffs' evidence and defendants' evidence does not show lack of commonality.  The common

22   question is whether the wages are owed for off-the-clock work performed, whether a policy permitted

23   uncompensated, even if not "required," off-the-clock work.  This is a sufficient common question to

24   justify certification.

25

26   _____

27           [6] Terry Bangi, President of T&R Bangi, testifies that "We do not allow workers to being work early, to work during
     their breaks, or to stay late to work.  If the foremen see workers doing this, they are supposed to tell them to stop," and that

28   "Workers are not required to clean picking trays at home."  (Doc. 76-7, Bangi Decl. ¶19, 27.)  These statements are
     contradicted by defendants' own evidence and evidence presented by plaintiffs.

1          (D)     Written Policies of Defendants

2          Employers argue that they have written policies which demonstrate that Employers are adhering

3    to the law.  Employers argue that they have the "Tool Agreement"[7] and the "Right/Exceptions"[8] policies

4    which are located in the main office and at every crew location.  In their sur-reply, defendants present

5    the testimony of Marife Villar the Safety Manager for T&R Bangi.  Ms. Villar's job is to ensure that

6    foremen are given copies of the company policies and that foreman have the crews sign acknowledgment

7    forms.  She keep a log where she notes that policies are properly posted.[9]  Plaintiffs dispute that posting

8    of the policies and also note that had employees signed acknowledgments of these policies, defendant

9    would have and should have provided them as evidentiary support.

10         Here, defendants present evidence that they maintain written policies which are contrary to the

11   policies plaintiff allege exist in the field.   (See generally Bangi Decl.; Neville Decl.) Defendants

12   maintain policies against working "off-the-clock" and for reimbursement for tool expense.  Defendants

13   present evidence that the foreman are trained on these policies and are instructed that no off-the-clock

14   work is permitted.

15         The Court, however, agrees with plaintiffs that these two policies do not conflict necessarily with

16   plaintiffs' position.  Plaintiffs' position is that tools were not provided, or if provided, the tools were

17   inadequate.  To do the job for which they were paid, employees purchased their own tools and were not

18

19
      _____
20      [7] The Tool Agreement states, "This agreement states you are aware that we have provided you with the tools you
      need to [do] the job you have been hire [sic] to do.  It also informs you that you do not have to use the tool we gave you.  You
      may use your own.  Your signature on the last page of this packet confirms that you understand this agreement and that you
21    have made the choice to use our tools or your own."  (Doc. 76-6, Neville Decl. Exh. 1.)

22      [8] This policy states in pertinent part:
                   1.      Be on time to work, and well rested (8 hours of sleep).
23                 3.      Follow your Foreman's instructions.
                   9.      Work at a reasonable rate to get the job done (Keep up with other employees.)
24                 15.     Employees are not required to take picking trays home to be cleaned.
                   17.     If you do not have clippers for work, we will provide them for you.
25                 24.     Review the binder that has all Federal, state, and company laws, policies and your right to as a
                           [sic] work.  The binders are located at each crew's toilet.
26                 26      You will have 2-10 minutes breaks and a 30 minute lunch during an 8 hour day.  (Doc. 76-6,
                           Neville Decl. Exh. 2.)
27
        [9] Plaintiffs object to this new evidence by Ms. Villor  submitted for the first time in the defendants' sur-reply.  (See
28    Doc. 83-2, Objections.)

1   reimbursed.[10]  The evidence submitted by both sides is supportive of violations of the off-the-clock work

2   policy and the tool policy.  As shown above, declarants for both plaintiffs and defendants have stated

3   they have worked off-the-clock and have bought their own tools because the Employer either did not

4   provide tools or the tools were inadequate.  Thus, there is sufficient evidence that the policies were not

5   followed.  The presence of what appears to be wholesale workers purchasing tools to perform necessary

6   work is a common question.

7           Further, the evidence does not persuade that the policies were given to the employees.  Plaintiffs

8   offer evidence that the policies were not provided.  For instance, Sabas Arredondo testified that he was

9   not given a handbook and when he was asked to sign documents, the documents were typically in

10  English, which he does not read.  He was told to just sign.  (*See, e.g.*, Arredondo Depo. 17:7-17, 20:17-

11  22:15; R. Landeros Depo. p. 29:12-32.)  The evidence presented by defendants does not include any

12  signed receipts of written policies.  This Court, in conducting its "rigorous analysis" considers the

13  evidence presented and mentioned in testimony and  actual and potential corroborating evidence.  Even

14  if plaintiffs' theory is ultimately unsuccessful, application of the written policy language in the work

15  environment presents a question common to the class.

