1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11
     SABAS ARREDONDO, et al.,                    CASE NO. 1:09-cv-01247-LJO-DLB
12
                            Plaintiffs,          **ORDER ON DEFENDANT DELANO FARMS'**
13          vs.                                  **MOTION FOR SUMMARY JUDGMENT**
                                                 **AND REQUEST FOR ORAL ARGUMENT**
14   DELANO FARMS COMPANY, et al.,               (Docs. 112, 162)

15                          Defendants.

16   _____/

17

18                              **I. INTRODUCTION**

19          Plaintiffs have filed a class action suit against defendants, Delano Farms Company ("Delano

20   Farms"), Cal-Pacific Farm Management, L.P. ("Cal-Pacific"), T&R Bangi's Agricultural Services, Inc.

21   ("TR Bangi"), and Does 1 through 10.  Plaintiffs allege federal and state law wage and hour violations,

22   including claims pursuant to the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C.

23   § 1801, et seq.  ("AWPA").  Now pending before the Court is Delano Farms' motion for summary

24   judgment and request for oral argument.  Delano Farms seeks to be dismissed from this action with

25   prejudice based on its argument that Cal-Pacific and TR Bangi are independent contractors and Delano

26   Farms does not qualify as a joint employer under federal or state law.  Plaintiffs have filed an opposition

27   to the motion, to which Delano Farms has replied.  For the reasons discussed below this Court, DENIES

28   Delano Farms' motion for summary judgment and DENIES Delano Farms' request for oral argument.

                                         1

## II. BACKGROUND

**A. Undisputed Facts**

Delano Farms is a grower of table grapes.  (Doc. 150, p. 2:5-6).  The company has been in operation for more than nineteen years and owns approximately 6,300 acres of vineyards in the Central Valley.  (Doc. 150, p. 2:7-8).  Since its inception, Delano Farms has structured its business to be streamlined and lean.  (Doc. 150, p. 5:13).  As a result, Delano Farms outsources many of its farming functions.  (Doc. 150, p. 5:14).  The primary field tasks performed in-house are fertilizing the crops, preparing the fields for planting, irrigating the plants, vineyard repair, vineyard cleanup, and other tractor work. (Doc. 150, p. 5:14-16).  All other farming tasks are performed by various contractors.  (Doc. 150, p. 5:16-17).  TR Bangi and Cal-Pacific (jointly referred to as "Contractor") are farm labor contractors who specialize in providing field employees to grape growers.  (Doc. 150, p. 2:15-17).  TR Bangi has provided labor contracting services to Delano Farms since its inception.  (Doc.115, ¶ 7; Doc.116, ¶ 7). Cal-Pacific provided farm labor contracting services to Delano Farms from 2004 until 2009. (Doc.116, ¶ 9).

Contractor does not own any of the land upon which it performs work.  (Doc. 150, p. 50:8).  The land and crops belong exclusively to Delano Farms.  (Doc. 150, p. 50:9-12).  Contractor however,  hires the field workers for the harvest season (Doc. 150, p. 32:28-p. 33:1-2), maintains all of the field workers' personnel records (Doc. 150, p. 33:13-14), and generates the payroll for the field workers  (Doc. 150, p. 47:16-17).   Contractor has also purchased equipment and office furnishings in support of its operations.  The value of the equipment owned by Contractor exceeds $750,000.  (Doc. 150, p. 47:7). The total estimated cost incurred by Contractor for furnishing and adequately supplying its office is $100,000.  (Doc. 150, p. 48:7-8).

**B. Plaintiffs' Statement of Facts**

Plaintiffs allege that the field workers and Contractor are economically dependent on Delano Farms because Delano Farms provides equipment, office space, exerts control over the manner in which the work is performed, and helps set the field workers' wage rates.

Delano Farms owns a substantial amount of farming equipment, which includes: fifteen tractors, four large Caterpillar tractors, fifteen trucks, three shops where equipment is stored, a tote wash, and

1  numerous implements (e.g., vineyard discs, drills, chisels, can cutters, spray rigs, dusters, grass cutters,

2  spring-tooths, weed rigs, and others).  (Doc. 149-3, p. 61:22-65:13).  Delano Farms also provides twine,

3  boxes, and stickers for use in the fields.  (Doc. 149-6, p. 57:18-58:1).  In addition, Delano Farms

4  purchased 4,015 grape sheers in 2005; 3,800 grape sheers in 2006; and 4,008 grape sheers in 2007.

5  (Doc. 149-3, p. 48-50).  With regard to office space, Delano Farms provides Contractor a five acre

6  complex that serves as Contractor's headquarters.  (Doc. 149-5, p. 16:2-20).  There is no lease for this

7  property and Contractor has never paid any rent to Delano Farms.  (Doc. 149-5, p. 16:19-17:23).

8    With regard to control, plaintiffs allege that the level of oversight exercised by Delano Farms is

9  extensive.  Decisions regarding when and where to start pre-harvest and harvest activities are determined

10  by Delano Farms' employees.  (Doc. 149-3, p. 53:2-19).  Delano Farms' salesmen instruct Contractor

11  regarding what percentage of color the field workers should pick for the day.  (Doc. 149-3, p. 33:5-12).

12  In addition, Ryan Randall, ranch manager of Delano Farms South, decides when to cancel work due to

13  wet weather (Doc. 149-6, p. 55:10-56:6).

14    Plaintiffs further allege that Delano Farms exercises extensive control over the manner in which

15  the work is performed through use of its quality control personnel.  Delano Farms' quality control

16  personnel include Maria Mendez, Silvia Villa, and various tractor drivers, irrigators, and spray

17  applicators.  (Doc. 149-5, p. 25:8-11; Doc. 149-6, p. 5:1-3; Doc. 149-7, p. 46 ¶ 12).  Plaintiffs explain

18  that the most well-known of Delano Farms' quality control employees are Maria Mendez and Silvia

19  Villa.  The duo are identical twin sisters who are known in the fields as "the twins."  (Doc. 149-5, p.

20  22:1-8).  The twins drive a truck owned by Delano Farms (Doc. 149-5, p. 32:24-25), wear Delano

21  Farms' uniforms (Doc. 149-5, p. 61:14-18), and visit the crews as they're picking and packing grapes

22  (Doc. 149-5, p. 32:19-22).  While in the fields the twins inspect the grapes and field worker technique,

23  provide training sessions for the crews and foremen (Doc. 149-7, p. 45, ¶ 10; Doc. 149-7, p. 49, ¶ 5;

24  56, ¶ 6), and give individualized tips directly to the workers (Doc. 149-7, p. 45, ¶ 11; Doc. 149-7, p. 74,

25  ¶ 4).

26    With regard to wage rates, plaintiffs allege that in the fall of 2009 Joe Campbell, Delano Farms'

27  general manager, and Terry Bangi, Contractor's president, made the decision to increase the field

28  workers' wage rate (Doc. 149-4, p. 48:23-25).  The two increased the workers' wage rate (Doc. 149-4,

p. 48:23-25) and excised the tray bonus (Doc. 149-4, p. 51:1-2).

**C. Defendant Delano Farms' Statement of Facts**

Delano Farms asserts that Contractor is "an independent, profitable business that retains full control over its operations, and its relationship with its employees." (Doc. 113, p. 31:1-3).

Delano Farms points out that Contractor provides 1,500 packing tables; 130 canopies; 2,000 wheelbarrows; 1,800 scales; and 20,000 picking trays. (Doc.115, ¶ 43; Doc.116, ¶ 30). Contractor also provides the field workers with pruning sheers, clippers, loppers, picking sheers, eye protection, aprons, and gloves. (Doc.115, ¶ 43; Doc.116, ¶ 30). In addition, Contractor owns 150 portable toilets, a pressure washer for cleaning trays, 2 septic pumping trucks, 240 water cans, 20 cellular phones, 40 radios, 1 generator, and 3 welding machines. (Doc.115, ¶ 43; Doc.116, ¶ 30). Contractor has purchased and currently owns 28 field trucks and 15 trailers. (Doc.115, ¶ 43; Doc.116, ¶ 30). Delano Farms acknowledges that it provides twine to train the vines, packaging materials, and certain trays for use in its cold storage facility but notes that it is customary for a grower to provide these types of supplies. (Doc.115, ¶ 44; Doc.116, ¶ 31). With regard to office space, although Contractor houses its office staff in a building owned by Delano Farms, Contractor pays the utilities for the building and has remodeled its interior, added a parking structure, and an additional bathroom. (Doc.115, ¶ 45; Doc.116, ¶ 34, 35).

