IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SABAS ARREDONDO, et al.,                    CASE NO. CV F 09-01247-LJO-DLB

      Plaintiffs,          **ORDER ON DEFENDANT DELANO FARMS'**
 vs.                                      **MOTION TO BIFURCATE** (Doc. 169)

DELANO FARMS COMPANY, et al.,

      Defendants.

_____/

**INTRODUCTION**

  Plaintiffs filed a class action against defendants Delano Farms Company ("Delano Farms"), Cal-Pacific Farm Management, L.P. ("Cal-Pacific"), and T&R Bangi's Agricultural Services, Inc. ("TR Bangi"), alleging federal and state law wage and hour violations, including claims pursuant to the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, et seq. ("AWPA"). Delano Farms previously moved for summary judgment in its favor, arguing that Cal-Pacific and TR Bangi are independent contractors and Delano Farms does not qualify as a joint employer under federal or state law. This Court denied Delano Farms' summary judgment motion, finding that genuine issues of material fact exists to preclude judgment in its favor on these issues. Delano Farms now moves to bifurcate these issues from the trial on the issues of the labor claims. Delano Farms argues that bifurcating this issue will streamline the trial and will cause less confusion to the jury. Plaintiffs oppose this motion to bifurcate, arguing that bifurcation will not expedite trial because the facts underlying the joint employer issue are substantially the same as those of the labor claims. For the following reasons, this Court GRANTS Delano Farm's motion to bifurcate, DENIES Delano Farms' motion to appoint a special master, and SETS a June 26, 2012 trial-setting conference for part one of the bifurcated trial.

1

**BACKGROUND**

Delano Farms moved for summary judgment on the issue it now seeks to bifurcate.  Whether to bifurcate turns on whether the facts related to the joint employer issue and the facts underlying Plaintiffs' claims are the same.  To help make that determination, this Court summarizes the facts upon which the parties' relied for the summary judgment motion on the issue of whether Delano Farms was a joint employer.

**A. Undisputed Facts**

Delano Farms is a grower of table grapes.  The company has been in operation for more than nineteen years and owns approximately 6,300 acres of vineyards in the Central Valley.  Delano Farms outsources many of its farming functions.  The primary field tasks performed in-house are fertilizing the crops, preparing the fields for planting, irrigating the plants, vineyard repair, vineyard cleanup, and other tractor work.  All other farming tasks are performed by various contractors.

TR Bangi (referred to as "Contractor") and Cal-Pacific (jointly referred to as "Contractors") are farm labor contractors who specialize in providing field employees to grape growers.  TR Bangi has provided labor contracting services to Delano Farms since Delano Farms began.  Cal-Pacific provided farm labor contracting services to Delano Farms from 2004 until 2009.

Contractors do not own any of the land upon which they perform work.  The land and crops belong exclusively to Delano Farms.  Contractors hire the field workers for the harvest season, maintain all of the field workers' personnel records, and generate the payroll for the field workers.  Contractors has also purchased equipment and office furnishings in support of its operations.  The value of the equipment owned by Contractors exceeds $750,000.  The total estimated cost incurred by Contractors for furnishing and adequately supplying their office is $100,000.

**B. Plaintiffs' Statement of Facts**

Plaintiffs allege that the field workers and Contractors are economically dependent on Delano Farms because Delano Farms provides equipment, office space, exerts control over the manner in which the work is performed, and helps set the field workers' wage rates.

Delano Farms owns a substantial amount of farming equipment, which includes: fifteen tractors, four large Caterpillar tractors, fifteen trucks, three shops where equipment is stored, a tote wash, and

1   numerous implements (e.g., vineyard discs, drills, chisels, can cutters, spray rigs, dusters, grass cutters,

2   spring-tooths, weed rigs, and others).  Delano Farms also provides twine, boxes, and stickers for use in

3   the fields.  In addition, Delano Farms purchased 4,015 grape sheers in 2005; 3,800 grape sheers in 2006;

4   and 4,008 grape sheers in 2007.  With regard to office space, Delano Farms provides Contractors a five

5   acre complex that serves as Contractors headquarters.  There is no lease for this property and Contractors

6   have never paid any rent to Delano Farms.

