| | |
|---|---|
| 1 | |
| 2 | |
| ... | |

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABAS ARREDONDO et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>DELANO FARMS CO., et al.,<br><br>   Defendants. | 1:09-cv-01247 MJS<br><br>**ORDER DENYING MOTION FOR LEAVE TO AMEND COMPLAINT (Doc. 373)** |

   On June 17, 2009, Plaintiffs commenced this class action against Defendants on behalf of themselves and those similarly situated. Plaintiffs made various allegations relating to Defendants failure to pay for time spent working before and after shifts, for failure to pay for work performed at home, and failure to reimburse for purchase of equipment. Over six years of extensive litigation have ensued and included significant discovery and discovery disputes, contested motions for class certification and class decertification, and a trial over whether certain Defendants were joint employers. On June 22, 2015, Plaintiffs moved for leave to file a First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 15(a) to add a claim for failure to pay piece-rate

workers for rest breaks.[1] (Mot. to Amend, ECF No. 373.) Defendants oppose the motion.

Having determined the matter suitable for decision without oral argument, the Court deemed the matter submitted on August 4, 2015. (ECF No. 391.) For the following reasons, the Court denies Plaintiff's motion to amend.

## I. BACKGROUND

As the parties are familiar with the procedural history of the matter, the Court will only provide a brief overview of the proceedings to place the present motion to amend in the proper context of the entire litigation.

The matter was initiated by Sabas Arrendondo, Jose Cuevas, Hilario Gomez, Irma Landeros and Rosalba Landeros (collectively, "Plaintiffs"), on July 17, 2009, and has been vigorously litigated by the parties ever since.

Plaintiffs are current and former agricultural workers employed by Defendants Cal-Pacific Farm Management, L.P. ("Cal-Pacific"), T&R Bangi's Agricultural Services, Inc. ("T&R Bangi") and Delano Farms Company ("Delano Farms"). Plaintiffs were non-exempt employees who worked in agricultural fields around Kern and Tulare Counties, conducting work in Defendants' table grape vineyards.

Plaintiffs originally complained that they, and similarly situated class members, were not compensated for all time worked, and they sought relief for injuries accrued during the four years preceding the filing of their complaint. They contend that they were not compensated for pre-shift work, post-shift work, work performed at home, time stopped from working during the day, and time spent traveling during the work day, and that they were not reimbursed for necessary tool purchases. Plaintiffs also alleged that such failures left them underpaid, including for overtime, and that Defendants were then liable for failing to provide accurate wage statements and for waiting time penalties based on the failure to provide correct wages.

From 2009 to 2011, the parties engaged in the class certification phase of the

---

[1] Piece-rate basis is "a method of payment based on units of production or a fraction thereof" as opposed to compensation based on an hourly rate. Industrial Welfare Commission Order 14-2001.

2

case. The parties conducted discovery relating to certification, and over 250,000 pages of documents were produced and nearly thirty depositions taken. In early 2011, Plaintiffs moved for class certification, and the parties provided extensive briefing plus hundreds of declarations of putative class members. On April 19, 2011, the Court certified four subclasses of claimants based on four different types of wage and hour violations. (ECF No. 85.) Notice of same was then mailed to roughly 24,000 potential class members' addresses later that year.

In fall 2011, the case moved into the joint-employer liability issue. Discovery was re-opened with respect to that topic, and additional depositions were conducted and written discovery propounded. In early 2012, Defendant Delano Farms moved for summary judgment with regard to whether Defendants were joint employers, and on April 12, 2012, the Court denied the motion. (ECF No. 165.) The joint employer issue was then bifurcated from other issues, and in January 2013, trial was held on the joint-employer issue alone. On February 2013, the Court ruled that Delano Farms was a joint employer of Plaintiffs. (ECF No. 259.)

Next, in March, 2013, Defendants filed motions for decertification supported by further declarations and evidence. On February 21, 2014, the Court granted the motion in part and decertified two of the four subclasses. Since that time the parties have engaged in further discovery and planning with regard to the merits of the remaining claims. The Court authorized merits discovery. (ECF No. 330.)

