UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABAS ARREDONDO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DELANO FARMS COMPANY, et al., <br><br> Defendants. | Case No. 1:09-cv-01247-MJS <br><br> ORDER REGARDING ENHANCEMENT AWARDS AND ATTORNEY'S FEES AND COSTS |

On February 15, 2017, this Court entered an order preliminarily approving the Joint Stipulation of Settlement of Class Actions ("Settlement Agreement") resolving the claims in this action ("Arredondo") and Paniagua v. Delano Farms Company, et al., Case No. 1:16-cv-00907-MJS, also pending before this Court ("Paniagua"). (ECF. No. 484; "Order of Certification and Preliminary Approval"). The Court's Order of Certification and Preliminary Approval also (1) certified the Settlement Class; (2) directed distribution of the Class Notice and of the certification of the Settlement Class; and (3) set the Fairness and Approval Hearing. The Court further ordered Plaintiffs to submit a motion for attorney's fees and costs and enhancement awards to the Representative Plaintiffs for consideration with their motion for final approval of the Settlement Agreement.

On August 4, 2017, Plaintiffs' counsel filed a motion for attorney's fees and costs. (ECF No. 501, as amended and supplemented by ECF Nos. 502, 521, 523-29.) On August 29, 2017, Plaintiffs filed their motion seeking final approval of the Settlement Agreement, wherein they requested enhancement awards to the Representative Plaintiffs. (ECF No. 505.) Defendants responded to the motions on September 8, 2017. (ECF No. 513.) Plaintiffs replied on September 15, 2017. (ECF No. 520.)

The Court held the Fairness and Approval Hearing on September 22, 2017. (ECF No. 530.) Mario Martinez and Anna Walther appeared on behalf of Plaintiffs. Leonard Comden and Kelton Lee Gibson appeared on behalf of former class counsel. Named Plaintiffs Sabas Arredondo, Hilario Gomez, Irma Landeros, and Rosalba Landeros also were present. William Hahesy, Sarah Bigelow, and David Bruce appeared on behalf of Defendant Delano Farms Company. D. Greg Durbin and Laura Wolfe appeared on behalf of the remaining Defendants.

The matter is submitted and stands ready for adjudication. The Court herein sets forth its findings and conclusions with respect to the requested enhancement awards, attorney's fees, and costs. These findings and conclusions will be expressly incorporated in the Court's final order and judgment.

**I.  Overview of Settlement Fund**

The Settlement Agreement requires Defendants to pay a total of $6,000,000.00 into a Qualified Settlement Fund ("QSF"). The following amounts are expected to be deducted or set aside from the QSF prior to any payments on class members' claims:

Attorney's Fees: $1,500,000

Attorney's Costs: $$476,289.17

Enhancement Payments: $37,000

Taxes: $300,000 (estimated)

Administration: $185,000 (estimated)

The remaining net settlement fund is estimated to be $3,501,710.83. This amount will be distributed to the approximately 5,656 class members who have submitted claims forms. Accordingly, the average recovery for each class member is approximately $619.11.

To the extent taxes and administration costs are lower than estimated, the difference will be distributed to class members in a supplemental payment.

## II. Enhancement Awards to Named Class Representatives

### A. Applicable Law

"Incentive awards are fairly typical in class action cases." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958 (9th Cir. 2009) (citations omitted). However, the decision to approve an incentive award is a matter within the court's discretion. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000). Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez, 563 F.3d at 958-59. The Ninth Circuit has emphasized that district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives. Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his or] her award and those of the unnamed plaintiffs." Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D. Cal. 2008).

In the Ninth Circuit, $5,000 is considered presumptively reasonable for an incentive award. Deatrick v. Securitas Sec. Servs. USA, Inc., 2016 WL 5394016, at *8 (N.D. Cal. Sept. 27, 2016). See also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015); In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 463; Harris v.

