1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11  SABAS ARREDONDO, JOSE             Case No.  1:09-cv-01247-MJS
    CUEVAS, HILARIO COMEZ, IRMA
12  LANDEROS, ROSALBA LANDEROS,       FINAL ORDER AND JUDGMENT
    AND ISIDRO PANIAGUA individually,
13  and on behalf of all others similarly
    situated,
14
                Plaintiffs,
15
         v.
16
    DELANO FARMS COMPANY, a
17  Washington State Corporation; CAL-
    PACIFIC FARM MANAGEMENT, L.P.;
18  T&R BANGI'S AGRICULTURAL
    SERVICES, INC.; KERN AG LABOR
19  MANAGEMENT, INC.; ELITE AG
    LABOR SERVICES, INC.; AND DOES
20  1 through 10, inclusive,

21              Defendants.

22

23

24

25       On February 15, 2017, this Court entered an order preliminarily approving the

26  Joint Stipulation of Settlement of Class Actions ("Settlement Agreement") resolving the

27  claims in this action ("Arredondo") and Isidro Paniagua v. Delano Farms Company; Cal-

28  Pacific Farm Management, L.P.; T&R Bangi's Agricultural Services, Inc.; & Kern Ag

<u>Lanor Management, Inc.</u>, Case No. 1:16-cv-00907-MJS, also pending before this Court ("<u>Paniagua</u>"). (ECF. No. 484; "Order of Certification and Preliminary Approval"). The Court's Order of Certification and Preliminary Approval also (1) certified the Settlement Class; (2) directed distribution of the Class Notice and of the certification of the Settlement Class; and (3) set the Fairness and Approval Hearing. The Court further ordered Plaintiffs to timely submit a motion for attorneys' fees and costs and enhancement awards to the Representative Plaintiffs ("Fee and Enhancement Award Motion") so that the Court could consider the Fee and Enhancement Award Motion at the Fairness and Approval Hearing simultaneously with Court's consideration of final approval of the Settlement Agreement.

On August 4, 2017, Plaintiffs filed a motion for attorney's fees and costs. (ECF No. 501, as amended and supplemented by ECF Nos. 502, 521, 523-29.) Plaintiffs requested enhancement awards to the Representative Plaintiffs in their Motion for Final Approval of the Settlement of Class Actions. (ECF No. 505.)

Former Class Counsel also filed notices of their claimed right to a share of the attorneys' fees awarded. (ECF No. 494, 499.) Current Class Counsel filed a motion to strike these claims. (ECF No. 503.) The Court has entered a separate order deferring resolution of these claims until after final approval. (ECF No. 517.)

On August 29, 2017, Plaintiffs filed their motion seeking final approval of the Settlement Agreement. (ECF No. 505; <u>see also</u> ECF Nos. 513, 521, 527.) The Court held the Fairness and Approval Hearing on September 22, 2017. (ECF No. 530.) Mario Martinez and Anna Walther appeared on behalf of Plaintiffs. Leonard Comden and Kelton Lee Gibson appeared on behalf of former class counsel. Named Plaintiffs Sabas Arredondo, Hilario Gomez, Irma Landeros, and Rosalba Landeros also were present. William Hahesy, Sarah Bigelow, and David Bruce appeared on behalf of Defendant Delano Farms Company. D. Greg Durbin and Laura Wolfe appeared on behalf of the remaining Defendants. The matter is submitted and stands ready for adjudication.

The Court has considered:

- The points and authorities, declarations, and exhibits submitted in support of the motion for final approval of the Settlement Agreement ("Final Approval Motion");

- The points and authorities, declarations, and exhibits submitted in support of or opposition to Plaintiffs' and former Class Counsel's respective claims for attorneys' fees and costs, including the briefing submitted by the parties and counsel in response to the Court's August 23, 2017 Minute Order (ECF No. 504);

- The Settlement Agreement, including the exhibits thereto;

- The record in the Arredondo and Paniagua Actions, including but not limited to the points and authorities, declarations, and exhibits submitted in support of preliminary approval of the Settlement Agreement, filed November 18, 2016 (ECF. Nos. 463, 463-1, 466, 480 & 481);

- The oral presentations of Class Counsel and Counsel for Defendants at the Fairness and Approval Hearing; and

- This Court's experiences and observations while presiding over the Arredondo and Paniagua Actions.

Based on these materials, without limitation, and subject to the full findings and conclusions set forth herein, the Court notes in particular that:

- Only a minuscule percentage (0.6%) of Settlement Class Members requested exclusion pursuant to their right to do so in response to the Class Notice, and the majority of these individuals (0.49%) also submitted settlement claims. After additional follow up, the Settlement Administrator concluded there were only 43 valid opt-outs. This represents 0.12% of the Settlement Class.

- Approximately 5,656 valid claim forms were received by the Settlement Administrator. This represents approximately 15.7% of the Settlement Class.

- The Class Notice provided to the Settlement Class Members provided adequate notice of the proposed Settlement Agreement, their Anticipate Settlement

Share, Certification of the Settlement Class, the Fairness and Approval Hearing, and the Settlement Class Members' rights with respect to the Settlement Agreement and their Anticipated Share.

- There were no objectors to the Settlement Agreement, out of 36,054 Settlement Class Members.

- No state attorney general or other state official has submitted any written objection or otherwise responded to the Settlement Agreement following timely notice as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

Based upon these considerations, the Court's findings and conclusions as set forth in the Order of Certification and Preliminary Approval and in this Final Order and Judgment, and good cause appearing, IT IS HEREBY ORDERED AS FOLLOWS:

**1.     Definitions**.  The capitalized terms used in this Final Order and Judgment shall have the meanings and/or definitions given to them in the Joint Stipulation of Settlement of Class Actions ("Settlement Agreement") (ECF No. 463-1, Exhibit 1), or if not defined therein, the meaning and/or definitions given to them in this Final Order and Judgment.