16                  (E)     Expert Opinion

17          In addition to the anecdotal evidence plaintiffs present, they also offer the declaration of Mr.

18  Kenneth L. Creal, a Certified Public Accountant.  He has been an CPA since 1978 and has been retained

19  as an expert for plaintiffs.  Mr. Creal offers testimony which summarizes the 63 different declarations

20  of putative class members who provided declarations by plaintiff.  He notes that the 63 class members

21  have worked for 28 different foremen during the remedial period.  (Doc. 75-2, Creal Decl. ¶6.)  He then

22  summarizes their testimony as to their complaints for working off-the-clock, and buying tools.  Mr. Creal

23  provides as "statistical analysis" of the percentage of declarants who make certain claims.  For instance,

24  Mr. Creal states that 98% of the declarants make a statement that they worked prior to the recorded starts

25  time of their shift and where not paid. (Doc. 75-2, Creal Decl. ¶8.)  Mr. Creal offers a table which

26

27          [10] Defendants argue individualized inquiries will have to be made as to who purchased which tools. They argue that
    the "adequacy" of the tools is not a violation of the law and there is no proof that any of the employees who purchased tools

28  asked to be reimbursed.  However, at this point in the litigation, the common purchase of tools to perform the necessary work
    for Employers is a common issue.

1  summarizes the statements of violations and assigns a percentage to each statement.  He also offers an

2  opinion as to the appropriateness of the time keeping methods.  For instance, he reviewed daily time

3  sheets and notes that (1) foremen would only write a one time entry across the page noting that each

4  employee was credited to have started and ended at the exact same time, (2) foremen would fail to list

5  time started or stopped, (3) foremen would not make note of times "in" and times "out," and (4) foremen

6  would not make any time entries.  (Doc.  75-2, Creal Decl. ¶17-21.)   Mr. Creal offers an opinion that

7  the time-keeping methods do not comply with requirements the California Wage Orders.  (Doc. 75-2,

8  Creal Decl. ¶22.)

9         Defendants object to Mr. Creal's testimony on numerous bases.  Defendants object that Mr. Creal

10  is a CPA, not an expert on labor practices and cannot offer opinions on wage and hour laws and

11  violations.   They also object that the statistics provided by Mr. Creal statistically are insignificant

12  because the declarants studied do not encompass the other 89 declarations provided by defendants in

13  opposition to the motion.  (See Doc. 76-76, Objection p.1.) In those declarations, defendants stated that

14  the employees did not work off-the-clock without pay and were not required to provide their own tools.

15  Defendants object because their declarants offer testimony that no violations of wage and hour laws

16  occurred. Defendants object that various statements offer legal conclusions, are improper assumptions

17  and lack foundation, among other objections.  It is well established that plaintiffs may demonstrate

18  commonality by presenting statistical evidence, which survives a "rigorous analysis," sufficient to raise

19  a common question concerning whether there is class-wide discrimination. *See General Telephone Co.*

20  *of Southwest v. Falcon*, 457 U.S. 147, 159 n. 15, 161, 102 S.Ct. 2364 (1982).

21         At this stage in the litigation, "robust gatekeeping of expert evidence is not required; rather, the

22  court should ask only if expert evidence is 'useful in evaluating whether class certification requirements

23  have been met.' " *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 635 (N.D.Cal.2007).  In *Ellis v.*

24  *Costco*, plaintiffs allege that Costco's promotion system has a disparate impact on female employees,

25  that Costco's management discriminates against women in promotions.  The plaintiffs offered an expert

26  in statistical analyses as to potential gender discrimination.   The expert provided a statistical

27  benchmarking analyses comparing defendants' gender management positions to other retailers and also

28  a regression analysis based upon a feeder pool of qualified female candidates.  The court found that the

expert declaration, while contradicted by defendant's experts, was "strong enough to establish commonality."