With regard to control, Delano Farms maintains that all of the work is performed by crews hired (Doc.118, ¶ 11), trained (Doc.116, ¶ 42, 43, 44, 46), and supervised by Contractor (Doc.116, ¶ 26). Delano Farms does not have any direct supervision over the field workers Contractor provides (Doc.115, ¶ 27; Doc.116, ¶ 52) and Contractor has complete control over determining how the work is performed (Doc.116, ¶ 41). Delano Farms points out that Contractor has the power to assign the field workers where Contractor feels they are needed. (Doc.116, ¶ 56-57). In addition, Contractor determines the field workers' schedules and decides whether a shift will end early, be extended, or cancelled. (Doc.115, ¶ 39; Doc.116, ¶ 58). Contractor also evaluates the quality of the work performed and only Contractor has the power to discipline and terminate field workers. (Doc.116, ¶ 61). Delano Farms acknowledges that although Contractor has control over determining how the work will be performed, Delano Farms performs quality spot checks of all of the services rendered. (Doc.115, ¶ 27). If Delano Farms sees a problem, it contacts Terry Bangi or one of Contractor's supervisors. (Doc.115, ¶ 27).

1   Delano Farms further asserts that the service contract between Delano Farms and Contractor is

2   unique to Delano Farms and Contractor and is renegotiated on an annual basis.  (Doc.115, ¶ 15;

3   Doc.116, ¶ 18).  Contractor sets the wage rates, bonus rates, and percentage markup and Delano Farms

4   has the option to accept or reject the quoted rates.  (Doc.115, ¶ 16; Doc.116, ¶ 68).

5   **D. Procedural History**

6   On July 17, 2009, plaintiffs initiated this class action suit for damages in this Court.  (Doc. 2).

7   Plaintiffs' complaint alleges that Delano Farms, Cal-Pacific, TR Bangi, and Does 1 through 10 engaged

8   in unlawful employment practices by: (1) violating the AWPA; (2) failing to pay wages and/or overtime,

9   in violation of Cal. Lab. Code § 1194(a); (3) failing to reimburse expenses for tools and equipment, in

10  violation of 29 U.S.C. § 1832(c) and Cal. Lab. Code § 2802; (4) failing to maintain accurate hours

11  worked information, in violation of Cal. Lab. Code § 226 and IWC Wage Order 14; (5) failing to pay

12  waiting time penalties, in violation of Cal. Lab. Code § 203; and (6) engaging in unfair competition,

13  pursuant Cal. Bus. & Prof. Code § 17200.  (Doc. 2).

14  On April 19, 2011, this Court granted in part and denied in part plaintiffs' request for class

15  certification.  (Doc. 85).  The Court certified the following class pursuant to Fed. R. Civ. P. 23(b)(3):

16  > "All non-exempt agricultural employees of DELANO FARMS COMPANY,
    > CAL-PACIFIC FARM MANAGEMENT, L.P., and T&R BANGI'S

17  > AGRICULTURAL SERVICES, INC. who performed field work at Delano
    > Farms in California from four (4) years prior to the filing of this action to the

18  > present, excluding irrigators, tractor drivers, swampers, and workers employed
    > only in cold-storage."  The class shall be divided into subclasses as follows:

19

20  > (1)   Field workers who performed uncompensated and unrecorded work
    >       before the fixed start time in the harvest and pre-harvest work.

21  > (2)   Field workers who performed uncompensated and unrecorded work
    >       after the fixed stopping time in the harvest work.

22  > (3)   Field workers who performed uncompensated and unrecorded work
    >       after hours by washing their picking trays at home.

23  > (4)   Field workers who incurred unreimbursed necessary tools expenses in
    >       the harvest and pre-harvest work.

24  (Doc. 85, p. 27:2-13).

25  On February 2, 2012, Delano Farms filed the instant motion for summary judgment.  (Doc. 112).

26  Delano Farms seeks to be dismissed from this action with prejudice.  On February 21, 2012, this Court

27  granted plaintiffs' application for an extension of time to file an opposition and vacated the March 7,

28  2012, hearing or oral argument pursuant to Local Rule 230(g).  (Doc. 140).  On March 15, 2012,

plaintiffs filed a timely opposition to the motion.  (Doc. 141).  On March 21, 2012, this Court granted

Delano Farms' application for an extension of time to file a reply.  (Doc. 154, 155).  On March 29, 2012,

Delano Farms filed a timely reply to plaintiffs' opposition (Doc. 156) as well as a request for oral

argument[1] (Doc. 162).  Having considered the arguments presented[2] and the relevant law, this Court

issues this order.

### III. LEGAL STANDARD

**A. Motion for Summary Judgment**

Summary judgment is appropriate when the pleadings, the disclosure materials, the discovery,

and the affidavits provided establish that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one which

may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of

the nonmoving party.  *Id.*

A party seeking summary judgment "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

323 (1986) (internal quotation marks omitted).  Where the movant will have the burden of proof on an

issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for

the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "On an issue

as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely

by pointing out that there is an absence of evidence to support the nonmoving party's case."  *Id.* (citing

*Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of

---

[1] This Court DENIES Delano Farms' request for oral argument pursuant to Local Rule 230(g).

[2] Omission of reference to a request for judicial notice, an argument, a document, or a paper should not be construed as this Court not considering the request, argument, document, or paper.  This Court reviewed, considered, and applied the evidence and matters it deemed admissible, material, and appropriate for summary judgment.

1  material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v.*

2  *Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original).  The nonmoving party must go

3  beyond the allegations set forth in its pleadings.  *See* Fed. R. Civ. P. 56(c).  "[B]ald assertions or a mere

4  scintilla of evidence" will not suffice.  *Stefanchik*, 559 F.3d at 929.  Indeed, the mere presence of "some

5  metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary judgment.

6  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record

7  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

8  'genuine issue for trial.'"  *Id.* at 587 (citation omitted).

9        In resolving a summary judgment motion, "the court does not make credibility determinations

10  or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984.  Rather, "[t]he evidence of the [nonmoving

11  party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S.

12  at 255.  Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual

13  predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602

14  F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## IV. EVIDENTIARY OBJECTIONS

16        "To survive summary judgment, a party does not necessarily have to produce evidence in a form

17  that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil

18  Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001).  With respect to

19  evidence submitted by declaration, Fed. R. Civ. P. 56(c)(4) requires that the declarations "be made on

20  personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant

21  is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  With these principles in mind,

22  this Court addresses the parties' evidentiary objections.

23  **A. Defendant Delano Farms' Objections**

24        Delano Farms has filed forty-one evidentiary objections (Doc. 159) to the declarations submitted

25  by plaintiffs.  Several of the objections are made on the ground that the declarants' testimony is vague,

26  ambiguous, improper speculation, and states a legal conclusion.  "Objections to evidence on the ground

27  that the evidence is . . . speculative . . . vague and ambiguous, or constitutes an improper legal conclusion

28  are all duplicative of the summary judgment standard itself." *Carden v. Chenega Sec. & Prot. Serv.*,

LLC, 2011 WL 1807384, *3 (E.D. Cal. May 10, 2011) citing *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (recognizing that statements based on speculation or improper legal conclusions are not facts and will not be considered on a motion for summary judgment thus, "instead of challenging the admissibility of the evidence, lawyers should challenge its sufficiency"). Accordingly, this Court overrules all of Delano Farms' objections that the declarant's testimony is vague, ambiguous, improper speculation, or states a legal conclusion.

This Court also overrules Delano Farms' objections to the declarations of Daniel Vargas, Augustin Santiago, and Leticia Ortiz for plaintiffs' alleged failure to attach a Spanish version of the translated declaration. Delano Farms objects to the declarations on the ground that the interpreter's declaration provides that a Spanish version of the declarant's statement is attached. (Doc. 159, p. 3-4). None of the interpreter's declarations provide that a Spanish version of the declaration is attached. (Doc. 149-7, p. 58, 71, 76). Therefore, these objections are overruled.

Delano Farms bases several of its objections on the grounds that the declarants' statements lack foundation, constitute improper opinion, or constitute hearsay. Given the numerous objections set forth by Delano Farms, this Court will address only the objections to the statements the Court will actually rely upon. To the extent the other objections are meritorious, this Court will not rely on the objectionable statements.