7          With regard to control, Plaintiffs allege that the level of oversight exercised by Delano Farms is

8   extensive.  Decisions regarding when and where to start pre-harvest and harvest activities are determined

9   by Delano Farms' employees.  Delano Farms' salesmen instruct Contractors regarding what percentage

10   of color the field workers should pick for the day.  In addition, Ryan Randall, ranch manager of Delano

11   Farms South, decides when to cancel work due to wet weather.

12          Plaintiffs further allege that Delano Farms exercises extensive control over the manner in which

13   the work is performed through use of its quality control personnel.  Delano Farms' quality control

14   personnel include Maria Mendez, Silvia Villa, and various tractor drivers, irrigators, and spray

15   applicators.  Plaintiffs explain that the most well-known of Delano Farms' quality control employees

16   are Maria Mendez and Silvia Villa.  The duo are identical twin sisters who are known in the fields as

17   "the twins."  The twins drive a truck owned by Delano Farms, wear Delano Farms' uniforms, and visit

18   the crews as they are picking and packing grapes.  While in the fields the twins inspect the grapes and

19   field worker technique, provide training sessions for the crews and foremen, and give individualized tips

20   directly to the workers.

21          With regard to wage rates, Plaintiffs allege that in the fall of 2009 Joe Campbell, Delano Farms'

22   general manager, and Terry Bangi, Contractor's president, made the decision to increase the field

23   workers' wage rate.  The two increased the workers' wage rate and excised the tray bonus.

24   **C. Defendant Delano Farms' Statement of Facts**

25          Delano Farms asserts that Contractor is "an independent, profitable business that retains full

26   control over its operations, and its relationship with its employees." Delano Farms points out that

27   Contractors provide 1,500 packing tables; 130 canopies; 2,000 wheelbarrows; 1,800 scales; and 20,000

28   picking trays. . Contractors also provide the field workers with pruning sheers, clippers, loppers, picking

sheers, eye protection, aprons, and gloves. . In addition, Contractors own 150 portable toilets, a pressure washer for cleaning trays, 2 septic pumping trucks, 240 water cans, 20 cellular phones, 40 radios, 1 generator, and 3 welding machines.  Contractors have purchased and currently owns 28 field trucks and 15 trailers.  Delano Farms acknowledges that it provides twine to train the vines, packaging materials, and certain trays for use in its cold storage facility but notes that it is customary for a grower to provide these types of supplies.  With regard to office space, although Contractors house its office staff in a building owned by Delano Farms, Contractors pay the utilities for the building and has remodeled its interior, added a parking structure, and an additional bathroom.

With regard to control, Delano Farms maintains that all of the work is performed by crews hired, trained, and supervised by Contractors.  Delano Farms does not have any direct supervision over the field workers Contractosr provide and Contractors have complete control over determining how the work is performed.  Delano Farms points out that Contractors have the power to assign the field workers where Contractor feels they are needed.  In addition, Contractors determine the field workers' schedules and decides whether a shift will end early, be extended, or cancelled.  Contractors also evaluate the quality of the work performed and only Contractors have the power to discipline and terminate field workers. Delano Farms acknowledges that although Contractors have control over determining how the work will be performed, Delano Farms performs quality spot checks of all of the services rendered.  If Delano Farms sees a problem, it contacts Terry Bangi or one of Contractors' supervisors.

Delano Farms further asserts that the service contract between Delano Farms and Contractor is unique to Delano Farms and Contractor and is renegotiated on an annual basis.  Contractor sets the wage rates, bonus rates, and percentage markup and Delano Farms has the option to accept or reject the quoted rates.

**D. Procedural History**

On July 17, 2009, Plaintiffs initiated this class action for damages.  Plaintiffs' complaint alleges that Delano Farms, Cal-Pacific, and TR Bangi engaged in unlawful employment practices by: (1) violating the AWPA; (2) failing to pay wages and/or overtime, in violation of Cal. Lab. Code § 1194(a); (3) failing to reimburse expenses for tools and equipment, in violation of 29 U.S.C. § 1832(c) and Cal. Lab. Code § 2802; (4) failing to maintain accurate hours worked information, in violation of Cal. Lab.

1   Code § 226 and IWC Wage Order 14; (5) failing to pay waiting time penalties, in violation of Cal. Lab.

2   Code § 203; and (6) engaging in unfair competition, pursuant Cal. Bus. & Prof. Code § 17200.

3         On April 19, 2011, this Court granted in part and denied in part Plaintiffs' request for class

4   certification.  The Court certified the following class pursuant to Fed. R. Civ. P. 23(b)(3):

5         "All non-exempt agricultural employees of DELANO FARMS COMPANY,
      CAL-PACIFIC FARM MANAGEMENT, L.P., and T&R BANGI'S

6         AGRICULTURAL SERVICES, INC. who performed field work at Delano
      Farms in California from four (4) years prior to the filing of this action to the

7         present, excluding irrigators, tractor drivers, swampers, and workers employed
      only in cold-storage."  The class shall be divided into subclasses as follows:

8

9       (1)    Field workers who performed uncompensated and unrecorded work
            before the fixed start time in the harvest and pre-harvest work.