On June 30, 2015, the Court issued the operative scheduling order. (ECF No. 377.) That scheduling order requires the Plaintiffs to file a trial plan in November, 2015. After Defendants are provided an opportunity to respond, a hearing with regard to the trial plan is scheduled for March 11, 2016. The discovery deadline for merits based discovery is March 1, 2016.[2] (Id.)

---

[2] On October 5, 2015, Plaintiffs filed a motion modify the scheduling order and extend each of the above deadlines by roughly four months. (ECF No. 393.) A hearing on the motion is currently set for November 13, 2015.

A week prior to the filing of the scheduling order, Plaintiffs filed the instant motion to amend. (ECF No. 373.) Plaintiffs seek to amend the complaint to allege claims for failure to pay piece-rate workers compensation for time spent during rest breaks. (ECF No. 373.) These claims were not stated in the complaint filed in 2009.

Plaintiffs stated, and the Court originally certified, four subclasses of claims based on the failure to pay for pre-shift work, post-shift work, work performed washing grape trays at home, and un-reimbursed tool purchases. The Court later decertified the post-shift work and tray-washing subclasses. (See Orders, ECF Nos. 89, 310.) Accordingly, at the time of the filing of this motion to amend this matter had been proceeding since June 2009, and proceeding since February 2014 on the certified claims for pre-shift work[3] and un-reimbursed tool purchase claims. In the year and half since the order issued on the motion for decertification on February 20, 2014, the parties have spent significant efforts conducting discovery and devising methods to efficiently bring the remaining claims to trial. The parties had disagreed substantially on the procedure for and scope of discovery, and on August 19, 2014, the Court authorized them to proceed in the manner authorised by Federal and local rules but otherwise as they saw fit. (ECF No. 330.) Further, on October 10, 2014, the Court denied Plaintiffs' motion for a protective order and allowed Defendants to continue to conduct discovery as part of its proposed "pilot study" by deposing random samples of absent class members.[4] (ECF No. 342.)

On June 22, 2015, Plaintiffs filed the instant motion to amend the complaint. The motion seeks to add another wage and hour claim based on the alleged failure of Defendants to provide mandatory rest period time for piece-rate workers who worked shifts of more than three and a half hours a day. (See Am. Compl., ECF No. 373-1 at 5.)

---

[3] The Court additionally added subclasses based on the derivative wage statement and waiting time penalty claims relating to the failure to compensate for pre-shift work.

[4] The Court notes, that as of the filing of this motion, discovery has been continuing. With regard to discovery, Plaintiffs have filed a second motion for a protective order to discontinue the pilot study with respect to out-of-state deponents. (See ECF No. 378.) The matter is currently under submission and will be ruled upon in a separate order.

1     The claim is based on the holdings of the California Court of Appeal in <u>Bluford v.
2     Safeway Inc.</u>, 216 Cal. App. 4th 864, 872 (Cal. App. 2013).

3     Defendants filed oppositions to the motion to amend on July 24, 2015, and
4     Plaintiffs filed a reply on July 31, 2015. (ECF Nos. 380, 387, 389.) The matter was taken
5     under submission on August 4, 2015, and stands ready for adjudication.

6     **II.**     **<u>ISSUES PRESENTED</u>**

7     Plaintiffs contend in the motion to amend that leave should be granted under the
8     liberal standards set forth in Federal Rule of Civil Procedure 15(a), and further, that the
9     new piece-rate rest break claim should relate back to the filing date of the original
10    complaint under Rule 15(c). Defendants counter that amending the pleading would
11    necessarily impact the case schedule and a showing of good cause must be made to
12    modify the scheduling order under Rule 16(b)(4).

13    Accordingly, to determine which legal standard to apply, the Court must first
14    determine whether to review the motion as a motion to amend the pleadings or a motion
15    to amend the scheduling order.