Vector Marketing Corp., No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." (citations omitted)). While larger incentive payments are sometimes awarded, they generally occur in cases with substantially greater settlement funds. E.g., Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (awarding incentive award of $50,000 out of $76 million settlement fund to sole class representative who represented class through trial); Glass v. UBS Fin. Servs., Inc., No. C-06-4068 MMC, 2007 WL 221862, at * 17 (awarding incentive awards of $25,000 each, for a total of $100,000, out of $45 million settlement fund).

### B. Plaintiffs' Request

The issue of enhancement awards has been a matter of some dispute and discussion in this matter. Four of the representative plaintiffs initially refused to sign the settlement agreement. Mr. Arredondo, Ms. Irma Landeros, Ms. Rosalba Landeros, and Mr. Gomez sought enhancement awards of $50,000 each. (ECF No. 469.) After some discussion between counsel and client and discussions in open court, the involved parties agreed to proceed with the proposed settlement while, apparently, reserving the right to seek additional enhancements later. (ECF Nos. 476, 478, 484.) They have done so here.

The Court preliminarily approved $37,000 in enhancement awards as set out in the settlement agreement[1]: $7,000 each for each of the five Arredondo plaintiffs and $2,000 for Mr. Paniagua. (ECF No. 484.) In the motion for final approval, class counsel seeks to increase the enhancement award to $77,000: $15,000 each for the five Arredondo plaintiffs and $2,000 for Mr. Paniagua.

In declarations submitted with the motion for final approval, the five Arredondo plaintiffs seek enhancement awards of $25,000 each which, when added to Mr.

---

[1] And later corrected by notice of errata. (See ECF No. 484 at 4 n.1.)

4

Paniagua's $2,000 request, would yield a total award of $127,000. (ECF Nos. 505-5, 505-6, and 505-8 through 505-10.) Mr. Arredondo estimates that he spent 352 hours on the case and missed work because of his efforts on behalf of the class. He states he has been criticized by coworkers and supervisors, blacklisted from other agricultural work, and accused of being greedy and trying to benefit himself at others' expense. He states also that he has seen his family ridiculed. In quite similar declarations, Ms. I. Landeros, Ms. R. Landeros, Mr. Gomez, and Mr. Cuevas claim to have spent 309, 319, 335.5, and 257 hours, respectively, on the case, and faced the same criticisms. Mr. Paniagua claims to have spent 60 hours. He does not seek an enhancement award above the $2,000 preliminarily approved. (ECF No. 513 at 3-7.)

Defendants object to any increase. They argue that the increased enhancement, if granted, would represent too large a share of the settlement fund and would produce a grossly disproportionate recovery for the representatives as compared to class members. They argue that the hours allegedly spent and the requested rate of compensation appears inflated. They opine that such increased requests may require re-notification to the class. Finally, and most significantly, they argue that the requests are outside the scope of what has been found to be reasonable in other cases and are unlikely to withstand scrutiny.

**C.  Analysis**

The Court begins its analysis by recognizing the significant contributions of the representative plaintiffs in this action, and particularly the <u>Arredondo</u> plaintiffs. This matter has been vigorously litigated for more than eight years and, during that time, the <u>Arredondo</u> plaintiffs have worked closely with counsel despite concerns of retaliation[2] and public scrutiny. They have devoted hours of their time to the litigation, including hours they otherwise may have spent gainfully employed. The Court, as previously

---

[2] No one suggests that any of the plaintiffs were threatened with or suffered actual retaliation by any of the defendants, and the Court has no reason to believe any such retaliation occurred. Nonetheless, concerns over retaliation would not be unusual in this type of case.

indicated, is sympathetic to their claims. That is why it preliminarily approved more than the $5,000 amount deemed "presumptively reasonable" in the 9th Circuit.