**2.     Incorporation of Documents**. This Final Order and Judgment incorporates and makes a part hereof:

a.     The Settlement Agreement (including the exhibits thereto);

b.     The Court's findings and conclusions contained in its Order of Certification and Preliminary Approval, filed February 15, 2017 (ECF. No. 484); and

c.     The Court's findings and conclusions contained in its Order Regarding Enhancement Awards and Attorney's Fees and Costs (ECF No. 533.)

**3.     Jurisdiction and Venue.** The Court has personal jurisdiction over the Parties and the Settlement Class Members. All Settlement Class Members, by failing to exclude themselves, have consented to the jurisdiction of this Court for purposes of the Arredondo and Paniagua actions and the settlement of these actions. The Court has

4

subject-matter jurisdiction over this action, including, without limitation, jurisdiction to approve the Settlement Agreement and to issue this Final Order and Judgment and order the relief set forth herein, to adjudicate the objections submitted to the proposed Settlement Agreement by Settlement Class Members (had there been any), and to dismiss the Arredondo and Paniagua Actions with prejudice. Subject-matter jurisdiction is predicated upon Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 & 1332(d). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Venue in this District is appropriate under 28 U.S.C. § 1391.

    **4.** **Definition of the Settlement Class**. The Settlement Class is defined as follows:

> [A]ny and all individuals who are or were employed as non-exempt agricultural employees of Cal-Pacific Farm Management, LP, T&R Bangi's Agricultural Services, Inc., Kern Ag Labor Management, Inc., La Vina Contracting, Inc., or Elite Ag Labor Services, Inc. and performed work at Delano Farms in California between July 17, 2005 and the date of entry of the Order of Certification and Preliminary Approval [February 15, 2017] who do not opt out, excluding those who worked only as irrigators, tractor drivers, or swampers or only in cold storage. This includes employees, without limitation, who previously opted out of the previously certified class in the Arredondo Action. For clarity, the phrase "performed work at Delano Farms in California" as used in this paragraph does not include work performed at premises other than Delano Farms, such as Blanc Vineyards and Red Cedar Vineyards in Paso Robles[.]

(Settlement Agreement ¶ 31.) The Court incorporates by reference its prior determination in its Order of Certification and Preliminary Approval that the Settlement Class meets the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3) and should be certified for settlement purposes only. All Settlement Class Members who have not timely and properly opted out are subject to this Final Order and Judgment.

    **5.** **Findings and Conclusions**. Based on its familiarity with the Arredondo and Paniagua Actions, the record, the procedural history, the parties and the work of

their counsel, the Court finds that the Settlement Agreement was not the product of collusion and is without any indicia of unfairness. The Court finds the Settlement Agreement is fair, reasonable, and adequate to the Settlement Class in light of the complexity, expense, and duration of the Arredondo and Paniagua Actions (including the risk of each of pre-trial, trial, and appellate proceedings), and the risks involved in establishing liability and damages and in maintaining these Actions as class actions through trial and appeal (including the risk of decertification). The Court finds that the Settlement Agreement represents a fair and complete resolution of all claims asserted on behalf of the Settlement Class and will fully and finally resolve all such claims. In support of these findings and conclusions, the Court further specifically finds:

a.      There is no evidence of collusion. The proposed settlement, as set forth in the Settlement Agreement, follows both extensive litigation and arm's-length negotiation. The Arredondo Action was vigorously litigated for seven years before the Settlement Agreement was reached. Subclasses had been certified and decertified following significant class discovery, joint employment had been tried, Plaintiffs had submitted a trial plan, and the Court was on the verge of determining whether a trial on liability and damages could proceed on that trial plan in light of the Court's ruling that no additional time would be provided for survey work and no additional survey would be allowed. Though the Paniagua Action is relatively nascent, the factual context of the Paniagua claims is well understood as a result of having litigated the Arredondo Action. While the claims in Paniagua and Arredondo are distinct, both involve wage-and-hour claims for agricultural field work under the employ of farm labor contractors at Delano Farms, and many members of the Arredondo class are also members of the putative Paniagua class. In fact, before initiating the Paniagua Action, Class Counsel sought leave to amend the Arredondo complaint to assert Paniagua claims on behalf of the Arredondo class (a request which was denied). Further, payroll records and written policies at issue in Paniagua were voluntarily provided to Plaintiffs prior to the most

recent mediation that resulted in the Settlement Agreement. The Court finds that the Parties have engaged in arm's-length negotiations, including seven full days in mediation before four different professional neutrals across various stages of the litigation. The Parties have also engaged in direct negotiations. The most recent mediation, with the well-respected mediator Antonio Piazza, also included negotiations over the Paniagua Action.

        b.    The Settlement Agreement was negotiated prior to the certification of a litigation class in Paniagua, and so the Court has reviewed the Settlement for any "subtle signs" of collusion. Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946-47 (9th Cir. 2011). Such signs include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing' arrangement for payment of attorney's fees separate and apart from class funds; and (3) an arrangement for funds not awarded to revert to defendant. Id. Here, Current Class Counsel has requested $1,500,000 in fees, which equals 25 percent of the $6 million settlement. (ECF No. 501). For the reasons stated in the Court's Order Regarding Enhancement Awards and Attorney's Fees and Costs (ECF No. 533), the fees awarded here are not disproportionate to the overall settlement. Nor is there an arrangement for funds not awarded to revert to Defendants. The Settlement does contain a "clear-sailing" provision in which Defendants conditionally agree not to oppose Class Counsel's application for an award of attorneys' fees, provided that the fees required do not exceed 33% of the Settlement Amount. However, the Ninth Circuit has distinguished between clear-sailing provisions in settlements where the attorneys' fees are to come out of the settlement fund versus being paid by defendants in addition to the settlement fund. Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 961 n.5 (9th Cir. 2009). The former scenario "does not signal the possibility of collusion because, by agreeing to a sum certain, [the defendants] were acting consistently with their own interests in minimizing liability." Id. Because the Settlement does not provide for the payment of attorneys' fees on top of the settlement

fund, the clear sailing provision is not indicative of collusion. The parties' agreement that approval of the Settlement does not hinge on approval of the attorney's fees requested also tends to indicate that there has been no collusion.