Here, unlike the experts in *Ellis v. Costco*, Mr. Creal offers a statistical evaluation solely of the declarations submitted by plaintiffs. He does not consider market or other information in assigning the statistical probability of certain conduct. Further, he does not consider the declarations submitted by defendants in which each declarant said that no violations of wage and hour law were imposed upon them. He extrapolates statistically based upon a limited pool of information, but offers no foundation as to why such extrapolation would be warranted. This information is not assistive of the issue of commonality. Further, the Court does not reach the issue of whether Mr. Creal is qualified to opine on issues of labor practices and labor violations.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 2002). Typicality is determined by the violation alleged to have occurred. *Id.* "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*.

The claims of the named plaintiffs and the putative class members are the same. Plaintiffs and the class claim they are required to work off-the-clock and are required to take work home. Plaintiffs and the class claim that they were not reimbursed for tools necessary to perform their jobs.

Defendants argue the same position for commonality and typicality. Defendants argue that the commonality and typicality in this particular case merge. "The commonality and typicality requirements ... tend to merge" because both focus on the similarities in claims across the class. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

1    As this Court has addressed the commonality *supra*, and found commonality, the Court will not

2    repeat the analysis.  The representatives' claims are typical of the proposed class members.  Each of the

3    proposed representatives claims that he/she was denied full compensation in violation of labor laws.

4    The representatives claim that they were required to work pre-shift and post-shift, not permitted or

5    allowed to take meal or rest periods, among other violations.  Additional proposed class members

6    submitted declarations which state that, they too, were denied these rights.  For these and possibly other

7    proposed members, they were not paid for their work and given breaks. Thus, the representatives claims

8    are typical of all of the proposed class members.

9        **4.    Adequacy of Representation**

10    The person representing the class must be able "fairly and adequately to protect the interests" of

11    all members in the class. Fed. R. Civ. P. 23(a)(4). The representation is "adequate" if the attorney

12    representing the class is qualified and competent and the class representatives are not disqualified by

13    interests antagonistic to the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d

14    507, 512 (9th Cir.1978).  Because the parties do not dispute the adequacy of class counsel, the Court's

15    analysis focuses on the adequacy of the class representatives.

16    A class may not be appropriate where the class representatives claim a different type of injury

17    from that being asserted on behalf of the other class members.  Plaintiffs' claims and the class claims

18    must be so interrelated that the interests of the class members will be fairly and adequately protected in

19    their absence. *Falcon*, 457 U.S. at 157-58.  A representative is not adequate if that party is antagonistic

20    or has conflicts with other potential class members. *Amchen Products, Inc. v. Windsor*, 521 U.S. 591,

21    626 (1997).  The class representative must not seek relief that favors some class members at the expense

22    of others. *Payne v. Travenol Labs., Inc.*, 673 F2d 798, 810-11 (5th Cir. 1992).

23    Defendants do not challenge the adequacy of the representation by the named plaintiffs . Further,

24    defendant does not dispute that counsel is an experienced wage and hour attorney.

25    Plaintiffs demonstrate that they are adequate representatives for the putative class members.

26    Plaintiffs demonstrate that counsel will be adequately represent the interests of th class.  From the

27    Court's review of potential class counsel's declaration, counsel is an experienced wage and hour attorney

28    with over 20 years of litigation and class action experience and a member of the American Board of Trial

Advocates.  (Doc. 75-3, Gregory Ramirez Decl.)  Accordingly, class counsel will provide adequate representation.

**C.      Rule 23(b) Requirements**

As noted above, if Plaintiffs satisfy their burden under Rule 23(a), the Court must also find that at least one of the following three conditions of Rule 23(b) is satisfied:

> (1) the prosecution of separate actions would create a risk of:
>> (a) inconsistent or varying adjudications or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications;
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or
>
> (3) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiffs propose certification under Rule 23(b)(3).

**1.      Predominate Questions**

Under Rule 23(b)(3), the predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir.), *cert. denied*, 534 U.S. 973, 122 S.Ct. 395, 151 L.Ed.2d 299 (2001).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*.  The existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof. *See*, *e.g.*, *Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698, *9-10 (N.D.Cal.2007) (predominance requirement satisfied where plaintiff provided substantial evidence of the existence of a company-wide policy even if in practice there are deviations from the policy).