**1. Declaration of Jose Mendez**

Delano Farms objects to paragraph ten of Jose Mendez's declaration on the basis that it constitutes improper opinion and lacks foundation. (Doc. 159, p.1:27-28). The portion of paragraph ten the Court will rely upon is the sentence that provides "[the twins] regularly exercised authority to stop work to instruct me and my crew on how the work should be performed." (Doc. 149-7, p. 45:14-15). "Generally, Rule 602 requires that a witness' testimony be based on events perceived by the witness through one of the five senses . . . first-hand observation is the most common form of personal knowledge." *Los Angeles Times Comm., LLC v. Dept. of the Army*, 442 F. Supp. 2d 880, 886 (C.D. Cal. Jul. 24, 2006). Because the twins were instructing Mr. Mendez and his crew, and Mr. Mendez is part of his crew, Mr. Mendez's testimony is based on personal knowledge. With regard to Delano Farms' improper opinion and hearsay objections, the Court will not rely on the portions of paragraph ten that

relate to these objections.  Consequently, Delano Farms' objections to paragraph ten are overruled.

Delano Farms also objects to paragraph eleven.  Delano Farms first argues that lines 22 through 23 lack foundation.  Because this Court will not rely on the objected to portions of lines 22 through 23, there is no need to address this objection.  Delano Farms also objects to lines 26 through 28 for lack of foundation.  The challenged excerpt provides, "[a]bout once every 2 weeks, the twins would participate in the training by giving instruction to my entire crew."  (Doc. 149-7, p. 45, ¶ 11).  The preceding sentences provide that at times the twins would direct Mr. Mendez to conduct a training session and about once every two weeks the twins would participate by giving instruction to his crew.  (Doc. 149-7, p. 45, ¶ 11).  Because Mr. Mendez was conducting the training, he was present when the twins instructed his crew.  Thus, Mr. Mendez's testimony is based on personal knowledge and the objection is overruled.

**2. Declaration of Isaac Munoz**

Delano Farms objects to paragraph three of Isaac Munoz's declaration on the grounds that it lacks foundation and portions of it constitute hearsay.  (Doc. 159, p. 2:16-19).  Paragraph three provides:

> During the harvest seasons, I personally witnessed a woman and a man who worked for Delano Farms, come to the crew I worked in, approximately two to three times per week.  I believe that they worked for Delano Farms because they told me and my crew that they were supervisors from Delano Farms.  I do not know their names.  The woman was Mexican and the man was Filipino.  They arrived in a truck that had a sign that said Delano Farms on it.

(Doc. 149-7, p. 49, ¶ 3).  Delano Farms' hearsay objection is sustained.  Isaac Munoz repeats what the man and woman told him about their employment status with Delano Farms in order to show that the duo was in fact employed by Delano Farms.  *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002) ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.") (internal quotation marks omitted).  Plaintiffs have failed to show that Mr. Munoz has personal knowledge regarding the man and woman's employment status, *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."), that would allow the possibility of a party admission exception to apply.  Consequently, this Court sustains Delano Farms' lack of foundation objection as well.  However, this Court will rely on Mr. Munoz's statements that he "personally witnessed a woman and a man . . . come to the crew [he] worked in,

1   approximately two to three times per week . . . [and that] [t]hey arrived in a truck that had a sign that said

2   Delano Farms on it," (Doc. 149-7, p. 49, ¶ 3), for circumstantial evidence purposes.

3       Delano Farms also objects to paragraphs five and six on the basis that the statements lack

4   foundation, constitute improper opinion, and the individuals are not identified. (Doc. 159, p. 2:23-25).

5   Because this Court will rely only on paragraph five there is no need to address Delano Farms' arguments

6   that pertain to paragraph six. With regard to paragraph five, the only portion of the paragraph this Court

7   will consider is Mr. Munoz's statement that, "[e]very time these two people came to the crews I worked

8   in, they gave our entire crew 'escuelita' (trainings) in the morning before the official start time." (Doc.

9   149-7, p. 49:27-28). As stated above, Mr. Munoz worked in the fields as a picker and a packer. (Doc.

10  149-7, p. 49 ¶ 2). Thus, he would have personal knowledge as to whether these two people conducted

11  training sessions. Accordingly, Delano Farms' lack of foundation argument is overruled. Delano Farms'

12  improper opinion objection is also overruled because the statement the Court will rely upon does not

13  constitute an opinion. Finally, as discussed above, although Mr. Munoz does not identify in paragraph

14  five the two people who conducted the training sessions, it is clear from paragraphs three and four that

15  he is referring to the two people who drove a Delano Farms' truck and visited his crew. Therefore,

16  Delano Farms' "failure to identify" objection is overruled as well.

17      **3. Declaration of Agustin Santiago**

18      Delano Farms objects to paragraph ten of Agustin Santiago's declaration on the ground that it

19  constitutes improper opinion and lacks foundation. (Doc. 159, p. 4:6-7). The portion of paragraph ten

20  this Court will rely upon is Mr. Santiago's statement which provides, "I have heard the twins announce

21  that the workers would be sent home for failing to comply with directions given by the twins." (Doc.

22  149-7, p. 69:7-9). This statement does not constitute an opinion thus, Delano Farms' improper opinion

23  objection is overruled. This Court also overrules Delano Farms' lack of foundation objection because

24  Agustin Santiago's declaration provides that he worked as a packer for "Delano Farms/T&R Bangi"

25  during the harvest season of 2010. (Doc. 149-7, p. 67:4-7). Consequently, Mr. Santiago was in the

26  fields, heard the statements and had personal knowledge of the twins' announcement.

27      **4. Declaration of Leticia Ortiz**

28      Delano Farms objects to paragraph five of Leticia Ortiz's declaration on the basis that it

10

1  constitutes improper opinion. (Doc. 159, p. 4:17-18). Paragraph five reads as follows:

2
> I believe that the twins had authority over me, my crew and my foreman
> because in 2009 I heard a conversation that the twins were having with my
3
> foreman in the field. I heard the twins tell my foreman that they were upset
> because some people in my crew had to re-pack the fruit. The twins told my
4
> foreman that if the people in my crew were not going to pick and pack the
> correct fruit, the twins would stop the crew from working.
5

6  (Doc. 149-7, p. 74, ¶ 5). The Court will rely only on the portion of paragraph five which provides that

7  the twins told Ms. Ortiz's foreman, "that if the people in [her] crew were not going to pick and pack the

8  correct fruit, the twins would stop the crew from working." (Doc. 149-7, p. 74:24-26). Therefore, there

9  is no need to address Delano Farms' improper opinion objection.

10  **B. Plaintiffs' Objections**[3]

11  Plaintiffs object to paragraphs three and four of the declaration of James Michael Edminster,

12  Delano Farms' secretary and treasurer, on the ground of lack of foundation. Mr. Edminster's declaration

13  essentially provides that to his knowledge Delano Farms has never supplied any hand tools to the field

14  workers. (Doc. 160, p. 2, ¶ 3). His declaration also provides that he is aware that there are three

15  invoices that provide that Delano Farms was invoiced for the purchase of hand tools however, he

16  investigated the invoices and determined that Delano Farms did not order, pay, or receive shipment for

17  the items listed. (Doc. 160, p. 2 ¶ 4). Without addressing plaintiffs' lack of foundation objection, this

18  Court determines that the invoices are admissible under the business record exception of Fed. R. Evid.

19  803(6) and will draw all reasonable inferences therefrom.

20  **V. DISCUSSION**

21  Delano Farms contends that it should be dismissed from this action with prejudice because it did

22  not employ plaintiffs. Rather, plaintiffs were employed by Contractor.

23  In determining whether an entity constitutes an employer under the AWPA, it must first be

24  determined whether the farm labor contractor is a bona fide independent contractor or an employee of

25  the agricultural employer. 29 C.F.R. § 500.20(h)(4). If it is determined that the farm labor contractor

26

27  _____
[3] Plaintiffs also object to the declaration of Laurian C. Rutterbush. (Docs. 161, 164). Because Ms. Rutterbush's
declaration does not aid the Court in its resolution of Delano Farms' motion for summary judgment, the Court will not rely
28  on it. Accordingly, there is no need to address plaintiffs' objections.

is an employee of the agricultural employer, the agricultural workers are deemed to be employees of the agricultural employer and the inquiry ends.  *Id*.  If it is determined that the farm labor contractor is not an employee of the agricultural employer but a bona fide independent contractor, it must then be determined if the agricultural workers are jointly employed by the agricultural employer.  29 C.F.R. § 500.20(h)(5)(I).  Delano Farms argues that Contractor is a bona fide independent contractor and that Delano Farms did not jointly employ the agricultural workers.  Each argument will be discussed in turn.

**A. Independent Contractor v. Employee Status**

Delano Farms maintains that based on the factors set forth in 29 C.F.R. § 500.20(h)(4), Contractor is a bona fide independent contractor and not employed by Delano Farms.