10      (2)    Field workers who performed uncompensated and unrecorded work
            after the fixed stopping time in the harvest work.

11      (3)    Field workers who performed uncompensated and unrecorded work
            after hours by washing their picking trays at home.

12      (4)    Field workers who incurred unreimbursed necessary tools expenses in
            the harvest and pre-harvest work.

13  Doc. 85, p. 27:2-13.

14        On February 2, 2012, Delano Farms filed its summary judgment motion.  In an April 12, 2012

15  order, this Court denied Delano Farms' motion, finding that genuine issues of material fact as to whether

16  it was a joint employer of Plaintiffs pursuant to federal and state law.  Delano Farms responded to that

17  order with the instant motion to bifurcate the issue of whether it is a joint employer at trial.  Plaintiffs

18  opposed the motion on June 11, 2012. Delano Farms filed a reply on June 18, 2012.  Having considered

19  the parties' arguments, this Court issues the following order.

20                                          **DISCUSSION**

21        Delano Farms requests to bifurcate the issue from whether it was a joint employer of Plaintiffs

22  from the rest of the trial pursuant to Fed. R. Civ. P. 42(b), which reads, in pertinent part: "For

23  convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of

24  one or more separate issues[.]"  Pursuant to this rule, this Court considers potential prejudice to the

25  parties, potential confusion to the jury, or whether bifurcation would promote judicial economy. *See id.*;

26  *see also, In re Beverly Hills Fire Litig.*, 695 F.2d 207 (6th Cir. 1982), *cert denied*, 461 U.S. 929 (1983).

27  These considerations are in the alternative and need not all be present for separation or severance. *In re*

28  *Paris Air Crash*, 69 F.R.D. 310 (C.D. Cal. 1975).  Whether to grant or deny a motion to bifurcate is

within the discretion of the court. *Exxon Co. v. Sofec, Inc.*, 54 F.3d 570, 575 (9th Cir. 1995).[1]

Delano Farms argues that the issue of whether it is a joint employer is separate from the issue of whether wage and hour laws were violated.  Delano Farms contends that under both federal and state law, joint-employer status depends on the nature of the relationships and control, not whether labor violations actually occurred.  Delano Farms submits that these separate issues depend on different evidence.  Because they are separate issues, Delano Farms argues that separation of these issues would serve the ends of convenience and judicial economy and would avoid jury confusion and prejudice.  The Court considers Delano Farms' arguments below.

## **Separability**

The Court first considers whether the joint-employer issue is separate from the Plaintiffs' federal and state law claims.  Delano Farms argues that whether an entity qualifies as a joint employer under the AWPA or the California Labor Code depends on the economic reality of the relationship between the entity and the agricultural worker.  The issue of joint employer turns on how much control the alleged joint employer had over the terms and conditions of the work performed.  By contract, Delano Farms argues, Plaintiffs' wage claims rest on whether they performed work or purchased tools for which they were not properly compensated.  Delano Farms submits that these are separate issues, because the legal elements of each claim are different and the relevant and material evidence for each of those claims is different.

Plaintiffs oppose this motion to bifurcate.  Plaintiffs contend that determination of whether Delano Farms was a joint employer of Plaintiffs cannot be separated from the underlying claims, because the issues are factually intertwined.  Specifically, Plaintiffs argue that the issue of whether Delano Farms is a joint employer is factually intertwined with their labor law claims under California's "suffer, or permit" standard.  Plaintiffs argue:

> Taken together, the elements required to establish the liability of Delano Farms under California's 'suffer, or permit' standard are as follows: 1) existence of unlawful

---

[1] Although not noted by the parties, this Court may also consider the issue of separate trials in this class action pursuant to Fed. R. Civ. P. 23(d)(1)(A), which reads: "In conducting an action under this rule, the court may issue orders that determine the course of the proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument."  This rule "provides the trial judge presiding over any class action with extensive powers to expedite the suit with procedural innovations." *Arthur Young & Co. v. United States Dist. Ct.*, 549 F.2d 686, 692 (9th Cir. 1977).

1    employment condition; 2) knowledge of unlawful employment condition; 3) power to prevent unlawful employment condition; and 4) failure to prevent unlawful employment
2    condition. There is no joint employer analysis which easily can be separated from the class claims.
3

4    Opp., p. 4.

5         Plaintiffs' opposition unreasonably focuses on one of eight factors this Court considers in the

6    joint-employer analysis. This Court considers whether Delano Farms was a joint employer of Plaintiffs

7    pursuant to both federal and state law. Both federal and state law have multiple factors to consider.