16    **III.**     **<u>LEGAL STANDARD</u>**

17    Rule 15(a) of the Federal Rules of Civil Procedure provides that after a
18    responsive pleading has been served, a party may amend its complaint only with the
19    opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a). "The court
20    should freely give leave when justice so requires," and apply this policy with "extreme
21    liberality." <u>Id.</u>; <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987). The
22    Court considers five factors in assessing a motion for leave to amend: (1) bad faith, (2)
23    undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5)
24    whether the plaintiff has previously amended the complaint. <u>Johnson v. Buckley</u>, 356
25    F.3d 1067, 1077 (9th Cir. 2004); <u>see also</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S. Ct.
26    227, 9 L. Ed. 2d 222 (1962). The party opposing amendment bears the burden of
27    showing any of the factors above. <u>See</u> <u>DCD Programs</u>, 833 F.2d at 186.

28    However, when a party seeks to amend a pleading after the pretrial scheduling

order's deadline for amending the pleadings has expired, the moving party must satisfy the "good cause" standard of Federal Rule of Civil Procedure 16(b)(4), which provides that "[a] schedule may be modified only for good cause and with the judge's consent;" the liberal standard of Federal Rule of Civil Procedure 15(a) does not control. Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.), 715 F.3d 716, 737 (9th Cir. 2013); Johnson v. Mammoth Recreations, 975 F.2d 604, 607-608 (9th Cir. Cal. 1992).

"Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Id. at 737 (quoting Johnson, 975 F.2d at 609.). While a court may take into account any prejudice to the party opposing modification of the scheduling order, "the focus of the [Rule 16(b)] inquiry is upon the moving party's reasons for seeking modification . . . [i]f that party was not diligent, the inquiry should end." Id.

If a party moves to amend its complaint instead of moving to amend the scheduling order, the court may exercise discretion to deny the motion as untimely or construe the motion as one to amend the scheduling order. See Johnson, 975 F.2d at 608-09 ("[The] court may deny as untimely a motion filed after the scheduling order cut-off date where no request to modify the order has been made.") (citation omitted).

For the sake of judicial efficiency, and in light of the fact that Plaintiffs had notice and the opportunity to address amendment to the scheduling order in their reply (ECF No. 389), the Court construes Plaintiffs' motion as a motion to modify the scheduling order.

Accordingly, the Court must first determine whether there is good cause to modify the scheduling order. If Plaintiffs demonstrate good cause, the Court must then decide if leave to amend is appropriate under Federal Rule of Civil Procedure 15. Johnson, 975 F.2d at 608.

## IV. DISCUSSION

### A. Plaintiffs' Contentions

Plaintiffs present two main arguments why amendment of the scheduling order is proper: (1) that the dates set forth in the current scheduling order will not need to be altered and therefore modification of the scheduling order is not needed; and (2) that even if the Court considers the motion as necessarily modifying the scheduling order, Plaintiffs have established the requisite good cause as they were not able to ascertain the factual basis of the newly proposed claim until they received and reviewed discovery provided by Defendants in January and March 2015.

Plaintiffs contend that amendment of the pleadings will not interfere with the dates set forth by the Court's June 30, 2015 scheduling order since the current discovery cut-off is March 1, 2016, over four months away, and subject to extension by court order or stipulation. (ECF No. 377, p. 2.) Plaintiffs also assert that the new claim can be litigated on the record previously exchanged during discovery.

As to the issue of good cause, Plaintiffs provide a detailed explanation why they did not move to amend the pleadings to add the new claim sooner. They state that it was not until their January 2015 review of information from Defendants' expert, Dr. Joseph Krock, that they realized that Dr. Krock had greater access to source data than they did. (Decl. of Anna Walther, ECF No. 373-2 at ¶¶ 3-4.) Specifically, they state that on January 26, 2015, Defendants provided approximately 300,000 digital copies of documents not previously disclosed. Then, in March 2015, Defendants provided a spreadsheet of the index and a database containing extracted data from the daily crew sheets.[5] (Id. at ¶ 5.) The above information was provided in response to Plaintiffs' specific requests to review the information provided to Dr. Krock.