However, as also previously indicated and discussed with the representatives in open Court, the Court believes it cannot in good faith increase the amount awarded. An enhancement award of $77,000 would constitute 2.2% of the net settlement fund. An award of $127,000 would constitute 3.6% of the net settlement fund. These awards would result in a recovery for the representative plaintiffs that is 24 to 40 times greater than that of the average class member. The requested amounts are simply out of proportion with the size of the common fund and the recovery of the class as a whole. See 2 Joseph McLaughlin, McLaughlin on Class Actions: Law and Practice § 6:28 (13th ed. 2016) ("Regardless of the dollar amount, a proposed incentive award that is at or near one percent of the common fund payable to the class will receive intense scrutiny and require exceptional justification." (citing Ontiveros v. Zamora, No. 2:08–567 WBS DAD, 2014 WL 3057506, at *9 (E.D. Cal. July 7, 2014)).

It is recognition of the Arredondo representatives' extra efforts that the proposed $37,000 award will come up to that one percent cautionary level mentioned in Ontiveros. It will provide the Arredondo Plaintiffs with more than ten times that which the average class member will receive. It will compensate each of the five Arredondo plaintiffs at a rate of between $20 and $27 per hour for each hour they spent on behalf of the class; that is no windfall by any means, but it is reasonable compensation and not out of proportion with the hourly rate approved for attorney time. (As discussed below, if the $1.500,000 attorney's fee award is divided by the total number of attorney hours claimed (and not including paralegal time), the average hourly rate for counsel would be approximately $100 per hour.) Furthermore, doubling the amount the five would take from the settlement fund as requested would only exacerbate, not lesson, the likelihood of their being ostracized by co-workers and employers.

Accordingly, the Court will award $7,000 in enhancement payments to each of the Arredondo plaintiffs and $2,000 to Mr. Paniagua, for a total award of $37,000, as preliminarily approved.

**III.    Attorney's Fees**

Class counsel requests an award of $1,500,000 in attorney's fees. (ECF No. 501.) They also request that any unclaimed funds and any refunded taxes on those funds be distributed to counsel as fees, so long as such distribution, when combined with the $1,500,000 fee award, does not exceed 33% of the settlement fund. Counsel estimates that such unclaimed funds and associated taxes will not exceed $50,000. The Court will first address the $1,500,000 request alone.

**A.    Applicable Law**

Attorney's fees "authorized by law or by the parties' agreement" may be awarded pursuant to Rule 23(h). However, the court "ha[s] an independent obligation to ensure that the award [of attorney's fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig. ("Bluetooth"), 654 F.3d 935, 941 (9th Cir. 2011); see also Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1328 (9th Cir. 1999) ("[T]he district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.").

Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). In such cases, the district court must assume a fiduciary role for the class members in evaluating the request for attorney's fees. Id.; Rodriguez, 563 F.3d at 968 ("[W]hen fees are to come out of the settlement fund, the district court has a fiduciary role for the class").

The Ninth Circuit has approved two methods of evaluating requests for attorney's fees in cases where the attorney's fee award is taken from the common fund: the

7

"percentage of the fund" method and the "lodestar" method. <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion to choose either method. <u>Id.</u> Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." <u>Fischel v. Equitable Life Assurance Soc'y of the U.S.</u>, 307 F.3d 997, 1007 (9th Cir. 2002).

Because this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court first will evaluate attorney's fees using the percentage of fund method, but will cross-check the reasonableness of that award by applying a lodestar analysis. <u>See</u> <u>Bluetooth</u> 654 F.3d at 944, <u>Vizcaino</u>, 290 F.3d at 1047.

### B.  Percentage of Fund

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. The percentage method is particularly appropriate in common fund cases because "the benefit to the class is easily quantified." <u>Bluetooth</u>, 654 F.3d at 942. In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for a reasonable attorney's fee award. <u>Id.</u> (quoting <u>Six (6) Mexican Workers v. Ariz. Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990)). However, courts may adjust this figure upwards or downwards if the record shows "'special circumstances' justifying a departure." <u>Id.</u>

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." <u>In re Online DVD-Rental Antitrust Litigation</u>, 779 F.3d at 954-55 (internal quotation marks omitted).