c. The Settlement Agreement provides for significant cash payments to Settlement Class Members who choose to submit Claim Forms. No portion of the $6,000,000 Settlement Amount will revert back to Defendants. The portion of the Settlement Amount to be allocated to attorney's fees and costs, settlement administration expenses, enhancement awards to the Representative Plaintiffs, and Taxes or other payments due as a result of making payments to the Settlement Class is reasonable. The resulting Net Settlement Fund to be distributed to Claiming Class Members provides a substantial benefit. The Court has considered the realistic range of outcomes in the Arredondo and Paniagua Actions, including the amount Settlement Class Members might receive if they prevailed at trial, the strength and weaknesses of the cases, the novelty and number of the complex legal issues involved, the risk that Settlement Class Members would receive less than the Settlement Amount or take nothing at trial or otherwise, and the risk of a reversal of any judgment. The value of the Settlement Agreement to Settlement Class Members is fair, reasonable, and adequate in view of these factors and is well within a range of reasonableness.

d. Before reaching the Settlement Agreement, Plaintiffs and Defendants vigorously litigated their claims and defenses in extensive proceedings before this Court in the Arredondo Action, including without limitation: (i) Plaintiffs' motion for class certification; (ii) Defendants' motion for summary judgment on joint employment and the subsequent bench trial on same; (iii) Defendants' motions to decertify and to require Plaintiffs to submit a trial plan; (iv) at least a dozen discovery motions filed by the Parties; (iv) numerous information discovery dispute conferences; (v) Plaintiffs' motion for leave to amend the complaint; and (vi) Plaintiffs' motions to modify the case schedule and related trial plans. Over the seven-year life of the

<u>Arredondo</u> litigation, the Court has held numerous hearings, status conferences, and a bench trial. Plaintiffs' deadline for filing a trial plan, expert disclosure and survey had passed, and the Court had set a briefing schedule to determine whether the case ought to proceed to trial based on Plaintiffs' operative plan.

e. Before reaching the Settlement Agreement, Plaintiffs and Defendants also conducted extensive discovery on class certification, joint-employer status, and trying liability and damages on a class-wide basis in the <u>Arredondo</u> Action. These discovery efforts included without limitation:

i. Plaintiffs propounded a total of 25 document requests and reviewed hundreds of thousands of pages of documents produced by Defendants in response and analyzed extensive electronic payroll databases produced by Defendants. Plaintiffs served dozens more document requests with their deposition notices. Plaintiffs also served 37 interrogatories. In turn, Plaintiffs spent substantial time and effort responding to Defendants' document requests, interrogatories, and requests for admissions. Over the course of the litigation the Parties issued more than 10 subpoenas requesting documents from non-parties and received thousands more pages of documents in response.

ii. Class Counsel retained and consulted with numerous experts to assist in the review and analysis of documents produced through discovery and to formulate expert opinions in support of class certification, damage models, liability issues, and a survey and trial plan.

iii. In addition to written discovery, Plaintiffs prepared for and conducted a total of 35 depositions of Defendants' agents and employees, experts, and third parties. Defendants have conducted a total of 125 depositions of class members, experts, and third parties.

f. During the course of the <u>Arredondo</u> and <u>Paniagua</u> Actions, Plaintiffs obtained discovery on subject matter beyond the specific allegations in the Amended

Arredondo Complaint. Plaintiffs' investigations, contentions, and allegations encompassed virtually all factual circumstances surrounding the wage-and-hour claims of the Settlement Class against Defendants.

g. Based upon this litigation of the legal issues relevant to the Arredondo and Paniagua Actions and the extensive investigation of the underlying facts in both formal and informal discovery, Plaintiffs and Defendants were fully informed of the legal and factual bases for the claims and defenses herein and capable of balancing the risks of continued litigation (both before this Court and on appeal) and the benefits of the proposed Settlement Agreement.

h. The Settlement Class is and was at all times adequately represented by the Representative Plaintiffs and Class Counsel, including in litigating the Arredondo and Paniagua Actions and in entering into and implementing the Settlement Agreement, as required to satisfy Federal Rules of Civil Procedure, Rule 23, and applicable law. Class Counsel submit that they have fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably available to the Settlement Class Members. Further, both Class Counsel and Defendants' counsel are highly experienced trial lawyers with experience in complex litigation. Class Counsel and Defendants' counsel are capable of properly assessing the risks, expenses, and duration of continued litigation, including at trial and on appeal. Class Counsel submit that the Settlement Agreement is fair, reasonable and adequate for the Settlement Class Members.

i. Defendants deny all allegations of wrongdoing and disclaim any liability with respect to any and all claims alleged by Plaintiffs and the Settlement Class, including the propriety of class certification. Defendants contend that the Arredondo and Paniagua Actions were at risk of being decertified, and if decertification were achieved, far less would be recovered than is afforded under the Settlement Agreement. Accordingly, Defendants agree that the proposed Settlement Agreement will provide

substantial benefits to Settlement Class Members. Defendants consider it desirable to resolve the <u>Arredondo</u> and <u>Paniagua</u> Actions to finally put Plaintiffs' and the Settlement Class's claims to rest and avoid, among other things, the risks of continued litigation, the expenditure of time and resources necessary to proceed through trial and any subsequent appeals, and interference with ongoing business operations.

j. The selection and retention of the Settlement Administrator was reasonable and appropriate.

k. As further addressed below and in this Court's earlier Order of Certification and Preliminary Approval, through the distribution of the Class Notice in the form and manner ordered by this Court, the Settlement Class has received the best practicable notice of the certification of the Settlement Class, the Settlement Agreement, their Anticipated Settlement Share, the Fairness and Approval Hearing, and Settlement Class Members' rights and options, including their rights to opt out, object to the Settlement, object to their Settlement Share, and/or appear at the Fairness and Approval Hearing, and of the binding effect of the orders and Judgment in the <u>Arredondo</u> and <u>Paniagua</u> Actions on all Settlement Class Members. Said Class Notice has fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure and the due process requirements of the United States Constitution and the California Constitution.