Here, the evidence shows some discrepancy in application of the employment practices.  The evidence shows that some of the class suffered from the same discriminatory practices, while others did not. For instance, some class members may have been required to report early to work for pre-shift work, while others workers may not have been required to report pre-shift.  Some workers may have been

required to purchase their own tools, and others were not, while still others were provided tools but provided inadequate tools.  For these reasons, the class as it is composed by plaintiffs may be too broad.  The evidence does not show that the employment practice pervades the prospective class members.  The evidence, rather, shows some diversity of the employer's employment practices among the workers.

In their reply brief, plaintiffs suggested possible "subclasses":

(1)  Field workers who performed uncompensated and unrecorded work before the fixed start time in the harvest and pre-harvest work.

(2)  Field workers who performed uncompensated and unrecorded work after the fixed stopping time in the harvest work.

(3)  Field workers who performed uncompensated and unrecorded work after hours by washing their picking trays at home

(4)  Field workers who incurred unreimbursed necessary tools expenses in the harvest and pre-harvest work.

On March 14, 2011, the Court requested supplemental briefing as to whether subclasses are appropriate in this case.  The parties filed their supplemental briefing, but neither party addressed the appropriateness of these subclasses.  Defendants continued to argue no class is appropriate.  Plaintiffs did not further address the subclasses.  Regardless, in the interest of judicial economy to not further expand the time and effort employed by the Court in this motion, the Court turns to whether the subclasses are appropriate in this case.  See Fed.R.Civ.P. 23(c)(5) (the court may divide a class into subclasses, and thereafter treat each subclass separately).

From the Court's review of the totality of the evidence submitted in moving and opposition papers, including in replies, sur-replies and responses thereto, wage violations occurred in all of these categories.  A common nucleus of facts and common legal questions dominates this litigation if the class is split into the proposed subclasses. Each subclass has common questions of law and fact which predominate within the subclass.   Subclass 1 has common questions of the policy application to pre-shift, and whether class members received the pay for pre-shift work.  Subclass 2 has common questions of the policy application to post-shift work, and whether class members received pay for post-shift work.

Subclass 3 has common questions whether class members received the pay for at home work.  Subclass 4 has common questions of the policy application to tool purchases, and whether class member received the pay for tool purchases.  There may be some variance among the individual employees which may result in difficulty of proof in demonstrating which employees fall within which subclass.  For instance, each person who suffered "pre-shift" work off-the-clock, may not also fall into the subclass of persons who purchased their own tools without reimbursement.  Nonetheless, given the common issues, the variance does not defeat predominance.[11]

## 2.    Superiority of the Class Action Device

The Court must also find that the class action device is "superior" to individual lawsuits for resolving the dispute.  Fed.R.Civ.P. 23(b)(3); *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1231–1232 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation.")  "Rule 23(b)(3) also requires that class resolution be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1023 (quoting Rule 23(b)(3)).  The test for superiority of the class action vehicle requires "determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.  Courts recognize that employer practices and policies with regard to wages and hours often have an impact on large numbers of workers in ways that are sufficiently similar to make class-based resolution appropriate and efficient. *See, e.g.*, *Lerwill v. Inflight Motion Pictures Inc.*, 582 F.2d 507, 512-13 (9th Cir.1978) (upholding the trial court's decision to certify the class of technicians seeking overtime pay and finding that "[n]umerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated").

Here, as in *Hanlon*, the alternative mechanism would be individual claims for small amounts of damages. Not only would this mechanism burden the court system which would decide the same legal

---

[11] The Court is confident that the parties can fashion methods of common proof to ensure members are properly classified within a subclass.  For instance, one possibility is a randomly selected sample of claimants coupled with expert statistical analysis  based upon Employer records and survey results.

issues in a number of small cases, but it would also make little economic sense for litigants or lawyers. *See Hanlon*, 150 F.3d at 1023 (noting possibility that in individual cases, "litigation costs would dwarf potential recovery"). Individual suits would burden an already overburdened the court system. Further, if plaintiffs cannot proceed as a class, most if not all class members will be unable to proceed as individuals. The members primarily are migrant workers who may speak little English and have little understanding of the litigation. It is doubtful they have the resources to pursue litigation. Accordingly, the Court determines that certifying a class action under Rule 23(b)(3) is superior to the filing of individual claims because a class action will accomplish judicial economy by avoiding multiple suits and protect the rights of persons who might not be able to present claims on an individual basis. Accordingly, the court finds class treatment to be superior to individual adjudications. Plaintiffs meet the requirements set forth by Rule 23(b)(3), the Court certifies the subclasses.