Liability under the AWPA depends on whether a farmer or grower "employed" workers, as defined by the Fair Labor Standards Act ("FLSA").  *See* 29 U.S.C. § 1802(5).  Under the FLSA, an entity "employ[s]" a person if it "suffer[s] or permit[s]" the individual to work.  29 U.S.C. § 203(g).  This definition of "employment" rejects the common-law definition of employment, and applies "to many persons and working relationships which, prior to [the FLSA], were not deemed to fall within an employer-employee category."  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947).  "In determining if the farm labor contractor . . . is an employee or an independent contractor, the ultimate question is the economic reality of the relationship -- whether there is economic dependence upon the agricultural employer . . . or farm labor contractor, as appropriate."  29 C.F.R. § 500.20(h)(4); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 755-56 (9th Cir. 1979) (holding that when distinguishing employees from independent contractors under the FLSA the test must focus on the economic realities of the total circumstances).  In assessing the economic reality of the relationship, Courts consider the following:

> (i) The nature and degree of the putative employer's control as to the manner in which the work is performed;
> (ii) The putative employee's opportunity for profit or loss depending upon his/her managerial skill;
> (iii) The putative employee's investment in equipment or materials required for the task, or the putative employee's employment of other workers;
> (iv) Whether the services rendered by the putative employee require special skill;
> (v) The degree of permanency and duration of the working relationship;
> (vi) The extent to which the services rendered by the putative employee are an integral part of the putative employer's business.

12

29 C.F.R. § 500.20(h)(4); *Real*, 603 F.2d at 754; *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370-73 (9th Cir. 1981) (applying the *Real* factors). "Neither the presence nor absence of any individual factor is determinative." *Donovan*, 656 F.2d at 1370. Whether an employer-employee relationship exists depends "upon the circumstances of the whole activity," *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947), and ultimately, whether, as a matter of economic reality, the individuals "are dependent upon the business to which they render service," *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947).

The evidence submitted by plaintiffs, assuming its veracity, undercuts Delano Farms' assertion that Contractor is a bona fide independent contractor because the evidence submitted by plaintiffs shows genuine factual disputes regarding the factors set forth in 29 C.F.R. § 500.20(h)(4). Each factor will be discussed in turn.

**1. Control**

Delano Farms maintains that Contractor exercises complete control over how the field work is performed. Delano Farms asserts that Contractor recruits, hires, and trains the field workers, assigns field workers to fields, determines the work schedule and length of workday, and is responsible for disciplining the workers. Delano Farms further contends that it does not supervise or direct Contractor's field workers.

In *Torres-Lopez v. May*, 111 F.3d 633 (9th Cir. 1997), the Ninth Circuit determined that the grower exercised significant control over the farmworkers' working conditions because the grower: (1) controlled the overall harvest schedule; (2) controlled the number of workers needed for harvesting; (3) advised the labor contractor about when to begin the harvest; (4) had the power to decide which days were suitable for harvesting, *e.g.*, grower called off the harvest one day due to a shortage of bins; (5) had the right to inspect all of the work performed by the farmworkers; and (6) was present in the fields on a daily basis. *Id.* at 642.[4]

The depositions and declarations submitted by plaintiffs show a genuine dispute regarding the

---

[4] This Court recognizes that in *Torres-Lopez*, the Ninth Circuit was faced with the task of determining whether the grower and labor contractor were joint employers and not whether the labor contractor was a bona fide independent contractor as is the issue here. *Torres-Lopez*, 111 F.3d at 637. However, because the *Torres-Lopez* Court considered the nature and degree of control the grower had over the workers, *id.* at 639, 642, which is at issue here, this Court finds the analysis in *Torres-Lopez* instructive.

13

1   level of control exercised by Delano Farms.  The evidence submitted by plaintiffs shows that Delano

2   Farms' personnel decide when and where to start pre-harvest and harvest activities (Doc. 149-3, p. 53:2-

3   19) and when to cancel work due to wet weather (Doc. 149-6, p. 55:10-56:6).  Delano Farms' employees

4   also have the power to relocate workers from the fields to the storage area to re-pack incorrectly packed

5   grapes.[5]  In addition, Delano Farms' quality control personnel visit field crews regularly (Doc. 149-7,

6   p. 49, ¶ 3; p. 61, ¶ 3:11-12) and instruct crews on how the work should be performed.  The declaration

7   of Jose Mendez, a foreman for Contractor, provides that Delano Farms' quality control personnel

8   "regularly exercised authority to stop work to instruct [him] and his crew on how the work should be

9   performed." (Doc. 149-7, p. 45 ¶ 10:14-15).  Delano Farms' personnel show the workers how to harvest

10  the grapes,[6] when the fruit needs to be cleaned more, and how to pack the grapes.  (Doc. 149-7, p. 55,

11  ¶ 5; Doc. 149-7, p. 67 ¶ 4-6).  Delano Farms' quality control personnel also tell field workers which

12  grapes are too green and admonish them not to pick green fruit.  (Doc. 149-7, p. 55, ¶ 5; p. 67 ¶ 5-6).

13  *Cf. Moreau v. Air France*, 356 F.3d 942, 950-51 (9th Cir. 2004) (recognizing that there was no

14

15

16      [5] The deposition testimony of Silvia Villa, one of Delano Farms' quality control employees, provides:

17      Q.    Did you ever observe employees were sent from the field to the storage area to repack
              grapes that they had packed poorly?

18      A.    Yes.

19      Q.    Okay.  Who would make that decision to send the employees back?

20      A.    There are [two other] qualities that they would also check. . . . if the grapes are like the
              ones that I showed . . . they send for the number and they have them clean their grapes

21            so that they can be able to store it.

22      Q.    Do you know the names of these two employees?

23      A.    No, I don't know the last names.  I only [know] one is Juanita and Mary.

24      Q.    And they're employed by Delano Farms, as far as you know?

25      A.    Yes.

26  (Doc. 149-6, p. 30:18-31:11).

27      [6] The declaration of Agustin Santiago, a field worker, provides that Delano Farms' quality control personnel
    demonstrate to field workers how to cut correctly the grape bunches, which bunches to cut, and what not to leave on the

28  ground.  (Doc. 149-7, p. 67 ¶ 4:21-23).

1   indication that the alleged employer had the authority to control any of the workers because any

2   complaints about performance were made to the service company's supervisors).

3          Delano Farms argues that its use of quality control measures does not destroy Contractor's status

4   as a bona fide independent contractor.  In support of its argument, Delano Farms relies on *Zhao v. Bebe*

5   *Stores, Inc.*, 247 F. Supp. 2d 1154 (C.D. Cal. 2003).  In *Zhao*, the Court determined that although the

6   alleged employer supplied quality control personnel, the record fell short of demonstrating that the

7   quality control personnel's involvement could be properly characterized as control or supervision

8   because the independent contractor had its own supervisors who were primarily responsible for the day

9   to day management of its employees.  *Id*. at 1160.  The Court noted that the independent contractor's

10  supervisors "scheduled work, controlled worker shifts and hours of work, and were responsible for

11  employee assignments."  *Id*.  The relationship at issue in *Zhao* is different from the relationship at issue

12  here.  Although Contractor provides supervisors and foremen, Delano Farms still  has the ability to

13  cancel work due to wet weather (Doc. 149-6, p. 55:10-56:6), re-locates workers (Doc. 149-6, p. 30:18-

14  31:11), and determines when and where to start pre-harvest and harvest activities (Doc. 149-3, p. 53:2-

15  19).  Accordingly, given the factors relied upon in *Torres-Lopez*, the record demonstrates a genuine

16  dispute regarding whether Delano Farms' quality control personnel's involvement amounts to control.

17  *Torres-Lopez*, 111 F.3d at 642; *see also* 29 C.F.R. § 500.20(h)(4)(I).

18          **2. Opportunity for Profit or Loss**

19          Delano Farms argues that Contractor has the opportunity to profit or sustain losses depending

20  upon how it operates its business.  Delano Farms maintains that Contractor has an extensive customer

21  base outside of Delano Farms.  Delano Farms further asserts that its ability to profit or sustain losses

22  depending upon how it operates is evidenced by the fact that Contractor sets its own labor rates, controls

23  and manages its own workforce, negotiates its own contracts, and manages its own operating costs.

24          The evidence submitted by plaintiffs shows a genuine dispute regarding whether Contractor's

25  profits or losses are contingent *solely* upon how it operates its business.  The deposition of Craig Neville,

26  the person most knowledgeable for Contractor, provides that in October of 2009 Contractor *and* Delano

27  Farms made the decision to pay the workers at a particular rate. (Doc. 149-4, p. 48-49).  Therefore, there

28  is a dispute as to whether Contractor exclusively sets its own labor rates.  In addition, as discussed

1    above, there is a genuine dispute regarding whether Contractor solely controls and manages its own

2    workforce.  Finally, although Contractor has customers other than Delano Farms, the majority of the

3    labor Contractor provides is for Delano Farms.  The declaration of Terry Bangi, president of TR Bangi

4    (Doc. 116, p. 2, ¶ 3), provides that from 2005 until 2011, the percentage of its workers that did not work

5    at any Delano Farms' property ranged from 24-31%.  (Doc. 116, p. 4-6).  The  percentage of workers

6    that worked exclusively at Delano Farms' property during that same time period ranged from 19-46%

7    and the rest of the workers performed work for Delano Farms and other growers.  (Doc. 116, p. 4-6).