8    Moreover, as explained below, these issues depend on separate evidence from that required for

9    Plaintiffs' underlying claims.

10                                    **Federal Law Factors**

11        In determining whether a joint employment relationship exists, courts apply an "economic

12   reality" test. *Torres-Lopez*, 111 F.3 at 639. This inquiry focuses "on the economic reality of the

13   particular relationship between the farm-worker and the alleged joint employer." *Id.* at 641. In *Torres-*

14   *Lopez,* the Ninth Circuit considered a "non-exhaustive list of [five] regulatory factors," codified in 29

15   C.F.R. § 500.20(h)(4)(ii) (1996),[2] and eight non-regulatory factors in determining whether a joint

16   employment relationship existed. *Torres-Lopez*, 111 F.3d at 639-40. The non-regulatory factors

17   considered by the Court are as follows:

18        (1) whether the work was a specialty job on the production line;
          (2) whether responsibility under the contracts between a labor contractor and
19        an employer pass from one labor contractor to another without material
          changes;
20        (3) whether the premises and equipment of the employer are used for the work;
          (4) whether the employees had a business organization that could or did shift
21        as a unit from one worksite to another;
          (5) whether the work was piecework and not work that required initiative,
22        judgment or foresight;
          (6) whether the employee had an opportunity for profit or loss depending upon
23        the alleged employee's managerial skill;
          (7) whether there was permanence in the working relationship; and
24        (8) whether the service rendered is an integral part of the alleged employer's
          business[.]
25

26        [2] The regulatory factors considered by the court were: (A) the nature and degree of control of the workers; (B) the degree of supervision, direct or indirect, of the work; (C) the power to determine the pay rates or the methods of payment
27   of the workers; (D) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; and (E) preparation of payroll and the payment of wages. *Torres-Lopez*, 111 F.3d at 639-40 citing former 29 C.F.R. §
28   500.20(h)(4)(ii).

1    *Id.* at 640 (internal quotation marks and citations omitted).

2          Shortly after *Torres-Lopez* was published, 29 C.F.R. § 500.20(h) was amended to remedy the

3    overly restrictive definition of "joint employer" utilized by many courts. *Torres-Lopez*, 111 F.3d at 641

4    n.6.  The amended non-exhaustive list of regulatory factors are as follows:

5

6          (A) Whether the agricultural employer/association has the power, either alone
           or through control of the farm labor contractor to direct, control, or supervise
           the worker(s) or the work performed (such control may be either direct or
7          indirect, taking into account the nature of the work performed and a reasonable
           degree of contract performance oversight and coordination with third parties);
8          (B) Whether the agricultural employer/association has the power, either alone
           or in addition to another employer, directly or indirectly, to hire or fire, modify
9          the employment conditions, or determine the pay rates or the methods of wage
           payment for the worker(s);
10         (C) The degree of permanency and duration of the relationship of the parties,
           in the context of the agricultural activity at issue;
11         (D) The extent to which the services rendered by the worker(s) are repetitive,
           rote tasks requiring skills which are acquired with relatively little training;
12         (E) Whether the activities performed by the worker(s) are an integral part of the
           overall business operation of the agricultural employer/association;
13         (F) Whether the work is performed on the agricultural employer/association's
           premises, rather than on premises owned or controlled by another business
14         entity; and
           (G) Whether the agricultural employer/association undertakes responsibilities
15         in relation to the worker(s) which are commonly performed by employers, such
           as preparing and/or making payroll records preparing and/or issuing pay checks,
16         paying FICA taxes, providing workers' compensation insurance, providing field
           sanitation facilities, housing or transportation, or providing tools and equipment
17         or materials required for the job (taking into account the amount of the
           investment).
18

19   29 C.F.R. § 500.20(h)(5)(iv)(A)-(G).  The Ninth Circuit instructs that "[a] court should consider all . .

20   . factors . . . 'relevant to [the] particular situation' in evaluating the 'economic reality' of an alleged joint

21   employment relationship."  *Id*. at 639 *(*quoting  *Bonnette v. California Health & Welfare Agency*, 704

22   F.2d 1465, 1470 (9th Cir. 1983)).

23         Delano Farms relies on various regulatory and non-regulatory factors in support of its argument

24   that it did not jointly employ Plaintiffs.  The Court will summarize each factor and the evidence presented

25   in the summary judgment motion by both sides on this issue.