Plaintiffs assert that the index was required to link digital images of the foreman-prepared daily crew sheets to the resulting payroll information. The daily crew sheets,

---

[5] According to Plaintiffs, the daily crew sheets made up a substantial part of the roughly 550,000 digital documents produced.

while produced earlier, were not provided in chronological order, and Plaintiffs argue that without the index, it was difficult to determine compensation for the piece-rate workers. (Walther Decl. at ¶ 8.) Plaintiffs also contend that information in the spreadsheets was routinely missing. Specifically, as to the newly asserted claim for rest breaks for piece-rate workers, Plaintiffs point out that the index category "PW/Hours" which is thought to identify the number of hours worked by piece-rate workers was usually populated with a "0" or the rate of pay per piece, not the hours worked. (See Walters Reply Decl., ECF No. 389-1 at ¶ 10.) Based on the incomplete records, Plaintiffs contend that it is necessary to examine the actual daily crew sheet to determine what information should have been included on the index. As the crew sheets were not provided in chronological order and the records were so voluminous, compiling the records without the discovery provided this year was extremely difficult.

Based on Plaintiffs' review of the employment records as they now exist, they can reasonably extrapolate to determine the hours worked during a particular piece-rate shift and the piece-rate wage rate for particular shifts wherever the records are incomplete as to hours worked by piece-rate workers. (Reply at 7-8.) Plaintiffs contend that they acted promptly to present the instant motion to amend the complaint based upon the information accessible from the newly provided documents.

**B. Defendants' Responsive Contentions**

Defendants contend that Plaintiffs unduly delayed in filing the motion to amend. They argue that: (1) the motion to amend was brought nearly two years after issuance of the judicial decision Plaintiffs rely upon as a legal basis for the claim; (2) that the discovery produced in 2015 was not necessary to allege the claims, as evidenced by a proposed amended complaint prepared by Plaintiffs prior to receiving the discovery; and (3) that the 2015 production of records did not provide new information, but only a new format for previously produced information.

i. Plaintiffs' Knowledge of Amendment Bases

First, Defendants note that to the extent Plaintiffs argue that their new claims were

1    only made available in light of <u>Bluford v. Safeway Inc.</u>, 216 Cal. App. 4th 864, 872 (Cal.
2    App. 2013), Plaintiffs waited to move to amend until over two years after the <u>Bluford</u>
3    decision issued on May 8, 2013.  Defendants also argue that Plaintiffs knew of the basis
4    for the claim and were capable of preparing, and did in fact prepare, an amended
5    complaint based thereon well before they received the 2015 discovery.

6        Defendants were first placed on notice of the potential claim by statements made
7    by Plaintiffs in the March 17, 2014 scheduling report. (ECF No. 313 at 5.) There Plaintiffs
8    stated that they would seek leave of Court to amend the complaint and move to certify
9    the new claims "pursuant to standard motion procedures." (<u>Id.</u>) Plaintiffs did not file a
10   motion to amend at that time.

11       The Court ordered the parties to proceed to conduct discovery and develop trial
12   plans to advance the certified claims to trial.

13       Seven months later, in October 2014, Plaintiffs provided Defendants a copy of a
14   proposed amended complaint containing a new claim for failure to pay piece-rate
15   workers for rest break periods and a request that Defendants stipulate to its filing. (<u>See</u>
16   Bigelow Decl., ECF No. 381, Exs. A-B.) Defendants declined. (<u>Id.</u>) Plaintiffs then raised
17   the issue of filing an amended complaint with the Court in an informal telephonic
18   discovery dispute conference on October 31, 2014. (<u>See</u> ECF No. 346.) The Court
19   indicated that amendment of the complaint was not subject to the Court's rules regarding
20   discovery disputes, and that Plaintiffs did not need pre-authorization to file a motion to
21   amend. (<u>Id.</u>)  However, no such motion was then filed.

22       Rather, eight months later on June 12, 2015, Plaintiffs again noticed Defendants
23   and the Court of their intent to move to amend the complaint. (<u>See</u> Status Report, ECF
24   No. 372 at 15-16.) Shortly thereafter, Plaintiffs filed the instant motion to amend. (ECF
25   No. 373.)