Here, the requested award of $1,500,000 is 25 percent of the common fund and therefore presumptively reasonable. The results obtained and amount of work counsel performed on this case support the benchmark award. See Hensley v. Eckerhart, 461 U.S. 424, 436 (1983) (noting that the "most critical factor" to the reasonableness of an attorney fee award is "the degree of success obtained"). There was never any certainty of recovery in this case; it, like most contingency fee cases, presented risk and, further, seems to have required devotion of an unusual commitment of attorney time and resources in hopes that the risk would be justified. Class counsel was genuinely and effectively focused on seeing that the action did the maximum good for the maximum deserving claimants and has received an excellent result for the class despite numerous challenges. The settlement will result in recovery that individual class members most certainly would not have obtained on their own. There is every indication that counsel who negotiated this settlement did so with the objective of benefiting their clients, the class, first.

There is ample support for an award of 25% of the common fund.

**C.    Lodestar**

There is a strong presumption that the lodestar is a reasonable fee. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008). The Court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. See Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

To determine a reasonable hourly rate, the Court must examine "the prevailing market rates in the community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation." Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1166 (N.D. Cal. 2012) (internal quotation marks and citation omitted); see also Camacho, 523 F.3d at 979. The "relevant community" for the purposes of determining the reasonable hourly rate is the district in which the lawsuit proceeds. Barjon v. Dalton,

132 F.3d 496, 500 (9th Cir. 1997). Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ." See Jadwin v. Cnty. of Kern, 767 F. Supp. 2d 1069, 1129 (E.D. Cal. 2011).

In the Sacramento Division of the Eastern District of California, the Court recently calculated the lodestar in a wage and hour class action using $400 as the hourly rate for more seasoned attorneys and $175 as the rate for associate attorneys. Ontiveros v. Zamora, 303 F.R.D. 356, 373 (E.D. Cal. 2014). "[H]ourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." Silvester v. Harris, No. 1:11-CV-2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17, 2014). For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." Id. (citations omitted).

Current class counsel submits time records showing 11,730 hours of work (inclusive of paralegal time) and $4,434,941.00 in fees.[3] The law firms of Martinez, Aguilasocho & Lynch and Marcos Camacho[4] billed 8,791.5 hours of attorney time at rates between $250 and $500 per hour. They also billed 2,077.87 hours of paralegal time at a rate of $150 per hour. Wilcoxen Callaham estimates 275 hours of attorney time at a rate of $500 per hour, although no billing is submitted. Ball & York submits billing for 590.03 hours of apparent attorney time at a rate of $350 per hour, and 4.25 hours of apparent paralegal time at $150 per hour.

The hourly rates charged are substantially in excess of those charged by competent attorneys in the Fresno Division. Nonetheless, the Court can envision no reduction in hours, downward adjustment of rates, or other modification which would

---

[3] They seek only about 34% of the $4.4 million they claimed to have accrued in fees in this action.
[4] The Marcos Camacho firm is no longer counsel in this action and has not made a separate claim for attorney's fees. It is unclear whether the Martinez firm may claim fees on behalf of Marcos Camacho. The allocation of any such fees is reserved and will be decided after final approval of the settlement.

result in a lodestar less than the requested $1,500,000 in fees. Assuming the documented 9,381.53 hours of attorney time claimed by the Martinez and Ball & York firms were reasonably expended, the $1,500,000 award would result in an average hourly rate for them of only $160 per hour, before taking into account paralegal time or estimated hours by Mr. Callaham. This is lower than competent attorneys in this Division charge for standard hourly work and certainly provides no extra compensation for the risk involved in a contingency fee case such as this. Additionally, former class counsel has submitted a notice of claim for attorney's fees in relation to the fee allocation dispute. (ECF Nos. 493-95, 499, 506.) Without resolving the competing claims or commenting on their propriety, adding all attorney hours and dividing them into the $1.5M would result in an average hourly rate of approximately $100.