l. The response of the Settlement Class to the Settlement Agreement—including the definition of the Settlement Class, the scope of the Releases, the amount of the fee request by Current Class Counsel, and the requested enhancement awards—after full, fair, and effective notice thereof strongly favors final approval of the Settlement Agreement. Out of 36,054 Settlement Class members, 5,815 submitted valid and timely claims, only 222 submitted opt-out forms (with 179 of those who opted out also submitting settlement claims) and none objected to the Settlement Agreement.

m.     As set forth in the Settlement Agreement, Defendants have denied, and continue to deny, any wrongdoing or liability relating to the <u>Arredondo</u> and <u>Paniagua</u> Actions. Defendants have filed a statement of non-opposition to Plaintiffs' Final Approval Motion and separately requested final approval of the Settlement Agreement, dismissal of the <u>Arredondo</u> and <u>Paniagua</u> Actions with prejudice, and entry of the judgment in this action on the terms and conditions set forth in the Settlement Agreement.

**6.     Class Notice**.  Based upon the declarations of counsel and the Settlement Administrator, the Court finds and concludes that:

a.     The First Mailing of the Class Notice was made on May 19, 2017 and the Second Mailing on June 12, 2017. Both mailings were performed in the form and manner agreed to under the Settlement Agreement and approved by the Court in the Order of Certification and Preliminary Approval. Ultimately, 5,239 of the 35,797 Class Notice packets remained undeliverable.

b.     A toll-free information line began on May 8, 2017, and a website disseminating the Class Notice was established by the Settlement Administrator on May 18, 2017. The Settlement Administrator also placed 545 radio public-service announcements from June 19, 2017 until July 14, 2017, and placed three advertisements in English and Spanish language media and/or publications that serve the Delano, Bakersfield, and Visalia areas between May 19, 2017 and May 31, 2017. In addition, a community-outreach administrator selected by Class Counsel assisted with notifying Settlement Class Members of the Settlement Agreement, completing and submitting Claim Forms, answering questions about the Settlement Agreement, and updating addresses and contact information for Settlement Class Members. Although not required by the Order of Certification and Preliminary Approval, the Bangi Defendants also distributed flyers to current employees with their paychecks, advising them of the settlement and how to make a claim in text approved by Class Counsel.

12

c.      The Class Notice and the procedure for its dissemination was the best notice practicable of the certification of the Settlement Class, was reasonably calculated under the circumstances to apprise the Settlement Class Members of their rights, including their right to opt out of the Settlement Class, and satisfied the requirements of due process and all other applicable provisions of law.

d.      The Class Notice also provided fair and effective notice to the Settlement Class of the proposed Settlement Agreement and the terms thereof, including but not limited to those terms related to the determination of the Net Settlement Fund, Plan of Allocation, and Claim Form process; the claims and parties released; the binding effect of the Settlement Agreement (if approved) on all Settlement Class Members; the provisions for payment of Class Counsel attorneys' fees and costs, Representative Plaintiffs' enhancement awards, Settlement Administration costs, Taxes or other payments due in connection with payments to the Settlement Class, and Class Counsel's intention to petition the Court for approval of the same; the date, time, and place of the Fairness and Approval Hearing; the process for Settlement Class Members to file Claim Forms and/or challenge their Notice of Anticipated Settlement Shares; and Settlement Class Members' rights to object to the Settlement Agreement and to appear at the Fairness and Approval Hearing (on their own or through counsel of their own selection, at their own expense) in support of any timely and validly filed objection, all as set forth in the Class Notice.

e.      The above-described form and manner of giving notice, including the steps taken for creating and updating the Class Data List, researching alternate mailing data, mailing of supplemental notices, re-mailing returned notices, community outreach efforts, and receiving and responding to Settlement Class Member inquiries (including the support services provided by the Settlement Administrator, Class Counsel, and the community-outreach administrator), constitute the best notice practicable, and were reasonably calculated under the circumstances to apprise the Settlement Class of

their rights under the Settlement Agreement. The Court further finds that the Settlement Class was afforded a reasonable period of time to exercise any rights they may have had pursuant to the Settlement Agreement and the Class Notice.

f.      The Class Notice, in the form and manner approved by the Court, satisfies the requirements of due process, the United States Constitution and the California Constitution, the Federal Rules of Civil Procedure, and other applicable provisions of law.

**7.      Requests for Exclusion**.   A list of those persons who have timely and validly requested exclusion from the Settlement Class by submitting the Opt-Out Form pursuant to the terms of the Class Notice and Settlement Agreement has been filed with the Court. (ECF No. 527-2.) The persons on this list are excluded from the Settlement Class and are therefore not Settlement Class Members, shall not be bound by the Settlement Agreement or Final Order and Judgment in the Action, and shall not receive any portion of the Settlement Amount. All other Settlement Class Members, regardless of whether they received actual notice of certification or the Settlement Agreement through the mailing or publication of the Class Notice documents, are included in the Settlement Class and shall be bound by all proceedings, orders, and judgments in the Arredondo and Paniagua Actions, including but not limited to this Final Order and Judgment.

**8.      Notices Pursuant to 28 U.S.C. § 1715**.   Based on the requirements of the Settlement Agreement and the declarations submitted in support of final approval, the Court finds that all notices and requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, have been satisfied. The Settlement Agreement was filed on November 18, 2016 (ECF. No. 463-1).  In November 2016, Defendants served the notices required by 28 U.S.C. § 1715(b).  On June 22, 2017, Defendants served a supplement to their original notice as required by 28 U.S.C. § 1715(d).  Among other things, these notices informed the appropriate federal and state officials that the Court had preliminarily

approved the Settlement Agreement and of the date and time of the Fairness and Approval hearing. (ECF No. 505-12.) More than ninety (90) days have passed since the service of the foregoing notices. No written objections or responses to the Settlement Agreement were filed by any federal or state official, including any recipient of the foregoing notices. No federal or state official, including any recipient of the foregoing notices, appeared or requested to appear at the Fairness and Approval Hearing.