### 3.    Representatives for the Subclasses

Each subclass must have an adequate representative. A plaintiff seeking to maintain a class action must in fact be a member of the class he or she claims to represent. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. at 156, 102 S.Ct. at 2370. Rule 23(a)(3) is satisfied where the named plaintiffs have the same or similar injury as the unnamed class members

This Court has found that subclasses are appropriate for this action. Each subclass must have a representative who has the same claims as those of the subclass members. Plaintiffs will be required to designate the appropriate representative who will adequately represent the interests of each subclass.

### D.    Notice to Potential Class Members

In their motion, plaintiffs ask the Court to approve the notice to be provided to potential class members. Plaintiffs attach a proposed "Notice," both in English and in Spanish, as Exh. 106 to plaintiffs' moving papers. (Doc. 75.) Defendants have not stated any objection to plaintiffs' Notice.

This Court has authority to facilitate notice to potential class members. The Supreme Court has held that court authorization and facilitation of the notice process of such actions, under certain circumstances, is proper, "if not necessary." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 486 (1989) (approval of court facilitation in ADEA cases). In this case, it is undisputed that this Court has authority to facilitate notice to potential class members. Pursuant to *Hoffmann-LaRoche*

*Inc. v. Sperling,* the Court has discretion and "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-171, 110 S.Ct. 482.

Two of the goals of court facilitation of notice to potential class members are the "goal(s) of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. at 173.  The goal of avoiding multiplicity of duplicative suits is fostered by providing as much notice of the action as is practicable.  *Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is unlikely that Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.")

The court has reviewed the proposed notice to the class members.  It contains requisite notice information and adequately informs potential class members of their rights.

However, certain language will need to be modified.  The proposed notice contains the class definition as originally proposed.  The notice must be modified to reflect the certification of the subclasses.

In addition, at paragraph 11, the notice instructs class members to mail their "opt-out" forms directly to the Court.  For judicial economy, the notice should be modified to reflect that the opt out forms should be mailed directly to class counsel who will be responsible for e-filing the documents.

As defendants have not raised objections to the notice, the Court finds that defendants have waived any objection.

/////

/////

/////

/////

/////

/////

/////

/////

## CONCLUSION

The Court GRANTS the motion in part and DENIES the motion in PART.

1.      The Court CERTIFIES the following pursuant to Rule 23(b)(3) as follows:

"All non-exempt agricultural employees of DELANO FARMS COMPANY, CAL-PACIFIC FARM MANAGEMENT, L.P., and T&R BANGI'S AGRICULTURAL SERVICES, INC. who performed field work at Delano Farms in California from four (4) years prior to the filing of this action to the present, excluding irrigators, tractor drivers, swampers, and workers employed only in cold-storage." The class shall be divided into subclasses as follows:

(1)     Field workers who performed uncompensated and unrecorded work before the fixed start time in the harvest and pre-harvest work.

(2)     Field workers who performed uncompensated and unrecorded work after the fixed stopping time in the harvest work.

(3)     Field workers who performed uncompensated and unrecorded work after hours by washing their picking trays at home.

(4)     Field workers who incurred unreimbursed necessary tools expenses in the harvest and pre-harvest work.

2.      The Court appoints as class and subclass counsel Wasserman, Camdon, Casselman & Esensten and also Marcos Camacho, A Law Corporation.

3.      Within 20 days of the date this Order is electronically docketed, Plaintiffs shall file declarations attesting to their qualifications to serve as representatives of one or more of the subclasses

4.      Counsel for plaintiffs and defendants shall meet and confer and, no later than May 13, 2011, submit a joint form of proposed Notice and plan for class notification.

IT IS SO ORDERED.

Dated:   __April 18, 2011__          _____/s/ Lawrence J. O'Neill_____
                                       UNITED STATES DISTRICT JUDGE