8    These numbers are corroborated by a commercial insurance application submitted by Contractor in

9    October of 2008 which provides  that 75% of its business was with one grower.  (Doc. 149-7, p. 24).

10   Consequently, a reasonable trier of fact could conclude that Contractor's opportunity for profit or loss

11   depends more on the managerial skill of Delano Farms than Contractor.  *See Real*, 603 F.2d at 755.

### 3. Investment in Equipment

13          Delano Farms contends that Contractor has made a substantial investment in equipment and

14   materials required to perform agricultural work.  It is undisputed that Contractor has invested over

15   $750,000 in agricultural equipment.  (Doc. 150, p. 47:7-14).  Contractor provides 1,500 packing tables;

16   130 canopies; 2,000 wheelbarrows; 1,800 scales; and 20,000 picking trays.  (Doc.115, ¶ 43; Doc.116,

17   ¶ 30).  Contractor owns 150 portable toilets, a pressure washer for cleaning trays, 2 septic pumping

18   trucks, 240 water cans, 20 cellular phones, 40 radios, 1 generator, and 3 welding machines.  (Doc.115,

19   ¶ 43; Doc.116, ¶ 30).  In addition, Contractor owns 28 field trucks and 15 trailers.  (Doc.115, ¶ 43;

20   Doc.116, ¶ 30).  It is further undisputed that Contractor has invested approximately $100,000 in office

21   furnishings and supplies.  (Doc. 150, p. 47:6-12, 48:1-11).  Accordingly, this factor weighs in favor of

22   a determination that Contractor is a bona fide independent contractor.

23          This Court recognizes that in *Real*, the Ninth Circuit determined that the fact the workers'

24   "investment in light equipment - hoes, shovels and picking carts-[was] minimal in comparison with the

25   total investment in land, heavy machinery and supplies" by the grower undercut the growers' assertion

26   that the workers were independent contractors.  *Real*, 603 F.2d at 755.  This Court further recognizes

27   that Contractor's $850,000 investment is far less than Delano Farms' investment in land, equipment, and

28

materials.[7]  However, the facts in *Real* can be distinguished from the facts here because Contractor's $850,000 investment is far greater than the individual workers' minimal investment in hoes, shovels, and picking carts discussed in *Real*.  *Id.*

### 4. Skill Requirement of Services Rendered

Delano Farms argues that many of the services provided by Contractor require special skill.  It points out that Contractor provides a supervisory staff that monitors the quality of work provided by the field employees which requires special skill.  Delano Farms also asserts that the field workers possess special skill because it is the field workers who determine which grapes are "ripe and ready" at the time an area is being harvested.

The evidence submitted by plaintiffs shows a dispute as to whether the tasks performed by Contractor's supervisory staff requires special skill.  The declaration of Agustin Santiago, a field worker, provides that Delano Farms' quality control personnel have ordered his foreman to stop the crew and bring them out of their rows for the quality control personnel to instruct the workers on how to pick and pack the fruit.  (Doc. 149-7, p. 68-69, ¶ 9).  Likewise, the declaration of Jose Mendez, a foreman for Contractor, provides that Delano Farms' quality control personnel "regularly exercised authority to stop work to instruct [him] and his crew on how the work should be performed."  (Doc. 149-7, p. 45 ¶ 10).  Based on this evidence a reasonable trier of fact could conclude that Delano Farms' quality control personnel, and not Contractor's supervisory staff, monitor and instruct on the quality of the work performed.

With regard to the skill required to be a field worker, the deposition of Terry Bangi, TR Bangi's president, provides that "the pickers aren't inspecting the fruit, they're just . . . picking as fast as they possibly can to make a bonus because they want to make extra money."  (Doc. 149-2, p. 54).  Based on this testimony, a reasonable trier of fact could conclude that the services performed by the field workers

---

[7] It is undisputed that Delano Farms owns 6,300 acres of vineyards in the Central Valley.  (Doc. 150, p. 2:4-12). In addition, the deposition of Scott Quashnick, ranch manager for Delano Farms North, provides that  Delano Farms owns fifteen tractors, four large Caterpillar tractors, fifteen trucks, three shops where equipment is stored, a tote wash, and numerous implements (e.g., vineyard discs, drills, chisels, can cutters, spray rigs, dusters, grass cutters, spring-tooths, weed rigs, and others).  (Doc. 149-3, p. 61-65).  Delano Farms also provides twine, boxes, and stickers for use in the fields.  (Doc. 149-6, p. 57-58).

1  "consist primarily of physical labor, requiring no special technical knowledge or skill." *Real*, 603 F.3d

2  at 755.  Consequently, it is disputed as to whether the tasks performed by the field workers require

3  special skill, and if so, who is teaching the skill and determining whether or not it is being properly

4  exercised.

5  **5. Permanency of Working Relationship**

6  Delano Farms asserts that its relationship with Contractor is not permanent.  This is undercut by

7  the undisputed fact that Contractor has provided labor for Delano Farms for over nineteen years and

8  continues to use Contractor as a source for field workers.  (Doc.115, ¶ 7; Doc.116, ¶ 7).  This assertion

9  is further undercut by the deposition testimony of Craig Neville, the person most knowledgeable for

10  Contractor.  Mr. Neville's deposition testimony provides that Delano Farms provides Contractor a five

11  acre complex that serves as Contractor's headquarters and that there is no lease for this property and

12  Contractor has never paid any rent to Delano Farms.[8]  (Doc. 149-5, p. 16-17).

13  **6. Service Integral Part of Business**

14  Finally, Delano Farms contends that Contractor's service is not an integral part of its business

15  because Contractor is merely one of many independent contractors that provides services to Delano

16  Farms and that although all of the contractors are essential to Delano Farms' business, the use of any one

17  specific independent contractor is not essential.  Delano Farms points out that there are many farm labor

18  contractors in the Central Valley that could perform the same services.  Although there may be numerous

19  farm labor contractors in the Central Valley willing to contract with Delano Farms, the fact that Delano

20  Farms has used Contractor for over nineteen years and houses its headquarters on its property, at least

21  shows a genuine issue as to whether Contractor is an integral part of Delano Farms' business.

22  The above factual disputes preclude summary judgment regarding whether Contractor constitutes

23

24

25  [8] In plaintiffs' opposition, they argue that Contractor's use of this property and the improvements it made to the property forfeited its status as a "bona fide farm labor contractor" because Cal. Lab. Code § 1698.8 prohibits the dividing of fees with a person to whom help is furnished.  This Court acknowledges that in determining whether a farm labor contractor is a bona fide independent contractor the "determination is based upon an evaluation of all of the circumstances" and not just the regulatory factors, *see* 29 C.F.R. § 500.20(h)(4), however, even if Contractor and Delano Farms' arrangement constitutes fee splitting under California law, plaintiffs have failed to explain how this would forfeit Contractor's status as a "bona fide farm labor contractor."  Therefore, this argument is unpersuasive.

26

27

28

a bona fide independent contractor.  Assuming the truth of plaintiffs' evidence, a reasonable trier of fact could conclude that Contractor is economically dependent upon Delano Farms and thus, not an independent contractor.  *See Real*, 603 F.2d at 754 ("employees are those who *as a matter of economic reality* are dependent upon the business to which they render service") (emphasis in original) (citing *Bartels*, 332 U.S. at 130).  Accordingly, Delano Farms is not entitled to summary judgment with regard to its assertion that Contractor is a bona fide independent contractor.

**B. Joint Employer**

Delano Farms argues that it does not jointly employ plaintiffs.  Thus, plaintiffs are not Delano Farms' employees.