26   **1.      Regulatory Factors**

27         **a. Supervision/Control**

28         Delano Farms contends that it does not exercise supervisory control over the field workers.  It

8

points out that it does not provide direction regarding the methods by which the field workers perform work nor does it provide direct supervision.  Plaintiffs submitted evidence to dispute this claim, including evidence that Delano Farms' personnel decide when and where to start pre-harvest and harvest activities and when to cancel work due to wet weather.  In addition, Delano Farms employs quality control personnel who visit field crews regularly, interact with field workers and foremen alike, and provide instruction regarding how to harvest and pack the grapes.  In Delano Farms' reply, it argues that its personnel merely provide "spot-checking" for quality control purposes and that when problems are discovered they are reported to Contractor's foremen.  This is contradicted by the declarations submitted by Plaintiffs which show that Delano Farms' employees conduct training sessions and directly advise workers on how the work should be performed.  This evidence is separate from the Plaintiffs' underlying claims.

### b. Hire or fire, modify employment conditions, determine pay rates

Delano Farms argued that Contractors had the exclusive power to hire and fire field workers as well as exclusive power over the field workers' work assignments and wage rates.  It is undisputed that Contractors hire the field workers, maintain all of the field workers' personnel records, and generate the payroll for the field workers.  However, the evidence submitted by Plaintiffs shows a genuine dispute regarding whether Delano Farms modifies the field workers' employment conditions and helps determine the field workers' pay rates.  For example, the deposition of Silvia Villa, one of Delano Farms' quality control employees, provides that she observed other Delano Farms' quality control employees order field workers from the field to the storage area to re-pack grapes that had been packed incorrectly.  In addition, the evidence submitted by Plaintiffs showed a genuine dispute regarding whether Delano Farms helps determine the workers' wage rates.  This evidence is distinct from the Plaintiffs' underlying claims.

### c. Permanency and Duration of Relationship

Delano Farms asserts that the working relationship between the field workers and Delano Farms is not permanent.  It points out that Contractors have exclusive control over which grower a particular field worker will be placed and that Contractors can and do move field employees to different growers depending upon need.  Although many field workers have been working for Contractor for over twenty years, it is undisputed that none of the workers hired by Contractor is permanently assigned to one

1  specific grower.  It is further undisputed that Contractors have the power to assign field workers wherever

2  they are needed. In addition, it is undisputed that the number of field workers Delano Farms needs varies

3  depending upon the stage of the annual growth cycle and whether it is a planting year.  This issue is

4  distinct from the Plaintiffs' underlying claims.

5       **d. Assumption of Responsibilities of an Employer**

6       Delano Farms contends that it has not undertaken responsibilities that are commonly performed

7  by employers.  It points out that Contractor processes the payroll, issues the paychecks, and has its own

8  workers' compensation and general liability insurance policies.  Delano Farms also points out that

9  Contractor provides the equipment used by the field workers.  It is undisputed that Contractors process

10  and generate the payroll for all of the field workers. It is further undisputed that Contractors have

11  purchased their own Workers' Compensation  and general liability insurance policies.  However, with

12  regard to Delano Farms' assertion that Contractor provides the equipment used by the field employees,

13  Plaintiffs have submitted invoices which show that Delano Farms purchased 4,015 grape sheers in 2005;

14  3,800 grape sheers in 2006; and 4,008 grape sheers in 2007. These purchases totaled $9,435; $9,120; and

15  $9,418, respectively.   In support of Delano Farms' reply to Plaintiffs' opposition, it submitted the

16  declaration of James Edminster, the secretary and treasure of Delano Farms, which establishes that

17  Delano Farms never supplied any hand tools to the field workers and that an investigation regarding the

18  grape sheer invoices revealed that Delano Farms was improperly invoiced.

19  **2. Non-Regulatory Factors**

20       **a. Contractual Obligations**

21       The second non-regulatory factor considered by the Ninth Circuit in *Torres-Lopez* was "whether

22  responsibility under the contracts between a labor contractor and an employer pass from one labor

23  contractor to another without 'material changes[.]'" *Torres-Lopez*, 111 F.3d at 640.  In support of its

24  determination that the grower constituted a joint employer, the Ninth Circuit acknowledged that "there

25  were no 'material changes,' in the terms of the oral contracts between [the grower] and farm labor

26  contractors . . . The contracts were standard for the industry and involved little negotiation." *Id*. at 643

27  (internal citation omitted).  Delano Farms asserts that its agreement with Contractors is unique to Delano

28  Farms and Contractors, that the contracts are the product of negotiation, and that there is no indication

10

1    that the agreement could be passed to another contractor without negotiation.  In support of its argument,

2    Delano Farms points out that when Perez Contracting took over the cultural work at Delano Farms South,

3    Perez Contracting did not simply take over Contractor's agreement.  Instead, Delano Farms negotiated

4    with Perez Contracting and a new service agreement was reached.  The contractual relationship between