26           ii.    Plaintiffs Possessed Sufficient Discovery to Amend Earlier

27       Defendants also dispute that Plaintiffs had insufficient discovery to allege the
28   piece-rate rest break claims before the present motion. Payroll data had been produced

1 on at least six occasions, and the 2015 productions either duplicated or supplemented prior productions or it consisted of work-product summarization of data previously produced. (See Opp'n at 7-8.) Defendants argue further that Plaintiffs ability to actually draft an amended complaint prior to receiving the additional discovery is proof positive that the additional information was not necessary to amend.

According to Defendants, payroll data from the relevant period had been produced six times or more beginning in July, 2010. (Id.) The handwritten daily crew sheets of over fifty workers were provided to the Plaintiffs in 2010, and Plaintiffs agreed that electronic records were sufficient for the rest of the class members at that time. (Opp'n at 9; see also, ECF No. 42 at 19-20.) Plaintiffs did not possess the DataTech software that was used to compile the payroll data, so Defendants exported the DataTech records into Microsoft Excel spreadsheets which were then produced. (Id.) However, later in 2010, Plaintiffs obtained the DataTech software and Defendants provided the records in the native DataTech format in September 2010. (Id.)

Defendants argue that the additional production provided in early 2015 was not relevant to or necessary to establish the piece-rate rest break claim, because Defendants had earlier provided copies of all electronic payroll data except a small set of data relating to work performed by foremen. (O'ppn at 10.) Plaintiffs do not contend that the failure to have the latter data prevented them from seeking amendment to allege the piece-rate rest break claim. (Id.)

Defendants did review and manually enter the information from crew sheets and payroll reports into a database in connection with their pilot study, but, because this database could not be filtered to isolate piece-rate work, it could not assist in asserting a piece-rate work claim. (Opp'n at 10, 11.) According to Defendants, the payroll data previously provided could have been filtered to isolate piece rate work. (Id.)

**C.  Analysis**

    i.    Is Modification of the Scheduling Order Required?

The first issue before the Court is whether the proposed amendment requires

10

1 modification of the Court's scheduling order.

2 The Court has issued several scheduling orders without specifically providing a deadline for amendments to the complaint. Plaintiffs argue that its proposed amendment will not necessitate modifying the present scheduling order because the parties will have sufficient time to conduct discovery into the new claim before the currently set March 1, 2016 discovery deadline. Defendants, however, respond that notwithstanding the lack of a specific deadline for amendment, amendment after certification would require a further motion for certification as to the newly added claims and therefore necessitate modification of the previous scheduling orders. Plaintiffs do not respond to this argument or suggest how the scheduling order could avoid modification to allow for a certification motion as to the newly added claim.[6]

Defendants have the better argument. While the Court has not specifically set a deadline for amendments to the pleadings, adding an additional claim will require modification of the scheduling order and a revisit to class certification as to the additional claim.

The parties were provided the opportunity to conduct discovery relating to certification prior to the January 2011 deadline for filing a motion for certification. Now, over four years later, Plaintiffs seek to amend the complaint to add a claim that would effectively force the Court to grant relief from the original January 2011 certification motion deadline. The need for such modification of the Court's prior scheduling orders to facilitate the proper litigation of the proposed new claim necessitates Plaintiffs showing good cause to modify the scheduling order. See e.g., Gonzales v. Comcast Corp., 2011 U.S. Dist. LEXIS 51469 (E.D. Cal. May 12, 2011) (construing motion for leave to amend as a motion to modify scheduling order because it necessarily required modification of the certification motion deadline.).