The requested fees are well within the range of any reasonable lodestar calculation. They will be awarded in full.

### D. Unclaimed Funds and Related Taxes

As stated, Class Counsel requests that any unclaimed funds and any refunded taxes on those funds be distributed to counsel as attorney's fees, so long as such distribution, when combined with the $1,500,000 fee award, does not exceed 33% of the settlement fund. In essence, counsel asks the Court to award up to $480,000 in additional attorney's fees, even though they estimate the unclaimed funds and associated taxes to amount to less than $50,000.

Based on the analysis in the preceding section, the Court finds that an award of up to and even exceeding $50,000 in additional attorney's fees would certainly be reasonable. Such an increase would be negligible under the percentage of fund method and fully supported by any reasonable lodestar calculation. The Court, however, is not prepared at this juncture to approve in advance payment over to counsel of amounts in excess of $50,000 without knowing how much in excess they may be. Thus, any amount of unclaimed funds and taxes in excess of $50,000 shall be held in the Qualified

Settlement Fund for distribution by order of the Court on motion made once the amount thereof is finally determined.

### E. Fee Allocation Dispute

As noted, former class counsel has also submitted claims for attorney's fees. (ECF Nos. 493-95, 499, 506.) They do not seek fees in addition to the $1,500,000 awarded herein, but rather a share of that award. (See ECF Nos. 508, 509.) Numerous filings have been submitted by current and former class counsel, reflecting various and generally competing positions as to how fees should be allocated and awarded. (See ECF Nos. 493-495, 497-499, 501-503, 506, and 515).

On August 23, 2017, the Court directed the parties to brief the issue of whether it could proceed to address the motion for final approval of settlement before determining how fees are to be distributed among counsel. (ECF No. 504.) All agreed, and the Court has concluded, that it may so proceed. The Court has entered a separate order providing for the parties to propose procedures for resolution of class counsel's various fee claims after final approval of the settlement. (ECF No. 517.) The final approval order will expressly retain continuing jurisdiction over these claims. Thus, they are not addressed further herein.

## IV. Costs

Plaintiffs request the reimbursement of costs incurred by five law firms that represented Plaintiffs during the lengthy course of this action. Each firm's request is addressed in turn.

### A. Applicable Law

"[I]t is the duty of this Court to ensure that any costs awarded from the common fund are reasonable." Ridgeway v. Wal-Mart Stores Inc., No. 08-CV-05221-SI, 2017 WL 4071293, at *17 (N.D. Cal. Sept. 14, 2017). "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." Ontiveros, 303 F.R.D. at 375 (citations

omitted). "[L]itigation related costs are reimbursable as long as they are necessary expenses incurred in furnishing effective representation." In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1372 (N.D. Cal. 1996). "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (citing Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994)). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012). On the other hand, courts should not award reimbursement for duplicative or unreasonable costs, such as "first class airplane tickets, luxury hotel accommodations, and gourmet dinner meetings" at the expense of a common fund recovery. In re Media Vision, 913 F.Supp. at 1372.

**B.     Preliminary Issues**

On September 15, 2017, after having preliminarily reviewed the request for reimbursement of costs, the Court ordered counsel to supplement their requests by identifying, by date, description, and amount sought, all costs associated with the failed, apparently falsified, survey conducted by California Survey Research Services, including costs of the survey, depositions, expert services, travel expenses, copying and messenger services, or any other costs associated therewith or occasioned thereby. For each such expense, counsel was ordered to indicate when the expense was incurred in relation to which stage of the survey. Counsel also was ordered to provide a declaration stating whether any reimbursements were sought or received in relation to this survey. (ECF No. 522.)

Each firm responded to this request on September 19, 2017. (ECF Nos. 524-29.) Martinez, Aguilasoch & Lynch identified $4,640.28 in costs relating to the failed survey.