**9.** **Settlement Class Member Objections**.  Full and fair notice of Settlement Class Members' right to object to the Settlement Agreement and to appear at the Fairness and Approval Hearing in support of such an objection has been provided in the form and manner required by the Settlement Agreement, the Court's Order of Certification and Preliminary Approval, the requirements of due process, and other applicable law. No Settlement Class Member has submitted any objection to the Settlement Agreement.

**10.** **Final Settlement Approval and Binding Effect**.  The terms and provisions of the Settlement Agreement have been entered into in good faith, are fair, reasonable, and adequate as to and in the best interests of the Settlement Class Members, and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the California Constitution, and any other applicable law.   Therefore, the Settlement Agreement is approved. The Settlement Agreement (including its Releases), this Final Order and the Judgment shall be forever binding on the Plaintiffs and all other Settlement Class Members, as well as their predecessors, successors, assigns, heirs, executors, administrators, attorneys, and agents, and shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings maintained by or on behalf of any such persons to the fullest extent allowed by law. Attorneys bound by this Final Order and Judgment include, without limitation: Myers, Widders, Gibson, Jones & Feingold, LLP; Law Offices of Marcos Camacho; Wasserman,

Comden & Casselman LLP; Martinez Aguilasocho & Lynch, APLC; Law Office of Ball & Yorke; and Law Office of Wilcoxen Callaham, LLP.

**11.** **Implementation of Settlement**. The Parties and Settlement Administrator are directed to implement the Settlement Agreement according to its terms. Except as otherwise indicated in paragraphs 52, 57, 58(b), (c), (f) & (h), and 64 of the Settlement Agreement, Defendants, the Released Parties, and defense counsel shall have no responsibility, liability, or involvement with regard to administering the Settlement Fund, processing of claims, or distribution of payments to class members. Plaintiffs and their counsel shall communicate with the Settlement Administrator as necessary to achieve compliance with the Settlement Agreement approved by the Court, provided that all communications concerning material matters or requiring the approval of or notice to Defendants under the Settlement Agreement are copied or otherwise contemporaneously provided to defense counsel.

**12.** **Appeal and Implementation**. Any Settlement Class Member who failed to timely and validly submit his or her objection to the Settlement Agreement in the manner required by the Settlement Agreement, the Class Notice, and this Court's Order of Certification and Preliminary Approval has waived any objection. Any Settlement Class Member seeking to appeal from the Court's rulings approving the Settlement Agreement must: (a) request a stay of implementation of the Settlement Agreement; and (b) post such bond as deemed appropriate by the Court. Absent satisfaction of these requirements, the Parties and Settlement Administrator are authorized (but not required), subject to their mutual consent, to proceed with the implementation of the Settlement Agreement—subject to other provisions in the Settlement Agreement and this Final Order and Judgment, including the definition of the Effective Date—even if such implementation would moot any appeal.

**13. Releases**.

a. The Court hereby orders that the following releases by the Settlement Class Members are and shall be, as of the Effective Date, fully effective:

> Each Settlement Class Member and each Representative Plaintiff, and each of their predecessors, successors, assigns, heirs, executors, administrators, attorneys, and agents, hereby releases each of Delano Farms Company, Cal-Pacific Farm Management, L.P., T&R Bangi's Agricultural Services Inc., Kern Ag Labor Management Inc., La Vina Contracting Inc., and Elite Ag Labor Services, Inc. individually and collectively, and each's subsidiaries, parents (including without limitation Anderson and Middleton Company), Affiliates (including without limitation Blanc Vineyards), owners, shareholders, general and limited partners, predecessors, insurers, agents, employees, heirs, executors, successors, assigns, transferees, officers, officials, directors, members, managers, attorneys, beneficiaries, trustees, personal representatives, or other representatives (collectively the "Released Parties") of and from any and all claims, actions, rights, demands, charges, debts, liens, obligations, costs, expenses, wages, restitution, compensation, disgorgement, benefit(s) of any type, equitable relief, contract obligations, liquidated damages, statutory damages, damages, penalties of whatever type or description, attorneys' fees, interest, complaints, causes of action, obligations, or liability of any and every kind, known or unknown, at law or in equity, contingent or otherwise (i) that were asserted or that could have been asserted in the Arredondo Action or the Paniagua Action, including without limitation in the Amended Arredondo Complaint, or (ii) that are, were, or could be based on, that arose or could arise out of, or that in any way relate to the same or substantially similar facts, transactions, events, policies, acts, or omissions as alleged in either action including in the Amended Arredondo Complaint (collectively the "Released Claims"). For clarity, the Released Claims include but are not limited to any and all claims against each and all of the Released Parties for or relating to allegedly unpaid wages, unreimbursed tool expenses, failure to pay for rest or recovery periods or other nonproductive time, failure to make rest, recovery, or meal periods available, failure to relieve Settlement Class Members of all duties during meal periods, discouraging, preventing, or otherwise hindering employees from taking rest, recovery, or meal periods, the provision of inaccurate wage statements, and/or incomplete or inaccurate

17

record-keeping, from July 17, 2005 until the date of the Court's entry of Order of Certification and Preliminary Approval.

b.    In addition to the releases set forth in the preceding paragraph, the Representative Plaintiffs and Released Parties mutually release each other from and of not only the Released Claims set forth above but any and all claims, known or unknown, as of the date of entry of the Order of Certification and Preliminary Approval. The Court hereby orders that such additional releases are effective as of the Effective Date.

**14.    Permanent Injunction against Prosecution of Claims**.  Upon and after the Effective Date, each Settlement Class Member, Representative Plaintiff, and any other person bound by the releases referenced in paragraphs 13(a) and 13(b) above shall be and hereby is enjoined from initiating, asserting, commencing or prosecuting any claim or action subject to those releases.