In determining whether a joint employment relationship exists, courts apply an "economic reality" test.  *Torres-Lopez*, 111 F.3 at 639.  This inquiry focuses "on the economic reality of the particular relationship between the farm-worker and the alleged joint employer." *Id*. at 641.  In *Torres-Lopez*, the Ninth Circuit considered a "non-exhaustive list of [five] regulatory factors," codified in 29 C.F.R. § 500.20(h)(4)(ii) (1996),[9] and eight non-regulatory factors in determining whether a joint employment relationship existed.  *Torres-Lopez*, 111 F.3d at 639-40.  The non-regulatory factors considered by the Court are as follows:

> (1) whether the work was a specialty job on the production line;
> (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes;
> (3) whether the premises and equipment of the employer are used for the work;
> (4) whether the employees had a business organization that could or did shift as a unit from one worksite to another;
> (5) whether the work was piecework and not work that required initiative, judgment or foresight;
> (6) whether the employee had an opportunity for profit or loss depending upon the alleged employee's managerial skill;
> (7) whether there was permanence in the working relationship; and
> (8) whether the service rendered is an integral part of the alleged employer's business[.]

---

[9] The regulatory factors considered by the court were: (A) the nature and degree of control of the workers; (B) the degree of supervision, direct or indirect, of the work; (C) the power to determine the pay rates or the methods of payment of the workers; (D) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (E) preparation of payroll and the payment of wages.  *Torres-Lopez*, 111 F.3d at 639-40 citing former 29 C.F.R. § 500.20(h)(4)(ii).

1   *Id.* at 640 (internal quotation marks and citations omitted).

2       Shortly after *Torres-Lopez* was published, 29 C.F.R. § 500.20(h) was amended to remedy the

3   overly restrictive definition of "joint employer" utilized by many courts. *Torres-Lopez*, 111 F.3d at 641

4   n.6.  The amended non-exhaustive list of regulatory factors are as follows:

5

6           (A) Whether the agricultural employer/association has the power, either alone
            or through control of the farm labor contractor to direct, control, or supervise
            the worker(s) or the work performed (such control may be either direct or
7           indirect, taking into account the nature of the work performed and a reasonable
            degree of contract performance oversight and coordination with third parties);
8           (B) Whether the agricultural employer/association has the power, either alone
            or in addition to another employer, directly or indirectly, to hire or fire, modify
9           the employment conditions, or determine the pay rates or the methods of wage
            payment for the worker(s);
10          (C) The degree of permanency and duration of the relationship of the parties,
            in the context of the agricultural activity at issue;
11          (D) The extent to which the services rendered by the worker(s) are repetitive,
            rote tasks requiring skills which are acquired with relatively little training;
12          (E) Whether the activities performed by the worker(s) are an integral part of the
            overall business operation of the agricultural employer/association;
13          (F) Whether the work is performed on the agricultural employer/association's
            premises, rather than on premises owned or controlled by another business
14          entity; and
            (G) Whether the agricultural employer/association undertakes responsibilities
15          in relation to the worker(s) which are commonly performed by employers, such
            as preparing and/or making payroll records preparing and/or issuing pay checks,
16          paying FICA taxes, providing workers' compensation insurance, providing field
            sanitation facilities, housing or transportation, or providing tools and equipment
17          or materials required for the job (taking into account the amount of the
            investment).

18

19  29 C.F.R. § 500.20(h)(5)(iv)(A)-(G).  The Ninth Circuit instructs that "[a] court should consider all . .

20  . factors . . . 'relevant to [the] particular situation' in evaluating the 'economic reality' of an alleged joint

21  employment relationship." *Id.* at 639 *(*quoting  *Bonnette v. California Health & Welfare Agency*, 704

22  F.2d 1465, 1470 (9th Cir. 1983)).

23      Delano Farms relies on various regulatory and non-regulatory factors in support of its argument

24  that it did not jointly employ plaintiffs.  The Court will address each of the factors raised by Delano

25  Farms.

26      **1. Regulatory Factors**

27          **a. Supervision/Control**

28      Delano Farms contends that it does not exercise supervisory control over the field workers.  It

20

points out that it does not provide direction regarding the methods by which the field workers perform work nor does it provide direct supervision.

As discussed above, the evidence submitted by plaintiffs shows a genuine dispute regarding the level of control exercised by Delano Farms.  Plaintiffs' evidence shows that Delano Farms' personnel decide when and where to start pre-harvest and harvest activities, (Doc. 149-3, p. 53:2-19), and when to cancel work due to wet weather (Doc. 149-6, p. 55-56).  *See Torres-Lopez*, 111 F.3d at 642 (noting that growers advisement about when to begin the harvest and growers ability to call off the harvest one day due to a shortage of bins weighed in favor of a finding that grower exercised control over the field workers).  In addition, Delano Farms employs quality control personnel who visit field crews regularly (Doc. 149-7, p. 49, ¶ 3; p. 61, ¶ 3:11-12), interact with field workers and foremen alike,[10] and provide instruction regarding how to harvest and pack the grapes (Doc. 149-7, p. 55, ¶ 5; p. 67 ¶ 4, 5, 6).  *See id*. at 642 (recognizing that growers' daily presence in the fields and ability to inspect all the work performed showed a substantial degree of supervision).

In Delano Farms' reply, it argues that its personnel merely provide "spot-checking" for quality control purposes and that when problems are discovered they are reported to Contractor's foremen.  This is contradicted by the declarations submitted by plaintiffs which show that Delano Farms' employees conduct training sessions and directly advise workers on how the work should be performed.  The declaration of Jose Mendez, a foreman for Contractor, provides that:

> If [the twins] saw a widespread problem, they would direct me to stop the entire crew so that we could conduct a training on how to improve the quality of picked fruit.  The twins would explain the problem to me and I would instruct the workers accordingly.  About once every 2 weeks, the twins would participate in the training by giving instruction to my entire crew.

(Doc. 149-7, p. 45, ¶ 11).  Similarly, the declarations of field workers Isaac Munoz and Daniel Vargas provide that Delano Farms' employees conducted training sessions with their crews as well.  (Doc. 149-7, p. 49, ¶ 5; p. 56, ¶ 6).  Manual Chavez's declaration provides that Delano Farms' employees instructed him not to pack green fruit.  (Doc. 149-7, p. 61, ¶ 5).  In addition, the declaration of Leticia Ortiz, a field

---

[10] The declaration of Jose Mendez, a foreman for Contractor provides, "the twins . . . regularly exercised authority to stop work to instruct me and my crew on how the work should be performed."  (Doc. 149-7, p. 45, ¶ 10:14-15).

1    worker, provides that Delano Farms' employees instructed her not to pick green fruit and spent time

2    showing her what fruit to pick.  (Doc. 149-7, p. 74, ¶ 4).  Accordingly, at the very least, the record shows

3    a genuine dispute regarding whether Delano Farms "has the power, either alone or through control of the

4    farm labor contractor to direct, control, or supervise the worker(s) or the work performed."  29 C.F.R. §

5    500.20(h)(5)(iv)(A).

6                    **b. Hire or fire, modify employment conditions, determine pay rates**

7            Delano Farms argues that Contractor has the exclusive power to hire and fire field workers.  As

8    well as exclusive power over the field workers' work assignments and wage rates.

9            It is undisputed that Contractor hires the field workers (Doc. 150, p. 32:28-33:8), maintains all

10   of the field workers' personnel records (Doc. 150, p. 33:10-19), and generates the payroll for the field

11   workers (Doc. 150, p. 47:16-27).  However, the evidence submitted by plaintiffs shows a genuine dispute

12   regarding whether Delano Farms modifies the field workers' employment conditions and helps determine

13   the field workers' pay rates.  The deposition of Silvia Villa, one of Delano Farms' quality control

14   employees, provides that she observed other Delano Farms' quality control employees order field workers

15   from the field to the storage area to re-pack grapes that had been packed incorrectly.  (Doc. 149-6, p. 30-

16   31).  She explained that the decision to relocate the worker would be made by a Delano Farms' employee,

17   who would call one of Contractor's supervisors, who would in turn tell the worker's foreman, who would

18   send the worker to the storage area.  (Doc. 149-6, p. 30-31).

19           In addition, the evidence submitted by plaintiffs shows a genuine dispute regarding whether

20   Delano Farms helps determine the workers' wage rates.  As discussed above, the deposition of Craig

21   Neville, the person most knowledgeable for Contractor, provides that in August or September of 2009,

22   Joe Campbell, Delano Farms' general manager, *and* Terry Bangi, Contractor's president, made the

23   decision to pay the workers $8.50 an hour, a 40 cent increase over their previous wage of $8.10 an hour

24   plus a 15 cent tray bonus.  (Doc. 149-4, p. 48-49, 50).  Because Mr. Neville's deposition testimony

25   provides that "Joe Campbell *and* Terry Bangi made the decision" (emphasis added) to increase the field

26   workers' wage rate, a genuine dispute exists regarding whether Delano Farms has some power  to

27   determine the workers' pay rate.  *See Torres-Lopez*, 111 F.3d at 643 (recognizing that record showed that

28   grower exercised some power in determining the workers' pay rates because grower increased

1   Contractor's compensation in order to allow the workers to draw higher wages).

2                              **c. Permanency and Duration of Relationship**

3          Delano Farms asserts that the working relationship between the field workers and Delano Farms

4   is not permanent.  It points out that Contractor has exclusive control over which grower a particular field

5   worker will be placed and that Contractor can and does move field employees to different growers

6   depending upon need.