5    Delano Farm and Contractors is distinct from Plaintiffs' underlying claims.

6            **b. Opportunity for Profit or Loss**

7            The sixth non-regulatory factor considered by the Ninth Circuit in *Torres-Lopez* was "whether

8    the employee had an 'opportunity for profit or loss depending upon [the alleged employee's] managerial

9    skill.'"  *Id*. at 640 quoting *Real*, 603 F.2d at 754.  The Ninth Circuit determined that "the farmworkers

10   had no opportunity for profit or loss depending upon their managerial skill [because] [t]hey worked at

11   a piece-rate and the amount of money they earned depended solely upon the number of cucumbers they

12   themselves picked."  *Torres-Lopez*, 111 F.3d at 644 (internal quotation marks and citation omitted).  In

13   *Moreau*, 356 F.3d at 942, the Ninth Circuit distinguished this factor by recognizing that "in contrast to

14   the farm laborers, the ground company employees did have an opportunity for profit or promotion based

15   on their managerial skill, and such promotions occurred within the ground handling companies, and not

16   Air France."  *Id*. at 952.

17           Delano Farms contends that the field workers have an opportunity for profit or loss depending

18   upon each individual worker's skill level because the field workers: (1) are paid an hourly rate that is

19   dependent on the type of job he or she performs, (2) are able to earn a production bonus based on the

20   number of boxes packed, and (3) have the potential to be promoted into management positions within

21   Contractor's organization.  In determining whether a joint employment relationship exists under this

22   factor, courts apply an economic reality test which focuses on the economic reality of the relationship

23   between the farmworker and the alleged joint employer.  This issue is separate and distinct from the

24   Plaintiffs' underlying claims.

25                            **State Law Factors**

26           Relying on *Martinez v. Combs,* 49 Cal. 4th 35 (2010), Delano Farms argues that it is clear under

27   California law that Delano Farms is not a joint employer.  In actions to recover unpaid minimum wages,

28   pursuant Cal. Lab. Code § 1194, as is alleged here, California courts rely on the definitions in

                                              11

California's Industrial Welfare Commission's ("IWC") wage orders in determining whether an employment relationship exists. *Martinez*, 49 Cal. 4th at 52. Under the IWC, there are three alternative definitions for the term "to employ." *Id*. at 64. "It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Id*. at 64 (emphasis in original). Plaintiffs argue that genuine material issues arise under two of the three definitions.

**1.     To Exercise Control Over the Wages, Hours, or Working Conditions**

Plaintiffs argue that Delano Farms exercises control over their wages and working conditions. " '[C]ontrol over wages' means that a person or entity has the power or authority to negotiate and set an employee's rate of pay, and not that a person or entity is physically involved in the preparation of an employee's paycheck." *Futrell v. Payday Cal., Inc.*, 190 Cal. App. 4th 1419, 1432 (2010). As discussed above, the parties dispute whether Delano Farms had control over the field workers' wage rates. This Court founds that a genuine dispute also exists with regard to whether Delano Farms exercises control over the field workers' working conditions. These

**2.     To Suffer or Permit to Work**

Plaintiffs argue that disputed material facts demonstrate a triable issue as to the "suffer or permit to work" standard. Plaintiffs assert that members of Delano Farms' management team were consistently in the fields; thus, it is reasonable to conclude that Delano Farms had knowledge of the unlawful employment conditions if they existed. Plaintiffs further assert that Delano Farms had the power to stop work on its property thus, it is reasonable to conclude that Delano Farms could have prevented the unlawful conditions.

"The verbs 'to suffer' and 'to permit,' . . . are terms of art in employment law." *Martinez*, 49 Cal. 4th at 64. "[T]he basis of liability is the defendant's knowledge of and failure to prevent the [illegal] work from occurring." *Id*. at 70. In Plaintiffs' complaint, they allege that they were required to perform pre-shift and post-shift work that they were not compensated for. Specifically, they allege that pre-shift they spent time organizing materials and equipment and attended training sessions. Plaintiffs also allege that they were required to meet their foreman at a designated location and then follow the foreman to their work location. Post-shift, Plaintiffs would finish packing boxes and clean up.

12

1    As to this issue, this Court ruled as follows:

2        The evidence submitted by plaintiffs shows that Delano Farms' personnel were
     in the fields regularly.  The deposition of Ryan Randall, ranch manager of Delano Farms
3    South, provides that during the pre-harvest and harvest seasons he spends 7-12 hours a
     day in the fields.  Scott Quashnick, ranch manager of Delano Farms North, also testified
4    that he spends time in the fields.  Moreover, Delano Farms' quality control personnel visit
     field crews regularly.  Accordingly, a reasonable trier of fact could conclude that Delano
5    Farms knew plaintiffs were performing pre and post shift work because they were present
     in the fields.