---

[6] Based on the language of the proposed amended complaint and statements of the parties, the Court assumes that Plaintiffs intend to present the new claim on behalf of class members, as opposed to presenting the claim as an individual claim on behalf of the named class members. Since the claim is presented on behalf of class members, it is without question that certification would be required.

ii. Good Cause and Diligence in Seeking Modification

For the sake of argument, the Court will assume that the piece-rate rest break claim could have only been asserted after the 2013 issuance of <u>Bluford v. Safeway Inc.</u>, on May 18, 2013. 216 Cal. App. 4th at 872. The <u>Bluford</u> decision describes the legal basis for separate compensation of rest breaks for piece-rate workers under California wage and hour laws. The <u>Bluford</u> decision was issued more than over two years after the class certification deadline passed, and, more importantly here, more than two years ago. Rather than move to amend the complaint and modify the scheduling order promptly, or even within a reasonable time, Plaintiffs waited until June 22, 2015, a delay of more than two years after <u>Bluford</u>, and four years after the deadline for certification.

Even recognizing that it may have been impractical to move to amend the complaint until after the Court adjudicated Defendants' motion for decertification on February 21, 2014 (ECF No. 310), Plaintiffs still delayed sixteen months before moving to assert the new claims.

When Plaintiffs first stated an intent to file an amended petition following the Court's ruling on decertification, Defendants gave clear notice of their intent to oppose such an amendment. (ECF No. 313 at 5-6.) In the joint scheduling report filed March 17, 2014, Defendants noted that allowing Plaintiffs to amend the complaint would cause large delays and require further motions. Specifically, Defendants stated:

> Plaintiffs acknowledge that their proposed amendment, if allowed, would require new certification-related discovery and another motion to certify. This will entail significant delay.
>
> First, Defendants obviously must see the claims, as pled, to determine the scope of certification discovery that is necessary; Defendants are not obliged to accept the Plaintiffs assertions as to what discovery is appropriate. Furthermore, it is unclear how merits-based discovery could proceed before all of the claims whose merits are the subject of discovery have been determined. Finally, even if a plan were formulated to allow two separate merits-discovery phases of the case (one for the current claims and then one later for any claims that might later be certified), it would be sure to create inefficiencies and undue expense. Defendants will address these issues and additional grounds for denying leave to amend in their response to Plaintiffs' motion, if filed. The discovery plan addressed herein below by Defendants assumes that the action proceeds as currently pled.

(Id.) These March 2014 statements made Plaintiffs well aware of Defendants concern that adding new claims would require additional discovery and motions and likely delay the litigation. Rather than responding by immediately moving to amend, Plaintiffs waited six months more before again inquiring as to whether Defendants might have unilaterally changed their minds and become willing to stipulate to the filing of an amended complaint. (Bigelow Decl., ECF No. 381, Exs. A-B.) Defendants remained unwilling to stipulate to amend, and referred Plaintiffs back to the reasons stated in the March 2014 scheduling report.

The record before the Court makes it clear Plaintiffs were aware of the claim and intended to present it in this action long before, too long before, this motion was finally filed. Bluford put Plaintiffs on notice of the potential claim two years before seeking amendment. After first indicating the intent to add the piece-rate rest break claim, Plaintiffs delayed another fifteen months before filing a formal motion to do so. Even after learning in 2014 that Defendants opposed amendment, Plaintiffs waited another six months to ask, without any apparent basis for optimism, whether Defendants had changed their minds. Even taking into account a reasonable time to attempt to seek a stipulation from Defendants, there are large and unaccounted for gaps when Plaintiffs could have so moved. After confirming Defendants would not stipulate to the filing of the amended pleading and being advised that they did not need the Court's formal authorization to proceed with a formal motion, Plaintiffs delayed another seven months before formally moving for leave to amend.

Plaintiff's actions do not evidence good cause for delay; they show a lack of diligence in moving forward. They show Plaintiff's inexplicably delayed filing the motion until such a time that, if now granted, would necessitate taking the parties and the Court back to square one in a case otherwise about ready for presentation of Plaintiffs' trial plan and approaching the end of discovery.