13

(ECF No. 527.) Wilcoxen Callaham, LLP, identified $33,400 in such costs. (ECF No. 528.) Ball & Yorke identified $57,131.40 in such costs, although $21,888.00 was incurred in relation to analysis of Defendants' Pilot Study, prior to the survey. (ECF No. 529.) Wasserman, Comden & Casselman, LLP, identified no such costs and they apparently were no longer counsel for the class at the time of the failed survey. (See ECF No. 524.) Myers, Widders, Gibson, Jones & Feingold, LLP, identified $8,848.24 paid to Philips Fractor, but counsel believes these sums were unrelated to the failed survey. (ECF No. 525.) Thus, in total, counsel incurred over $73,000 in costs in relation to the survey.

Allen R. Ball, current class counsel, has provided a declaration stating that, on March 30, 2017, he filed suit in Los Angeles County Superior Court in relation to the failed survey. Jose Cuevas, et al., v. Phillips Fractor & Company, LLC; CSRS, and Bakersfield Market Research. The suit seeks damages in the amount expended on behalf of the class for the survey and, potentially, for diminished value of the recovery in this case because of the absence of such a survey. Counsel has represented that the Superior Court action is brought on behalf of, and any recovery is to benefit, the very same class members as those in the instant action. Any sums produced via settlement or judgement in that Superior Court suit, less reasonable attorney fees and costs, will go to class members in the instant action, not to the attorneys here. (ECF No. 529.)

It appears to the Court that sums paid for the failed survey were paid in good faith and for the benefit of the class. Given the reassurance of counsel about payment to the class of amounts recovered in the Superior Court action, no double recovery will accrue to counsel if the costs are awarded as requested. Accordingly, the Court finds that the costs of the failed survey are recoverable by counsel here.

**C.     Martinez, Aguilasocho & Lynch, APLC**

The Martinez firm requests reimbursement of $21,977.40 in costs incurred in relation to this action.[5] The cost billing submitted by the Martinez firm is exemplary in its level of detail. There can be no real question that the requested costs were reasonably and necessarily incurred in advancing the interest of the class. Furthermore, the requested costs are far from luxurious. In re Media Vision Tech. Sec. Litig., 913 F. Supp. 1362, 1372 (N.D. Cal. 1996) (counsel should not be reimbursed for "first class airplane tickets, luxury hotel accommodations, and gourmet dinner meetings" at the expense of a common fund recovery). The modest charges for travel, per diem, and meals reflect that counsel acted with the best interests of the class in mind.

The requested amount of $21,977.40 will be granted in full.

**D. Wilcoxen Callaham, LLP**

The Wilcoxen firm requests reimbursement of $96,223.87 in costs incurred in relation to this action. Nearly half of these costs are attributable to various expert expenses. The remaining costs are primarily attributable to deposition transcripts (over $14,000), mediation fees (over $14,000), and minimal travel expenses ($3,283.97).

In its September 15, 2017 order, the Court invited counsel to provide further support for $10,573.38 in unspecified costs from Jay-Allen Eisen Law Group. (ECF No. 522.) Counsel since has explained that these costs were incurred

> for consultation, legal research and analysis provided by Mr. Eisen prior to and during the trial conducted in January 2013 before the Honorable William B. Shubb in Sacramento. Mr. Eisen has 48 years' experience practicing law in California and specializes in Appellate Law. He has been counsel in more than 400 appeals and appellate writs throughout the California State and Federal Courts.

(ECF No. 528 at 2-3.)

---

[5] The firm originally requested $21,987.12, but reduced this request after realizing that its billing included a $9.72 duplicate charge for a rotisserie chicken purchased for a meeting with experts. (ECF No. 527 at 2-3.)

In light of this explanation, the costs attributable to Jay-Allen Eisen Law Group are reasonable, as are the remainder of the requested costs. The requested amount of $96,223.87 will be granted in full.

**E.     Law Office of Ball & Yorke**

The Law Office of Ball & Yorke requests reimbursement of $96,055.48 in costs incurred in this action. (ECF No. 501-1 at 60-62, 531.)