**15.    Enforcement of Settlement**.  Nothing in this Final Order and Judgment shall preclude any action to enforce the Settlement Agreement.  Any action or other proceeding seeking to enforce or interpret the terms of the Settlement Agreement, or which seeks to interpret, determine, or adjudicate in any way any legal consequences of or the effect of the Settlement Agreement, the Order of Certification and Preliminary Approval, this Final Order and Judgment, or the Releases in the Settlement Agreement shall be brought solely in this Court.

**16.    Class Counsel Attorneys' Fees and Class Counsel Costs**.  The Court has fully assessed Plaintiffs' motion for attorneys' fees and costs (ECF No. 501, as amended and supplemented by ECF Nos. 502, 521, 523-29), former Class Counsel's notices of claim for attorneys' fees (ECF No. 494, 499), Plaintiffs' motion to strike these claims (ECF No. 503), and the court papers filed in connection therewith (including those filed in response to the Court's Minute Order, ECF No. 504). The Court has entered a separate order providing for the parties to propose procedures for resolution of class

counsel's various fee claims after final approval of the settlement. (ECF No. 517.) The Court expressly retains continuing jurisdiction over these claims.

In accordance with the Order Regarding Enhancement Awards and Attorney's Fees and Costs (ECF No. 533), the Court awards Class Counsel fees and costs as follows:

a. The payment of attorneys' fees in the amount of $1,500,000 and $476,289.17 in costs as approved and directed in the Order Regarding Enhancement Awards and Attorney's Fees and Costs shall be the sole award of fees and expenses to which Class Counsel or any other counsel are entitled or may claim with respect to the Arredondo or Paniagua Actions or the Settlement Agreement, or Class Counsel's administration of the Settlement Agreement. This Final Order and Judgment expressly extinguishes any and all claims and potential claims for attorneys' fees, costs, and expenses of and by any and all Class Counsel (including Current Class Counsel and all former Class Counsel) and anyone else. Current Class Counsel, and each of them, by and through the Settlement Agreement, have released each and all of the Released Parties of and from any and all claims for attorneys' fees, costs, expenses, or any monetary sums of any type connected with or relating in any manner to the Arredondo Action or the Paniagua Action, or any of the claims released as part of the Settlement Agreement. Any claims that Class Counsel may have against the Released Parties are hereby extinguished by this Final Order and Judgment.

b. The attorneys' costs awarded shall paid by the Settlement Administrator from the Qualified Settlement Fund as soon as practicable following both the Effective Date and the deposit to the Qualified Settlement Fund of the full Settlement Amount, but before any Settlement Class Member's Share is distributed.

c. The attorneys' fees awarded shall remain in the Qualified Settlement Fund absent further order of the Court regarding allocation of the fees. However, the

amount of fees awarded shall be deducted from the net settlement fund before any Settlement Class Member's Share is distributed.

       d.     Defendants and the Released Parties shall have no obligation to pay attorneys' fees or costs or litigation expenses with respect to the <u>Arredondo</u> or <u>Paniagua</u> Action, the Settlement Agreement, or the administration of the Settlement Agreement to any other person, firm, or entity. No Plaintiff or other Settlement Class Member shall have any obligation to pay Class Counsel (including both Current Class Counsel and former Class Counsel) any amounts for attorneys' fees, costs, or litigation expenses in or relating to the <u>Arredondo</u> or <u>Paniagua</u> Actions.

       e.     The Court finds that the terms of the Settlement Agreement are the product of non-collusive, arms'-length negotiation conducted under the auspices of an experienced mediator. The Court notes in particular that approval of the Settlement Agreement was not conditioned on the award of any attorneys' fees and costs, and that the terms of the relief to the Settlement Class were reached through the involvement of several independent mediators after the certification of a litigation class in <u>Arredondo</u> and before the parties discussed attorneys' fees and costs.

     **17.**    **Enhancement Awards to Representative Plaintiffs**.  In accordance with the Order Regarding Enhancement Awards and Attorney's Fees and Costs (ECF No. 533), the Court approves enhancement awards of $7,000 each to the five <u>Arredondo</u> class representatives and an award of $2,000 for Mr. Paniagua. These awards shall be paid by the Settlement Administrator from the Qualified Settlement Fund as soon as practicable following both the Effective Date and the deposit to the Qualified Settlement Fund of the full Settlement Amount but before any Settlement Class Member's Share is distributed.

     **18.**    **Payment to the Qualified Settlement Fund**.    Based upon the declarations of counsel and the Settlement Administrator, the Court finds that $700,000 has been paid by Defendants to the Qualified Settlement Fund. Defendants shall deposit

the remaining Settlement Amount ($5,300,000) within 30 days of the Effective Date of the Settlement Agreement, or earlier at Defendants' option. Full payment by the Defendants of the Settlement Amount to the Qualified Settlement Fund shall fully satisfy Defendants' obligations hereunder; Plaintiffs, Class Counsel, and the Settlement Class bear any risk of loss associated with amounts paid to the Qualified Settlement Fund. Defendants and the Released Parties shall have no responsibility or liability for, relating to, or arising from or in connection with the appointment of the Settlement Administrator, any actions or omissions by the Settlement Administrator, its agents, or the agents of Class Counsel, or any obligation or liability of the Qualified Settlement Fund. Without limitation, Defendants and the Released Parties are not responsible and shall have no liability in connection with the distribution of any unclaimed funds or any obligation to remit such funds to the State of California, the failure to obtain or report accurate taxpayer information, the failure to withhold, remit, or pay sufficient Taxes, or the calculation and distribution of payments to Settlement Class Members. Settlement Class Members are responsible for and may owe taxes to the extent the amounts they may owe in this regard have not been fully withheld.