7          Although many field workers have been working for Contractor for over twenty years, (Doc. 149-

8   4, p. 31:10-11), it is undisputed that none of the workers hired by Contractor is permanently assigned to

9   one specific grower (Doc. 150, p. 34:10-19).  It is further undisputed that Contractor has the power to

10  assign field workers wherever they are needed.  (Doc. 150, p. 34:10-19).  In addition, it is undisputed that

11  the number of field workers Delano Farms needs varies depending upon the stage of the annual growth

12  cycle and whether it is a planting year.  (Doc. 150, p. 19:21-20:4).  The fact that Contractor can assign

13  field workers wherever they are needed coupled with the fact that the number of field workers Delano

14  Farms needs varies depending upon the time of year shows that the degree of permanency of the

15  relationship between Delano Farms and the field workers is minimal.  Accordingly, this factor does not

16  support the conclusion that an employment relationship exists between the field workers and Delano

17  Farms.  *See id.* at 644 (holding that there was "no permanence of the working relationship[] because the

18  farmworkers only harvested for [grower] for thirty-two days" during the period at issue) (internal

19  quotation marks and citations omitted).

20         Plaintiffs argue that the relationship between Contractor and Delano Farms is permanent because

21  Delano Farms has housed Contractor on its property without seeking rent for nearly twenty years and

22  effectively operates as a permanent division of Delano Farms.  This argument is unpersuasive because

23  when determining if a joint employment relationship exists the relevant inquiry focuses "on the economic

24  reality of the . . . relationship between the *farm-worker* and the alleged joint employer," *id.* at 641

25  (emphasis added), not on the economic reality of the relationship between the contractor and the alleged

26  joint employer.

27                         **d. Assumption of Responsibilities of an Employer**

28         Delano Farms contends that it has not undertaken responsibilities that are commonly performed

                                              23

1 by employers.  It points out that Contractor processes the payroll, issues the paychecks, and has its own

2 workers' compensation and general liability insurance policies.  Delano Farms also points out that

3 Contractor provides the equipment used by the field workers.

4        It is undisputed that Contractor processes and generates the payroll for all of the field workers.

5 (Doc. 150, p. 47:16-27).  It is further undisputed that Contractor has purchased its own Workers'

6 Compensation and general liability insurance policies. (Doc. 150, p. 48:23-49:2).  However, with regard

7 to Delano Farms' assertion that Contractor provides the equipment used by the field employees, plaintiffs

8 have submitted invoices which show that Delano Farms purchased 4,015 grape sheers in 2005; 3,800

9 grape sheers in 2006; and 4,008 grape sheers in 2007.  (Doc. 149-3, p. 48-50).  These purchases totaled

10 $9,435; $9,120; and $9,418, respectively.  In support of Delano Farms' reply to plaintiffs' opposition, it

11 submitted the declaration of James Edminster, the secretary and treasure of Delano Farms.  (Doc. 160,

12 ¶ 2).  The declaration provides that Delano Farms never supplied any hand tools to the field workers and

13 that an investigation regarding the grape sheer invoices revealed that Delano Farms was improperly

14 invoiced.  (Doc. 160, ¶ 4).  "In judging evidence at the summary judgment stage, the court does not make

15 credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most

16 favorable to the nonmoving party." *Soremekun*, 509 F.3d at 984.  Consequently, in light of the evidence

17 presented, this Court reaches the conclusion that a reasonable trier of fact could conclude that Delano

18 Farms undertook responsibilities in relation to the field workers which are commonly performed by

19 employers such as providing grape sheers. *See* 29 C.F.R. § 500.20(h)(5)(iv)(G) (stating that the provision

20 of "tools and equipment or materials required for the job" is relevant in determining "[w]hether the

21 agricultural employer/association undertakes responsibilities in relation to the worker(s) which are

22 commonly performed by employers").

23        With regard to plaintiffs' contention that Delano Farms influenced Contractor to implement labor

24 policy changes costing thousands of dollars, it appears as though plaintiffs are referring to the deposition

25 testimony of Craig Neville, the person most knowledgeable for Contractor, which provides that Joe

26 Campbell, Delano Farms' general manager, came up with the idea to give the field workers Gatorade to

27 counteract the effects of heat stress. (Doc. 149-4, p. 26-27).  Although Mr. Campbell may have suggested

28 that Contractor provide the workers with Gatorade, the fact that Contractor paid and supplied the

24

1    Gatorade (Doc. 149-4, p. 26-27) shows that Contractor and not Delano Farms undertook the employer

2    responsibility.  Accordingly, this argument is unpersuasive.

3        **2. Non-Regulatory Factors**

4            **a. Contractual Obligations**

5        The second non-regulatory factor considered by the Ninth Circuit in *Torres-Lopez* was "whether

6    responsibility under the contracts between a labor contractor and an employer pass from one labor

7    contractor to another without 'material changes[.]'" *Torres-Lopez*, 111 F.3d at 640.  In support of its

8    determination that the grower constituted a joint employer, the Ninth Circuit acknowledged that "there

9    were no 'material changes,' in the terms of the oral contracts between [the grower] and farm labor

10   contractors . . . The contracts were standard for the industry and involved little negotiation." *Id*. at 643

11   (internal citation omitted).

12       Delano Farms asserts that its agreement with Contractor is unique to Delano Farms and

13   Contractor, that the contract is the product of negotiation, and that there is no indication that the

14   agreement could be passed to another contractor without negotiation.  In support of its argument, Delano

15   Farms points out that when Perez Contracting took over the cultural work at Delano Farms South, Perez

16   Contracting did not simply take over Contractor's agreement.  Instead, Delano Farms negotiated with

17   Perez Contracting and a new service agreement was reached.

18       The difficulty in analyzing this issue is the absence of evidence regarding the terms of the parties'

19   agreement.  The deposition of Terry Bangi, Contractor's president, provides that the agreement between

20   Contractor and Delano Farms was completely oral until 2011.  (Doc. 149-2, p. 33).  Plaintiffs have

21   provided the Court with a copy of the 2011 written agreement. (Doc. 149-8, Ex. AA).  The terms are not

22   unique to Contractor nor does the agreement include the workers' wage rates.  (Doc. 149-8, Ex. AA).

23   According to Mr. Bangi's deposition, the financial terms of the agreement are usually negotiated only

24   when minimum wage goes up.  (Doc. 149-2, p. 44-45).  Thus, the parties clearly have an agreement

25   however, the actual terms of the agreement and more importantly the uniqueness of the terms is not

26   evident from the record.  Consequently, a reasonable trier of fact could conclude that responsibility under

27   the parties' contract could "pass from one labor contractor to another without 'material changes[.]'" *Id.*

28   at 640.

**b. Opportunity for Profit or Loss**

The sixth non-regulatory factor considered by the Ninth Circuit in *Torres-Lopez* was "whether the employee had an 'opportunity for profit or loss depending upon [the alleged employee's] managerial skill.'"  *Id.* at 640 quoting *Real*, 603 F.2d at 754.  The Ninth Circuit determined that "the farmworkers had no opportunity for profit or loss depending upon their managerial skill [because] [t]hey worked at a piece-rate and the amount of money they earned depended solely upon the number of cucumbers they themselves picked." *Torres-Lopez*, 111 F.3d at 644 (internal quotation marks and citation omitted).  In *Moreau*, 356 F.3d at 942, the Ninth Circuit distinguished this factor by recognizing that "in contrast to the farm laborers, the ground company employees did have an opportunity for profit or promotion based on their managerial skill, and such promotions occurred within the ground handling companies, and not Air France."  *Id.* at 952.

Delano Farms contends that the field workers have an opportunity for profit or loss depending upon each individual worker's skill level because the field workers: (1) are paid an hourly rate that is dependent on the type of job he or she performs, (2) are able to earn a production bonus based on the number of boxes packed, and (3) have the potential to be promoted into management positions within Contractor's organization.

Although the declaration of Terry Bangi, Contractor's president, provides that "an individual field employee may be paid at a higher hourly rate depending on the type of job being performed," (Doc. 116, ¶ 66), Delano Farms has failed to show that the higher pay rate correlates with the field workers' managerial skill level.  Similarly, Delano Farms has failed to show that the field workers' ability to earn a production bonus based on the number of boxes packed correlates with the field workers' managerial skill level.  The factor at issue is "whether the employee had an 'opportunity for profit or loss depending upon [the alleged employee's] *managerial* skill,'" *Torres-Lopez*, 111 F.3d at 640 quoting *Real*, 603 F.2d at 754 (emphasis added), and not merely on the alleged employee's skill or ability.  Delano Farms' attempt to broaden the case law is unpersuasive.