6
         With regard to whether Delano Farms had the ability to prevent the allegedly
7    illegal work from occurring, the evidence submitted by plaintiffs shows that there is at
     least a dispute as to this issue.  In *Martinez*, the California Supreme Court held that the
8    land owner did not have the power to prevent plaintiffs from working because Contractor
     "had the exclusive power to hire and fire his workers, to set their wages and hours, and
9    to tell them when and where to report to work."  *Martinez*, 49 Cal. 4th at 70.  Here, there
     is at least a dispute as to whether Delano Farms had the power to prevent plaintiffs from
10   working because, taking the evidence submitted by plaintiffs as true, Delano Farms helped
     set the workers' wages (Doc. 149-4, p. 48:23-25), had the ability to move workers around
11   (Doc. 149-6, p. 30:18-31:11), decided when and where to start pre-harvest and harvest
     activities (Doc. 149-3, p. 53:2-19), and was responsible for deciding when to cancel work
12   due to inclement weather (Doc. 149-6, p. 55:10-56:6).  Accordingly, a reasonable trier of
     fact could conclude that Delano Farms had knowledge of and failed to prevent the
13   allegedly illegal work from occurring.

14   In so ruling, this Court relied on evidence that is almost exclusively distinct from the Plaintiffs'

15   underlying claims.  The exception is that Plaintiffs submit evidence that Delano Farms' personnel were

16   in the fields regularly and knew Plaintiffs were performing pre- and post-shift work.

17                                    **Conclusion**

18       Plaintiffs claims are separable from Delano Farms' issue of whether it was a joint employer.  With

19   little exception, the relevant and material evidence for each of these issues is separate and distinct.

20   Plaintiffs labor claims rest on: (1) whether they were required to report to work or allowed to leave as

21   compared to their recorded and compensated start and stop times; (2) whether or how often they were

22   required to wash picking trays after hours; and (3) whether or to what extent they were required to

23   purchase tools without compensation.  Considering all of the factors and evidence as a whole, the issues

24   are not so intertwined with the joint-employer question as to preclude separate trials.  Accordingly, these

25   issues are distinct and may be tried separately.

26                           **Fed. R. Civ. P. 42 Considerations**

27       Next, the Court considers whether ordered separate trials will promote judicial economy, avoid

28   confusion to the jurors, or avoid prejudice.  Delano Farms argues that separation would satisfy all factors.

                                          13

1      Delano Farms contends that it is undisputed that bifurcating the trial will promote convenience

2  and judicial economy.  Delano Farms submits that regardless of whether it is held to be a joint employer,

3  bifurcating trial on this issue–which all parties agree is an issue of law to be decided by the Court–will

4  eliminate the need to present to the jury evidence regarding the economic relationship between Bangi and

5  Delano Farms and whether Delano Farms had control over the terms and conditions of Plaintiffs' work.

6  Delano Farms emphasizes that bifurcation will reduce the number of days required in the jury trial, which

7  is currently estimated to take up to 60 court days.  In addition, if Delano Farms prevails, the trial time will

8  be reduced even further, since there would be half the number of defense attorneys examining witnesses

9  and two parties, rather than three, presenting evidence and argument.  For these reasons, Delano Farms

10  asks the Court to proceed to trial on the threshold issue of employer status to expedite the process and

11  promote judicial economy.

12      Delano Farms further argues that bifurcation would also avoid unnecessarily subjecting Delano

13  Farms to further voluminous and resource-intensive discovery and proceedings on the merits.  Delano

14  Farms argues that it should not be forced to suffer the enormous expense, delay, and reputational injury

15  of defending this case through a 40- to 60-day trial only for the Court to decide at the end of the trial that

16  it was not a joint employer.

17      Morever, Delano Farms argues that bifurcation would avoid jury confusion and prejudice.  The

18  evidence regarding the merits of the class claims will be based on the time and payroll records and the

19  testimony of field workers and Bangi's supervisors and other employees about when Plaintiffs were

20  required to start and stop work and whether they had to purchase tools.  Delano Farms contends that

21  presentation of evidence related to joint-employer status would confuse the jury, since it is separate and

22  distinct and not an issue for the jury to decide.  This evidence includes financial information regarding

23  Delano Farms' and Bangi's operations, various corporate structures and affiliations, and express and

24  implied contractual arrangements between the defendants.  Delano Farms contends that the potential that

25  trial of these separate and potentially complex issues together may cause confusion.  For these reasons,

26  Delano Farms argues that bifurcation is warranted.

27      In opposition, Plaintiffs do not dispute that bifurcation would shorten the jury trial and avoid

28  confusion and prejudice.  Rather, Plaintiffs argue that the California "suffer, or permit" standard requires

1  determination of unlawful labor conditions prior to determination of whether Delano Farms knew of the

2  conditions, had the power to prevent them, and then failed to prevent them.  Plaintiffs submit that under

3  this analysis, the existence of the unlawful condition is a prerequisite to the liability of Delano Farms.