In the context of this litigation, an additional year and a half delay is meaningful. During that time the parties have set about to attempt to conduct merits discovery as to

1 the claims remaining certified. Even though the discovery deadline is not until March 1, 2016, Plaintiffs are currently scheduled to file their proposed trial plan within the next month, on November 24, 2015. (Sched. Order, ECF No. 377.) It is not realistic to think Plaintiffs will be able to present a cogent trial plan that would include time for certification discovery and briefing on an entirely new claim. Plaintiffs' lack of diligence would inevitably result in further delays if the amendment were now allowed. Additional delays in a matter that has been pending for over six years and has been fraught with difficulties arising from the unique nature of class members would be particularly troublesome. Further delay would only increase the tremendous difficulty experienced in locating class members and further impair witnesses' abilities to recall the six to ten year old events at issue in these claims.

        iii.    Whether Amendment was Possible Without Recent Discovery

Plaintiffs do not address why they did not move to amend earlier, especially after twice notifying the Court and Defendants of their intent to do so. Instead, Plaintiffs claim that amendment was not possible until after they obtained and analyzed the additional information produced by Defendants in 2015. The Court will address whether Plaintiffs could have amended prior to the production of further information, and whether delay in moving to amend to allow time for additional discovery and review of the new data would qualify as good cause for failing to amend earlier.

The records presented to the Court indicate that Plaintiffs had already drafted an amended petition setting forth the piece-rate rest break claim <u>before</u> obtaining the additional records in 2015. The proposed amended complaint Plaintiffs provided Defendants in October, 2014, set forth in the seventh cause of action the piece-rate rest break claim that is now present as claim five of the proposed FAC. (<u>See</u> FAC, ECF No. 373-1; Bigelow Decl., ECF No. 381, Exs. A-B.) While the language of the claims are not identical, they are substantially similar. Both claims state a cause of action for the failure to compensate for rest breaks for piece-rate workers. Both claims allege that Defendants failed to compensate piece-rate workers at an hourly rate during required ten minute rest

breaks for every four hours worked on shifts lasting over 3 1/2 hours. (Id.) While Plaintiffs further refined and modified the language of the claim before presenting it to the Court in this motion to amend, the draft complaint shows that Plaintiffs were capable, and had already drafted, an amended complaint to allege this cause of action prior to the additional exchange of information in 2015. There is no legitimate argument that the amended complaint, as drafted, had to await discovery and analysis of employment records in 2015. Thus, Plaintiffs attribution of the delay to the need for the 2015 information is unavailing. They give no other reason for waiting from October 2014 until June 2015 to move to amend.

Plaintiffs devote significant effort to describing in detail how the information provided in March 2015 assisted in amending the complaint to add the piece-rate rest break claims.[7] That the new information was helpful to Plaintiffs is not at issue. The relevant inquiry is whether, after they were aware of the new claim, Plaintiffs can establish good cause and show diligence in presenting the claim to the Court in a timely manner. Learjet, Inc., 715 F.3d at 737. Plaintiffs argue that "The fact that plaintiffs did not act to amend the complaint by way of a contested motion before being able to sufficiently analyze and understand the content of the productions by defendants does not show undue or unreasonable delay. Rather, given the manner discovery unfolded, this case is only now postured to permit adjudication of defendants' liability under the Bluford case." (O'ppn at 2.) Plaintiffs describe how the previously provided information was produced in a chaotic order, that the payroll information did not consistently record work performed by piece rate workers, that previously provided grower codes were inaccurate, and that the new production of information allows for the calculation of piece-

---

[7] They claim: "Plaintiffs were not provided reasonable access to information needed to bring a contested motion to amend. The Declaration of Anna K. Walther, filed and served concurrently herewith, makes plain that the crew sheet images needed to understand, verify and supplement the DataTech information were not produced in a manner that permitted efficient identification and indexing. Further, contrary to representations of defendants, use of the DataTech information alone was not sufficient to undertake the necessary analysis. It was only after the 2015 production by defendants of the index used in connection with the Pilot Study (the Crew Sheet Index) that the universe of documents could be marshaled for analysis." (Opp'n at 3.)

rate wage claims. (Id. at 5-7.) Plaintiffs make no attempt to explain why the evidence previously provided was insufficient to allow them to seek amendment to assert the claim.