The costs requested are reasonable. Nearly $16,000 is attributable to deposition transcripts. Based on the invoice numbers provided with counsel's supplemental declaration (ECF No. 529), it appears the cost of transcripts was split with co-counsel. Substantial additional expenses – over $77,000 are attributable to the services of various experts, consultants, and surveyors (including the aforementioned failed survey). The remaining costs are primarily attributable to minimal travel expenses.

The Court finds the amounts requested are reasonable and the request for $96,055.48 in costs will be granted in full.

**F.     Myers, Widders, Gibson, Jones & Feingold, LLP**

Myers Widders requests $122,808.09 in costs.[6]

The Court invited the firm to provide further support for nearly $75,000 in unspecified professional services from Morrison & Foerster LLP. Kelton Lee Gibson of Myers Widders explains, through his declaration, that these costs were incurred for expert witness services provided by Lloyd W. Aubry, Jr., for purposes of establishing that Defendant Delano Farms jointly employed the class along with the farm labor contractor defendants. Mr. Aubrey billed for 106.5 hours at a rate between $675 and $705 per hour. He also billed approximately $419.78 in costs associated with his services. Having reviewed the declaration and associated billing, the Court has determined that, while retention of such an expert was reasonable, the costs expended here were excessive.

---

[6] Class counsel originally sought $122,610.34 on behalf of Myers Widders. (ECF Nos. 501 at 26; 501-1 at 58.) However, this amount apparently was in error, as Myers Widders later increased their request to $122,808.09. (ECF No. 525 at 11.)

16

Some might suggest that the expert fee was adequate to cover the entire cost of litigating the issue the expert addressed. Given its size, one might ask why both the expert and the Plaintiff's attorneys were necessary. Or, perhaps the expert's billing should have been challenged and reduced. Regardless of the answers to the foregoing queries, as noted above, other courts have determined that a reasonable rate for a seasoned attorney in the Sacramento Division (where Mr. Aubry ultimately testified) is $400 per hour. Ontiveros, 303 F.R.D. at 373. The reasonable rate for cases brought in the Fresno Division is somewhat lower. Silvester, 2014 WL 7239371, at *4. Even increasing the allowable rate to $500 per hour in light of Mr. Aubrey's apparently unique expertise would produce a fee of $53,250. That is the most the court can in good conscience approve. That amount plus $419.78 in costs, or a total of $53,669.78, is what the Court will approve.

The firm also was invited to provide further support for travel-related costs. Attorneys Gregory J. Ramirez and James E. Perero incurred travel costs in the amount of $15,044.05. The Court's review of the nature and extent of the individual costs leads it to conclude that, although actually incurred, some were incurred at a rate greater than necessary and with little regard for the needs of the firm's clients. For example, counsel enjoyed more than one sushi dinner in excess of $50[7], as well as dinner at One Market at a cost of nearly $100 per person. (ECF No. 525-1 at 28, 30-31.) Meanwhile, the Martinez firm rarely, if ever, incurred costs above $15 per person for meals for attorneys, witnesses, or class members during this same period. (ECF No. 523-1.) The Court can hardly justify reimbursing counsel from the common fund for dinner at One Market while the representative Plaintiffs are eating at Jack in the Box. (ECF No. 521-2 at 28.) For these reasons, and particularly in light of the nature of the claims and recovery in this action, the Court finds that a 10% reduction in the firm's requested travel costs is warranted. Only $13,539.65 of these costs will be awarded

---

[7] While leaving a $3 tip.

In sum, Myers Widders will be awarded costs in the reduced amount of $100,216.17.

### G. Wasserman, Comden & Casselman, LLP

Wasserman requests $171,299.47 in costs.