**19.     Payments from Settlement Amount**. The $6,000,000.00 Settlement Amount shall be the total, complete, and maximum amount payable collectively by Defendants and any of the Released Parties pursuant to and in consideration of the Settlement Agreement, which amount cannot, may not, and shall not increase under any circumstances. All payments to the Settlement Class and/or to anyone else in connection with, arising from, relating to, or in consideration of the Settlement Agreement or the resolution of the Arredondo Action or the Paniagua Action shall come from this Settlement Amount, including without limitation all payments and distributions to the Settlement Class, all attorneys' fees and costs awarded or due to anyone in connection with the Arredondo Action or the Paniagua Action or the Settlement Agreement, all costs and expenses relating to the Settlement Agreement and Class

Notice or the administration of either, any enhancement awards to the Representative Plaintiffs, and all Taxes, including without limitation employer-side payments such as FICA, SUTA, and FUTA payments and all wage or other withholdings.

**20.    Reserve for Administrative Expenses and Taxes**.    As soon as practicable following both the Effective Date and the deposit to the Qualified Settlement Fund of the Settlement Amount but before any Class Member's Share is distributed, the Settlement Administrator shall establish a reserve sufficient to cover fees and costs incurred by the Settlement Administrator that become due after the Settlement Amount is deposited in the Qualified Settlement Fund (the "Reserve") in the amount of $185,000. Based upon the declarations of Class Counsel and the Settlement Administrator, the Court finds that the Settlement Administrator shall add $300,000 to the Reserve to cover all Taxes due as soon as practicable following both the Effective Date and the deposit to the Qualified Settlement Fund of the Settlement Amount but before any Class Member's Share is distributed, making the total Reserve amount $485,000.  If any portion of the Reserve remains in the Qualified Settlement Fund after the ultimate payment of all Taxes, Settlement Administrator expenses, and any other fees due or payments to anyone other than distributions to the Settlement Class, the amount so remaining shall be distributed to the Claiming Class Members pro rata according to the Plan of Allocation as a supplemental payment.

**21.    Payment to the Claiming Class Members**.    As soon as practicable following the disbursement or set-aside of the payments identified in paragraph 19 and the establishment of the Reserve required by paragraph 20, the Settlement Administrator shall issue and mail checks to the Claiming Class Members pursuant to the Plan of Allocation and shall remit appropriate payment for or related to Taxes to the appropriate governmental authorities. No person shall have any claim against Defendants, the Released Parties, Plaintiffs, Class Counsel, defense counsel, the Settlement Class, and/or the Settlement Administrator based on any determinations, distributions, or other

awards made in accordance with the Settlement Agreement or in furtherance of its implementation.

**22.   Allocation of Payments**.  The Court recognizes that it is impractical if not impossible to precisely allocate the Net Settlement Fund among the various claims asserted by the Representative Plaintiffs and the Settlement Class. The Court also recognizes that disbursement of the Net Settlement Fund may trigger certain reporting and tax obligations. Because of the uncertainties involved, and in order to facilitate compliance with all applicable reporting and tax requirements, the Parties have agreed that the following allocation is reasonably related to the claims asserted by the Representative Plaintiffs and the Settlement Class:  the Net Settlement Funds distributed to the Claiming Class Members shall comprise 45% percent wages (including Section 226.7 premium payments and reimbursement of tool expenses) and 42.5% interest (non-wages), and 12.5% penalties (non-wages). This allocation was negotiated at arm's length, in good faith, and in an adversarial setting and is consistent with the underlying facts and circumstances and risks of the case, and the Court hereby orders that this allocation is appropriate and adequate.

**23.   Uncashed Settlement Payments**.  The Settlement Administrator shall make reasonable efforts to re-notify or re-mail checks to Claiming Class Members who have not cashed their checks within 60 days of the initial mailing of such checks, including additional efforts to obtain a correct address for such Claiming Class Members. If, upon the expiration of 60 days after re-mailing of undeliverable checks or re-notification to Claiming Class Members whose checks remained uncashed, such checks still remain uncashed, the Settlement Administrator shall cause stop-payment notices to be issued against the checks not cashed. The Settlement Administrator will then distribute and deliver the amount of the total uncashed checks to the remaining Claiming Class Members pro rata according to the Plan of Allocation as a supplemental payment.

**24.     Remaining Unclaimed Funds.**  With respect to Taxes that have been paid to state or federal agencies relating to any uncashed checks, the Court understands that those agencies may take a significant amount of time to issue refunds, if any, of such Taxes to the Settlement Administrator and that at some point the unclaimed funds remaining for distribution will be too small to justify the cost of redistribution to the Claiming Class Members. Plaintiffs have advised the Court that the total unclaimed funds and/or refunded Taxes are expected to be less than $50,000. The Court orders that, following the refund of Taxes to the Settlement Administrator, with respect to any distributions of such refunds or other unclaimed funds as the Settlement Administrator deems reasonable under the circumstances, Class Counsel shall be entitled to receive such funds as part of their recoverable fees, provided that the returned amounts do not exceed $50,000. In the event the returned amounts exceed $50,000, the overage shall be held in the Qualified Settlement Fund for distribution by order of the Court on motion made once the amount thereof is finally determined.. Defendants and the Released Parties shall have no liability based on any claim by any party, Settlement Class Member, or third party that the funds related to the uncashed checks should have been treated as unclaimed property of the original payee or otherwise distributed in a different way to a different person.

**25.     Retention of Jurisdiction**. The Court has jurisdiction to enter this Final Order and Judgment. Without in any way affecting the finality of this Final Order and Judgment, for the benefit of the Settlement Class, Defendants, and Released Parties, the Court expressly retains continuing jurisdiction as to all matters relating to the Settlement Agreement, including but not limited to any modification, interpretation, administration, implementation, effectuation, or enforcement of the Settlement Agreement; the administration of the Settlement Agreement, including payments thereunder; the Class Notice and sufficiency thereof; any objection to the Settlement Agreement; any request for exclusion from the Settlement Class; the adequacy of

representation by Class Counsel and/or the Representative Plaintiffs; the amount of attorneys' fees and litigation costs paid to Class Counsel; the amount of the enhancement awards to be paid to the Representative Plaintiffs; any claim by any person or entity relating to the representation of the Settlement Class by Class Counsel; enforcement of the Releases and injunction provisions of the Settlement Agreement and of this Final Order and Judgment; any proceedings on remand after appeal or denial of any appellate challenge; any collateral challenge made regarding any matter related to the Arredondo Action, the Paniagua Action, or the Settlement Agreement or the conduct of any party or counsel relating to this litigation or the Settlement Agreement; and all other issues related to these Actions or the Settlement Agreement.

**26.    No Admission**. Nothing in this Final Order and Judgment, the Settlement Agreement, or any related documents, pleadings, court papers, or other documents, and no actions taken or statements made to effectuate or implement this Final Order and Judgment or the Settlement Agreement, shall be construed as, offered as, received as, used as, or deemed to be evidence of any kind or for any purpose in any judicial, administrative, regulatory, or other action or proceeding (including in the Arredondo or Paniagua Actions), except for purposes of obtaining approval of the Settlement Agreement or entry of judgment in these Actions, enforcement or implementation of the Settlement Agreement, or to support any defense by Defendants or the Released Parties based on principles of res judicata, collateral estoppel, release, waiver, good-faith settlement, judgment bar or reduction, full faith and credit, setoff, or any other theory of claim preclusion, issue preclusion, release, injunction, or similar defense or counterclaim to the extent allowed by law. Without limiting the foregoing, neither the Settlement Agreement nor any related negotiations, statements, mediation positions, notes, drafts, outlines, memoranda of understanding, or court filings or proceedings relating to the Settlement Agreement or its approval shall be construed as, offered as, received as, used as, or deemed to be evidence of or an admission or concession by

any person of any liability or wrongdoing on the part of Defendants or Released Parties, or as a waiver by Defendants or Released Parties of any defense, including without limitation any applicable statute of limitation.

**27.   Dismissal of Action**. The <u>Arredondo</u> Action is hereby dismissed with prejudice, without an award of attorneys' fees or costs to any party except as provided in this Final Order and Judgment. In accordance with the Settlement Agreement, and within three days of the date of this order, the parties shall file in the <u>Paniagua</u> action a voluntary dismissal with prejudice.

**28.   Right to Terminate**.  Any Party to the Settlement Agreement, by and through his, her, or its counsel of record, shall have the right to terminate the Settlement Agreement by providing written notice of election to do so to all other Parties to the Settlement Agreement within 20 days of the date upon which any of the following conditions may occur:

a.      This Final Order and Judgment is modified or reversed in any material respect by the Court or the United States Court of Appeals or the United States Supreme Court; or

b.      The Court declines to dismiss the <u>Paniagua</u> action with prejudice and without costs to any party.

Before giving notice of termination, the Parties shall meet and confer and make reasonable efforts to address changes that might allow a revised settlement to be reached that would then be submitted for approval.

**29. Effect of Termination or Failure of the Settlement Agreement to Become Effective.** In the event the Settlement Agreement is terminated or fails to become effective for any reason, the Parties to the Settlement Agreement shall be deemed to have reverted to their respective litigation positions as of August 24, 2016 and shall proceed in all respects as if this Final Order and Judgment, any related orders,

and the previous orders of the Court with regard to or relating to the Settlement Agreement had not been entered.  In such event:

      a.      The Settlement Agreement shall have no force and effect, no party shall be bound by any of its terms, and nothing in it may be used against any party in the Arredondo or Paniagua Actions or in any other proceeding (except that any Party may enforce the provisions of the Settlement Agreement regarding termination of the Settlement Agreement or the effect of such termination);

      b.      No pleading, brief, motion, or other submission to the Court relating to the Settlement Agreement (the "Settlement Submissions"), including without limitation the Settlement Agreement, the Motion for Certification of the Settlement Class and Preliminary Approval of the Settlement Agreement and any proposed order, and the Stipulation and Order Granting Leave to File Amended Complaint, shall constitute an admission of any party of any kind or shall limit any claim, defense or argument in any way, whether substantive or procedural; and nothing in any Settlement Submission may be used against any party in the Arredondo or Paniagua Actions or in any other proceeding (except that any party may enforce the provisions of the Settlement Agreement regarding termination of the Settlement Agreement or the effect of such termination);

      c.      Defendants and the Released Parties shall have no obligation to make any payments;

      d.      The Order of Certification and Preliminary Approval, this Final Order and Judgment, the Order Regarding Enhancement Awards and Attorney's Fees and Costs, and any other orders approving, implementing, or otherwise relating to the Settlement Agreement shall be vacated, shall be of no effect whatsoever, and may not be used against any party in the Arredondo or Paniagua Actions or in any other proceeding;

e.     Any order or stipulation granting leave to amend the complaint in the Arredondo Action shall be vacated, shall be of no effect whatsoever, and may not be used against any party in the Arredondo or Paniagua Actions or in any other proceeding;

f.     The Amended Arredondo Complaint, the Motion for Certification of the Settlement Class and Preliminary Approval of the Settlement Agreement, and any submissions relating to the Settlement Agreement or its approval shall all be withdrawn and stricken, and the Parties will proceed to litigate the Arredondo Action and the Paniagua Action with respect to the pleadings on file as of the time of execution of the Settlement Agreement;

g.     Except as submitted to this Court, all negotiations, statements, documents, and proceedings relating to the Settlement Agreement shall be deemed confidential and not subject to disclosure for any purpose in any proceeding; and

h.     Any portion of the Settlement Amount previously paid or caused to be paid by Defendants to the Qualified Settlement Fund, together with any interest earned thereon, less any Taxes required to be withheld with respect to such interest, shall be returned to Defendants within 10 business days. To the extent that any portion of any payment already made by Defendants cannot be returned (because, for example, some portion of the amounts paid by Defendants into the Qualified Settlement Fund were spent by the Settlement Administrator in implementing the Settlement Agreement), Defendants shall receive credit for that payment such that any judgment or other settlement ultimately obtained by the Plaintiffs or any class certified in the Arredondo Action and/or the Paniagua Action shall be reduced by an identical amount.

IT IS SO ORDERED.

Dated:   September 29, 2017          /s/ *Michael J. Seng*
                                         UNITED STATES MAGISTRATE JUDGE