With regard to Delano Farms' contention that field workers have the potential to be promoted into management positions within Contractor's organization depending upon the workers' managerial skill, this factor is undisputed.  (Doc. 150, p. 18:12-21).  The parties agree that "[f]ield employees who are

26

1   promoted to foreman are promoted because of their managerial skill, length of service, good work ethic

2   and the quality of their work . . . [and] the best foremen may be promoted up to supervisor and,

3   ultimately, into higher management positions."  (Doc. 150, p. 18:12-21).  This is similar to the facts in

4   *Moreau*, in which the Ninth Circuit distinguished *Torres-Lopez* by recognizing that in contrast to the farm

5   laborers the employees "did have an opportunity for profit or promotion based on their managerial skill."

6   *Moreau*, 356 F.3d at 952.  Accordingly, the field workers' ability to be promoted within Contractor's

7   organization cuts in favor of Delano Farms' argument that it is not a joint employer.

8           In sum, the above factual disputes preclude summary judgment regarding Delano Farms' assertion

9   that it did not jointly employ plaintiffs.  Assuming the veracity of plaintiffs' evidence, a reasonable trier

10  of fact could conclude that the field workers are economically dependent upon Delano Farms and thus,

11  were jointly employed by Contractor and Delano Farms.  *See Torres-Lopez*, 111 F.3d at 641 (in

12  determining whether a joint employment relationship exists courts apply an economic reality test which

13  focuses on the economic reality of the relationship between the farmworker and the alleged joint

14  employer).  Therefore, Delano Farms' motion for summary judgment is DENIED with regard to its

15  argument that it did not jointly employ plaintiffs under federal law.

16  **C. Joint Employment Under California Law**

17          Relying on *Martinez v. Combs,* 49 Cal. 4th 35 (2010), Delano Farms argues that it is clear under

18  California law that Delano Farms is not a joint employer.

19          In actions to recover unpaid minimum wages, pursuant Cal. Lab. Code § 1194,  as is alleged here,

20  California Courts rely on the definitions in  California's Industrial Welfare Commission's ("IWC") wage

21  orders in determining whether an employment relationship exists.  *Martinez*, 49 Cal. 4th at 52.  Under

22  the IWC, there are three alternative definitions for the term "to employ."  *Id*. at 64.  "It means: (a) to

23  exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c)

24  to engage, thereby creating a common law employment relationship."  *Id*. at 64 (emphasis in original).

25  Plaintiffs argue that genuine material issues arise under two of the three definitions.[11]

26  _____

27          [11]  Although plaintiffs only raise disputes with regard to two of the definitions, the Court cannot rely solely on the
    common law definition in determining whether Delano Farms constitutes plaintiffs' employer under California law because
28  "to apply only the common law definition while ignoring the rest of the IWC's broad regulatory definition would substantially

**1. To Exercise Control Over the Wages, Hours, or Working Conditions**

Plaintiffs argue that Delano Farms exercises control over their wages and working conditions. " '[C]ontrol over wages' means that a person or entity has the power or authority to negotiate and set an employee's rate of pay, and not that a person or entity is physically involved in the preparation of an employee's paycheck." *Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1432 (2010). As discussed above, the deposition of Craig Neville, the person most knowledgeable for Contractor, provides that in August or September of 2009, Joe Campbell and Terry Bangi made the decision to pay the workers $8.50 an hour, an increase over their previous wage. (Doc. 149-4, p. 48-49, 50). Because the decision was made by a representative from Contractor and Delano Farms, a genuine dispute exists regarding whether Delano Farms has control over the field workers' wage rates.

A genuine dispute also exists with regard to whether Delano Farms exercises control over the field workers' working conditions. In *Martinez*, the California Supreme Court determined that a land owner did not exercise control over the field workers' working conditions, in part, because the leaser of the land decided which fields to harvest on a given day, trained the field workers, and supervised the field workers. *Martinez*, 49 Cal. 4th at 72. Here, the evidence submitted by plaintiffs shows that decisions regarding when and where to start preharvest and harvest activities are determined by Delano Farms. (Doc. 149-3, p. 53:2-19). In addition, Delano Farms' salesmen instruct Contractor regarding what percentage of color the field workers should pick for the day. (Doc. 149-3, p. 33:5-10). Moreover, declarations from field workers provide that Delano Farms' personnel provide training. (Doc. 149-7, p. 56:1-3; p. 69:1-3). Accordingly, a reasonable trier of fact could conclude that Delano Farms exercised control over plaintiffs' wages and working conditions.

**2. To Suffer or Permit to Work**

Plaintiffs argue that disputed material facts demonstrate a triable issue as to the "suffer or permit to work" standard. Plaintiffs assert that members of Delano Farms' management team were consistently in the fields thus, it is reasonable to conclude that Delano Farms had knowledge of the unlawful employment conditions if they existed. Plaintiffs further assert that Delano Farms had the power to stop

---

impair the commission's authority and the effectiveness of its wage orders." *Martinez*, 49 Cal. 4th at 65.

1   work on its property thus, it is reasonable to conclude that Delano Farms could have prevented the

2   unlawful conditions.

3          "The verbs 'to suffer' and 'to permit,' . . . are terms of art in employment law." *Martinez*, 49 Cal.

4   4th at 64.  "[T]he basis of liability is the defendant's knowledge of and failure to prevent the [illegal]

5   work from occurring." *Id*. at 70.

6          In plaintiffs' complaint, they allege that they were required to perform pre-shift and post-shift

7   work that they were not compensated for.  Specifically, they allege that pre-shift they spent time

8   organizing materials and equipment and attended training sessions.  Plaintiffs also allege that they were

9   required to meet their foreman at a designated location and then follow the foreman to their work

10  location.  Post-shift, plaintiffs would finish packing boxes and clean up.  The evidence submitted by

11  plaintiffs shows that Delano Farms' personnel were in the fields regularly.  The deposition of Ryan

12  Randall, ranch manager of Delano Farms South, provides that during the pre-harvest and harvest seasons

13  he spends 7-12 hours a day in the fields. (Doc. 149-6, p. 47:19-48:12). Scott Quashnick, ranch manager

14  of Delano Farms North, also testified that he spends time in the fields.  (Doc. 149-3, p. 25, 34).

15  Moreover, Delano Farms' quality control personnel visit field crews regularly.  (Doc. 149-7, p. 49, ¶ 3;

16  p. 61, ¶ 3:11-12).  Accordingly, a reasonable trier of fact could conclude that Delano Farms knew

17  plaintiffs were performing pre and post shift work because they were present in the fields.

18         With regard to whether Delano Farms had the ability to prevent the allegedly illegal work from

19  occurring, the evidence submitted by plaintiffs shows that there is at least a dispute as to this issue.  In

20  *Martinez*, the California Supreme Court held that the land owner did not have the power to prevent

21  plaintiffs from working because Contractor "had the exclusive power to hire and fire his workers, to set

22  their wages and hours, and to tell them when and where to report to work." *Martinez*, 49 Cal. 4th at 70.

23  Here, there is at least a dispute as to whether Delano Farms had the power to prevent plaintiffs from

24  working because, taking the evidence submitted by plaintiffs as true, Delano Farms helped set the

25  workers' wages (Doc. 149-4, p. 48:23-25), had the ability to move workers around (Doc. 149-6, p. 30:18-

26  31:11), decided when and where to start pre-harvest and harvest activities (Doc. 149-3, p. 53:2-19), and

27  was responsible for deciding when to cancel work due to inclement weather (Doc. 149-6, p. 55:10-56:6).

28  Accordingly, a reasonable trier of fact could conclude that Delano Farms had knowledge of and failed

to prevent the allegedly illegal work from occurring.

To the extent Delano Farms argues that it does not jointly employ plaintiffs under California law, the above factual disputes preclude summary judgment.  A reasonable trier of fact could conclude that Delano Farms exercises control over the wages, hours, or working conditions of plaintiffs or suffers or permits them to work.  *Martinez*, 49 Cal. 4th at 64.  Consequently, Delano Farms' motion for summary judgment is DENIED with regard to its argument that it does not jointly employ plaintiffs under California law.

## VI. CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.      DENIES Delano Farms' request for oral argument and

2.      DENIES Delano Farms' motion for summary judgment.

IT IS SO ORDERED.

1   Dated:   **April 11, 2012**                      **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28