4  Plaintiffs contend that the most convenient way to resolve this issue is for all of the parties to the

5  litigation to have a jury hear all of the evidence related to the alleged employment relationship and the

6  alleged labor violations.  If the Court needs to make a determination as to questions of law arising from

7  the joint-employer issue, a proper determination can only be made in the context of findings of liability.

8       Although an order for separate, piecemeal trials on issues in one action is the exception rather than

9  the rule, this Court finds that this action presents an exceptional circumstance to grant Delano Farms'

10  motion to bifurcate.  It is undisputed that trying this threshold issue will take about six to eight days.

11  Trying this non-jury issue separately before this Court would undisputedly eliminate at least six to eight

12  days of testimony in a jury trial.  Moreover, depending on the outcome of that separate trial, the jury trial

13  could be reduced even further.  This class action involves at least 15,000 class members.  It is project

14  currently that the jury trial will take 40 to 60 days, although jury trials tend to go quicker than anticipated

15  in this courtroom.  Because of the massive inconvenience this jury trial will have on the jurors,

16  bifurcation of this non-jury issue will promote judicial economy and be more convenient to the schedules

17  of the jurors, who will be relieved of hearing at least six, but up to 20 days of testimony unnecessarily.

18       In addition, because the issues and presentation of evidence are distinct, separation of trials would

19  avoid potential jury confusion.  As set forth in detail above, the factual and legal issues are distinct.  In

20  addition, the evidence related to the joint-employer issue is complex.  This Court finds no reason to

21  present this evidence to the jury, because it may unnecessarily confuse the jury or prejudice the parties.

22       For these reasons, this Court grants Delano Farms' motion to bifurcate.

23                                    **Request for Special Master**

24       Delano Farms requests that the Court refer this issue to be tried by a magistrate judge as a "special

25  master, pursuant to Fed. R. Civ. P. 53(h).  Pursuant to Fed. R. Civ. P. 53(a)(1), this Court may appoint

26  a master, inter alia, only to:

27       (A) perform duties consented to by the parties;
         (B) hold trial proceedings and make or recommend findings of fact on issues to be decided
28       without a jury if appointment is warranted by:

(i) some exceptional condition; or
(ii) the need to perform an accounting or resolve a difficult computation of damages[.]

Since Plaintiffs oppose the request for a special master, Fed. R. Civ. P. 53(a)(1)(A) is inapplicable. In addition, Plaintiffs argue that there are no exceptional conditions that warrant appointment of a magistrate judge as special master to preside over the trial related to whether Delano Farms is a joint employer of Plaintiffs.

The Eastern District of California has the highest weighted caseload per judge in the country. To say that this Court's trial calendar is congested is an understatement. The conditions under which this Court operates is beyond exceptional. Nevertheless, this Court recognizes that court congestion alone is not enough to constitute "exceptional" conditions pursuant to Fed. R. Civ. P. 53(a). *La Buy v. Howes*, 352 U.S. 249, 258-59 (1957). Bound by this precedent, this Court cannot appoint a special master, even under these extreme and exceptional circumstances.[3] Accordingly, Delano Farms' motion to appoint a special master is denied.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.     GRANTS Delano Farms' motion to bifurcate;

2.     DENIES Delano Farms' motion to appoint a special master; and

3.     ORDERS the parties to appear before this Court on **Tuesday, June 26, 2012 at 8:30 a.m.** for a trial-setting conference. The parties should be prepared to pick a trial date for the first part of this bifurcated trial (i.e., the court trial on the issue of whether Delano Farms is a joint employer).

IT IS SO ORDERED.

Dated:    **June 19, 2012**                              **/s/ Lawrence J. O'Neill**

---

[3] While this Court's trial calendar may well not be able to accommodate the joint-employer court trial, this Court's resources and the Speedy Trial Act will probably preclude this Court from trying a multi-week civil trial. The parties must be prepared that it is simply not feasible for this Court to fit the second part of this bifurcated trial into its trial calendar, unless the Legislative Branch provides the needed resources. Counsel should feel free to advise the Senators that the result of not providing the necessary resources to the judiciary has real consequences for real people.

UNITED STATES DISTRICT JUDGE