Upon review, the Court finds that while the new information may help prove liability and/or damages, it was not essential to bringing the claim in the first place. Thus Plaintiffs go to great effort to explain how the records allow the newly asserted wage claims to be quantified, damages to be calculated, and "the universe of [payroll] documents [to] be marshalled for analysis." (Opp'n at 3.) They do not explain how such information was necessary to bring the claim in in a manner that would meet federal pleading standards. As noted, Bluford set forth the legal theory of the claim. Plaintiffs do not show how the lack of the 2015 documents left them unable to determine whether the alleged wage violations occurred. Plaintiffs fail to respond to Defendants claim that information to support the claim was available to Plaintiffs simply by talking to the named Plaintiffs. Even if not sufficient to prove the claim on a class-wide basis, such informal discovery should have been justified Plaintiffs timely motion to amend the complaint. Plaintiffs have posited nothing to suggest that the records produced in 2015 were the only available source of evidence of the potential claims. Further, by their own admission, the records were produced in relation to discovery as to already-certified claims. That discovery could have been done earlier.

All else aside, it is apparent that Plaintiffs were aware of the piece-rate claim and thought to assert it over a year and a half ago; they actually did so in a draft proposed amendment which, for some inexplicable reason, they then waited 18 months to move to file.

By delaying to move to amend, the ability of the Court to control the scheduling of discovery and motions, including potential certification of newly added claims, was frustrated. If modification were permitted, the Court would have to provide Defendants opportunity to research and conduct discovery into the new claims, necessitating even further delays. The case would in some ways return to square one.

16

Plaintiffs contend that the present case cannot be differentiated from <u>Gonzales v. Comcast Corp.</u>, a class action in this district. 2011 U.S. Dist. LEXIS 51469 (E.D. Cal. May 12, 2011). In <u>Gonzales</u> as here, there was no express deadline in the scheduling order for amendment, but the court treated the motion to amend as one to modify the scheduling order because amendment necessarily required modification of class discovery and certification motion deadlines. The <u>Gonzales</u> Court allowed the amendment. But there, plaintiffs had moved to amend <u>within three weeks</u> of discovering information giving rise to the new claims. <u>Id.</u> at *18-19. The Court concluded that such diligence on the part of plaintiffs showed a good faith basis to allow modification. <u>Id.</u> There was no such diligence here. Here Plaintiffs <u>delayed 18 months</u> after recognizing the need for the new claim to move to file it. Plaintiffs' actions are not analogous to those of the plaintiffs in <u>Gonzales</u>.

While Plaintiffs attribute the delay to the failure of Defendants to provide payroll information in a specific format until March 2015, the record is clear that Plaintiffs were capable of preparing an amendment – they in fact did prepare such an amendment - and moving to amend before then, but did not do so. Despite Plaintiffs claim that the present scheduling order would not need to be modified if the amended complaint were granted, the Court finds that past deadlines, including those for class certification which passed in 2011, would necessarily be implicated by allowing the amended claims.

In summary, the Court finds that Plaintiffs have not acted diligently to move to amend the complaint and do not show good cause for modifying the scheduling order under Federal Rule of Civil Procedure 16(b)(4). <u>In re W. States Wholesale Natural Gas Antitrust Litig.</u>, 715 F.3d 716 at 737. As Plaintiffs have not demonstrated good cause to modify the scheduling order, the Court need not determine whether leave to amend is appropriate under Federal Rule of Civil Procedure 15. <u>Johnson</u>, 975 F.2d at 608.

## V.  **<u>CONCLUSION & ORDER</u>**

In light of the foregoing, the Court construes the motion for leave to file an amended complaint as a motion to modify the scheduling order and for leave to file an

amended complaint. Plaintiffs have not established good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4). Accordingly, Plaintiff's motion for leave to file an amended complaint (ECF No. 373) is DENIED.

IT IS SO ORDERED.

Dated: October 20, 2015     /s/ *Michael J. Seng*
                            UNITED STATES MAGISTRATE JUDGE