The travel costs billed by Wasserman reflect an even more profound resort to luxury than those incurred by Myers Widders. To illustrate by example, the Court refers to the $7,039.55 in expenses incurred by the firm in relation to attendance at the September 2011 mediation. The firm was invited to provide additional support for these costs. They did so. Review of those records demonstrates:

- Counsel incurred $3,600 in hotel charges for three attorneys for two nights, at an average rate of $600 per night.
- Ms. Harnett flew first class from Los Angeles to San Francisco at a cost of $950, not including an apparent duplicate charge of $593.40 for her return flight, for which no documentation could be located, but for which the firm nonetheless seeks compensation.[8]
- Counsel, co-counsel and their expert enjoyed dinner at The Waterfront at a rate of approximately $92 per person.

Again, contrast is telling: The representative Plaintiffs travelled to San Francisco to attend a mediation in 2016. There, they shared hotel rooms at an average rate of $147 per person per night. (ECF No. 523-1 at 23.) And, as stated, their meals rarely, if ever, exceeded $15 per person. In contrast to the $7,039.55 spent by Wasserman, the Martinez firm spent approximately $1,655 for a very similar trip.

---

[8] Counsel for Wasserman stated at the final approval hearing that medical issues required Ms. Harnett to fly first class. The Court would think that some lesser accommodation would have sufficed. The duplicate charge was not explained.
   It also appears that other duplicate charges may plague the billing. For example, on March 12, 2010, the firm incurred two identical charges of $276.82 from two different sources for meals for two attorneys, for a total of $553.64 in meals. As no further detail regarding these charges is provided, the Court is unable to evaluate their legitimacy.

These travel costs are far outside the scope of what is recoverable in this action. In re Media Vision, 913 F.Supp. at 1372 (noting that courts should not award reimbursement for unreasonable costs, such as "first class airplane tickets, luxury hotel accommodations, and gourmet dinner meetings" at the expense of a common fund recovery). By the Court's calculation, the firm expended $15,645.89 on travel and meals. As stated, $7,039.55 of that figure is attributable to a single mediation. When compared with the expenditures of the Martinez firm, it would appear that Wasserman could have reduced these costs by up to 76 percent. Moreover, even if the Court was willing to review the firm's travel expenses line by line, it could not do so. With the exception of the $7,039.55 in mediation expenses, the firm has not provided the type of detail that would allow the Court to assess the reasonableness of these expenses. Based on all of these factors, the Court concludes that a 50 percent reduction in all travel expenses is warranted. The firm may recover travel and meal costs in the amount of $7,822.95

Such excessive costs cast serious doubt on the reasonableness of the firm's cost billing. An additional area of concern is copying and printings costs which, by the Court's calculation, amount to $6,641.12 of the firm's request. Only minimal detail is provided regarding what was copied, and nothing about the number of pages or the rate per page. Although this case has involved substantial briefing, investigation, and discovery, the charges nonetheless appear high. Given the skepticism raised by excessive travel cost charges and the meager explanation given for copying costs, the court will reduce them by 25%. See In re Am. Apparel, Inc. S'holder Litig., No. CV 10-6352 MMM (JCGx), 2014 WL 10212865, at *29 (C.D. Cal. July 28, 2014) (reducing by 50% request for $9,099.90 in copying costs over four years). For copying and printing, $4980.84 will be awarded.

In sum, Wasserman will be awarded costs in the reduced amount of $161,816.25.

**H.     Total Cost Award**

The total cost award in this action shall be $476,289.17, to be awarded as follows:

19

| Martinez, Aguilasocho & Lynch | $21,977.40 |
| Ball & York | $96,055.48 |
| Wilcoxen Callaham | $96,223.87 |
| Myers Widders | $100,216.17 |
| Wasserman, Comden & Casselman | $161,816.25 |

## V. Conclusion

Based on the foregoing, the following deductions from the QSF will be incorporated into the final approval order:

Attorney's Fees: $1,500,000

Attorney's Costs: $$476,289.17

Enhancement Payments: $37,000

Taxes: $300,000 (estimated)

Administration: $185,000 (estimated)

IT IS SO ORDERED.

Dated:   September 29, 2017         /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE